GUY W. CHAMBERS (State Bar No. 101611)
E-Mail: gchambers@sideman.com
ELLEN P. LIU (State Bar No. 280459)
E-Mail: eliu@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Jaimin H. Shah (admitted *pro hac vice*)
Email: jshah@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Upper Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone: (312) 836-4171
Facsimile: (312) 966-8607

Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

Jiageng Lu (State Bar No. 271589)
Email: jlu@dickinsonwright.com
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
Telephone: (512) 770-4200
Facsimile: (844) 670-6009

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian Company<br><br>Plaintiff,<br><br>v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT** |

{00306469} Case No. 3:18-cv-06721 JCS

JOINT CASE MANAGEMENT STATEMENT

The Parties to the above-entitled action, Plaintiffs Ely Holdings Limited ("Ely") and Greenlite Glass Systems Inc. ("Greenlite") (Ely and Greenlite collectively "Plaintiffs") and Defendant O'Keeffe's, Inc. d/b/a SAFTI First ("SAFTI") (Plaintiffs and SAFTI collectively "the Parties"), jointly submit this UPDATED JOINT CASE MANAGEMENT STATEMENT pursuant to this Court's March 18, 2019 Order (Docket No .36) and November 6, 2018 Order (Docket No. 6), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9.

## 1. Jurisdiction & Service

This Court has subject matter over Plaintiffs' patent claims and SAFTI's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).  Venue and personal jurisdiction and not contested. Service has been effected on all of the Parties.

## 2. Facts

### a. Plaintiffs' Statement

Plaintiffs bring claims against SAFTI for willful infringement of U.S. Patent No. 7,694,475 ("the '475 Patent").  Plaintiffs seeks monetary damages for this infringement in the form of lost profits and price erosion damages, but in no event less than a reasonable royalty, as well as an injunction precluding future infringement.

Some twenty-plus years ago, the inventor of the '475 Patent, Michael Rae, was faced with a problem – he was looking to expand his glass floor business and was being told by architects that he would have to include fire-rated glass in any glass floor system that was to be used in a residential or commercial structure.  Fire-rated glass, however, was (and is) manufactured to include alternating layers of glass and an intumescent material, and was (and is) designed so that the layer closest to the fire will break as the intumescent layer behind it heats up and swells to form an opaque insulating layer.  The opaque insulating layer is eventually consumed by fire, exposing the glass behind it to the fire which causes that glass to break as the intumescent material behind it heats up and swells.  This process is repeated until all the layers of the fire-rated glass are consumed by fire.

Thus, when used in flooring where the fire-rated glass rests on a beam or frame, as the lower layer(s) are exposed to fire coming up from below and begin to break/swell, the fire-rated glass becomes unstable and cannot bear the loads associated with normal foot traffic without failing . Attempts to solve this problem by adding a layer of structural glass above the fire-rated glass required a large gap between the structural glass and the fire-rated glass, with the structural glass resting on a top flange of a steel beam and the fire-rated glass on a bottom flange. This arrangement ensured that the structural integrity of the floor would be maintained even after the fire-rated glass was exposed to fire and the layers thereof began to break/swell, thereby enabling people inside the building to safely evacuate by walking on the structural glass. Such large gaps, however, were unsightly, and therefore undesirable in architectural applications, and, because they could not be adequately sealed, often gave rise to problems such as condensation forming between the structural glass and the fire-rated glass.

Trained as an engineer, Mr. Rae thought he could find a better way of framing structural glass and fire-rated glass that would avoid this large gap and yet still preserve the integrity of the structural glass when the fire-rated glass was exposed to fire. His solution was the load transferring means described and claimed in the '745 Patent, which issued on April 13, 2010. This load transferring means enabled the fire-rated glass to be located immediately below the structural glass, yet ensured that any load on the structural glass was not transferred to the fire-rated glass (but, instead, was transferred to the frame). Thus, even as the glass layers of the fire-rated glass break and the intumescent material swells, the structural glass can still bear the weight of foot traffic and permit people to continue to walk across the area, even during a fire, and safely escape. Revolutionary in its elegance, Mr. Rae's floor system, which can be installed either as a single piece or as two separate pieces, became a great success and was widely sought after for use in various construction projects.

After learning of Mr. Rae's patented glass floor system, however, SAFTI had a different response, willfully misappropriating Ely's intellectual property and then, for good measure, engaging in a campaign to mislead the relevant market into believing that Mr. Rae's novel floor system was, in fact, SAFTI's product. At least as early as 2015, SAFTI began selling a knock-off

of Mr. Rae's patented floor system in direct competition with Plaintiffs. SAFTI was ultimately successful in sowing confusion in the marketplace and thereby forcing Plaintiffs to either reduce their price or lose jobs completely.

Moreover, to add insult to injury, around the same time it started selling its knock-off, SAFTI filed its own patent application to a trivial modification of the load bearing means of the floor system claimed in the '475 Patent. SAFTI did not, however, disclose the '475 Patent to the examiner at the U.S. Patent & Trademark Office, despite being aware of it and its relevance to SAFTI's alleged invention. Because of that failure, SAFTI was ultimately able to get its patent application to issue in March, 2018, as U.S. Patent No. 9,926,709 ("the '709 Patent").

Since the '709 Patent issued, SAFTI has represented and continues to represent to the public that it covers the accused products. Unfortunately for SAFTI, the '709 Patent actually dooms SAFTI in this litigation. SAFTI's own written description of the accused products confirms that each and every limitation of the '475 patent is identically found in the accused products.

### b. O'Keefe's Statement

Since before 1980, O'Keeffe's, and its SAFTI division, has designed and manufactured fire and safety rated architectural glass products and moved the industry away from the dangerous wired glass which had been the architectural standard for fire and safety rated applications. SAFTI was the first company to develop and market American made safety and fire listed and labeled clear glass wall and door assemblies.

Throughout its manufacturing history, SAFTI has successfully grappled with the challenge of creating architectural glass units which satisfied two separate stringent requirements, maintaining fire resistance while satisfying strength requirements -- -- for example, window walls in skyscrapers which must resist an hour of fire while making sure that people and objects do not break through the windows to the street far below.

SAFTI's president and chief executive officer, William O'Keeffe, invented and patented a one piece flooring system which accomplished both fire and safety objectives, allowed for adjustment in the field to accommodate factors such as variances in building tolerances and

changes in drainage needs, and which could be installed in a single application. SAFTI developed and tested its glass fire floor system in 2015. Mr. O'Keefe obtained a patent for the fire rated floor in March, 2018. All of the above innovations were invented by Mr. O'Keeffe without any reference to or reliance upon any Ely product or patent.

Plaintiff Ely Holdings patented a quite different product, upon which it sues in this action. Ely's patented product is not adjustable, is comprised of two levels of glass separated by less than 50 mm, must be installed in two separate applications and contains a load bearing feature which supports and transfers the load from the top level and bypasses the second. The SAFTI product contains none of those features. Ely's patent sued upon herein, and Mr. O'Keeffe's patent are materially and significantly different. Rather, Ely's product is an obvious construction, presenting two separate levels, one installed under and independently of the other. That obvious presentation, is not innovative and should never have been patented.

SAFTI has never encountered Ely in the competitive marketplace, and is unaware of whether Ely actually sells either its patented product, or any other fire rated walkable architectural surface. However, in the past year some of SAFTI's competitors have copied SAFTI's superior single floor product. If discovery discloses that Ely is involved in such unfair competition and infringement upon Mr. O'Keefe's patent, SAFTI will move to amend its counterclaim to so allege.

On May 16, 2019, Greenlite Glass Systems, appeared in the case as a new plaintiff (Docket 49). SAFTI filed a new counterclaim against Greenlite on May 31, 2019 (Docket 56), which includes Lanham Act violations and unfair business practices under the common law and under California's Business & Professions Code section 17200. In order to unfairly compete against SAFTI, and in an effort to obtain "buy America" jobs, Greenlite made several misrepresentations including:

- representing that it was supplying materials manufactured in America;
- representing that fire and safety floors could not be obtained from any American manufacturer;
- representing that it produced "the only exterior fire-rated glass floor/skylight system available in North America";

1 • representing that it made "the only exterior glazed system with an insulated Glass assembly for North America";

3 • representing, without any reasonable basis therefor, that SAFTI's fire and safety related flooring violated the patent on Greenlite's product.

### 3. Legal Issues

#### a. Plaintiffs' Statement

Plaintiffs bring claims against SAFTI for direct infringement of U.S. Patent No. 7,694,475 ("the '475 Patent") pursuant to 35 U.S.C. § 271(a) and for indirect infringement of the '475 Patent pursuant to 35 U.S.C. § 271(b) and (c). Plaintiffs further seek a judgment that SAFTI's infringement has been and continues to be willful. *See Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 579 U.S. ___, 136 S. Ct. 1923 (2016).

Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the form of lost profits and price erosion damages, but in no event less than a reasonable royalty. Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by SAFTI. Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement of damages pursuant to 35 U.S.C. § 284. Because this is an exceptional case, Plaintiffs also seek their attorneys' fees pursuant to 35 U.S.C. § 285.

#### b. O'Keefe's Statement

SAFTI denies infringement of U.S. Patent 7,674,475 by the manufacturing, use, and/or sale of its unique glass floor product. SAFTI also seeks a judgment of invalidity of the 7,694,475 patent based on United States Code Sections 102, 103, and/or 112, and a declaration that this is an exceptional case entitling it to an award of attorneys' fees, costs and expenses. SAFTI alleges Greenlite violated the Lanham Act, 15 U.S.C.A. § 1125, et seq. by making misrepresentations in connection with the sale of goods in interstate and foreign commerce. Greenlite made misrepresentations about its products and SAFTI's products. For example, Greenlite misrepresented the origin of its product, claiming that it is a made in America product. Greenlite's conduct violates the Lanham Act, and constitutes unfair competition under California common law and under Business and Professions Code section 17200.

**4.     Motions**

There are no motions pending before the Court.

Plaintiffs anticipate filing a motion for summary judgment at the close of discovery in this case, or at such other time as the Court may permit. Plaintiffs do not currently intend to file any other dispositive motions, but reserve the right to do so.

SAFTI reserves the right to file motions for Summary Judgment and other dispositive motions after discovery.

**5.     Amendment of Pleadings**

On May 16, 2019, Plaintiffs filed a First Amended Complaint (Docket No. 49) adding Greenlite as a Party and SAFTI's response is currently due on May 31, 2019. Although the Parties do not currently believe that any further amendment(s) will be required, the Parties may seek to amend to add additional parties and/or add or modify claims if they learn of new facts during discovery which might support amendment. SAFTI responded to that first amended complaint on May 31, 2019, adding counterclaims against Greenlite for Lanham Act violations and unfair competition. The parties do not anticipate further amendment of the pleadings.

**6.     Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     Disclosures**

The Parties exchanged the initial disclosures required by Fed. R. Civ. P. 26 in February, 2019. On March 22, 2019, Plaintiffs served the disclosures required by Patent Local Rule 3-1, and, on May 6, 2019, O'Keeffe's served the disclosures required by Patent Local Rule 3-3. .

**8.     Discovery**

The Parties have exchanged written discovery and are currently producing documents to each other, but have not yet taken depositions.  Plaintiffs have also served a number of subpoenas pursuant to Fed. Civ. Proc. 45.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR

1  Plaintiffs anticipate taking discovery on all relevant issues in this case, including whether SAFTI's has infringed the '475 patent, both directly and indirectly, whether such infringement was willful, and the damages suffered by Plaintiffs due to SAFTI's alleged infringement. SAFTI anticipates taking discovery on all relevant issues in this case, including whether Ely's patent is valid, whether Ely's patent has achieved commercial success, whether Ely suffered damages or loss of sales of the patented product  and, if so, whether such damage or loss of sales was caused by SAFTI, whether any alleged damage or loss of sales was caused by Ely's sales of other product which competes with a patented product, and whether Ely has abandoned the patented product.

SAFTI will seek discovery into Greenlite's as-bid and as-built products, drawings, specifications, and documents as an important aid in interpreting the patent language.  SAFTI will also seek discovery to obtain further truth of Greenlite's unfair competition and commercial misrepresentation.     The Parties suggest that the timing of and limits on discovery be governed by the Federal Rules of Civil Procedure and the Local Rules of this Court.

The Parties have entered into a stipulated e-discovery order. .

The Parties proposed that fact discovery be conducted in two phases.  The initial fact discovery phase encompasses all discovery relating to claim construction and fact discovery concerning the Parties claims and defenses.

The newly added presence of Greenlite will require additional time to engage in discovery and to prepare for the claims construction hearing.  Ely's discovery responses have noted the Ely has not been involved in the construction or sale of fire rated glass flooring, and for that reason has been unable to produce requested data, specifications, details or drawings about what its patented floor looks like.  Ely has responded that bid documents, construction drawings or as built drawings must await Greenlite's entry into the litigation.

In order to interpret the meaning of the patent alleged to have been infringed upon, it is necessary to see how Plaintiffs designed, distributed and sold the product in the field.  This is critical evidence in terms of determining the meaning of the words of the patent.

Discovery from Greenlite is therefore necessary.  Defendant does not have sufficient time to complete such discovery under the currently schedule.  Accordingly, the parties' jointly request

a 60 day continuance of the dates for fact discovery and expert witness reports and depositions as set forth in Exhibit A.

The parties request that the first phase of fact discovery be completed by October 4, 2019, in advance of the *Markman* hearing. The parties further request that the second phase of fact discovery will conclude fact discovery and be completed by March 31, 2020 or not more than ninety (90) days after the Court issues its claim construction order, whichever is later, and that expert discovery be conducted after the close of fact discovery and will be completed by August 3, 2020.

The Parties are not presently aware of any discovery disputes, but will inform the Court promptly if any such dispute arises in the future.

    **a.**    **Rule 26(f)(3)(A): What changes should be made in the timing, form, or requirement for disclosures under Rules 26(a), including a statement of when initial disclosures were made or will be made?**

Pursuant to this Court's Order Setting Initial Case Management Conference and ADR Deadlines (Docket No. 6), the Parties exchanged Initial Disclosure in February, 2019.

    **b.**    **Rule 26(f)(3)(B): The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

Plaintiffs anticipate taking discovery on all relevant issues in this case, including whether SAFTI's has infringed the '475 patent, both directly and indirectly, whether such infringement was willful, and the damages suffered by Plaintiffs due to SAFTI's alleged infringement.

SAFTI anticipates taking discovery on all relevant issues in this case, including whether Ely's patent is valid, whether Ely's patent has achieved commercial success, whether Ely suffered damages or loss of sales of the patented product and, if so, whether such damage or loss of sales was caused by SAFTI, whether any alleged damage or loss of sales was caused by Ely's sales of other product which competes with a patented product, and whether Ely has abandoned the patented product.

SAFTI will seek discovery into Greenlite's as-bid and as-built products, drawings,

specifications, and documents as an important aid in interpreting the patent language. SAFTI will also seek discovery to obtain further truth of Greenlite's unfair competition and commercial misrepresentation. In addition, SAFTI will seek discovery regarding damages.

The parties jointly request a 60-day extension of all discovery, including expert discovery, as set forth in Exhibit A.

The Parties proposed that fact discovery be conducted in two phases as set forth in the Parties' jointly proposed schedule set forth in the attached Exhibit A. The initial fact discovery phase encompasses all discovery relating to claim construction and fact discovery concerning the Parties claims and defenses, including the matters set forth in the previous paragraph. This first phase of fact discovery will be completed by October 4, 2019, in advance of the *Markman* hearing. The second phase of fact discovery will conclude fact discovery and will be completed by March 31, 2020, or ninety (90) days after the Court issues its claim construction order, whichever is later. Expert discovery will be completed by August 3, 2020.

The purpose of a bifurcated fact discovery is to enable the Parties to discovery facts early on which will inform both claim construction and possible early settlement negotiations, while still allowing the Parties an opportunity to take fact discovery, if they choose, following issuance of the Court's *Markman* order.

    **c.**    **Rule 26(f)(3)(C): Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

The Parties are not currently aware of any issues about disclosure or discovery of electronically stored information. The Parties have entered into a stipulated e-discovery order.

    **d.**    **Rule 26(f)(3)(D): Any issues about claims of privilege or of protection as trial-preparation materials, including – if the Parties agree on a procedure to assert such claims after production – whether to ask the Court to include their agreement in the order.**

In light of the fact that disclosure of confidential and/or proprietary information may be necessary in this case, the Parties submitted a Stipulated Protective Order to the Court. The

Parties agreed that privileged communications and documents covered by the attorney work product doctrine and dated after the filing of this lawsuit need not be included in any privilege log. All other limitations on discovery imposed by the Federal Rules of Civil Procedure shall apply, absent a stipulation by the Parties approved by the Court.

The Parties do not presently anticipate any issues relating to claims of privilege or of protection of trial-preparation material. The Parties agree to address any such issues in the event that they arise and to promptly inform the Court should assistance be required.

  e. **Rule 26(f)(3)(E): What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed?**

    (i) **Requests for Admission**

Each Party is limited to fifty (50) requests for admission, excluding those directed solely to authenticating exhibits for trial.

    (ii) **Depositions**

Each Party is limited to seventy (70) hours of deposition, and no more than twenty (20) total depositions, excluding experts and deponents pursuant to Fed. R. Civ. Proc. 45. Expert witness depositions and depositions taken pursuant to Fed. R. Civ. Proc. 45 will not count against the deposition time or number limits described above. Expert witness depositions will be limited to seven (7) hours each per report served.

    (iii) **Agreement to Serve by Email**

The Parties agreed to serve interrogatories, document requests, deposition notices, and requests for admission, and all responses thereto, on each other via email to at least three attorneys of record appearing for the receiving Party (hardcopies to follow by mail, if so requested). The Parties further agreed that service of a complete copy of these documents via email shall count as service by hand on the next business day.

  f. **Rule 26(f)(3)(F): Any other order that the Court should issue under Rule 26(c) or under Rule 16(b) and (c).**

Other than the aforementioned Stipulated Protective Order and Stipulated Order Re:

1  Discovery of Electronically Stored Information for Patent Litigation, the Parties do not request
2  any other orders under Rule 26(c) or under Rule 16(b) and (c) at this time.

3  **9.    Class Actions**

4      The above-identified action is not a class action.

5  **10.    Related Cases**

6      There are no cases or proceedings pending before another judge of this court, or before
7  another court or administrative body, that are related to the patent involved in the above-identified
8  action.  Ely has, however, petitioned the U.S. Patent & Trademark Office to institute a Post Grant
9  Review of U.S. Patent 9,926,709, which names William O'Keeffe, CEO of SAFTI, as the
10 inventor.

11 **11.    Relief**

12     Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the
13 form of lost profits and price erosion damages, but in no event less than a reasonable royalty.
14 Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by
15 SAFTI.  Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement
16 of damages pursuant to 35 U.S.C. § 284.  Because this is an exceptional case, Plaintiffs also seek
17 their attorneys' fees pursuant to 35 U.S.C. § 285.

18     SAFTI seeks a judgment of invalidity of the 7,694,475 patent based on United States code
19 Sections 102, 103, and/or 112, and a declaration that this is an exceptional case entitling it to an
20 award of attorneys' fees, costs and expenses.  SAFTI will seek damages for Greenlite's Lanham
21 Act violations and unfair competition to compensate it for jobs lost to Greenlite, the disgorgement
22 of profit, and any other damages which are appropriate under the facts.  It will also seek an
23 injunction preventing Greenlite from continuing to make these misrepresentations.  SAFTI
24 reserves the right to seek other relief if authorized and justified by discovery in this action.

25 **12.    Settlement and ADR**

26     On May 2, 2019, the Parties participated in Early Neutral Evaluation (ENE), but were not
27 successful in settling this matter.  The Parties intend to participate, if necessary, in Mediation after
28 this Court issues its Claim Construction Order.

{00306469}                                    11                          Case No. 3:18-cv-06721 JCS
UPDATED JOINT CASE MANAGEMENT STATEMENT

1     The Parties continue to believe that the Court's Claim Construction Order may facilitate the negotiation of a resolution.

### 13. Consent to Magistrate Judge for All Purposes

    The Parties have previously consented to have the Magistrate Judge conduct all further proceedings including trial and entry of judgment (Docket Nos. 10, 17).

### 14. Other References

    The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

    The Parties will continue to seek to narrow the disputed legal issues through the Patent Local Rule disclosure requirements, written discovery, depositions, and motions practice, including motions for summary judgement.

### 16. Expedited Trial Procedure

    The Parties do not believe that this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

### 17. Scheduling

    The Parties jointly request the schedule attached as Exhibit A.

### 18. Trial

    Plaintiffs have made a demand for a jury and currently estimates that they will need 2-3 days to put on its case. SAFTI estimates that it will need 6 days to present its case and defenses.

### 19. Disclosure of Non-party Interested Entities or Persons

    The Parties have both filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 (Docket Nos. 3, 13).

    Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named parties, *i.e.* Ely Holdings Limited and Greenlite Glass Systems Inc., there is no such interest to report.

    Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named party, *O'Keeffe's, Inc.*, there is no such interest to report.

1  **20.    Professional Conduct**

2  All attorneys of record for the Parties have reviewed the Guidelines for Professional

3  Conduct for the Northern District of California.

4  **21.    Other - Additional Topics Pursuant to Patent Local Rule 2-1(B)**

5      **a.    Proposed modification of the obligations or deadlines set forth in these Patent**

6          **Local Rules to ensure that they are suitable for the circumstances of the**

7          **particular case (see Patent L.R. 13)**

8  The Parties do not believe that any changes need to be made to the obligations or deadlines

9  set forth in this Court's Patent Local Rules.

10     **b.    The scope and timing of any claim construction discovery (including**

11         **disclosure of and discovery from any expert witness permitted by the court)**

12         **and damages discovery.**

13 The Parties jointly request that the Court order the schedule set forth on Exhibit A.

14     **c.    The format of the Claim Construction Hearing, including whether the Court**

15         **will hear live testimony, the order of presentation, and the estimated length of**

16         **the hearing.**

17 The Court has ordered that the Claim Construction hearing be conducted in-person, but

18 that no live testimony be presented (although the Court has ordered that the Parties' respective

19 experts be in attendance). As to the order of presentation, the Parties suggest that Plaintiffs, as the

20 patent owner, go first on each disputed term, with a response from SAFTI, and a reply from

21 Plaintiffs. If, however, the Court provides a preliminary construction for any disputed term, the

22 Parties suggest that the Party opposing the Court's preliminary construction go first, with a

23 response from the Party agreeing with the Court's preliminary construction, and then a reply from

24 the Party opposing. The Parties estimate that the Claim Construction hearing should take no more

25 than one day.

26     **d.    How the parties intend to educate the Court on the technology at issue.**

27 The Court has ordered that a technology tutorial be presented for the benefit of the Court

28 on the same day as the Markman hearing. There will be no live testimony at the tutorial. The

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR

1  Parties still estimate that the tutorial should take no more than one (1) hour, with the time split
2  evenly between the Parties.

                                  Respectfully submitted,

                                  DICKINSON WRIGHT PLLC

Dated:  May 31, 2019                     By: */s/ Jiageng Lu*
                                    Jiageng Lu (CSB #271589)
                                    607 W. 3rd Street, Suite 2500
                                    Austin, Texas 78701
                                    Telephone:  (512) 770-4200
                                    Facsimile:  (844) 670-6009

                                Attorneys for Plaintiffs
                                ELY HOLDINGS LIMITED and GREENLITE
                                GLASS SYSTEMS INC.


                                FREELAND COOPER & FOREMAN LLP


Dated:  May 31, 2019                     By: */s/ Mark I. Schickman*
                                    Mark I. Schickman  (CSB #62653)
                                    Cathleen S. Yonahara  (CSB #203802)
                                    150 Spear Street, Suite 1800
                                    San Francisco, California 94105
                                    Telephone:  (415) 541-0200
                                    Facsimile:  (415) 495-4332
                                    Email:     schickman@freelandlaw.com
                                                yonahara@freelandlaw.com

                                Theodore J. Bielen, Jr. (CSB #56395)
                                BIELEN & LAMPE
                                1390 Willow Pass Road, Ste 1020
                                Concord, CA 94520
                                Telephone: (925) 288-9720
                                Facsimilia:  (925) 288-9731
                                Email: bielenlt@yahoo.com

                                Attorneys for Defendant
                                O'KEEFFE'S, INC. d/b/a SAFTI FIRST

**EXHIBIT A**

| Event | Parties' Joint Proposal |
|---|---|
| Exchange Proposed Constructions (Pat. L.R. 4-2) | August 12, 2019 |
| Joint Claim Construction Statement (Pat. L.R. 4-3) | September 9, 2019 |
| Exchange Opening Claim Construction Expert Reports | September 9, 2019 |
| Exchange Reply Claim Construction Expert Reports | September 23, 2019 |
| Close of Claim Construction Discovery (Pat. L.R. 4-4) | October 4, 2019 |
| Opening Claim Construction Briefs (Pat. L.R. 4-5(a)) | October 18, 2019 |
| Responsive Claim Construction Brief (Pat. L.R. 4-5(b)) | November 4, 2019 |
| Reply Claim Construction Brief (Pat. L.R. 4-5(c)) | November 4, 2019 |
| Tutorial | December 6 or December 13, 2019 (as determined by court) |
| Markman Hearing | December 6 or December 13, 2019 (as determined by court) September 23, |
| Close of Fact Discovery | March 31, 2020* |
| Complete Mediation | March 31, 2020 |
| Exchange Opening Expert Reports | April 28, 2020* |
| Exchange Rebuttal Expert Reports | May 27, 2020* |
| Exchange Reply Expert Reports | June 24, 2020* |
| Close of Expert Discovery | August 3, 2020* |
| Deadline for Filing Dispositive Motions | August 3, 2020* |
| Pretrial Conference | set by court |
| Trial | set by court |

\* subject to modification depending upon the date of issuance of the Court's claim construction order.