Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
Shih Ching Li (admitted *pro hac vice*)
Email: eli@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Guy W. Chambers (State Bar No. 101611)
E-Mail: *gchambers@sideman.com*
Ellen P. Liu (State Bar No. 280459)
E-Mail: *eliu@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone:  (408) 701-6100
Facsimile:  (844) 670-6009

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Jia-geng Lu (State Bar No. 271589)
Email: jlu@dickinsonwright.com
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
Telephone:  (512) 770-4200
Facsimile:  (844) 670-6009

Jaimin H. Shah (admitted *pro hac vice*)
Email: jshah@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Upper Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone: (312) 836-4171
Facsimile: (312) 966-8607

*Attorneys for Ely Holdings Limited
and Greenlite Glass Systems Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian Company<br><br>Plaintiffs,<br><br>v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>Defendant. | Case No. 3:18-cv-06721 JCS<br><br><br>**PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF** |

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................1

III.    CLAIM CONSTRUCTION PRINCIPLES AND APPLICABLE LAW ...........................3

IV.     ARGUMENT .........................................................................................................5

      A.      The Two Layers Of Glass Are Separated By One Or More Of The Load
            Transferring Means..................................................................................5

      B.      A Vertical Portion Transferring Load From The First Layer Of Glass Above
            Directly To The Structural Frame Below, Bypassing The Second Layer Of
            Glass........................................................................................................8

      C.      The Second Layer Of Glass Is Suspended From The First Layer Of Glass
            Such That There Is A Small Gap Between The First And Second Layers Of
            Glass......................................................................................................11

      D.      The Load Transferring Means Transfers Load Applied To The First Layer
            Of Glass Directly To The Structural Frame, Bypassing The Second Layer
            Of Glass ................................................................................................13

      E.      Comprising A First Layer Of Glass Which Is A Structural Glass And A
            Second Layer Of Glass Which Is A Fire Rated Glass ............................14

      F.      The Distance From The Upper Surface Of The Second Layer Of Glass To
            The Lower Surface Of The First Layer Of Glass Is Less Than 50 mm.................16

      G.      The First Layer Of Glass Being Supported By The Or Each Load
            Transferring Means And The Second Layer Of Glass Being Supported By
            The Structural Frame .............................................................................18

      H.      Load Transferring Means Comprises A First Portion For Bearing The Load
            Applied To The First Layer Of Glass And A Second Portion For
            Transmitting The Load Applied To The First Layer Of Glass To The
            Structural Frame....................................................................................20

      I.      "Glazing Bar"........................................................................................21

V.      CONCLUSION....................................................................................................23

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Sandoz Inc.*,
566 F.3d 1282 (Fed. Cir. 2009).................................................................................. 3

*Continental Circuits v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019).............................................................................. 3, 4

*Douglas Dynamics, LLC v. Buyers Products Co.*,
717 F.3d 1336 (Fed. Cir. 2013).................................................................................. 3

*DSW, Inc. v. Shoe Pavilion, Inc.*,
537 F.3d 1342 (Fed. Cir. 2008).................................................................................. 3

*GE Lighting Solutions LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)................................................................ 10, 14, 21

*Kara Tech. Inc. v. Stamps.com Inc.*
582 F.3d 1341 (Fed. Cir. 2009).................................................................................. 4

*O2 Micro Int'l v. Beyond Innovation Technology Co. Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008).................................................................................. 5

*Oatey v. IPS*,
514 F.3d 1271 (Fed. Cir. 2008)................................................................ 10, 14, 21

*Phillips v. AWH Corp*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................................ 3. 4

*PODS, Inc. v. Porta Stor, Inc.*,
484 F.3d 1358 (Fed. Cir. 2007)................................................................................ 22

*Ruckus Wireless v. Innovative Wireless*,
824 F.3d 999 (Fed. Cir. 2015).................................................................................... 4

*Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*,
887 F.3d 1153 (Fed. Cir. 2018).................................................................................. 3

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
358 F.3d 870 (Fed. Cir. 2004).................................................................................... 3

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012).................................................................................. 6

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)...................................................... 4, 10, 14, 21

*Wi-LAN, Inc. v. Apple Inc.*,
811 F.3d 455 (Fed. Cir. 2016).................................................................................... 4

*WPIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016)................................................................................ 18

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

PLAINTIFFS' OPENING CLAIM
CONSTRUCTION BRIEF

ii

Case No. 3:18-cv-06721 JCS

Plaintiffs Ely Holdings Limited ("Ely") and Greenlite Glass Systems Inc. ("Greenlite"; Ely and Greenlite collectively "Plaintiffs") respectfully submit this Opening Claim Construction Brief in support of their proposed constructions for the disputed claim terms of U.S. Patent No. 7,694,475 ("the '475 patent"; Ex. A).

## I.    INTRODUCTION

Ely and Greenlite brought this suit against Defendant O'Keeffe's, Inc. d/b/a SAFTI FIRST for infringement of the '475 patent, entitled "Fire Rated Glass Flooring" and naming Michael Rae as the sole inventor.  For the reasons set forth in this Opening Claim Construction Brief, Ely and Greenlite respectfully request that the Court construe the disputed claim limitations as proposed by Plaintiffs and, concomitantly, reject Defendant's improperly limiting constructions.

As detailed below, each of Plaintiffs' proposed constructions reflects the plain and ordinary meaning of the corresponding disputed claim term, and are supported by the intrinsic evidence, as well as, where appropriate, by the extrinsic evidence.  Defendant's proposed constructions, on the other hand, all seek to introduce one or more restrictive limitations, likely in the hopes of crafting a non-infringement argument therefrom, but, in doing so, clearly exclude embodiments expressly disclosed and claimed in the '475 patent.  Plaintiffs respectfully submit that the Court should reject Defendant's legally flawed efforts and adopt Plaintiffs' proposed constructions for each disputed term.

## II.    BACKGROUND

The U.S. Patent & Trademark Office lawfully issued the '475 patent on April 13, 2010 to Michael Scott Rae.  *See* Ex. A.  The '475 patent was originally assigned to Roger Wilde Limited, but is now assigned to Plaintiff Ely Holdings Limited.

The '475 patent relates to a fire rated glass flooring system composed of an upper structural glass layer and a lower fire rated glass layer, the two layers being separated by at least one load transferring mechanism ("LTM").

During a fire, the lower fire rated glass layer delays the passage of fire, heat, and smoke from below for a predetermined time, during which it is gradually consumed by the fire and structurally degraded.  *See* Ex. B, Opening Claim Construction Expert Report of Tim Macfarlane

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

("Macfarlane Opening") at ¶ 31.  The LTMs, however, support the structural glass layer above throughout this degradation process and so maintain the stability and integrity of the upper walking surface of the structural glass layer, thereby enabling people to safely evacuate the burning structure.  *See id.* at ¶ 32.  To support the structural glass layer above the fire rated glass layer, the LTMs are positioned on the structural frame near the outer edges/ends of the structural and fire rated glass layers.  *See id.*  Beneficially, this unique placement of the LTMs avoids obstructing the view through both of the glass layers while still enabling transfer of the applied weight through the LTM to the structural frame below.  *See id.* at ¶ 33.

The LTMs also enable the fire rated and structural glass layers to be positioned much closer to one another, at distances less than 50 mm, an arrangement that was not possible with prior art fire rated glass flooring systems. *See id*. at ¶¶ 33-35.  Not only does this configuration provide a more aesthetically pleasing appearance, but it also allows the two layers to be bonded or connected to one another.  *See id.* at ¶¶ 39-40.

Thus, as shown below in Configuration #2, in certain embodiments, the two layers of glass can be joined or connected to one another by a bead of structural silicone to create a sealed airspace (much like a double glazed window) – an arrangement that is particularly suitable for applications where one side of the flooring faces the environment and the other faces the interior of a structure (such as a walkable skylight).  *See id.* at ¶ 46.  In other embodiments, the space between the structural glass layer and the fire-rated glass layer can be filled as shown in Configuration #3, such as with additional intumescent material, or even another layer of glass as shown in Configuration #4 (which depicts another layer of structural glass; alternatively, this additional layer could also be decorative glass or even another layer or layers of the glass used in the fire-rated glass).  *See id.* at ¶ 47.



DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

## III.    CLAIM CONSTRUCTION PRINCIPLES AND APPLICABLE LAW

A proper construction of claim terms focuses first on the words of the claims themselves. *See Phillips v. AWH Corp*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Continental Circuits v. Intel Corp.*, 915 F.3d 788, 769 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d 1312-13).

The ordinary and customary meaning controls unless a patentee sets out a definition and acts as his own lexicographer or the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*, 887 F.3d 1153, 1157 (Fed. Cir. 2018) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis." *See*, *e.g.*, *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008).

When construing claim terms, "it is important not to import into a claim limitations that are not a part of the claim." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *see Abbott Labs. v. Sandoz Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[C]ourts must take care not to import limitations into the claims from the specification."); *Douglas Dynamics, LLC v.*

*Buyers Products Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) (adopted construction "must not import limitations from the specification into the claims."). To disavow claim scope, "the specification must contain 'expressions of manifest exclusion or restriction, representing a clear dis-avowal of claim scope.'" *Continental Circuits*, 915 F.3d at 797 (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011)).

"The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Phillips*, 415 F.3d at 1313. "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (citation omitted). These sources may include the actual words of the claim, the remainder of the specification, the prosecution history, and extrinsic evidence concerning the meaning of technical terms. *Ruckus Wireless v. Innovative Wireless*, 824 F.3d 999, 1002-03 (Fed. Cir. 2015).

When claim terms are construed, the intrinsic evidence (and, even more particularly, the claim language) is the primary resource. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). Intrinsic evidence is the evidence in the public record of the patent, and includes the claims, the patent specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

A court may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips,* 415 F.3d at (citation omitted). Expert testimony, for example, may be useful to "provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nevertheless, although courts can consider extrinsic evidence in claim construction, "such evidence is generally of less significance than the intrinsic record." *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) (citation omitted).

## IV.    ARGUMENT

Plaintiffs do not believe that any of the claim terms should actually require construction by the Court, since each is only being used in accordance with its plain and ordinary meaning to a person of ordinary skill in the relevant art (a "POSA"). Nevertheless, because the parties have a disagreement over the scope of each of these terms, they are being presented to the Court for construction in these *Markman* proceedings. *See O2 Micro Int'l v. Beyond Innovation Technology Co. Ltd.*, 521 F.3d 1351, 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

### A.    The Two Layers Of Glass Are Separated By One Or More Of The Load Transferring Means

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *the two layers of glass are separated by one or more of the load transferring means* | There are one or more mechanisms having a horizontal portion/upper horizontal section and a vertical portion/connecting vertical section, where the horizontal portion/upper horizontal section is between the structural glass and the fire-rated glass and bears at least some of the weight applied to the structural glass and the vertical section passes that weight to a beam or cross member instead of to the fire-rated glass. | the two layers are detached and exist by themselves without touching each other with one or more of the load transferring means lying between the two separated layers, transferring the entire load from the structural glass to a beam or cross member |

As shown in the table above, Plaintiffs propose that this term be construed by the Court to mean "there are one or more mechanisms having a horizontal portion/upper horizontal section and a vertical portion/connecting vertical section, where the horizontal portion/upper horizontal section is between the structural glass and the fire-rated glass and bears at least some of the weight applied to the structural glass and the vertical section passes that weight to a beam or cross member instead of to the fire-rated glass." Plaintiffs' proposed construction is fully supported by the language of the claims themselves, as well as the remaining intrinsic evidence, *viz.* the specification and

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 58-81. Plaintiffs' proposed construction is also the meaning that would be attributed to this term by a POSA. *See id.* at ¶ 82.

Defendant, however, seeks to unduly, and improperly, limit the scope of this term by prohibiting the structural glass layer and the fire rated glass layer from ever being connected or attached in any way. Not only is there nothing in any of the intrinsic evidence to warrant such a requirement, but Defendant's proposed construction would also exclude certain preferred embodiments of the present invention from the scope of the claims.

More specifically, as depicted in FIG. 5 of the '475 patent, in at least one embodiment of the present invention, there is another layer between the bottom surface of the structural glass and the upper surface of the fire-rated glass.[1] *See* Ex. B, Macfarlane Opening at ¶¶ 47, 65. This layer could be another layer of intumescent material, such as depicted in Configuration #3 above, or another layer of glass, such as the structural glass depicted in Configuration #4 or decorative glass or even an additional layer or layers of the glass used in the fire-rated glass. *See, e.g., id.*; Ex. C, Reply Expert Claim Construction Report of Tim Macfarlane ("Macfarlane Reply") at ¶¶ 19, 25, 33.

What Defendant fails to appreciate, or is intentionally trying to obfuscate, is that the key to the presently claimed invention is the top of the horizontal portion/upper horizontal section of the LTM being in contact (either directly or through a silicone pad) with the bottom face of the structural glass layer that forms the walkable surface. Because of this contact, the LTMs can support the structural glass, and therefore the walkable surface, as the fire-rated glass layer below degrades in a fire – this is why the two layers are "separated" by the LTMs. *See* Ex. C, Macfarlane

---

[1]   In his Claim Construction Expert Rebuttal Report, Defendant's expert identifies the intermediate layer in FIG. 5 as "an unnumbered separation" between the glass layers, where "separation" is used to refer to an "open space" or similar void. Defendant's expert, however, is apparently unaware of the requirements for patent drawings set forth in 37 C.F.R. § 1.84, which states that hatching, such as that appearing in FIG. 5 of the '475 patent, is used to depict solid material and not an open space.

Moreover, although Defendant's expert concedes that "[a] POSA should have at least some familiarity with structural glass and glazing applications involving structural glass, as well as the engineering and/or design thereof," he himself does not appear to have any experience with structural glass or glazing applications involving structural glass, or with the engineering and/or design thereof.

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

Reply at ¶ 33.  And this does not change even when there is another layer of glass or intumescent material on the same plane as the LTMs (provided, of course, that such an intermediate layer is not so thick as to interfere with the horizontal portion/upper horizontal section of the LTM supporting the bottom face of the structural glass layer that forms the walkable surface).  *See id.*

Defendant's proposed construction also requires that the "entire" load on the structural glass layer be passed through each LTM to the structural frame.  Given that more than one LTM is likely to be present when the inventive system is employed in the real world, each LTM will bear only "at least some" of the load rather than the "entire" load on the structural glass, *i.e.* all of the LTMs would collectively bear the "entire" load with each LTM bearing "at least some" of that load.

Finally, the portions of the prosecution history cited by Defendant's expert do not even support Defendant's proposed construction, much less evidence an intentional disavowal of claim scope.  That is, there is nothing in the prosecution history to suggest that Mr. Rae or his representative ever asserted that the two layers of glass could not come into contact with one another or that they could not be bonded together.  Indeed, such an argument would have directly conflicted with both FIG. 5 and FIG. 6 of the '475 patent.  Rather, as can be seen from the responses filed by Mr. Rae's representative during prosecution, it was the presence of the LTMs that patentably distinguished the claims of the '475 patent from the cited prior art. *See* Ex. C, Macfarlane Reply at ¶ 22; Ex. D, Prosecution History of the '475 patent.

This Court should therefore reject Defendant's proposed construction for this term in favor of the construction proposed by Plaintiffs.  Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history, and, more importantly, does not exclude any of the preferred embodiments of the invention.  Plaintiffs respectfully request that the Court adopt their proposed construction.

**B.** **A Vertical Portion Transferring Load From The First Layer Of Glass Above Directly To The Structural Frame Below, Bypassing The Second Layer Of Glass**

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *a vertical portion transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass* | The vertical portion of the load transferring means receives at least some of the weight applied to the structural glass through the horizontal portion and passes it to a beam or cross member under the load transferring means instead of to the fire-rated glass. | a vertical component of the load transferring means, transferring the entire load from the structural glass layer directly to the structural frame below and avoiding transfer of any load to or from the fire-rated glass |

As shown above, Plaintiffs propose that this term be construed to mean "the vertical portion of the load transferring means receives at least some of the weight applied to the structural glass through the horizontal portion and passes it to a beam or cross member under the load transferring means instead of to the fire-rated glass." This construction is fully supported by the language of the claims themselves, as well as the remaining intrinsic evidence, *viz.* the specification and prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 83-93. It is also the construction that would be attributed to this term by a POSA. *See id*. at ¶ 94.

Defendant, in marked contrast, has proposed a construction that attempts to unnecessarily limit this term. That is, as shown in the table above, Defendant seeks to preclude the vertical portion of the LTM from "transfer[ing] any load . . . from the fire rated glass [to the structural frame]."

While it may be that Defendant hopes to exclude the accused product from the scope of the claims by its proposed construction, it is indisputable that Defendant's proposed construction would also exclude a preferred embodiment of the claimed invention, *viz.* the embodiment that is illustrated in FIG. 6 and expressly covered by dependent claims 21 and 23 of the '475 patent (both of which depend from claim 1, where this disputed term appears), as well as independent claims 34 and 35. *See* Ex. C, Macfarlane Reply at ¶ 19.

More specifically, as described in the specification of the '475 patent,

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

> FIG. 6 shows a variant of the second embodiment of the present invention. The system comprises a mild steel beam **74**, which is 45 mm wide and 6 mm thick. . . . ***A sheet of fire rated glass 78 is attached to and supported from the structural glass 77***. The fire rated glass **78** runs between and parallel to the structural glass **77** and the beam **74**, from a point approximately half way along the beam **74** such that there is a gap between the box **75** and the fire rated glass sheet **78** of 8 mm. A suitable fire rated glass is sgg CONTRAFLAM® EI30 17 mm thick. ***The fire rated glass sheet 78 is attached to the structural glass sheet 77 by means of a glazing bar 80 and structural silicone 81.***

Ex. A, the '475 patent at col. 7, ll. 22-46 (emphasis added). Defendant completely ignores this embodiment.

This particular embodiment is also expressly claimed in claims 21, 23, 34, and 35 of the '475 patent, each of which is reproduced below:

> 21. A fire rated glass flooring system as claimed in claim 13 ***wherein the second layer of glass is suspended from the first layer of glass*** such that there is a small gap between the first and second layers of glass.

> 23. A fire rated glass flooring system as claimed in claim 21 ***wherein the second layer of glass is suspended from the first layer*** of glass by means of a glazing bar and structural silicone.

> 34. A fire rated glass flooring system comprising: a first layer of glass which is a structural glass, a second layer of glass which is a fire rated glass, and one or more load transferring means, . . . ; wherein the first layer which comprises structural glass is positioned above the second layer which comprises fire rated glass, ***the second layer of glass is suspended from the first layer of glass by means of a glazing bar and structural silicone***, leaving a small gap between the first and second layers of glass, and the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm, characterized in that: the two layers of glass are separated by one or more of the load transferring means, and at least one of the load transferring means comprises a horizontal portion supporting the first layer of glass above, and a vertical portion transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass; . . . .

> 35. A fire rated glass flooring system comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass, . . . wherein the first layer which comprises structural glass is positioned above the second layer which comprises fire rated glass, ***the second layer of glass is suspended from the first layer of glass by means of a glazing bar and structural silicone*** such that there is a small gap between the first and second layers of glass, and the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm, characterized in that the two layers of glass are separated by one or more load transferring means, . . . .

Ex. A, the '475 patent, col. 9, ll. 61-64; col. 10, ll. 1-4; col. 11, l. 36 – col. 12, l. 42 (emphasis added).

As would be recognized by a POSA, when the fire rated glass (*the second layer of glass*) is "*suspended from*" the structural glass (*the first layer of glass*), the weight of the fire rated glass (*i.e.* the load <u>from</u> the fire rated glass) is being borne by the structural glass.  *See* Ex. C. Macfarlane Reply at ¶ 26.  That is, when the fire rated glass is hanging from the structural glass, its weight (or load) is being taken or supported by the structural glass above it rather than the structural frame below.  *See id.* And when the weight (or load) from the fire rated glass is being taken by the structural glass, it is necessarily being passed from the structural glass through the LTM to the structural frame.  *See*, *e.g.*, Ex. B, Macfarlane Opening at ¶ 85.

Defendant's proposed construction therefore cannot be correct.  In particular, if, as Defendant proposes, the LTM cannot take any weight or load from the fire rated glass, then claim 1 could not cover the embodiment depicted in FIG. 6 and expressly claimed in, *inter alia*, dependent claims 21 and 23.  Indeed, Defendant may well have recognized this weakness in its proposal, since neither it nor its expert even mention claims 21 and 23 or FIG. 6 when discussing the construction of this term.  Defendant's proposed construction is fatally flawed and so should be rejected.

It has long been the law that the claims of a patent should be construed to include all of the embodiments disclosed in the specification, unless there is a clear disavowal thereof in the prosecution history.  As stated by the Federal Circuit,

> We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . .  At leas[t] where claim can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary.

*Oatey v. IPS*, 514 F.3d 1271, 1276 (Fed. Cir. 2008); *see also GE Lighting Solutions LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014) ("We normally do not construe claims in a manner that would exclude the preferred embodiment . . .."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d. 1576, 1583 (Fed. Cir. 1996) (finding that a claim interpretation that excludes a preferred embodiment is "rarely, if ever, correct").

Defendant's proposed construction plainly violates this axiom.  That is, there is nothing anywhere in the prosecution history of the '475 patent to suggest that the patentee did not intend

to cover the embodiment shown in FIG. 6 – indeed, quite to the contrary, claims 21, 23, 34, and 35 show that the patentee expressly <u>included</u> the embodiment of FIG. 6 within the scope of his claims. *See* Ex. B. Macfarlane Opening at ¶¶ 96-98. Defendant's proposed construction is plainly rebutted by the claims of the '475 patent.

Plaintiffs' proposed construction, however, is fully supported by the language of the claims, as well as the specification and prosecution file history. And, perhaps more importantly, Plaintiffs' proposed construction does not exclude any of the preferred embodiments of the invention, much less embodiments that are expressly recited in one or more of the claims. Plaintiffs therefore respectfully urge the Court to adopt their proposed construction for this disputed term.

**C.    The Second Layer Of Glass Is Suspended From The First Layer Of Glass Such That There Is A Small Gap Between The First And Second Layers Of Glass**

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *the second layer of glass is suspended from the first layer of glass such that there is a small gap between the first and second layers of glass* | The fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass. | The fire rated glass is separated from and rests below the first layer on a structural support, creating a gap of more than 0 mm and less than 50 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass, subject to all of the limitations of claim No. 1 |

Plaintiffs propose that this term be construed to mean "the fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass." This construction is fully supported by the language of the claims themselves, as well as the other intrinsic evidence, *i.e.* the specification and prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 95-100. It is also the construction that would be attributed to this term by a POSA. *See id.* at ¶ 101.

Defendant's proposed construction, on the other hand, suffers from the same fatal flaw as

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

its proposed construction of "*a vertical portion . . . bypassing the second layer of glass*" as discussed in section **B** above. That is, Defendant's proposed construction for this term similarly excludes the preferred embodiment of the invention depicted in FIG. 6 and expressly claimed in claims 21, 23, 34, and 35 of the '475 patent. *See* Ex. C., Macfarlane Reply at ¶¶ 26, 29-30.

More specifically, Defendant's proposed construction requires the fire rated glass (*the second layer of glass*) to "rest[] below the [structural] glass layer on a structural support." As shown in FIG. 6, however, the fire rated glass does not rest on the structural support, but instead hangs from the structural glass above it by being attached to that structural glass by structural silicone and a glazing bar. *See* Ex. B., Macfarlane Opening at ¶ 97; Ex. C, Macfarlane Reply at ¶¶ 26, 29. This same embodiment is also clearly described in the specification of the '475 patent at col. 7, ll. 22-46. *See* Macfarlane Opening at ¶ 98; Ex. C, Macfarlane Reply at ¶ 29. Defendant's proposed construction is therefore not supported by the specification of the patent-in-suit.

Moreover, and perhaps even more importantly, Defendant's proposed construction also ignores the express language of the claim itself, as well as other claims that include the same limitation. That is, as expressly recited in each of claims 21, 23, 34, and 35, "*the second layer of glass is suspended from the first layer of glass . . ..*" As a POSA is aware, the word "suspended" has meanings such as "to hang from" or "supported by attachment from above" or the like. *See* Ex. B, Macfarlane Opening at ¶ 97; Ex. C, Macfarlane Reply at ¶¶ 29-30. Defendant's proposed construction, however, completely ignores this concept and instead requires the second layer of glass to rest on the structural support below it. But it is undeniable that resting on a structural support below is precisely the opposite of hanging from the layer of glass above. Defendant's construction is therefore fundamentally flawed.

Conversely, Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history. Moreover, Plaintiffs' proposed construction does not exclude any of the preferred embodiments of the invention nor any of the specifically claimed embodiments. Plaintiffs therefore respectfully request that the Court adopt their proposed construction for this disputed term.

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

**D.      The Load Transferring Means Transfers Load Applied To The First Layer Of Glass Directly To The Structural Frame, Bypassing The Second Layer Of Glass**

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *the load transferring means transfers load applied to the first layer of glass directly to the structural frame, bypassing the second layer of glass* | The mechanism passes at least some of the weight applied to the structural glass to a fixed beam or cross member under the mechanism instead of to the fire-rated glass | the load transferring means transfers the entire load of the first layer of glass directly to the structural frame avoiding transfer of any load to or from the second layer of glass |

Plaintiffs propose that this term be construed to mean "the mechanism passes at least some of the weight applied to the structural glass to a fixed beam or cross member under the mechanism instead of to the fire-rated glass." This construction is fully supported by the language of the claims themselves, as well as the other intrinsic evidence, *i.e.* the specification and prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 102-110. Plaintiffs' proposed construction is also the meaning that would be attributed to this term by a POSA. *See id.* at ¶ 111.

As with the previous term, however, Defendant's proposed construction again suffers from substantially the same problem as its proposed construction for "*a vertical portion . . . bypassing the second layer of glass*" as discussed in section **B** above. That is, Defendant again seeks to again preclude the LTM from "transfer[ing] any load . . . from the fire rated glass [to the structural frame]." As discussed in section **B** above, however, Defendant's proposed construction would exclude the preferred embodiment of the invention shown in FIG. 6.

To reiterate, when the fire rated glass is suspended or hanging from the structural glass by structural silicone, as shown in FIG. 6, the weight of the fire rated glass (*i.e.* the load <u>from</u> the fire rated glass) is taken by the structural glass and then passed through the LTM to the structural frame. *See*, *e.g.*, Ex. B, Macfarlane Opening at ¶¶ 98, 103, 105. Defendant's proposed construction precludes such an arrangement. In particular, if, as Defendant proposes, the LTM cannot take any load from the fire rated glass, then claim 24 cannot cover the embodiment depicted in FIG. 6.

As noted above, it is well-established that the claims of a patent should be construed to

include all of the embodiments disclosed in the specification, unless there is an unequivocal disavowal of such scope somewhere in the prosecution history. *See Oatey v. IPS*, 514 F.3d 1271, 1276 (Fed. Cir. 2008); *GE Lighting Solutions LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d. 1576, 1583 (Fed. Cir. 1996). Defendant's proposed construction, however, plainly violates this principle.

This Court should therefore reject Defendant's proposed construction for this term in favor of the construction proposed by Plaintiffs. Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history, and, more importantly, does not exclude any of the preferred embodiments of the invention. Plaintiffs respectfully request that the Court adopt their proposed construction for this term.

### E.   Comprising A First Layer Of Glass Which Is A Structural Glass And A Second Layer Of Glass Which Is A Fire Rated Glass

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass* | Composed of (i) a multi-laminated glass sheet made up of two or more layers of glass capable of bearing at least some of the weight of an applied load, and (ii) a multi-layered glass sheet made up of two or more layers of glass that has a transparent intumescent material interspaced between at least two of the glass layers | Composed of (i) a single or multi-laminated glass made up of two or more layers of glass designed to bear, and capable of bearing, the weight of a specified minimum load, and (ii) a multi-layered glass made up of at least two end layers of glass enclosing and sandwiching transparent intumescent material between each glass layer, which has been rated as fire resistant by a national recognized rating entity |

Plaintiffs propose that this term be construed to mean "composed of (i) a multi-laminated glass sheet made up of two or more layers of glass capable of bearing at least some of the weight of an applied load, and (ii) a multi-layered glass sheet made up of two or more layers of glass that has a transparent intumescent material interspaced between at least two of the glass layers." This construction is fully supported by the language of the claims themselves, as well as the other intrinsic evidence, *viz.* the specification and prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 112-127. Plaintiffs' proposed construction is also the construction that would be ascribed by a POSA to this term. *See id.* at ¶ 128.

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

Defendant, however, seeks to introduce a number of restrictive limitations into this term, including the requirement that the fire rated glass must have intumescent material enclosed between <u>each</u> glass layer and the requirement that the intumescent material be rated as fire resistant by a national recognized rating entity.  Neither of these restrictions is supported, much less mandated, by any of the intrinsic evidence of record, nor any of the extrinsic evidence.

With respect to the former, there is nothing in the language of the claims or the specification or the prosecution history to require an intumescent material between <u>each and every</u> layer or sheet of glass in the fire rated glass layer.  Rather, as would be recognized by a POSA, fire rated glass does not require a transparent intumescent material between each and every sheet of glass, but rather, only between at least two of the sheets of glass.  *See* Ex. B. Macfarlane Opening at ¶ 121; Ex. C. Macfarlane Reply at ¶ 32.

The extrinsic evidence of record supports this understanding.  As would be known by a POSA, there are a number of commercially available fire-rated glass products which do not have an intumescent material interspaced between every layer or sheet of glass.  *See* Ex. A, Macfarlane Opening at ¶¶ 125-127.  CONTRAFLAM® LITE 30 fire rated glass, for example, is made of a single sheet of glass, an intumescent material, and two sheets of glass laminated together. *See id.* at ¶ 127.  Another example is made of two pairs of glass sheets laminated together and having an intumescent material between the laminated pairs, such that intumescent material is found only between two of the four layers of glass present.  Some of the various commercially-available configurations of CONTRAFLAM® LITE are shown below:

  

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

Defendant's proposed construction is therefore contradicted by both the intrinsic evidence and the extrinsic evidence in this case. That is, there is no reason or justification to require an intumescent material be present between each and every sheet or layer of glass in the fire rated glass layer, only that there be intumescent material between at least two of the layers of glass.

Defendant also seeks to introduce the requirement that the intumescent material in the fire rated glass layer be "rated as fire resistant by a national recognized rating entity." Notwithstanding Defendant's failure to identify even an exemplary "national recognized rating entity," there is no support anywhere in the intrinsic or extrinsic evidence of record to introduce such a limitation into the claims of the '475 patent.

Plaintiffs therefore submit that the Court should reject Defendant's proposed construction for this term. There is nothing in the intrinsic or extrinsic evidence to suggest that fire rated glass must have intumescent material between each layer of glass, only that there be intumescent material between at least two of the layers of glass. Similarly, there is nothing in the intrinsic or extrinsic evidence to require that the intumescent material in the fire rated glass be "rated as fire resistant by a national recognized rating entity" (whatever that may be).

Plaintiffs' proposed construction, on the other hand, is fully supported by the language of the claims, as well as the specification and prosecution file history. Plaintiffs therefore respectfully request that the Court adopt their proposed construction for this term.

### F.   The Distance From The Upper Surface Of The Second Layer Of Glass To The Lower Surface Of The First Layer Of Glass Is Less Than 50 mm

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm* | The space between the uppermost surface of the fire-rated glass and the lowermost surface of the structural glass is less than 50 mm. | The separation between the uppermost surface of the fire-rated glass and the lowermost surface of the structural glass is more than 0 mm and less than 50 mm |

Plaintiffs propose that this term be construed to mean "the space between the uppermost surface of the fire-rated glass and the lowermost surface of the structural glass is less than 50 mm." This construction is fully supported by the language of the claims themselves, as well as the other

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

intrinsic evidence, *i.e.* the specification and prosecution history of the '475 patent.  *See* Ex. B, Macfarlane Opening at ¶¶ 129-131.  This is also the construction that would be given to this term by a POSA.  *See id.* at ¶ 132.

Defendant, however, attempts to introduce a <u>minimum</u> value into this term, despite the complete absence of any such limitation in the claim language itself.  There is nothing in any of the intrinsic evidence to support such a restriction on the scope of the claims of the '475 patent and, much like Defendant's other proposed construction, Defendant's proposal here would exclude at least one preferred embodiment disclosed in the specification and shown in FIG. 5.

This attempt is part and parcel of Defendant's overall effort to get this Court to ignore FIG. 5 from the '475 patent and add a limitation to all of the claims that the structural glass layer and fire rated glass layer cannot be bonded together or attached or in contact in any way.  Such a limitation is not, however, supported by any of the claims, the specification, or the prosecution history.  Rather, this is little more than another attempt by Defendant to try to manufacture a non-infringement position in order to escape this suit and avoid the consequences of its actions.

Finally, it should be noted that Defendant's own expert does not support the construction proposed by Defendant for this term.  That is, rather than addressing the distance from the bottom surface of the structural glass to the upper surface of the fire rated glass, as recited in the claim, Defendant's expert contends that this term should be construed to mean "the separation <u>between the uppermost surface and the lowermost surface of the structural glass</u> is a finite distance and less than 50 mm."  *See* Ex. E., Opening Claim Construction Expert Report of Glen Stevick at ¶ 36 (emphasis added).

As a POSA would know, however, the separation or distance between the uppermost surface and the lowermost surface of the structural glass is, in fact, just another way of describing the thickness of the structural glass.  See Ex. C, Macfarlane Reply at ¶ 34.  That is, the distance from the uppermost surface of a piece of glass to the lowermost surface of the same piece of glass is the thickness of that piece of glass.  *See id.*  Defendant's expert offers no comment or opinion regarding the distance between the two layers of glass.

This Court should therefore reject Defendant's proposed construction and adopt the construction proposed by Plaintiffs. Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history, and, more importantly, does not exclude any of the preferred embodiments of the invention. Plaintiffs respectfully request that the Court adopt their proposed construction for this term.

**G.    The First Layer Of Glass Being Supported By The Or Each Load Transferring Means And The Second Layer Of Glass Being Supported By The Structural Frame**

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| *the first layer of glass being supported by the or each load transferring means and the second layer of glass being supported by the structural frame* | The load transferring means bears the weight of the structural glass and the fixed beams and cross members bear the weight of the fire-rated glass | The first layer of glass is supported by the or each load transferring means and the second layer of glass is separately supported by the structural frame |

Plaintiffs propose that this term be constructed to mean "the load transferring means bears the weight of the structural glass and the fixed beams and cross members bear the weight of the fire-rated glass." This construction is fully supported by the language of the claims themselves, as well as the other intrinsic evidence, *i.e.* the specification and prosecution history. *See* Ex. B, Macfarlane Opening at ¶¶ 133-141. It is also the construction that would be attributed to this term by a POSA. *See id.* at ¶ 142.

Defendant's proposed construction here is the quintessential example of its strategy of trying to introduce a restrictive limitation into the claims of the '475 patent, likely in the hopes of later using it to try to argue some non-infringement position (although Defendant would do well to remember that a "litigation-inspired defense to infringement is no [] defense to willful infringement." *WPIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1841 (Fed. Cir. 2016)). In particular, other than replacing *being* with the equivalent "is," Defendant's proposed construction does nothing more than insert the restrictive limitation "separately" into the language of this term. There is no support for such a restriction in any of the intrinsic evidence and, as with many of Defendant's

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnvale, CA 94086

proposed constructions, Defendant's construction of this term excludes at least one preferred embodiment disclosed in the '475 patent.

As discussed above with respect to the *load transferring means* term, Defendant is trying to limit the claims of the '475 patent to require that the structural glass and fire rated glass layers never come into contact with one another and cannot even be bonded or attached in any way. Such a restriction, however, is not supported by the language of the claims, or the specification, or the prosecution history of the '475 patent.

Rather, as depicted in both FIG. 5 and FIG. 6, in certain embodiments of the claimed invention, the structural glass layer and the fire rated glass layer can be bonded together by a filler layer (FIG. 5) or attached by structural silicone (FIG. 6). *See*, *e.g.*, Ex. B, Macfarlane Opening at ¶¶ 47, 65. Ex. C, Macfarlane Reply at ¶¶ 19, 25, 33, 35. Moreover, as shown in FIG. 5, in at least one such embodiment the structural glass layer **62/ 63** is supported by the horizontal portion of the load transferring means **72** and the fire rated glass layer **66/67** is supported by structural frame **61**. *See* Ex. B, Macfarlane Opening at ¶ 140. Defendant's insistence that the two layers of glass never come into contact, even through an intermediate layer, is utterly refuted by the specification of the '475 patent.

This Court should therefore reject Defendant's attempt to improperly limit the claims of the '475 patent in such a way as to exclude certain preferred embodiments of the invention. Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history, and, more importantly, does not exclude any of the preferred embodiments of the invention. Plaintiffs respectfully request that the Court adopt their proposed construction for this disputed term.

PLAINTIFFS' OPENING CLAIM
CONSTRUCTION BRIEF

Case No. 3:18-cv-06721 JCS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

### H.   Load Transferring Means Comprises A First Portion For Bearing The Load Applied To The First Layer Of Glass And A Second Portion For Transmitting The Load Applied To The First Layer Of Glass To The Structural Frame

| Claim Term | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| *load transferring means comprises a first portion for bearing the load applied to the first layer of glass and a second portion for transmitting the load applied to the first layer of glass to the structural frame* | A mechanism that enables at least some of the weight applied to the structural glass to be passed to a fixed beam or cross member instead of to the fire-rated glass and includes a first portion that bears the weight of a load applied to the structural glass connected to a second portion that passes that weight to a fixed beam or cross member instead of to the fire- rated glass. | the load transferring means comprises a first portion bearing the entire load of the first layer of glass and a second portion transmitting the entire load of the first layer of glass directly to the structural frame below, each avoiding transfer of any load to or from the fire-rated glass |

Plaintiffs propose that this term be construed to mean "a mechanism that enables at least some of the weight applied to the structural glass to be passed to a fixed beam or cross member instead of to the fire-rated glass and includes a first portion that bears the weight of a load applied to the structural glass connected to a second portion that passes that weight to a fixed beam or cross member instead of to the fire- rated glass."   This construction is fully supported by the language of the claims themselves, as well as the other intrinsic evidence, *i.e.* the specification and prosecution history.   *See* Ex. B, Macfarlane Opening at ¶¶ 142-148.   Plaintiffs' proposed construction is also the meaning that would be attributed to this term by a POSA.  *See id.* at ¶ 149.

As with a number of other terms, however, Defendant's proposed construction here suffers from substantially the same flaw as Defendant's proposed construction for "*a vertical portion . . . bypassing the second layer of glass*" as discussed in section **B** above.  Specifically, Defendant is again trying to preclude the LTM from "transfer[ing] . . . any load . . . from the fire rated glass [to the structural frame]."   As discussed in sections **B** and **D** above, however, Defendant's proposed construction for this term would exclude the preferred embodiment of the invention shown in FIG. 6 and the embodiments claimed in claims 21, 23, 34, and 35.

More particularly, as discussed above, when the fire rated glass is suspended or hanging from the structural glass, the load from the fire rated glass is borne by the structural glass and then passed through the horizontal portion of the LTM to the vertical portion of the LTM and then to the structural frame.  *See, e.g.*, Ex. B, Macfarlane Opening at ¶¶ 98, 103, 105; Ex. C, Macfarlane Reply at ¶ 36.  And this preferred embodiment of the present invention is illustrated in FIG. 6 and expressly claimed in claims 21, 23, 34, and 35 of the '475 patent.

Defendant's proposed construction, however, excludes this embodiment because it prohibits the LTM from taking any load from the fire rated glass.  Defendant's proposed construction therefore cannot be correct.  As noted above, it is well-established that the claims of a patent should be construed to include all of the embodiments disclosed in the specification, unless there is an unequivocal disavowal of such scope somewhere in the prosecution history.  *See Oatey v. IPS*, 514 F.3d 1271, 1276 (Fed. Cir. 2008); *GE Lighting Solutions LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history, and, more importantly, does not exclude any of the preferred embodiments of the invention.  Plaintiffs therefore respectfully request that the Court adopt their proposed construction for this term.

## I.        "Glazing Bar"

| Claim Term | Plaintiffs' Construction | Defendant's  Construction |
|---|---|---|
| *glazing bar* | metal bar | member taking the applied load on the structural glass |

Plaintiffs propose that this term be construed to mean a "metal bar."  Plaintiffs' proposed construction is fully supported by the language of the claims, the specification, and the prosecution history of the '475 patent.  *See* Ex. B, Macfarlane Opening Report at ¶¶ 150-157.  It is also the meaning that a POSA would ascribe to this term.  *See id.* at ¶ 158.

Defendant's proposed construction, however, like so many of its other proposals here,

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

suffers from being too narrow, in that it seeks to limit the term "*glazing bar*" in such a way as to exclude the embodiments of the present invention that are expressly claimed in claims 23, 34, and 35 of the '475 patent.  It is well-established that the same term used in different claims is to be given the same meaning absent compelling evidence to the contrary.  *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1358, 1366 (Fed. Cir. 2007) ("We apply a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'" (citations omitted)).  Here, however, Defendant's proposed construction for the "*glazing bar*" term is inconsistent with, and, indeed, would actually exclude the embodiment expressly recited in claims 23, 34, and 35 of the '475 patent.

More specifically, in certain embodiments of the claimed invention, a *glazing bar* can serve as a member taking the load that is applied to the structural glass layer, such as when it is employed as the horizontal portion of the load transferring means as claimed in claim 11.  *See* Ex. C, Macfarlane Reply at ¶ 41.  This particular embodiment is depicted in FIG. 3 (where the *glazing bar* is labeled as **30**).  *See id.*

In other embodiments of the claimed invention, however, which also include a "*glazing bar*" as an element, the "*glazing bar*" does not take the load that is applied to the structural glass layer.  *See* Ex. C, Macfarlane Reply at ¶ 41.  Rather, as recited in claims 23, 34, and 35 of the '475 patent, a second preferred embodiment of the present invention has the fire-rated glass layer suspended or hanging from the structural glass layer above.  *See*, *e.g.*, Ex. B, Macfarlane Opening at ¶¶ 98, 103, 105.  This other embodiment is shown in FIG. 6 (where the "*glazing bar*" is labeled as **80**) and described in the specification of the '475 patent at col. 7, ll. 22-47.

Unlike the first embodiment, in this second embodiment, the "*glazing bar*" does <u>not</u> bear the weight or load applied to the structural glass layer.  *See* Ex. C, Macfarlane Reply at ¶ 41.  Instead, the "*glazing bar*" in the second embodiment serves more like a spacer to maintain a uniform distance or space between the fire-rated glass layer and the structural glass layer from which it hangs.  *See id.*

Since Defendant's proposed construction requires the "*glazing bar*" to bear load,

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

Defendant's proposed construction does not cover or encompass the "*glazing bar*" recited in claims 23, 34, and 35.  Indeed, it appears to exclude them altogether.  Defendant's proposed construction therefore cannot be correct.  There is no evidence in the specification or prosecution history that the term "*glazing bar*" was intended to have one meaning in claim 11 and another, altogether different meaning in claims 23, 34, and 35.  Moreover, given that claims 11 and 23 both depend from the same claim (claim 1), such a conclusion would be nonsensical.

Thus, much the same as Defendant's other proposed constructions above, Defendant's proposed construction for "*glazing bar*" excludes embodiments that are expressly claimed in the '475 patent, as well as at least one preferred embodiment illustrated in the drawings and disclosed in the specification.  Defendant's proposed construction must be rejected.

Conversely, Plaintiffs' proposed construction is fully supported by the language of the claims, as well as the specification and prosecution file history.  Moreover, Plaintiffs' proposed construction does not exclude any of the preferred embodiments of the invention or any of the specifically claimed embodiments.  Plaintiffs therefore respectfully request that the Court adopt their proposed construction for this disputed term.

## V.   CONCLUSION

To the extent that the Court determines that one or more of the disputed claim terms requires construction, for at least the reasons provided above, Plaintiffs Ely Holdings Limited and Greenlite Glass Systems Inc. respectfully request that this Court adopt their proposed construction(s) and reject Defendant's litigation-driven creations.

Dated: October 18, 2019

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:  */s/ Donald R. McPhail*
         Donald R. McPhail

***Attorneys for Plaintiffs***
***Ely Holdings Limited and***
***Greenlite Glass Systems Inc.***

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086