Mark I. Schickman  (CSB #62653)
Cathleen S. Yonahara  (CSB #203802)
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone:  (415) 541-0200
Facsimile:  (415) 495-4332
Email: schickman@freelandlaw.com
          yonahara@freelandlaw.com

THEODORE J, BIELEN, JR.(CSB #56395)
BIELEN & LAMPE
1390 Willow Pass Road, Ste 1020
Concord, CA 94520
Telephone: (925) 288-9720
Facsimilia:  (925) 288-9731
Email: bielenlt@yahoo.com

*Attorneys for Defendant and Counter-Claimant
O'Keeffe's, Inc., d/b/a SaftiFirst*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>          Plaintiffs,<br><br>     v.<br><br>O'KEEFFE'S,  INC.,  d/b/a  SAFTIFIRST,  a California corporation,<br><br>          Defendant.<br>_____<br><br>AND RELATED CROSS-ACTION. | **CASE NO.  18-CV-06721-JCS**<br><br>**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF** |

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................................ 1

THE TWO LAYER SEPARATED FLOOR DESCRIBED IN THE '475 PATENT ................................ 1

THE FILE HISTORY EXCLUDES A LAMINATED FIRE FLOOR FROM THE PATENT ..........**3**

CLAIM TERM A ............................................................................................................ 5

    The Common Definition of "Separated".......................................................6

    The Specifications and Drawings Require a Separation...............................6

    The Fire Test Data Shows a Separation .......................................................9

    . Opinion of Defendant's Expert Dr. Glen Stevick ....................................10

CLAIM TERM B ........................................................................................................... 10

    File History.................................................................................................14

CLAIM TERM C ........................................................................................................... 15

CLAIM TERM D ........................................................................................................... 17

CLAIM TERM E ........................................................................................................... 18

CLAIM TERM F ........................................................................................................... 20

CLAIM TERM G ........................................................................................................... 21

CLAIM TERM H ........................................................................................................... 22

CLAIM TERM I ........................................................................................................... 23

CONCLUSION..............................................................................................................23

FREELAND COOPER & FOREMAN LLP

150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**    **i**
{00314867}

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen v. Hospira*,
    232 F.Supp.3d 621 (DCDE 2017) ............................................................. 16

*Enzo Biochem Inc. v. Applera Corp.*,
    780 F.3d 1149 (Fed Cir. 2015) ................................................................ 16

*Fenner Investments, Ltd. v. Cellco Partnership*,
    778 F.3d 1320 (Fed.Cir. 2015) ................................................................ 16

*Indacon, Inc. v. Facebook, Inc.*,
    824 F.3d 1352 1358 (Fed.Cir. 2016) ........................................................ 16

*Pfizer. v. Ranbaxy Labs Ltd.*,
    457 F.3d 1284 (Fed. Cir. 2006) ............................................................... 16

*Vederi, LLC v. Google, Inc.*
    *744 F. 3d 1376,1385, cert denied  (D.C. Cir 2014)* ................................. *5*

*Zircon v. Stanley Black & Decker*,
    452 F. App'x 966 (Fed. Cir. 2011) .......................................................... 17

**Statutes**

35 U.S.C. §112(d) ............................................................................................ 16, 17

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**                                              ii
{00314867}

**LIST OF DEFENDANT'S EXHIBITS**

Exhibit 1:      Dictionary Definition of Word "Separate", Merriam Webster's Collegiate Dictionary 11th Edition, Pg. 1134 (2003)

Exhibit 2       Article Entitled "The Design and Installation of Glass Flooring and Fire Rated Glass"

Exhibit 3       Underwriters Laboratory (UL)Engineering Evaluation to Determine Fire Rating of LITEFLAM GLASS FLOOR SYSTEMS (Filed Under seal)

Exhibit 4       Claim Construction Expert Rebuttal of Glen Stevick

Exhibit 5       Dictionary Definition of Word "Bypass", Merriam Webster's Collegiate Dictionary 11th Edition, Pg. 170 (2003)

Exhibit 6       Brochure Entitled "CONTRAFLAM® 90-4 of VETROTECH

Exhibit 7       Dictionary Definition of Word "Distance", Merriam Webster's Collegiate Dictionary 11th Edition, Pg. 363 (2003)

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**                                                                              iii
{00314867}

## INTRODUCTION

Plaintiffs Ely Holdings Limited and Greenlite Glass Systems Inc.'s patent (the "'475 Patent") (Docket ("DKT.") 84-4 ) describes a two layer system,  a structural floor above a fire rated floor, separated from and  parallel to each other, with a gap or distance in between them.  Between those layers, a load transferring means ("LTM") transfers the load of the structural floor to the frame, bypassing the fire layer, which is independently supported by the structural frame.

SAFTI's fire floor is quite different. Rather than having two separate and separately supported layers, SAFTI manufactures a bonded, laminated, floor installed as a single unit.  The load of the fire floor is carried by the structural floor, which then is supported by the structural frame.   The prosecution history recognizes a laminate of that type as prior art, and the Examiner required the '475 patent to add the concept of a load "bypass" exclude it -I a requirement Plaintiffs now ignore.

Rather, in order to claim SAFTI's very different product under its patent, plaintiffs broaden their claims to cover applications in which the two glass floor layers **are not separated**, and to cover situations where the structural load **does not bypass** the fire rated glass layer. Plaintiffs then present an inaccurate and vague construction of the term "**fire rated glass**" to include applications in which a load transferring means is not placed between the fire rated glass and the structural glass.

Plaintiffs' assertions ignore the key terms of the patent, and do violence to the English language. Plaintiffs argue that the two "separated" layers can be bonded to and have no distance between each other, or be filled with glass or other material. They wrongly maintain that the load of the structural glass can bypass a fire rated layer bonded to it.  Contrary to the specification language and every patent drawing and fire test, they deny that fire rated glass needs glass on both surfaces.

Finally, Plaintiffs ignore the patent prosecution history, in which (to overturn the repeated rejection of their patent) they urged and admitted that two laminated, bonded layers cannot create a bypass under the '475 patent; Plaintiffs may not disclaim that admission and amendment.

## THE TWO LAYER SEPARATED FLOOR DESCRIBED IN THE '475 PATENT.

The terms of independent claim 1 of the '475 Patent describes: a flooring system comprised of a first layer of structural glass and a second layer of fire rated glass; the first layer of glass positioned above the second layer of glass; with one or more load transferring means between the two layers; a

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

structural frame and one or more load transferring means; characterized in that the two layers of glass are separated by one or more of the load transferring means with a horizontal portion supporting the first layer of glass above and a vertical portion transferring load from the first layer of glass directly above to the structural frame below, bypassing the second layer of glass.

Thus, definitive to the patented product described in independent Claim 1, the structural glass layer and the fire glass layers are **separated** such that the structural layer is supported by a load transferring means which transfers the structural layer load directly to a structural frame, and the lower fire rated layer is bypassed and separately supported by the structural frame.

On the other hand, plaintiffs constructions improperly allow applications in which:

1. The structural and fire rated layers are not separated, because Plaintiffs ignore the term "separated" in their construction;

2. Only some of the load of the structural layer is transferred by the load transferring device, while part transfers to the fire glass layer;

3. The structural floor load does not bypass the fire rated glass, and

4. the LTM is not between the structural glass and the fire glass.

Similarly, by its terms independent claim 24 of the patent describes: A fire rated glass flooring system comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass; together with a structural frame supporting the flooring system; wherein the two layers of glass are positioned one above the other; characterized in that the two layers of glass are separated by one or more LTMs; the load transferred by the LTM bypasses the second layer of glass; the LTM together with the structural frame form a C shape having an upper horizontal section, a lower horizontal section and a connecting vertical section; with the first layer of glass being supported by the or each LTM and the second layer of glass being supported by the structural frame. Essentially, Plaintiffs seek to improperly expand claim 24 by again ignoring the critical terms of independent claim 1, namely "separated" and "bypassing" and the requirement that the fire rated glass layer be supported by the structural frame, while the structural glass layer is supported by a LTM.

The invention sought to be protected by the '475 patent is for a floor with two **separate** glass layers. Here, Plaintiffs expand the patent to claim that SAFTI's prior art, integrated bonded unit falls

within the definition of two separated floor layers, illogically suggesting that the patented separated floor layers can be separated by 0 mm, or separated by another layer of glass or other material

In the invention sought to be protected by the 475 patent,  the load applied to the structural floor is transferred by a LTM to the frame, **bypassing** the fire rated layer which is separately supported by the structural frame; Plaintiffs claim that O'Keefe's bonded glass floor, in which  the fire rated floor is attached to, supported by and bears some of the load of the structural floor   can bypass or be isolated from one another -- now suggesting that not all of the load needs to be transferred.

In the invention sought to be protected by the 475 patent, a LTM is described **between** the structural glass alyer and the fire rated layer; here they claim that its patent covers a LTM **within** the O'Keeffe fire layer -- now suggesting that the fire glass layer does not need glass on both sides encapsulating the fire resistant intumescent material.  None of Plaintiffs constructions are reasonable.

### The File History Excludes From the Patent A Laminated Fire Floor

Plaintiffs' predecessor, inventor Michael Scott Rae, filed his patent application 10/471,203 in the United States Patent and Trademark Office (hereinafter "USPTO") on March 11, 2002, based on PCT application PCT/GB02/0013 (DKT. 85:23, 365-403).   On February 24, 2004 Rae and his attorney, Peter McDemott,  filed a preliminary amendment amending and added claims (DKT. 85:23, 352-361).  At that time, there was no mention of a **"bypass"** anywhere in the patent claims.

Over the next two years, plaintiffs' patent application was repeatedly rejected.  An office action from USPTO Examiner Yvonne M. Horton issued on May 5, 2007 rejected claims 1-8, objected to claims 9-33 and allowed claims 34-37 ( DKT. 85:23, 210-218). Rae's attorney filed a response to that action on September 4, 2007 arguing patentability (DKT. 85:23, 199-204)

New Examiner Jeanette E. Chapman issued another office action of November 14, 2007 **again** rejecting claims 1-25 and 34-36 ( DKT. 85:23, 190-198) , partially based on a prior art reference to the Roberts patent (DKT. 85-6) and the O'Keeffe patent (Dkt.85-5 ), which disclosed a fire glass and a laminated floor, which the Examiner found anticipated and made obvious the '475 patent claims.

Rae  responded to that office action on February 14, 2008  ( DKT. 85:23, 181-187) and argued against the Roberts patent by stating (at 186):"Roberts fails to disclose, suggest, or teach that the panes of glass <u>are separated by</u> a load transferring system".  Rather, "Roberts teaches securing the

FREELAND COOPER & FOREMAN LLP

150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**                                                                    **3**
{00314867}

laminate to a support frame by connection to only one of the laminate layers." Thus, Rae distinguished between the separated glass layers of his own application and the laminate of Roberts.

Another office action was issued by the USPTO on May 29, 2008, again rejecting claims 1-26 and 3-36 as obvious from the Roberts and O'Keeffe patents ( DKT. 85:23, 168-176). Rae filed an unsuccessful response to that action on July 29, 2008 (DKT. 85:23, 157-165).

A "final" office action issued on October 17, 2008 again rejecting claims 1-25 and 34-36 (DKT. 85:23, 119-129). Rae's attorney filed a response on January 20, 2009 (DKT. 85:23, 96-115), now seeking to obviate the Roberts and O'Keeffe's references by *amending Claims 1 and 26* to add that the load transferring means between the two separated layers of glass " transfers load applied to the first layer of glass directly to the structural frame, *bypassing the second layer of glass*" (at 97). He explained that the new term "bypass" clarifies that: "The present invention bypasses the fire rated pane when transmitting load from the structural pane to the structural frame; Roberts doesn't (at 105).... [In Roberts] a *load on the upper or outer pane 41 necessarily passes through the lower or inner pane 42* in view of the ridge connection between them. Thus, the inner (laminated) pane 42 of Roberts is also load bearing (at 107)."

**In contrast**, in flooring systems of the present claims *loads on the structural layer of the flooring system bypass the fire rated glass*. That is, in the claimed flooring system a load on the structural glass is passed via the load transferring means to the structural frame, bypassing the fire rated glass. For this reason alone, the flooring systems defined by the present claims are patentably distinguished from Roberts."(at 107). Thus, the word "bypass" was expressly introduced to eliminate coverage of a laminated structure because in a laminated structure "a *load on the upper or outer pane necessarily passes through the lower or inner pane"*, and cannot be bypassed.

The USPTO issued a FINAL ACTION on April 29, 2009, again rejecting all of the claims in Rae's application based upon the Roberts and O'Keeffe patents (Dkt 85-23, 84-93). The Examiner found that "O'keefe discloses the laminated second layer of fire rated glass", that "It would have been obvious to substitute the laminated fire-rated glass of O'keefe for the laminated structural layer of Roberts" (at 86) and "it would have been obvious to modify Roberts laminate structure to include the fire rated glass." (at 88) .

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Following that final rejection, on August 7, 2009 and August 24, 2009 Rae's attorney conferred with Examiner Chapman regarding the claim amendments required 'in condition for allowance" of the claims (Dkt 85-23, at 73). He then filed a response on August 31, 2009 ( Id., 62-77).

To exclude a laminated structure, Rae added to Claim 1 the requirement of his floor "transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass" (at 63). He therefore distanced himself from Roberts , which did not have a LTM "transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass,…" Only following that amendment the patent issued.

This prosecution history shows that Plaintiffs' patent requires the structural load to bypass the fire rated layer, and excludes glass floor in which structural glass and fire rated glass layer layers are laminated together, as "*[A] load on the upper or outer pane necessarily passes through the lower or inner pane."*

Plaintiffs may not disclaim that amendment and admission, and now assert that the claims of the '475 patent include a unit of laminated, bonded structural and fire floor layers, separated by glass or by 0 mm. (Vederi, LLC v. Google, 744 F. 3d 1376,1385, *cert denied* (D.C. Cir 2014)

**CLAIM TERM A:** "the two layers of glass are separated by at least one [of the ] load transferring means" (1, 24)

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "There are one or more mechanisms having a horizontal portion/upper horizontal section and a vertical portion/connecting vertical section, where the horizontal section is between the structural glass and the fire-rated glass and bears at least some of the weight applied to the structural glass and the vertical section passes that weight to a beam or cross member instead of to the fire-rated glass." | "the two layers are detached and exist by themselves without touching each other with one or more of the load transferring means lying between the two separated layers, transferring the entire load from the structural glass to a beam or cross member" |

Absent from Plaintiffs' construction is the central feature of the invention -- -- that the two layers be separated. Plaintiffs ignore the terms of the patent, the specifications, the prosecution history

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

and the English language to do so. They now depict new configurations 3 and 4 on page 3 of their brief found nowhere in their patent, ignoring the separation, or filling the required separation "with additional intumescent material, or even another layer of glass" (Dkt. 85. 2:22-23). They cannot twist the English language to describe a unified, solid floor as two separated floor layers.

They also introduce here the notion that the LTM only bears only *some* of the structural glass load. But as a condition of obtaining the patent, Plaintiffs admitted, and may not now disclaim, that a laminated unit cannot "bypass" structural load away from the fire layer "because a load on the upper or outer pane necessarily passes through the lower or inner pane." Plainly, *all* of the load from the structural layer must bypass the fire rated layer under the patent

## The Common Definition of "Separated"

The parties agree that the plain meaning of the words should control, and the plain meanings tell the story here. Defendant's cited dictionary defined "separate" as means "kept apart", "solitary", or "secluded" (Def. Exhibit 1 ). Notably, the dictionary definitions presented by Plaintiffs and by Mr. MacFarlane also define the **adjective** "separated" consistent with Defendant's construction.

www.DICTIONARY.com - detached, disconnected, or disjoined. (Dkt. 85-19)

www.LEXICO.com – forming or viewed as a unit apart or by itself. Not joined or touching physically. (Dkt. 85-20)

www.freedictionary.com – Not touching or adjoined; detached; existing or considered as an independent entity. (Dkt. 85-21)

To say that the structural layer and the fire rated layer of the patented floor are "separated" means that they are detached, disconnected, a unit apart or by itself, not touching or adjoined. That plain meaning prevents Plaintiffs from claiming a bonded| laminate floor as two separated layers.

## The Specifications and Drawings Require a Separation

The '475 Patent abstract describes the invention as "A fire rated glass flooring system comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass . . . wherein the two layers of glass are positioned one above the other and are separated by at least one load transferring means". (Dkt. 85-4, Abstract, lines 1-6). **"**Accordingly the present invention provides a fire rated glass flooring system comprising a first layer of glass and a second

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

layer of glass, the two layers being positioned one above the other and separated by at least one load transferring means" (Id., Column 1, lines 37-42 ) .

The specifications nowhere describe a separation of less than 10 mm: "Preferably the first and second layers of glass are spaced less than 50 mm apart, more preferably less than 40 mm apart and most preferably 30 mm, 28 mm, 20 mm, 13.5 mm or 10 mm apart.  The spacing is measured from the upper surface of the second layer to the lower surface of the first layer . . . (Column 1, lines  54-58 ). The  specifications repeatedly describe two separated parallel layers, with distances between them of 50 to 10 mm (column 5, lines 66-67; column 6, lines 41-42; column 7, 18-20); it would have been simple and obvious to add "or there could be no separation", but no specification does so.

The opening '475 patent specification states "The first and second layers are parallel to each other" (Column 2, line 3), meaning that they must remain separate, and may never touch or converge. Inherent in the definition of parallel lines is that they never touch, precluding the construction Plaintiffs now present.

The drawings of the '475 patent show a gap between the fire glass layer and structural layer.



*Fig. 3*

Fig3:A complete separation or gap is shown between structural glass32, 33 and fire rated glass 26, 27.



*Fig. 4*

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

DEFENDAN'[...]
CASE NO.  18[...]
{00314867}

7

Fig 4: A complete separation or gap is shown between structural glass 42, 43 and fire rated glass 46, 57.



Fig. 5

Fig 5: A complete separation or gap with spacer is shown between structural glass 62, 63 and fire rated glass 66, 67.

Fig. 6

FIG. 6 A gap is shown between structural glass 77 and fire-rated glass 78.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105



*Fig. 7*

Fig 7: A complete separation or gap is shown between structural glass 89 and fire rated glass 85.

Defendant also relies on an article co-authored by the inventor Michael Scott Rae entitled "The Design and Installation of Glass Flooring and Fire Rated Glass Flooring" (Def. Exhibit 2).  On page 241 a drawing appears as  Figure B that describes the "Liteflam Firefloor Detail" showing a structural glass layer above and separated from a fire rated glass layer below in a 2001 installation detail. The drawing bears the notation "*patent applied for" and is virtually identical of FIG. 3 of the '475 patent. A gap or separation exists between the structural glass and the fire rated glass.

### Fire Test Data Shows a Separation

Similarly,  the  fire  floor  tests  produced  for  Greenlite  "Fire-Resistance-Rated  Glazing Materials" shows that there is a separation between the structural layer and the fire layer.  The product tested at UL had "a 3/8 in. (10 MM) gap between the two layers". ( Def. Exhibit 3,   ELH3_252). SWRI's  January  2004  test  report,"  Fire  Performance  Evaluation  Of  A  Load-Bearing  Glass Floor/Ceiling Assembly In Accordance With Astm E ll9-00, Standard Test Methods For Fire Tests Of Building Construction And Materials  tested the structural and fire rated layers with a normal 28 mm separation between them (Dkt. 85-8, p 15, Drawing A-2) .

As  noted  in  the  ASTM  E119  standard  "The  test  specimen  shall  be  representative  of  the construction that the test is intended to assess" (Dkt, 85-7, page 3, § 5.1). As is obvious, to make a meaningful fire rating, the specimen must be tested as it will be used, here as in drawing A-2 on page 15 -- -- with  the  structural  and  fire  layers  separated  as  depicted.  As  tested,  approved,  rated manufactured and used there must be a separation between the two layers of the patented floor

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1

### Opinion of Defendant's Expert Dr. Glen Stevick[1]

2

Consistent with the dictionary definitions, Dr. Stevick opines "that a Person of Ordinary Skill

3

In the Art ("POSA") would have interpreted 'separated' to mean two components not in direct contact

4

and not bonded together such that they can transfer shear loading between them, meaning that the

5

structural layer does not derive any shear or bending strength from the fire rated layer, and the fire

6

rated layer is not affected by the force of, or the force applied to, the structural layer (Dkt. 85:24, ¶16).

7

The structural and fire testing reports on Plaintiff's patented floor also show that the two layers are

8

separated ( Id., ¶ 24).

9

In summary, Plaintiffs' proposed construction ignores the requirement that the two layers of

10

glass must be "separated" and merely states that a load transferring means lies between the structural

11

glass and the fire rated glass. Plaintiffs' proposed construction must be rejected, without more,

12

because it omits the requirement that the two layers of glass, structural and fire-rated, are "separated".

13

14

15

**CLAIM TERM B:**   **"a vertical portion transferring load from the first layer of the glass above directly to the structural frame below, bypassing the second layer of glass." (1)**

16

17

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The vertical portion of the load transferring | "A vertical component of the load transferring |

18

19

[1] Plaintiffs create a red herring on page 17:15-27 of their brief ( intentionally misreading one iteration

20

of Dr. Stevick's opinion and disregarding the rest ) suggesting that Dr. Stevick defines the

21

"separation" as the width of the structural glass, and does not opine on the distance between the

22

structural and fire layers . As noted just above his cited comment in ¶ 16 of his Opinion, Document

23

85-24, Dr. Stevick was referring to the separation between the uppermost surface of the fire glass and

24

the lowermost surface of the structural glass, and makes clear throughout that the distance between the

25

two *must* be more than 0 mm (see, Document 85-24, ¶ 31; see Stevick Reply Declaration, Def .Exh 4

26

, ¶¶ 6, 16, 18) . Plaintiffs knowingly dissemble when they represent that Dr. Stevick expresses no

27

opinion on the requirement that the two layers be separated -- a weak argument, but the only one they

28

have to define a bonded unit with 0 mm distance between layers as a separation!

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

| means receives at least some of the weight applied to the structural glass through the horizontal portion and passes it to a beam or cross member under the load transferring means instead of to the fire-rated glass." | means, transferring the entire load from the structural glass layer directly to the structural frame below and avoiding transfer of any load to or from the fire-rated glass." |
|---|---|

The definition of "bypass" implicates Claim Term B and D, and the issue of whether the *entire* load must bypass the fire glass (all discussed here) implicates claim terms B, D and H. Again, in their proposed construction Plaintiffs pretend the word "bypass" does not exist.

Both Claim 1 and the specifications require that "The load applied to the first layer bypasses the second layer and is transferred directly to the structural frame, allowing the structural frame to support the second layer and bear the load applied to the first layer. (Column 1, lines 45-53). In turn, "The second layer of glass is preferably supported directly by the structural frame." Column 2, lines 52-55, Column 3, lines 5-7 and Column 4, lines 6-8

The ordinary and customary meaning of the term "bypassing" requires a complete isolation of the bypass structure. Bypass means "to avoid by means of a bypass "or "to ignore"(Def. Exh.  5).  In a laminated structure, where load applied to the upper layer must of necessity pass to the lower layer, and in which the upper layer carries load form the lower layer, there cannot be a "bypass" of the load.

Dr. Stevick agrees that, " Where the first and second layers are bonded together and not separated, the load cannot bypass the second layer of glass";  "If any load is transferred to or from the fire rated glazing layer, that would not constitute a bypass by its definition, or as understood by a POSA." He notes that the '475 patent thus describes a condition "in which the two layers are separated and the load of and the load applied to the structural glass bypasses the fire rated glass" (Dkt 85-24, ¶ 28 - 30).  As Rae wrote when he amended to add the current bypass language, and as Dr. Stevick agrees,   if the two layers were laminated not separated, there is necessarily load transferred from the fire rated layer which a load transferring device would not bypass.  (Dkt. 85-24, ¶¶ 27-30). The file history repeatedly confirms that the load on the structural glass passes to the structural frame below and avoids the fire glass; if some of the load transfers to the fire layer, it is not bypassed..

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**                                  **11**
**CASE NO.  18-CV-06721-JCS**
{00314867}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Rather, as noted by the dictionary definitions, to "bypass" is to "avoid". Therefore, to "bypass the fire rated layer" means to "avoid transfer of any load to or from the fire-rated glass". The construction proposed by plaintiffs does not include the absence of a transfer of any load from the fire rated glass to the structural layer, which is necessary for a bypass to occur pursuant to the dictionary definition.

The patent drawings agree.



*Fig. 3*

The load on structural glass 32, 33 is transferred directly to beam 21 by load transferring means 24, 30, avoiding or bypassing fire rated glass 26, 27.



*Fig. 4*

The structural glass 42, 43 load is directly transferred to steel beam 4, by a load transfer means 44 in the form of a steel box. The fire rated glass is bypassed and separately supported on steel beam 41.

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**
{00314867}

12



**Fig. 5**

The structural glass 62, 63 load is directly transferred to beam 61 via a load transferring means composed of a steel box and overlying steel plate 72. Fire rated glass 65 and 67 are bypassed and independently supported on beam 61.

**and FIG. 7**



**Fig. 7**

The structural glass 89 load is directly transferred to transfer means in the form of mild steel plate 82 and beam 90a, which sit on cross members. The fire rated glass 85 is bypassed by the load transferring means and is independently supported on beam 90b above a cross member.

Defendant's Exhibit 1 also shows a transfer of load from the structural glass (Eckelt Litefloor) directly to a cross member (main beam 150x100x9 RHS) via a steel strip and glazing bar, bypassing the fire rated floor,   similar to FIG. 3 of the '475 patent.

**File History**

Defendant incorporates and relies upon the file history presented at 4:3-6:21, above, to show that the requirement that the structural load "bypass" the fire layer was inserted in Claims 1 and 26 expressly to forclose the patent's applicability to a bonded, laminated unit which necessarily transmits load from the structural pane to the structural frame .   As that history shows, the instant patent was repeatedly rejected as the Roberts and O'Keeffe patents  anticipated two floor layers laminated into a single unit.  After final rejections of the '475 patent, Rae amended to require that the load "bypass" the fire rated glass, thereby distinguishing a laminated unit, saying:   "The present invention bypasses the fire rated pane when transmitting load from the structural pane to the structural frame; Roberts doesn't (DKT. 85:23, 105)."  Rae asserted and averred that in a laminated unit "a load on the upper or outer pane 41 necessarily passes through the lower or inner pane 42 . . . Thus, the inner (laminated) pane 42 of Roberts is also load bearing", making this invention "patentably distinguished from Roberts". (DKT. 85:23, 107). **The patent issued after that "bypass" amendment.**

Plaintiffs now impermissibly take the opposite tack, ignoring the "bypass" limitation and claiming a patent on a laminated unit in which, as they wrote , "a load on the upper or outer pane necessarily passes through the lower or inner pane" making the fire layer load-bearing without bypassing it. That statement in the file history tracks Dr. Stevick's opinion.

Plaintiffs obtained the patent on the condition that they were not covering that prior laminated art. They may not disclaim that position and redefine a "bypass" to void that amendment.

As was the case with Term A, Plaintiffs' construction of Term B improperly equates the word "load" with the phrase "at least <u>some</u> of the weight applied to the structural glass".  There is no reason or authority to support that transformation of the claim language.  Rather, the proper construction is a transfer of "the entire load from the structural glass layer directly to the structural frame."

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**
{00314867}

14

Secondly, the construction proposed by Plaintiffs ignores the definition of the term "bypassing". Instead, it refers to passing "at least <u>some</u> of the weight applied to the structural glass... to a beam or cross member under the load transferring means instead of the fire-rated glass".

The patent specification rejects plaintiffs' construction, as it notes that "The load applied to the first layer bypasses the second layer and is transferred directly to the structural frame, allowing the structural frame to support the second layer and bear the load applied to the first layer."   Column 1, lines 45-53.  This language does not refer to a transfer of "<u>some</u> of the weight" but rather to "the load applied to the first layer" making clear that the structural frame independently supports the fire rated glass layer.

**CLAIM TERM C:**   **"the second layer of glass is suspended from the first layer of glass such that there is a small gap between the first and second layer s of glass" (21)**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass." | "The fire rated glass is separated from and rests below the first layer on a structural support, creating a gap of more than 0 mm and less than 50 mm between the lowermost surface of the structural  glass and the uppermost surface of the fire-rated glass, subject to all of the limitations of claim No. 1." |

Term C derives from dependent claim 21 which is dependent on dependent claim 13, and in turn, on independent claim 1.  Under 35 U.S.C. §112(d) and 35 U.S.C. §112(d) a dependent claim "shall be considered to incorporate by reference all the limitations of the claim to which it refers".

Dependent claim 21 *could be* consistent with independent claim 1 if  the word "suspending" is interpreted to mean supported in some manner.  But, the second layer of glass cannot hang from or be supported by the first layer of glass if the "load on the first layer of glass above is transferred directly to the structural frame below bypassing the second layer of glass.", as is dictated by claim 1, on which claim 21 depends.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Thus, if Plaintiffs' construction were correct and the fire glass hangs from the structural layer, dependent claim 21 would be invalid since it contradicts a limitation of claim 1 from which it depends, because the load on the first layer of glass would not bypass the second layer of glass, thus impermissibly broadening the'475 patent. 35 U.S.C. §112(d); *Pfizer. v. Ranbaxy Labs Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006); *Amgen v. Hospira,* 232 F.Supp.3d 621 (DC. DE. 2017).

In addition, the bonded or laminates system now claimed reads directly on the Roberts patented laminate, the laminate described as prior art in FIG. 2 of the '475 patent (Column 5, lines 6-20) and the unit shown by the French '123 patent (Dkt. 85-23, 269-297). Figure 2 of the French patent in the prosecution history file (85-23, 289) depicts exactly what Plaintiffs are claiming in this action -- -- a fire glass layer and a structural glass layer held together and supported by a glazing bead and a metal bar (Id., 279-280; Stevick Dec., Dkt. 85-24, ¶ 17). Were that Plaintiffs' patent claim, it would have been rejected due to that prior art.

Nor can Plaintiffs assert claim differentiation to "enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352 1358 (Fed.Cir. 2016) In *Fenner Investments, Ltd. v. Cellco Partnership*, 778 F.3d 1320 (Fed.Cir. 2015) the Court rejected plaintiff's claim differentiation argument by explaining that "[a]lthough claim differentiation is a useful analytical tool, it cannot enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." In *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149 (Fed Cir. 2015) the Federal Circuit held that claim differentiation could not be used to broaden the scope of the independent claims which were limited by their plain meaning. The doctrine of claim differentiation may not be used to broaden patent protection. 35 U.S.C. §112(d); *Zircon v. Stanley Black & Decker*, 452 F. App'x 966 (Fed. Cir. 2011)

Thus, plaintiff's position unfairly broadens the scope of the '475 patent to include laminate structures found in the Roberts patent, the French '123 patent ( Dkt. 85-23, 269-297 ), and FIG. 2 of the '475 patent, to name a few. Such an interpretation ignores the limitation of claim 1 from which it depends, namely "...bypassing the second layer of glass", and the prosecution history in which the "bypass" limitation was added expressly to exclude a laminate structure.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Moreover, even Fig 6 does not show a laminated structural and fire glass unit, and it retains a gap between the unit.  Even were the Fig 6 configuration allowable, at most it shows a thin bar and glazing bead between the layers, with a gap and separation in vast majority of the area between the two layers.  There is no language or reason to equate a hanging connection by a thin bar and glazing bead with a bonded and laminated unified floor unit.

The specifications agree that there must be a gap between the two layers of the patented unit: Column 2, lines 61-63**:** "In a first aspect of the second embodiment, the second layer of glass is supported by the frame leaving <u>a small gap between the layers</u>." Column 3, lines 19-21:  "In a second aspect of the second embodiment, the second layer of glass is suspended from the first layer of glass leaving <u>a small gap between the layers</u>." Column 6, lines 28-34.

Plaintiffs' construction, which adds to the patent by introducing the concept of the fire floor hanging from the structural floor improperly expands the scope of the patent and should be rejected.


**CLAIM TERM D:**   **"the load transferring means transfers load applied to the first layer of glass directly to the structural frame, bypassing the second layer of glass" (24)**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The mechanism passes at least some of the weight applied to the structural glass to a fixed beam or cross member under the mechanism instead of  to the fire-rated glass" | "the load transferring means transfers the entire load of the first layer of glass directly to the structural frame avoiding transfer of any load to or from the second layer of glass" |

Defendant relies on its arguments found with respect to Terms A and  B for the definition of the  terms "load" and "bypass", ignored in plaintiffs' construction.  The file history in particular shows that the word "bypass" was required as a condition of the patent, to exclude a laminated floor system. Secondly, "load applied" is a term of art for  which "at least some of the weight applied" cannot be substituted, without any basis or factual support.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

__CLAIM TERM E:__   __"comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass" (24)__

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "Composed of (i) a multi-laminated glass sheet  made up of two or more layers of glass capable of bearing at least some of the weight of an applied load, and (ii) a multi-layered glass sheet made up of two or more layers of glass that has a transparent intumescent material interspaced between at least two of the glass layers" | "Composed of (i) a single or multi-laminated glass made up of two or more layers of glass designed to bear, and capable of bearing, the weight of a specified minimum load, and (ii) a multi-layered glass made up of at least two end layers of glass enclosing and sandwiching transparent intumescent material between each glass layer, which has been rated as fire resistant by a national recognized rating entity." |

Plaintiffs' proposed construction has no intrinsic or extrinsic support. By their proposed definition, a "fire rated glass" can have intumescent material on the outside of the glazing, or abutting the structural glass. It could have six layers of glass and one layer of intumescent material. All of the evidence is to the contrary

Specification column 5, line 41, Column 6, line 18, column 7, line 44 and column 8, line 16 identify CONTRAFLAM-90-N2,  CONTRAFLAM LITE, and CONTRAFLAM E130 as a suitable fire rated glass. "CONTRAFLAM 90-4 (Def. Ex. 6 ) shows a typical fire resistant safety glass bearing the CONTRAFLAM trademark. The structure of the glass includes internal multi-layers of intumescent material and "toughened safety glass" enclosed by two end layers of "toughened safety glass". No depiction shows intumescent material as the other surface of the glass unit.

Exhibits K to MacFarlane's report ( Dkt.  85-13)  also shows a fire rated glass has glass on both sides an alternating layers of intumescent material and glass, as confirmed by the drawing of the fire glass contained in that report.  "Intumescent fire rated glazing is a laminated product made up of alternating layers of glass and clear intumescent inner layers... When exposed to a fire, the outer layer

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    of glass shatters.  The intumescent inner layer holds the broken glass in place." (accord, MacFarlane

2    Report, Exhibit L. Dkt. 85-14) (See Stevick Reply Declaration, paragraph 31). (Def. Exh. 4)

3         Both experts agree that there must be glass on the exposed sides of any intumescent layer and,

4    importantly here, fire glass between the intumescent layer and the structural glass.  Dr. Stevick

5    describes fire rated glass as" glazing whose interior portion would be intumescent fire resistive layers

6    with glazing at least on the two outer dimensions" with "at least two enclosing glass layers

7    sandwiching transparent intumescent material and which has been rated as possessing a designated

8    fire resistance certified by a testing authority"; "because the intumescent material is primarily water

9    with small amounts of other material, and if that intumescent material were located on an exposed

10   surface it would immediately degrade and fail" (Dkt 85-24, ¶¶ 34, 35). As the top and bottom portions

11   of the fire glass floor must be glass a LTM placed underneath the top piece of glass would be within

12   the fire rated unit, and NOT between the fire glass and the structural glass ( Id., ¶ 35).

13        Mr. MacFarlane agrees that "structural glass cannot include any intumescent material

14   interspaced between the layers of glass and be relied upon to bear the weight of people on it or other

15   applied weight during a fire. (Dkt. 85-2,¶119).  His report adds: "if the structural glass rested directly

16   on the fire rated glass, however, it would become unstable and unsound as the various layers of the

17   fire rated glass were consumed by the fire (particular as such consumption is hardly likely  to be

18   uniform across the entire sheet of glass)." (Id., ¶54).    Paragraph  28-30 of Dr. Stevick's Reply

19   Declaration lists several places where  Mr. Macfarlane concedes that fire rated glass has glass on both

20   surfaces.  Thus, in the patented product, the structural glass does not rest on the fire rated glass, and

21   there is a separation between the fire glass and the structural glass.

22        Similarly, as noted in connection with Term A above, every fire test (necessary for the fire

23   glass to obtain a rating) tested a fire glass unit with enclosing glass layers on the top and the bottom of

24   the fire rated glass unit, with alternating intumescent material and glass in between.  The UL report

25   states that "12 measurements within the layers of glass were taken on the unexposed surface of the fire

26   resistant glass layer, which was below the structural walking glass layer" (Def. Exh. 3, ELH3_254).

27   "That separation was 0.94 in. (24 mm)".  Similarly, SWRI's test report and fire certification of

28   Greenlite's  product  shows  the  fire  layer  encapsulated  with  glass,  with  alternating  layers  of

FREELAND COOPER & FOREMAN LLP

150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**                              **19**
**CASE NO.  18-CV-06721-JCS**
{00314867}

intumescent material in between, with a 28 mm distance between the top of the fire glass layer and the bottom on the structural layer."(Dkt 85:8,Fig A-1, p.15, Details p.19; Stevick Dec., Dkt. 85-24, ¶23)).

To be a fire rated glass, the product has to be tested and certified, and installed as tested and certified; otherwise the word "rated" has no meaning.  Every tested and rated floor shown by either party has glass on both ends, as it must to perform its function -- there is no fact to the contrary.

Plaintiffs' invention requires a load transferring means **between** separated structural glass and fire glass layers.  As Plaintiffs seek to eliminate the concept of separation, they also blur the distinction between the fire layer and the structural layer to allow a patented  LTM *anywhere* -- under, above or within an undefined fire layer.  As both experts and all of the evidence agrees, the top of the fire glass must be glass, and the structural glass cannot rest on intumescent material -- conditions allowed by Plaintiffs' loose construction of fire rated glass, which must be rejected.

**CLAIM TERM F:**   **"the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm" (2)**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The space between the uppermost surface of the fire-rated glass and the lowermost surface of the structural glass is less than 50 mm." | "The separation between the uppermost surface of the fire-rated glass and the lowermost surface of the structural glass is more than 0 mm and less than 50 mm" |

Defendant relies on the ordinary and customary meaning of the term "distance" found in the Merriam Webster's Collegiate Dictionary, page 363 (Def. Ex. 7): a degree of separation between two points, lines, surfaces, or objects.  Being "separated" denies a zero mm distance.

Nor is there any support anywhere for the concept that the separation can be 0 mm.  As Dr. Stevick notes, Mr. MacFarlane's opinion begins by quoting specifications which describe  a 50 mm to 10 mm separation, and then makes the illogical leap that a small separation can be conflated with a 0 mm separation, even though the concept in physics is so different (Stevick Reply, ¶¶ 6, 16-19, 34). The stress analyses Plaintiffs obtained on their patented product showed a separated structural layer; a

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

POSA understands that those stresses and bending and shear strengths are different if two layers were bonded, as shown by the prior art in figure 2 of the patent ( Dkt. 85-24, ¶ 17-18).

The concept of being "separated" by 0 mm is contrary to the English language, to every specification, to the understanding of a POSA and to the file history which excludes a laminated floor unit.  It is presented here only to improperly expand the patent; it should be rejected.

Plaintiff relies on its assertions under Term A regarding the term "separation." Plaintiffs' construction of Term F permits a "distance" between the two layers of glass to be 0 mm, and then decribes it as a "space" which can be filled with anything.  By definition that is not a "distance". Secondly, plaintiffs' definition introduces the new and unsupported term "space" rather than the term 'separation' used throughout the patent. This unsupported improper construction should be rejected.

**CLAIM TERM G:**  (24) **"the first layer of glass being supported by the or each load transferring means and the second layer of glass being supported by the structural frame"**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The load transferring means bears the weight of the structural glass and the fixed beans and cross members bear the weight of the fire-rated glass" | "The first layer of glass is supported by the or each load transferring means and the second layer of glass is separately supported by the structural frame." |

Defendant relies on its assertion on Terms A and B, with regard to "separated" and "bypass".

Plaintiffs' construction should be rejected as it improperly ignores both halves of the term which derives from dependent claim 24.  The first omission ignores the requirement that the first layer of glass is supported by the LTM, thus excluding a laminated unit in the first layer of glass obtains support from the laminated fire layer.  Secondly, Plaintiffs ignore the requirement of "the second layer of glass being supported by the structural frame", which again excludes a laminated unit, and requires two different forms of support. This requires that the two layers be supported separately, without a transfer of load to or from each other a limitation which is not included in plaintiffs' construction.

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF**
**CASE NO.  18-CV-06721-JCS**
{00314867}                                                                21

Again, Plaintiffs ignore the material plain terms of the claim, mandating two separate supports for the two glass floor layers -- the second layer of glass being supported by the structural frame.  Plaintiffs present this proposed construction to expand the claim to cover a laminated unified floor, in which the fire rated glass layer is bonded to and supported by the structural glass layer. Plaintiffs' attempt to broaden this claim by ignoring the express limitation agreed to as a condition of the patent must be rejected, especially since that' construction covers known prior art shown, among other places,  in FIG. 2 of the '475 patent and Fig. 2 of  the French '123 patent (Dkt. 85-23, 269-297).

**CLAIM TERM H:**  **"load transferring means comprises a first portion for bearing the load applied to the first layer of glass and a second portion for transmitting the load applied to the first layer of glass to the structural frame" (25)**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "A mechanism that enables at least some of the weight applied to the structural glass to be passed to a fixed beam or cross member instead of to the fire-rated glass and includes a first portion that bears the weight of a load applied to the structural glass connected to a second portion that passes that weight to a fixed beam or cross member instead of to the fire-rated glass." | "the load transferring means comprises a first portion bearing the entire load of the first layer of glass and a second portion transmitting the entire load of the first layer of glass directly to the structural frame below, each avoiding transfer of any load to or from the fire-rated glass" |

Plaintiff relies on its assertions with respect to Terms A and B.

Plaintiffs' proposed construction again equates the phrase "the load applied to the first layer of glass" to "at least <u>some</u> of the weight applied to the structural glass."  There is nothing in the patent language to allow Plaintiffs to change the phrase "the load applied" to "at least some of the weight applied" . Rather, the claim must be construed as written,  and as intended by the file history, to state that the load transferring means bears "the <u>entire</u> load of the first layer of glass," avoiding any transfer of any load to or from the fire-rated glass .

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**CLAIM TERM I:** **"glazing bar" (11)**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "metal bar" | "member taking the applied load on the structural glass" |

Defendant relies on the specification column 5, lines 48-54, column 2, lines 23-28, column 2, lines 38-43, and column 5, lines 48-54 where the glazing bar is shown as the first part of the load transferring means which carries the applied load on the structural glass.

**CONCLUSION**

As noted in ¶2 of Dr. Stevick's Reply Opinion, these are the the material differences in the parties' arguments, and the proper construction of them under the plain meaning of the Patent language, the drawings and specifications and prosecution history:

· The structural glass lies parallel to and above the top glass of the fire-rated layer.

· The two layers must be separated; there cannot be a "0 mm" separation between them

· Only because the two layers are separated, an LTM between the structural and the fire layers transfers the load from the structural layer, "bypassing" the fire rated layer

· The fire rated layer is independently supported by the structural frame.

· The fire rated layer is composed of glass on both sides with one or more alternating internal layers of intumescent material and glass

Plaintiffs seek to expand the terms of its patent claims beyond these terms and beyond anything applied for or approved in its patent application; it viewed SAFTI's fire floor and worked backwards from that to cover SAFTI's floor under its patent. The words of the patent, the specifications, the patent prosecution history, every example of a fire rated floor and the English language all argue against the definitions that they seek to impose.

For two glass layers to be separated there must be a distance of more than 0 mm between them. For the two layers to be parallel, they cannot touch, meet or converge. For the load of the structural glass layer to bypass the fire rated glass layer, AND for the fire rated floor to be supported by the structural frame, the two cannot be laminated. A fire rated glass floor unit must have glass

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

covering the intumescent layer on both ends, and be manufactured and installed as it was tested and rated.  All of those plain facts stand in the way of the construction urged by the plaintiffs.

For all of these reasons, Defendant prays that its claims constructions be adopted and those of the plaintiffs be rejected.

Respectfully submitted,

FREELAND COOPER & FOREMAN LLP
BIELEN & LAMPE

Dated:  November 4, 2019

by *Mark I. Schickman*
*Attorneys for Defendant and Counter-Claimant*
*O'Keeffe's, Inc., d/b/a SaftiFirst*

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF
CASE NO.  18-CV-06721-JCS**
{00314867}

24

1

2

**CERTIFICATE OF SERVICE**

3

        I hereby certify that on November 4, 2019, I electronically filed the foregoing document with

4

the United States District Court for the Northern District of California by using the CM/ECF system.

5

I certify that the following parties or their counsel of record are registered as ECF Filers and that they

6

will be served by the CM/ECF system:

7

8

Guy W. Chambers
Ellen P. Liu
Sideman & Bancroft LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111-3711

9

10

11

Donald R. McPhail
Taft, Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

12

13

Ryan O. White
Elizabeth Shuster
Taft, Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204

14

15

16

*Attorneys for Plaintiff*

17

18

/s/___Mark I. Schickman__

19

20

21

22

23

24

25

26

27

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**DEFENDANT'S REPLY CLAIMS CONSTRUCTION BRIEF
CASE NO.  18-CV-06721-JCS**

25

{00314867}

25