Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
Shih Ching Li (admitted *pro hac vice*)
Email: eli@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Guy W. Chambers (State Bar No. 101611)
E-Mail: *gchambers@sideman.com*
Ellen P. Liu (State Bar No. 280459)
E-Mail: *eliu@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone:  (408) 701-6100
Facsimile:  (844) 670-6009

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Jia-geng Lu (State Bar No. 271589)
Email: jlu@dickinsonwright.com
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
Telephone:  (512) 770-4200
Facsimile:  (844) 670-6009

Jaimin H. Shah (admitted *pro hac vice*)
Email: jshah@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Upper Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone: (312) 836-4171
Facsimile: (312) 966-8607

*Attorneys for Ely Holdings Limited
and Greenlite Glass Systems Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian Company<br><br>        Plaintiffs,<br><br>    v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>        Defendant. | Case No. 3:18-cv-06721 JCS<br><br><br>**PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF** |

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   DEFENDANT'S ERRONEOUS DESCRIPTION OF THE CLAIM INVENTION ..........1

III.  THE DISPUTED TERMS .......................................................................................5

      A.    The Two Layers of Glass . . . ....................................................................5

      B.    A Vertical Portion . . . .................................................................................7

      C.    The Second Layer of Glass . . . .................................................................8

      D.    The Load Transferring Means . . . .............................................................9

      E.    Comprising a First Layer of Glass . . . ....................................................10

      F.    The Distance from the Upper Surface . . . ...............................................11

      G.    The First Layer of Glass . . . ....................................................................11

      H.    Load Transferring Means Comprises . . ..................................................12

      I.    Glazing Bar ..............................................................................................12

IV.   CONCLUSION......................................................................................................12

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

DICKINSON WRIGHT PLLC

**TABLE OF AUTHORITIES**

**Page**

*EPOS Techs. Ltd. v. Pegasus Techs.*,
    766 F.3d 1338 (Fed, Cir. 2014) ............................................................................................. 4

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)............................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

800 W. California Avenue., Suite 110
Sunnyvale, CA 94086

DICKINSONWRIGHTPLLC

## I.    INTRODUCTION

Plaintiffs Ely Holdings Limited and Greenlite Glass Systems respectfully submit the following arguments in support of their proposed constructions for each disputed claim term.

## II.    DEFENDANT'S ERRONEOUS DESCRIPTION OF THE CLAIM INVENTION

Rather than address the claims as written, Defendant attempts to craft a non-infringement position at this stage by imposing certain requirements on the claimed invention which are neither called for by the claims nor supported by the specification or prosecution history of the '475 Patent, including the requirement that a "gap or separation" be present between the structural glass layer and the fire-rated glass layer.  Contrary to Defendant's self-serving view of the present invention, however, the invention disclosed and claimed in the '475 Patent is a floor system that actually requires only the following elements: (i) a structural glass layer; (ii) a fire-rated glass layer; (iii) a structural frame; and (iv) a plurality of load transferring mechanisms (LTMs).

The LTMs of the inventive flooring system are located around the periphery of the glass layers under the bottom face of the upper, structural glass layer so that the walking surface is supported by the LTMs instead of by the lower, fire-rated glass layer.  Because of this arrangement, when the fire-rated glass layer is being (or has been) consumed by fire and so is no longer structurally sound and can no longer bear weight, it is nevertheless still possible for people to walk (or run) across the structural glass layer and safely evacuate the building.  Significantly, in every embodiment of the invention, there is never any intumescent material located above the LTMs, either in the structural glass layer or between the structural glass layer and the top surface of the LTMs, since this would destabilize the walking surface during a fire.

In use, the LTMs are placed along two or more edges of the glass sheets and generally extend no more than about 2" under the lowermost face of the structural glass walking surface. The LTMs are relatively small in comparison to the overall size of the glass sheets making up the flooring system.  CONTRAFLAM-90, for example, which is identified in the specification as an exemplary fire-rated glass for use in the inventive flooring system, is commercially available in sheets up to around 1800 mm x 3500 mm in size (approx. 6ft. x 11.5 ft., or 72" x 138").  In marked contrast, the LTMs of the present invention are far, far smaller, each being generally around 20

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

1   mm x 30 mm (approx. ¾" x 1¼") up to 30 mm x 50 mm (approx. 1¼" x 2") in size.

2   Thus, in the case of a laminated flooring system composed of an upper structural glass

3   layer bonded to a lower fire-rated glass layer, such as shown in FIG. 5, the glass layers can have

4   slightly different linear dimensions, *e.g.* the structural glass layer which is supported by the LTMs

5   can be an inch or two longer than the layer(s) of glass below it.  This arrangement provides a small

6   ledge or rim of structural glass, which enables each LTM's horizontal portion (72) to fit underneath

7   the bottom face of the structural glass layers (62, 63) that form the walking surface.  Alternatively,

8   if the all of the layers in the flooring system, have exactly the same dimensions, a small cavity

9   could still be formed at those points where the LTMs are to be placed by selectively removing the

10  necessary amount of material (whether glass or intumescent material) from Defendant's "spacer"

11  layer to permit each LTM's horizontal portion (72) to extend between the structural glass layer

12  and the fire-rated glass layer.  Moreover, as depicted in FIG. 6, in the case of a flooring system

13  composed of a lower fire-rated glass layer suspended from an upper structural glass layer, the

14  structural silicone (81) and glazing bar (80) used to attach the layers to each other can be located

15  slightly inwards of the outer edge(s) of structural glass layer (77) so as to leave a small ledge or

16  rim of structural glass under which the horizontal portion of each LTM (75) can be placed.

17  Rather than admit that its proposed constructions for the disputed claim terms excludes

18  certain embodiments disclosed and claimed in the '475 Patent, Defendant ignores what is actually

19  shown in FIG. 5 and FIG. 6 and tries to shoehorn those embodiments into its narrow

20  characterization of the claimed invention.  Thus, instead of conceding that there is no gap or

21  separation shown between the layer of structural glass (62, 63) and the layer of fire-rated glass

22  (66,, 67) in FIG. 5, Defendant instead asserts that FIG. 5 shows "[a] complete separation or gap

23  **with spacer** [] between structural glass 62, 63 and fire rated glass 66, 67" (emphasis added).  This

24  assertion simply makes no sense – if there is (as Defendant admits) a "spacer" between the

25  structural glass layer and the fire-rated glass layer, then there cannot be a separation or gap there,

26  *i.e.*, there is <u>something</u> between the structural glass layer and the fire-rated glass layer, not a gap

27  or separation.  And Defendant cannot dispute that this something (this "spacer") could be made of

28  intumescent material or could even be another layer of structural glass or fire-rated glass, as is

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

DICKINSON WRIGHT PLLC

depicted in FIG. 5.

Contrary to Defendant's assertion, applicant never surrendered coverage of a floor composed of laminated or otherwise-connected layers of structural glass and fire-rated glass. Defendant highlights three words in a single sentence from a single response in the prosecution history as purportedly giving rise such a disclaimer in this case. Defendant, however, ignores the remainder of that sentence, as well as the remainder of applicant's remarks in support of patentability in that paper and in other responses. That is, as can be seen from reading the document itself, applicant sought to distinguish Roberts based on the reference's failure to disclose, suggest, or teach the inventive "load transferring system" because Roberts disclosed "securing the laminate to a support frame by connection to only [the lower] one of the laminate layers." *See* Dkt. No. 85-23 at 185. Applicant never suggested, much less relied upon, the argument that the claimed invention was patentable over Roberts because it was composed of two separate, unconnected layers of glass rather than layers which were bonded or laminated together.

The remainder of the prosecution history supports this understanding. Throughout prosecution, applicant, through his representative, repeatedly sought to distinguish the claimed invention over Roberts on the grounds that Roberts did not teach or suggest a flooring system, since it was directed to an angled roof, and failed to teach or suggest the claimed LTMs. *See*, *e.g.*, Dkt. No. 85-23 at 73; 104-109; 158-160; 184-185. Moreover, applicant, through his representative, made substantially the same arguments, *i.e.,* failure to teach a flooring system and failure to teach the LTMs, to distinguish other references such as O'Keeffe and Richter. *See id.* at 74; 109-110; 181-183; 199-202. At no time did applicant ever seek to distinguish his invention from Roberts, or any other reference cited by the PTO, on the grounds that the claimed invention required a physical gap or separation between the structural glass layer and the fire-rated glass layer. Even a cursory review of the prosecution history proves that such an argument was simply never made.

In addition to trying to mandate the presence of a gap or separation between the structural glass layer and the fire-rated glass layer, Defendant also seeks to expand the term "bypass" far beyond what is called for by the intrinsic evidence. That is, Plaintiffs do not dispute that the

inventive LTMs passes the load applied to the top surface of the structural glass layer, *viz.* people walking across it, to the structural frame instead of to the fire-rated glass layer. And because it is passed directly to the structural frame through the LTMs rather than through the fire-rated glass layer, the load due to people standing or walking on the structural glass "bypasses" the fire-rated glass layer. But that is all that the term "bypasses" means in the context of the present invention.

Defendant, however, seeks to broaden the application of "bypass" to exclude a second, additional load that is applied to the structural glass layer in certain embodiments of the claimed invention – *viz.*, the weight of the fire-rated glass layer. More specifically, in those embodiments where the fire-rated glass layer is "suspended" or hanging from the structural glass layer, such as shown in FIG. 6 and claimed in claim 23, the weight of the fire-rated glass is borne by the structural glass layer (which then transfers that load through the LTMs to the structural frame) rather than by the structural frame. By its own admission, Defendant's proposed construction seeks to expressly exclude this embodiment from the scope of the claims of the '475 Patent (since it is apparently the same as at least some of the Accused Instrumentalities in this case).

It has been well-settled law for over thirty years that a construction that excludes a disclosed embodiment from the claim(s) is "rarely, if ever, correct." *See, .e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *see also EPOS Techs. Ltd. v. Pegasus Techs.*, 766 F.3d 1338, 1347 (Fed, Cir. 2014) ("The district court's construction is incorrect because it reads out preferred embodiments. '[A] claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct and would require highly persuasive evidentiary support.'" (internal citation omitted); *Duncan Parking Techs. Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019) ("As IPS notes, a claim construction that excludes the preferred embodiment is highly disfavored.")."

Much the same as Defendant's "gap or separation" construction would exclude the embodiment shown in FIG. 5 of the '475 Patent, Defendant's "bypass' construction would exclude the embodiment shown in FIG. 6. Given that there was no disavowal or disclaimer of either embodiment in the prosecution history, however, Defendant's proposed constructions cannot be correct.

### III.    THE DISPUTED TERMS

#### A.    The Two Layers of Glass . . .

Defendant's assertion that a non-laminate structure is "the central feature of the invention" is belied by all of the evidence of record, including the claims, the specification, and the prosecution history. Contrary to Defendant's assertion, the central feature of the invention claimed in the '475 Patent is, in fact, the use of LTMs in a flooring system, which enables people to safely escape a burning building by transferring the weight they put on the structural glass layer to the structural frame rather than to the fire-rated glass layer. These horizontal portion of each of these LTMs must fit under the bottom face of the structural glass layer that forms the walking surface, but that is all that is required. Whether the structural glass layer and fire-rated glass layer are bonded directly together or through a "spacer" layer or are otherwise connected somehow elsewhere in the floor system is simply irrelevant – the only place(s) where the layers of glass "are separated by" the LTMs are those specific points around their common edge(s) where the LTMs are located and the horizontal portion thereof extends between the layers of glass.

Defendant's proposed construction depends entirely on its flawed characterization of the claimed invention, *viz.* Defendant's insistence that the structural glass layer and fire-rated glass layer must be "detached and exist by themselves without touching each other" anywhere at time. Such a requirement, however, improperly limits the scope of the claims of the '475 Patent and so cannot be part of the correct construction for this term.

More specifically, Defendant's proposed construction is not supported by the intrinsic evidence – indeed, it excludes at least the preferred embodiment depicted in FIG. 5. As shown in FIG. 5, and as admitted by Defendant, there is a layer of material between structural glass layers 62 and 63 and fire-rated glass layers 66 and 67. This material could be a layer of a bonding material, meaning the structural glass layers and fire-rated glass layers would directly connected to one another, or it could be another layer of glass or another layer of intumescent material. *See*, *e.g.*, Dkt. No. 85-22 at ¶¶ 16, 19, 22, 33. Irrespective of the specific composition of this layer, which Defendant refers to in its Responsive Brief (Dkt. No. 92) as a "spacer," the simple fact is that FIG. 5 proves that there does not have to be a "gap or separation" between the structural glass

layer and the fire-rated glass layer even when an LTM is present. Defendant's proposed construction would expressly exclude the embodiment depicted in FIG. 5 from the claims of the '475 Patent and Defendant has failed to even offer any reason for excluding a preferred embodiment of the invention in this case.

Defendant further argues that the disclosure in the specification that "[t]he first and second layers are parallel to each other" somehow requires the presence of a "gap or separation" between the structural glass layer and the fire-rated glass layer. But, contrary to Defendant's argument, the word "parallel" does not mean "not touching" but, rather, means "not crossing." There is a huge difference. Again, as shown in FIG. 5, even though the layer of structural glass is parallel to Defendant's "spacer" layer, it is also undeniably touching and in direct contact with that "spacer" layer, as is the fire-rated glass layer. Defendant's argument is therefore fatally flawed – parallel layers of glass can, and in the present invention do, touch each other.

Defendant's proposed construction is also not mandated, or even supported, by the prosecution history of the '475 Patent. Defendant mischaracterizes applicant's arguments in support of the patentability of his claims in its Responsive Brief, by very selectively choosing only three words from a multi-page document. As noted above, applicant never disclaimed the use of laminated glass layers in the inventive flooring system. Rather, applicant repeatedly asserted that his claims were patentable because the prior art did not teach or suggest the use of LTMs in a flooring system. *See*, *e.g.*, Dkt. No. 85-23 at 73-74; 104-110; 158-160; 181-185; 199-202. Roberts' laminated structure, for example, was repeatedly distinguished on the grounds that, not only did it not teach or suggest a fire-rated glass layer, but also that: (i) it was an angled roof, not a level floor; and (ii) it was supported only by the lower layer of glass resting on a structural frame, rather than by LTMs supporting the upper layer of glass. *See id.* The fact that Roberts showed a laminated structure had no bearing on the patentability of the claims of the '475 Patent, and was never advanced by applicant or his representative as a reason to issue those claims.

Despite the fact that the term at issue can be construed solely from the intrinsic evidence alone, Defendant nevertheless cites to a number of on-line dictionaries as extrinsic evidence purportedly supporting its proposed construction. Defendant's attempted reliance, however, is

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

misplaced.  The claim language at issue is not "the two separated layers of glass" or the like, but rather "the two layers of glass **are separated by**" [the LTMs].  The word "separated" is therefore not an adjective as Defendant asserts, but, rather, a transitive verb (the LTMs being the direct object thereof).  Defendant's dictionary definitions are therefore inapplicable.

### B.   A Vertical Portion . . .

As noted above, Plaintiffs do not dispute that this term requires that a load applied to the structural glass layer is transferred by the LTMs to the structural frame and not to the fire-rated glass layer.  The dispute between the parties, however, is whether this load applied to the structural glass layer is just the weight of people walking across the structural glass layer or whether it can also include the weight of the fire-rated glass layer.

Defendant, relying on its definition of "bypassing" to preclude any interaction whatsoever between the layers, argues that the load applied to the structural glass layer can only be the weight of people walking across the structural glass layer.  Defendant contends that the load applied to the structural glass layer cannot include the weight of the fire-rated glass.

On page 11 of its Responsive Brief (Dkt. No. 92), Defendant contends that "Claim 1 . . . require[s] that 'the load applied to the first layer bypasses the second layer and is transferred directly to the structural frame, <u>allowing the structural frame to support the second layer and bear the load applied to the first layer</u>" (emphasis added).  Defendant's contention, however, is demonstrably false.  The underlined language above does not appear <u>anywhere</u> in claim 1. Defendant might wish that it did, but it doesn't, and it is wholly improper for Defendant to contend that such language actually appear in the claim 1 of the '475 Patent – particularly when similarly language does appear in non-asserted claim 35 (*i.e.* "the second layer of glass being supported by the structural frame.").  It is black letter law that limitations are not to be imported from the specification into a claim, and such an error is even more egregious when other claims actually expressly recite the limitation in question.

Moreover, Defendant's proposed construction excludes the embodiment of the invention depicted in FIG. 6, described at col. 3, ll. 19-21 and col. 7, ll. 21-63 of the specification, and <u>expressly claimed</u> in claims 21, 23, and 34 of the '475 Patent.  According to this embodiment, the

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

fire-rated glass layer "is suspended from" the structural glass layer. *See* cl. 21, 23, 34. And, as a POSA would recognize, when the fire-rated glass layer "is suspended from" the structural glass layer, and not otherwise supported by the structural frame (such as claimed in claim 35), the structural glass layer must be bearing the weight of the fire-rated glass layer. *See* Dkt. No. 85-22.

Defendant can point to nothing in the prosecution history to justify excluding this embodiment and, indeed, concedes that its proposed construction is not consistent with the plain meaning of "suspended" in claims 21 (and 23 and 34). *See* Dkt. No. 92 at 15-16. Significantly, Defendant notably excludes FIG. 6 (and only FIG. 6) when making its erroneous claim that "the patent drawings agree" with its proposed construction. There is, however, no reason to exclude the embodiment depicted in FIG. 6 from the scope of claim 1 of the '475 Patent, particularly since it is expressly covered by dependent claims 21 and 23.

Finally, to the extent Defendant argues that "bypassing" necessarily precludes the use a structural glass layer that is laminated to a fire-rated glass layer, Plaintiffs respectfully direct the Court's attention to FIG. 5 of the '475 Patent. As depicted therein, the structural glass layers are laminated to fire-rated glass layers, but the load applied to the upper surface of the structural glass layers by people walking across them is transferred to the structural frame by the LTM (64 and 72), rather than through the "spacer" layer to the fire-rated glass layers and then to the structural frame.

### C.   The Second Layer of Glass . . .

Contrary to Defendant's suggestion on page 16 of its Responsive Brief (Dkt. No. 92), Plaintiffs do not dispute that this particular claim term does not cover a laminated structure such as shown in FIG. 5 of the '475 Patent. Indeed, the language of the claim itself (claim 21) precludes the possibility of a laminated structure by expressly requiring "a small gap" be present between the structural glass layer and the fire-rated glass layer. Plaintiffs have never argued for any interpretation or construction to the contrary.

Plaintiffs, however, do contend that this claim term permits, and indeed requires, that the fire-rated glass layer hang from the structural glass layer. Such is the plain and ordinary meaning to a POSA of the phrase "the [fire-rated glass layer] is suspended from [the structural glass layer]"

in this claim term.  And, as noted above, this embodiment is depicted in FIG. 6, described at col. 3, ll. 19-21 and col. 7, ll. 21-63 of the specification, and <u>expressly claimed</u> in claims 21, 23, and 34 of the '475 Patent.

Defendant erroneously asserts on page 16 of its Responsive Brief (Dkt. No. 92) that Plaintiffs are expanding the scope of the patent claims to cover a French patent cited during prosecution of the '475 Patent, which Defendant purports discloses a fire glass layer and a structural glass layer held together by a glazing bead and metal bar.  Even if Defendant's characterization of the reference is accurate, however, a point which Plaintiffs do not concede, Defendant implicitly admits that this French patent does not teach or suggest the inventive LTMs. Defendant's suggestion that Plaintiffs' proposed construction would somehow ensnare the prior art is therefore belied by the evidence of record, including the prosecution history of the '475 Patent.

It is beyond dispute that the '475 Patent discloses and expressly claims an embodiment of the present invention where the lower fire-rated glass layer is suspended from or hangs from the upper structural glass layer, for example, by means of a glazing bar and structural silicone.  *See*, *e.g.*, cl. 23.  Defendant can offer no justification for excluding this embodiment from claim 21, particularly since claim 23 (which expressly claims it) depends directly therefrom.

### D.      The Load Transferring Means . . .

To the extent that Defendant relies on its definition of "bypassing" to support its proposed construction of this term, Plaintiffs incorporate by reference their arguments above as to the flaws and defects in Defendant's definition of "bypassing" in the context of the claims at issue, including the fact that Defendant's proposed construction excludes embodiments disclosed in the specification and expressly claimed in the '475 Patent.

In addition, with respect to Defendant's arguments regarding the use of "at least some of" in Plaintiffs' proposed construction, Plaintiffs do not disagree that all of the load applied to the structural glass layer is transferred by the LTMs to the structural frame as the fire-rated glass is consumed by fire – if it were otherwise, then the stability and structural integrity of the structural glass layer would be compromised and people would not be able to traverse it in order to escape

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

the building safely.  The fact that the inventive flooring system can still bear an applied load after being exposed to fire for nearly two hours is fairly incontrovertible proof that the LTMs are transferring the applied load to the structural frame and not to whatever remnants the fire-rated glass layer may still be present below.

As practical matter, however, there will generally be more than one LTM present in any real world application.  Consequently, no single LTM will take <u>all</u> of the weight of the load applied to the structural glass layer – rather, the applied load will be distributed across all of the LTMs (such that each LTM bears "at least some of" the applied load).  Plaintiffs therefore respectfully submit that it is more appropriate to refer to "at least some of" the applied load instead of "all of" the applied load.

### E.    Comprising a First Layer of Glass . . .

Ignoring the evidence of record in this case, Defendant baldly asserts that "Plaintiffs' proposed construction has no intrinsic or extrinsic support." Dkt No. 92 at 18.  Plaintiffs' proposed construction, however, is fully supported by both the intrinsic and extrinsic evidence here.  The specification, for example, discloses CONTRAFLAM® LITE as a suitable fire-rated glass.  As a POSA would know, and as Plaintiffs showed in the figures on page 15 of their Opening Brief (Dkt. No. 85), one of which is reproduced below, CONTRAFLAM® LITE is commercially available in embodiments which have a sealed airspace between two of the sheets of glass:

sealed airspace                        intumescent material



*See* Dkt. No. 85-2 at ¶¶ 125-127.  Defendant's contention that fire-rated glass must have intumescent material between each and every sheet of glass in the fire-rated glass layer is therefore belied by the intrinsic and extrinsic evidence here.

Defendant contends that Plaintiffs' proposed construction would include a fire-rated glass layer with intumescent material "on the outside of" the glass sheets.  Such is simply not true.

DICKINSON WRIGHT PLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

1    Contrary to Defendant's contention, Plaintiff's proposed construction expressly requires that the

2    intumescent material be "<u>between</u> at least two of the glass sheets" of the fire-rated glass layer

3    (emphasis added).  Defendant's contention therefore has no basis in fact.

### F.    The Distance from the Upper Surface . . .

Consistent with its overall effort to introduce the concept of a mandatory "gap or separation" between the structural glass layer and the fire-rated glass layer, Defendant now seeks to impose a minimum value on that separation.  In particular, despite there being no reference to any gap or separation between the glass layers in the language of the claim itself, much less any numerical value therefor, Defendant nevertheless seeks to require the structural glass layer and fire-rated glass layer to be at least a minimum fixed length apart.

There is nothing inherent in the phrase "less than 50 mm" that requires a <u>minimum</u> value. As a POSA would recognize, the claim places only a maximum value on the distance between the structural glass layer and fire-rated glass layer.  Defendant's proposed construction improperly attempts to import a limitation from the specification into the claims.  Moreover, FIG. 5 of the '475 Patent specifically shows an embodiment of the present invention where there is no gap or separation between any of the layers.  Defendant's proposed construction would therefore exclude this embodiment from the scope of claim 2, a result that cannot be justified based on the prosecution history of the '475 Patent.

### G.    The First Layer of Glass . . .

The dispute between the parties boils down essentially to whether this term excludes a laminated structure from the scope of claim 24.  As it has done fairly consistently through these proceedings, since it seems to think that such an exclusion gives rise to a potential non-infringement position, Defendant, of course, contends that it does, *i.e.* that this term somehow precludes the structural glass layer from being bonded or laminated to the fire-rated glass layer. Plaintiffs disagree.

Without wishing to overly belabor the point, Plaintiffs respectfully direct the Court's attention to FIG. 5 in the '475 Patent.  As depicted there, even though the structural glass layers (62, 63) are bonded/ laminated to the fire-rated glass layers (66, 67) by the "spacer" layer, the

Dickinson Wright PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

structural glass layers (and any load applied thereto) are supported by the LTM (72 and 64) and the fire-rated glass layers are supported by the structural frame (61). Defendant's attempt to exclude this embodiment from the claims is legally improper. Defendant's proposed construction cannot be correct.

### H.    Load Transferring Means Comprises . . .

Defendant's proposed construction precludes the fire-rated glass layer from being suspended from the structural glass layer, because such a configuration results in the load from (or of) the fire-glass layer being taken by the structural glass layer and passed through the LTMs to the structural frame. Since such a configuration is depicted in FIG. 6, it would be error to exclude it from the scope of the claims, particularly claim 24, absent some compelling evidence of a disavowal or disclaimer in the prosecution history. Defendant has proffered no such evidence, and so Defendant's proposed construction cannot be correct.

### I.    Glazing Bar

Defendant does not dispute or contest the fact that its proposed construction is inapplicable to the term "glazing bar" in the context in which it is used in claims 23, 34, and 35, and in which it is shown in FIG. 6 and described in the specification at col. 7, ll. 21-63. That is, in each of those uses, the "glazing bar" is used to help suspend the fire-rated glass layer from the structural glass layer. The glazing bar does not, however, take any of the load applied to the structural glass layer -- indeed, if it did, it would necessarily transfer that load to the fire-rated glass layer in the embodiment claimed in claim 35, a concept to which Defendant has been adamantly opposed. Defendant's proposed construction therefore cannot be correct since it does not apply to term "glazing bar" when it is used in claims 23, 34, and 35 and Defendant has offered no reason why the term should have one construction in claim 11 and a completely different meaning construction in the other claims of the '475 Patent.

## IV.    CONCLUSION

For at least these reasons, and those provided in Plaintiff's Opening Claim Construction Brief, Plaintiffs urge the Court to reject Defendant's self-serving proposed constructions and adopt those proposed by Plaintiffs.

DICKINSONWRIGHTPLLC

800 W. California Avenue, Suite 110
Sunnyvale, CA 94086

1  Dated: November 12, 2019       Respectfully submitted,

2                 DICKINSON WRIGHT PLLC

3                 By: */s/ Donald R. McPhail*

4                   Donald R. McPhail
                    (Admitted *Pro Hac Vice*)

5

6                 ***Attorneys for Plaintiffs***
                 ***Ely Holdings Limited and***

7                 ***Greenlite Glass Systems Inc.***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086