1  Donald R. McPhail (admitted *pro hac vice*)
   Email: dmcphail@dickinsonwright.com
2  DICKINSON WRIGHT PLLC
   International Square
3  1825 Eye St. N.W., Suite 900
   Washington, D.C. 20006
4  Telephone: (202) 457-0160
   Facsimile: (844) 670-6009
5

6  Jonathan D. Baker (State Bar No. 196062)
   Email: jdbaker@dickinsonwright.com
7  DICKINSON WRIGHT PLLC
   800 W. California Avenue, Suite 110
8  Sunnyvale, CA 94086
   Telephone: (408) 701-6100
9  Facsimile: (844) 670-6009

10
   Ryan O. White (admitted *pro hac vice*)
11 Email: rwhite@taftlaw.com
   Elizabeth Shuster (admitted *pro hac vice*)
12 Email: eshuster@taftlaw.com
   TAFT STETTINIUS & HOLLISTER LLP
13 One Indiana Square, Suite 3500
   Indianapolis, IN 46204
14 Telephone: (317) 713-3500
   Facsimile: (317) 713-3699
15
   *Attorneys for Plaintiffs*
16 *Ely Holdings Limited and*
   *Greenlite Glass Systems Inc.*
17

Mark Isaac Schickman (SBN 62653)
FREELAND COOPER & FOREMAN LLP
150 Spear Street
Suite 1800
San Francisco, CA 94105
415-541-0200
Fax: 415-495-4332
Email: mis@freelandlaw.com

Cathleen Sumiko Yonahara
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, CA 94105
415-541-0200
Fax: 415-495-4332
Email: yonahara@freelandlaw.com

Theodore J. Bielen , Jr. (SBN 56395)
BIELEN LAMPE & THOEMING, P.A.
1390 Willow Pass Road, Suite 1020
Concord, CA 94520
(925) 288-9720
Fax: (925) 288-9731
Email: bielenlt@yahoo.com

*Attorneys for Defendant*
*O'Keeffe's, Inc. d/b/a SAFTI FIRST,*
*a California corporation*

18                    UNITED STATES DISTRICT COURT

19                   NORTHERN DISTRICT OF CALIFORNIA

20                      SAN FRANCISCO DIVISION

21
   ELY HOLDINGS LIMITED, a United Kingdom
22 company, and
   GREENLITE GLASS SYSTEMS INC., a
23 Canadian Company,

24            Plaintiff,

25       v.

26 O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a
   California corporation,
27
              Defendant.
28

Case No. 3:18-cv-06721 JCS

**DECEMBER 12, 2019 UPDATED JOINT
CASE MANAGEMENT STATEMENT**

1  The Parties to the above-entitled action, Plaintiffs Ely Holdings Limited ("Ely") and

2  Greenlite Glass Systems Inc. ("Greenlite")(Ely and Greenlite collectively "Plaintiffs") and

3  Defendant O'Keeffe's, Inc. d/b/a Safti First ("SAFTI")(Plaintiffs and SAFTI collectively "the

4  Parties"), jointly submit this UPDATED JOINT CASE MANAGEMENT STATEMENT pursuant

5  to this Court's March 18, 2019 Order (Dkt. No. 36) and November 6, 2018 Order (Dkt. No. 6), the

6  Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9.

7  **1.      Jurisdiction & Service**

8  This Court has subject matter over Plaintiffs' patent claims and SAFTI's counterclaims

9  pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper within this judicial district pursuant to

10  28 U.S.C. §§ 1391(b)-(d) and 1400(b). Venue and personal jurisdiction are not contested.  Service

11  has been effected on all of the Parties.[1]

12  **2.      Facts**

13      **a.      Plaintiffs' Statement**

14  Plaintiffs bring claims against SAFTI for willful infringement of U.S. Patent No. 7,694,475

15  ("the '475 Patent"). Plaintiffs seek monetary damages for this infringement in the form of lost

16  profits and price erosion damages, but in no event less than a reasonable royalty, as well as an

17  injunction precluding future infringement.

18  Some twenty-plus years ago, the inventor of the '475 Patent, Michael Rae, was faced with a

19  problem – he was looking to expand his glass floor business and was being told by architects that he

20  would have to include fire-rated glass in any glass floor system that was to be used in a residential

21  or commercial structure.  Fire-rated glass, however, was (and is)  manufactured to include

22  alternating layers of glass and an intumescent material, and was (and is) designed so that the layer

---

[1]Greenlite intends to move the Court for leave to file a second amended complaint in order to assert additional claims under the **(i)** Lanham Act, 15 U.S.C. § 1125; **(ii)** California Business & Professions Code §§17200 and 17500, et seq.; and **(iii)** California common law on tortious and negligent interference. The Court will have subject matter jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and jurisdiction over the state law claims under 28 U.S.C. § 1367.  Venue will be proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d).

1   closest to the fire will break as the intumescent layer behind it heats up and swells to form an

2   opaque insulating layer.  The opaque insulating layer is eventually consumed by fire, exposing the

3   glass behind it to the fire which causes that glass to break as the intumescent material behind it

4   heats up and swells.  This process is repeated until all the layers of the fire-rated glass are consumed

5   by fire.

6          Thus, when used in flooring where the fire-rated glass rests on a beam or frame, as the lower

7   layer(s) are exposed to fire coming up from below and begin to break/swell, the fire-rated glass

8   becomes unstable and cannot bear the loads associated with normal foot traffic without failing.

9   Attempts to solve this problem by adding a layer of structural glass above the fire-rated glass

10  required a large gap between the structural glass and the fire-rated glass, with the structural glass

11  resting on a top flange of a steel beam and the fire-rated glass on a bottom flange.   This

12  arrangement ensured that the structural integrity of the floor would be maintained even after the

13  fire-rated glass was exposed to fire and the layers thereof began to break/swell, thereby enabling

14  people inside the building to safely evacuate by walking on the structural glass.  Such large gaps,

15  however, were unsightly, and therefore undesirable in architectural applications, and, because they

16  could not be adequately sealed, often gave rise to problems such as condensation forming between

17  the structural glass and the fire-rated glass.

18         Trained as an engineer, Mr. Rae thought he could find a better way of framing structural

19  glass and fire-rated glass that would avoid this large gap and yet still preserve the integrity of the

20  structural glass when the fire-rated glass was exposed to fire.  His solution was the load transferring

21  means described and claimed in the '475 Patent, which issued on April 13, 2010.   This load

22  transferring means enabled the fire-rated glass to be located immediately below the structural glass,

23  yet ensured that any load on the structural glass was not transferred to the fire-rated glass (but,

24  instead, was transferred to the frame).  Thus, even as the glass layers of the fire-rated glass break

25  and the intumescent material swells, the structural glass can still bear the weight of foot traffic and

26  permit people to continue to walk across the area, even during a fire, and safely escape.

27  Revolutionary in its elegance, Mr. Rae's floor system, which can be installed either as a single piece

28  or as two separate pieces, became a great success and was widely sought after for use in various

1    construction projects.

2         After learning of Mr. Rae's patented glass floor system, however, SAFTI had a different

3    response, willfully misappropriating Ely's intellectual property and then, for good measure,

4    engaging in a campaign to mislead the relevant market into believing that Mr. Rae's novel floor

5    system was, in fact, SAFTI's product.  At least as early as 2015, SAFTI began selling a knock-off

6    of Mr. Rae's patented floor system in direct competition with Plaintiffs.  SAFTI was ultimately

7    successful in sowing confusion in the marketplace and thereby forcing Plaintiffs to either reduce

8    their price or lose jobs completely.

9         In fact, SAFTI is not only manufacturing and selling an infringing floor system—all the

10   while making false and misleading representations regarding its qualities and characteristics to the

11   marketplace—it has also made false and misleading representations regarding the nature,

12   characteristics, qualities, and geographic origins of *Greenlite's* patented floor system. Plaintiffs

13   learned of these false and misleading representations through SAFTI's initial document productions

14   in this case. As a result, SAFTI has not only engaged and is currently engaging in willful patent

15   infringement, it has also violated the Lanham Act and California statutory and common law through

16   its false and misleading representations about Greenlite. These newly discovered facts give rise to

17   additional claims against SAFTI which, as stated above, Greenlite intends to seek leave to file.

18        Moreover, to add insult to injury, around the same time it started selling its knock-off,

19   SAFTI filed its own patent application to a trivial modification of the load bearing means of the

20   floor system claimed in the '475 Patent.  SAFTI did not, however, disclose the '475 Patent to the

21   examiner at the U.S. Patent & Trademark Office, despite being aware of it and its relevance to

22   SAFTI's alleged invention.  Because of that failure, SAFTI was ultimately able to get its patent

23   application to issue in March, 2018, as U.S. Patent No. 9,926,709 ("the '709 Patent").

24        Since the '709 Patent issued, SAFTI has represented and continues to represent to the public

25   that it covers the accused products.  Unfortunately for SAFTI, the '709 Patent actually dooms

26   SAFTI in this litigation.  SAFTI's own written description of the accused products confirms that

27   each and every limitation of the '475 patent is identically found in the accused products.

28

**b.    SAFTI's Statement**

Since before 1980, O'Keeffe's, and its SAFTI division, has designed and manufactured fire and safety rated architectural glass products and moved the industry away from the dangerous wired glass which had been the architectural standard for fire and safety rated applications.   SAFTI was the first company to develop and market American made safety and fire listed and labeled clear glass wall and door assemblies.

Throughout its manufacturing history, SAFTI has successfully grappled with the challenge of creating architectural glass units which satisfied two separate stringent requirements, maintaining fire resistance while satisfying strength requirements -- -- for example, window walls in skyscrapers which must resist an hour of fire while making sure that people and objects do not break through the windows to the street far below.

SAFTI's president and chief executive officer, William O'Keeffe, invented and patented a one piece flooring system which accomplished both fire and safety objectives, allowed for adjustment in the field to accommodate factors such as variances in building tolerances and changes in drainage needs, and which could be installed in a single application. SAFTI developed and tested its glass fire floor system in 2015.  Mr. O'Keeffe obtained a patent for the fire rated floor in March, 2018. All of the above innovations were invented by Mr. O'Keeffe without any reference to or reliance upon any Ely product or patent.

Plaintiff Ely Holdings patented a quite different product, upon which it sues in this action. Ely's patented product is not adjustable, is comprised of two levels of glass separated by less than 50 mm, must be installed in two separate applications and contains a load bearing feature which supports and transfers the load from the top level and bypasses the second.  The SAFTI product contains none of those features.  Ely's patent sued upon herein, and Mr. O'Keeffe's patent are materially and significantly different. Rather, Ely's product is an obvious construction, presenting two separate levels, one installed under and independently of the other.  That obvious presentation, is not innovative and should never have been patented.

SAFTI has never encountered Ely in the competitive marketplace, but through this litigation has discovered that Ely has licensed its patent to SAFTI's competitor (and Ely's strategic partners)

1   Greenlite Glass Systems (a Canadian company) and Vetrotech-Saint Gobain (a European company).

2   In the past year Greenlite has copied SAFTI's superior single floor product, manufactured with

3   Vetrotech's European glass and other parts; it has unlawfully pawned off those European goods as

4   "Made in America", and has made the knowingly false accusation to design and construction

5   professionals that it makes the only fire glass floor system available in and for the United states

6   market.  SAFTI's pending action against Greenlite alleges, *inter alia*, those wrongs.  If discovery

7   discloses that Vetrotech-Saint Gobain acted in concert with Greenlite in that false advertising,

8   unfair competition and infringement upon Mr. O'Keeffe's patent, SAFTI will move to amend its

9   counterclaim to so allege.

10  **3.      Legal Issues**

11          **a.      Plaintiffs' Statement**

12          Plaintiffs bring claims against SAFTI for direct infringement of U.S. Patent No. 7,694,475

13  ("the '475 Patent") pursuant to 35 U.S.C. § 271(a) and for indirect infringement of the '475 Patent

14  pursuant to 35 U.S.C. § 271(b) and (c). Plaintiffs further seek a judgment that SAFTI's infringement

15  has been and continues to be willful. *See Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 579 U.S.

16  ___, 136 S. Ct. 1923 (2016).

17          Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the

18  form of lost profits and price erosion damages, but in no event less than a reasonable royalty.

19  Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by

20  SAFTI. Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement of

21  damages pursuant to 35 U.S.C. § 284. Because this is an exceptional case, Plaintiffs also seek their

22  attorneys' fees pursuant to 35 U.S.C. § 285.[2]

23          **b.      SAFTI's Statement**

24          SAFTI denies infringement of U.S. Patent 7,674,475 by the manufacturing, use, and/or sale

25

26  [2]Greenlite will seek injunctive relief and monetary and treble damages under its Lanham Act
    claims, pursuant to 15 U.S.C. §§ 116(a) and 1117(a).  Greenlite will also seek attorney's fees, as
27  this case is an exceptional one. *Id.* Greenlite will also seek monetary damages under its state law
28  claims.

1   of its unique glass floor product. SAFTI also seeks a judgment of invalidity of the 7,694,475 patent

2   based on United States Code Sections 101, 102, 103, and/or 112, and a declaration that this is an

3   exceptional case entitling it to an award of attorneys' fees, costs and expenses.

4         SAFTI will seek all available damages on its counterclaims, including penalties, attorneys'

5   fees and interest, disgorgement of profits and recovery of damages caused to SAFTI stemming from

6   Counter defendants' unfair competition and Lanham Act violations.

7   **4.    Motions**

8         Plaintiffs currently have three pending motions:

9   - **Motion for Limited Relief from the Protective Order (Dkt. No. 102):**[3] As discussed in

10  the Motion, Plaintiffs seek leave from Section 7.3 of the Protective Order (Dkt. No. 44) in

11  order to disclose shop drawings that they possess and that SAFTI produced in discovery in a

12  related but separate action. This separate action is the post grant review[4] on the validity of

13  SAFTI's '709 Patent. Plaintiffs contend that these shop drawings are relevant to the

14  invalidity of the '709 Patent under 35 U.S.C. §102's "on sale bar."

15

16  - **Motion to Shorten Time for Motion for Limited Relief from the Protective Order (Dkt.**

17  **No. 103):** Plaintiffs seek an accelerated determination of its Motion for Limited Relief from

18  the Protective Order, discussed in the first bullet point above, on ***December 19, 2019***, the

19  same date as the Markman Hearing.

20

21  - **Administrative Motion to File Under Seal Portions of Its Motion for Limited Relief**
    **from the Protective Order (Dkt. No. 101):** Plaintiffs seek leave to file an unredacted

22  version of the Motion for Limited Relief, discussed in the first bullet point above.[5] Plaintiffs
    redacted certain information referenced in and Exhibit A to the Motion in order to comply

23  with the Protective Order's treatment of designated confidential information.

24       The parties each anticipate filing a motion for summary judgment at the close of discovery

25  _____

26  [3]SAFTI will file its Memorandum in Opposition by (Dkt. No. 104) on December 17, 2019.
    Plaintiffs will file their Reply Memorandum in Support on December 24, 2019.

27  [4]Case No. PGR2019-00025, pending before the United States Patent and Trademark Office's Patent
    Trial and Appeal Board.

28  [5]Plaintiffs filed a redacted version of this Motion.

1  in this case, or at such other time as the Court may permit. The parties do not currently intend to file

2  any other dispositive motions, but reserve the right to do so.

3  **5.      Amendment of Pleadings**

4  On May 16, 2019, Plaintiffs filed a First Amended Complaint (Dkt. No. 49) adding

5  Greenlite as a Party and SAFTI filed its Answer on May 31, 2019. On August 22, 2019, SAFTI

6  filed an Amended Answer and Counterclaim, which Plaintiffs answered on September 5, 2019. As

7  stated above, Plaintiffs intend to file a motion for leave to file a second amended complaint, and

8  defendant may file a motion for leave to add Vetrotech-Saint Gobain as a party to this action.

9  **6.      Evidence Preservation**

10  The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored

11  Information ("ESI Guidelines"), and have met and conferred pursuant to Fed. R. Civ. P. 26(f)

12  regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues

13  reasonably evident in this action.

14  **7.      Disclosures**

15  The Parties exchanged the initial disclosures required by Fed. R. Civ. P. 26 in February of

16  2019. On March 22, 2019, Plaintiffs served the disclosures required by Patent Local Rule 3-1, and

17  on May 6, 2019, O'Keeffe's served the disclosures required by Patent Local Rule 3-3.

18  **8.      Discovery**

19  The Parties have exchanged written discovery and have exchanged a limited amount of

20  documents. Documents obtained by third parties have also been produced and exchanged.

21  The Parties are in the process of meeting and conferring on the production of electronically-

22  stored information ("ESI"). The parties have exchanged proposed search terms and proposed ESI

23  custodial searches. The Parties are exchanging objections to any proposed ESI search terms and ESI

24  custodial searches on December 13, 2019 and will meet-and-confer on objections, if any, on

25  December 16, 2019. Plaintiffs also recently proposed an ESI protocol to govern over and to

26  accomplish an orderly process for ESI discovery, which defendant is reviewing.

27  Plaintiffs anticipate taking discovery on all relevant issues in this case, including whether

28  SAFTI has infringed the '475 patent, both directly and indirectly, whether such infringement was

1   willful, SAFTI's violations of 15 U.S.C. §1125 and California state law, and the damages suffered

2   by Plaintiffs due to SAFTI's alleged infringements and unfair competition.

3          SAFTI anticipates taking discovery on all relevant issues in this case, including whether

4   Ely's patent is valid, whether Ely's patent has achieved commercial success, whether plaintiffs

5   suffered damages or loss of sales of the patented product and, if so, whether such damage or loss of

6   sales was caused by SAFTI, whether any alleged damage or loss of sales was caused by s sales of

7   other product which competes with a patented product, and whether plaintiffs have abandoned the

8   patented product. SAFTI also anticipates taking discovery regarding Counter Defendants' conduct

9   constituting unfair competition, false advertising and false statements of origin, and the damage it

10  has caused and the profits it has obtained thereby.

11         The Parties suggest that the timing of and limits on discovery be governed by the Federal

12  Rules of Civil Procedure and the Local Rules of this Court.

13         The Parties have entered into a stipulated e-discovery order.

14         The first phase of fact discovery was completed August 2, 2019, in advance of the Markman

15  hearing. The second phase of fact discovery will conclude fact discovery and will be completed by

16  June 30, 2020[6] or not more than ninety (90) days after the Court issues its claim construction order,

17  whichever is later. Expert discovery will be conducted after the close of fact discovery and will be

18  completed by August 3, 2020.

19         The Parties are not aware of any present discovery disputes but will inform the Court

20  promptly if any such dispute arises in the future.  The parties may have a disagreement of the

21  meaning of the following sentence from the Court's Order on ESI (Dkt. No. 33), paragraph 11:

22  "Each requesting party shall limit its *email production requests to a total of fifteen search terms*

23  *per custodian per party.*" (emphasis added).  The parties are meeting-and-conferring on this point

24  on December 16, 2019, and may be providing further search terms depending upon the resolution of

25  the outstanding ESI discovery issues.

26

27

28

**a.   Rule 26(f)(3)(A): What changes should be made in the timing, form, or requirement for disclosures under Rules 26(a), including a statement of when initial disclosures were made or will be made?**

Pursuant to this Court's Order Setting Initial Case Management Conference and ADR Deadlines (Dkt. No. 6), the Parties exchanged initial disclosures in February of 2019.

**b.   Rule 26(f)(3)(B): The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

Plaintiffs anticipate taking discovery on all relevant issues in this case, including whether SAFTI has infringed the '475 patent, both directly and indirectly, whether such infringement was willful, SAFTI's violation of the Lanham Act and California state law, and the damages suffered by Plaintiffs due to SAFTI's alleged infringement and unfair competition.

SAFTI anticipates taking discovery on all relevant issues in this case, including whether Ely's patent is valid, whether Ely's patent has achieved commercial success, whether Ely suffered damages or loss of sales of the patented product and, if so, whether such damage or loss of sales was caused by SAFTI, whether any alleged damage or loss of sales was caused by Ely's sales of other product which competes with a patented product, and whether Ely has abandoned the patented product. SAFTI also anticipates discovery into Counter Defendants' violation of the Lanham Act and California state unfair competition law, and the damages suffered by SAFTI's due to Counter Defendants' infringement, misrepresentations and unfair competition

**c.   Rule 26(f)(3)(C): Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

*See* above discussion on ESI in paragraph 8. The Parties are not currently aware of any issues about disclosure or discovery of electronically stored information. The Parties have entered into a stipulated e-discovery order.

**d.   Rule 26(f)(3)(D): Any issues about claims of privilege or of protection as trial-preparation materials, including – if the Parties agree on a procedure to assert such claims after production – whether to ask the Court to include their agreement in the order.**

In light of the fact that disclosure of confidential and/or proprietary information may be necessary in this case, the Parties submitted a Stipulated Protective Order to the Court. The Parties

1  agreed that privileged communications and documents covered by the attorney work product

2  doctrine and dated after the filing of this lawsuit need not be included in any privilege log. All other

3  limitations on discovery imposed by the Federal Rules of Civil Procedure shall apply, absent a

4  stipulation by the Parties approved by the Court.

5  The Parties do not presently anticipate any issues relating to claims of privilege or of

6  protection of trial-preparation material. The Parties agree to address any such issues in the event

7  that they arise and to promptly inform the Court should assistance be required.

8  **e.     Rule 26(f)(3)(E): What changes should be made in the limitations on discovery**
9  **imposed under these rules or by local rule, and what other limitations should be imposed?**

10  **(i)     Requests for Admission**

11  Each Party is limited to fifty (50) requests for admission, excluding those directed solely to

12  authenticating exhibits for trial.

13  **(ii)     Depositions**

14  Each Party is limited to seventy (70) hours of deposition, and no more than twenty (20) total

15  depositions, excluding experts and deponents pursuant to Fed. R. Civ. Proc. 45. Expert witness

16  depositions and depositions taken pursuant to Fed. R. Civ. Proc. 45 will not count against the

17  deposition time or number limits described above. Expert witness depositions will be limited to

18  seven (7) hours each per report served.

19  **(iii)     Agreement to Serve by Email**

20  The Parties agreed to serve interrogatories, document requests, deposition notices, and

21  requests for admission, and all responses thereto, on each other via email to at least three attorneys

22  of record appearing for the receiving Party (hardcopies to follow by mail, if so requested). The

23  Parties further agreed that service of a complete copy of these documents via email shall count as

24  service by hand on the next business day.

25  **f.     Rule 26(f)(3)(F): Any other order that the Court should issue under Rule 26(c)**
26  **or under Rule 16(b) and (c).**

27  Other than the possible stipulated ESI Protocol discussed in paragraph 8, and to the extent

28  the Motion for Relief from the Protective Order and other motions discussed in paragraph 4

1  implicate Rule 26(c), the Parties do not request any other orders under Rule 26(c) or under Rule

2  16(b) and (c) at this time.

3  **9.    Class Actions**

4         The above-identified action is not a class action.

5  **10.   Related Cases**

6         There are no cases or proceedings pending before another judge of this court, or before

7  another court or administrative body, that are related to the patent involved in the above-identified

8  action. Ely has, however, petitioned the U.S. Patent & Trademark Office to institute a Post Grant

9  Review of U.S. Patent 9,926,709, which names William O'Keeffe, CEO of SAFTI, as the inventor,

10 as discussed above.

11 **11.   Relief**

12        Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the

13 form of lost profits and price erosion damages, but in no event less than a reasonable royalty.

14 Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by

15 SAFTI.  Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement

16 of damages pursuant to 35 U.S.C. § 284. Because this is an exceptional case, Plaintiffs also seek

17 their attorneys' fees pursuant to 35 U.S.C. § 285.

18        As stated above in footnote no. 2, Greenlite will also seek damages and injunctive relief for

19 SAFTI's violation of the Lanham Act and California state law.

20        SAFTI seeks a judgment of invalidity of the 7,694,475 patent based on U.S.C. §§ 101, 102,

21 103, and/or 112, and a declaration that this is an exceptional case entitling it to an award of

22 attorneys' fees, costs and expenses. SAFTI reserves the right to seek other relief if authorized and

23 justified by discovery in this action. SAFTI will also seek damages and injunctive relief for Counter

24 defendant's violation of the Lanham Act and California state law.

25 **12.   Settlement and ADR**

26        On May 2, 2019, the Parties participated in Early Neutral Evaluation (ENE), but were not

27 successful in settling this matter. The Parties intend to participate, if necessary, in Mediation after

28 this Court issues its Claim Construction Order.

1    The Parties continue to believe that the Court's Claim Construction Order may facilitate the

2    negotiation of a resolution.

3    **13.    Consent to Magistrate Judge for All Purposes**

4    The Parties have previously consented to have the Magistrate Judge conduct all further

5    proceedings including trial and entry of judgment (Dkt. Nos, 10, 17).

6    **14.    Other References**

7    The Parties do not believe that this case is suitable for reference to binding arbitration, a

8    special master, or the Judicial Panel on Multidistrict Litigation.

9    **15.    Narrowing of Issues**

10    The Parties will continue to seek to narrow the disputed legal issues through the Patent

11    Local Rule disclosure requirements, written discovery, depositions, and motions practice, including

12    motions for summary judgement.

13    **16.    Expedited Trial Procedure**

14    The Parties do not believe that this is the type of case that can be handled under the

15    Expedited Trial Procedure of General Order 64, Attachment A.

16    **17.    Scheduling**

17    The Parties suggest that, subject to the Court's availability, the pre-trial conference and the

18    trial occur by December of 2020.

19    **18.    Trial**

20    Plaintiffs have made a demand for a jury and currently estimates that they will need 2-3 days

21    to put on its case. SAFTI also estimates that it will need 2-3 days to present its case and defenses.

22    **19.    Disclosure of Non-party Interested Entities or Persons**

23    The Parties have both filed the "Certification of Interested Entities or Persons" required by

24    Civil Local Rule 3-15 (Dkt. Nos. 3, 13).

25    Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the

26    named parties, *i.e.* Ely Holdings Limited and Greenlite Glass Systems Inc., there is no such interest

27    to report.

28    Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the

1   named party, O'Keeffe's, Inc., there is no such interest to report.

2   **20.   Professional Conduct**

3          All attorneys of record for the Parties have reviewed the Guidelines for Professional

4   Conduct for the Northern District of California.

5   **21.   Other - Additional Topics Pursuant to Patent Local Rule 2-1(B)**

6          **a.   Proposed modification of the obligations or deadlines set forth in these Patent
              Local Rules to ensure that they are suitable for the circumstances of the
7             particular case (see Patent L.R. 13)**

8          The Parties do not believe that any changes need to be made to the obligations or deadlines

9   set forth in this Court's Patent Local Rules.

10         **b.   The scope and timing of any claim construction discovery (including disclosure
              of and discovery from any expert witness permitted by the court) and damages
11            discovery.**

12         The Markman Hearing is set for December 19, 2019.

13         **c.   The format of the Claim Construction Hearing, including whether the Court
              will hear live testimony, the order of presentation, and the estimated length of
14            the hearing.**

15         The Court has ordered that the Claim Construction hearing be conducted in-person, but that

16  no live testimony be presented (although the Court has ordered that the Parties' respective experts

17  be in attendance). As to the order of presentation, the Parties suggest that Plaintiffs, as the patent

18  owner, go first on each disputed term, with a response from SAFTI, and a reply from Plaintiffs. If,

19  however, the Court provides a preliminary construction for any disputed term, the Parties suggest

20  that the Party opposing the Court's preliminary construction go first, with a response from the Party

21  agreeing with the Court's preliminary construction, and then a reply from the Party opposing. The

22  Parties estimate that the Claim Construction hearing should take no more than one day.

23         **d.   How the parties intend to educate the Court on the technology at issue.**

24         The Court has ordered that a technology tutorial be presented for the benefit of the Court on

25  the same day as the Markman hearing. There will be no live testimony at the tutorial. The Parties

26  still estimate that the tutorial should take no more than one (1) hour, with the time split evenly

27  between the Parties.

28

Dated: December 12, 2019                          Respectfully submitted,

DICKINSON WRIGHT PLLC                 FREEMAN, COOPER & FOREMAN

*/s/ Donald R. McPhail*                          */s/ Mark Isaac Schickman*
Donald R. McPhail (admitted *pro hac vice*)      Mark Isaac Schickman (SBN 62653)

**Attorneys for Plaintiffs**                     **Attorneys for Defendant**
**Ely Holdings Limited and**                     **O'Keeffe's, Inc. d/b/a SAFTI**
**Greenlite Glass Systems Inc.**                 **FIRST, a California corporation**

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated:  December 12, 2019                 DICKINSON WRIGHT PLLC

                                          */s/ Donald R. McPhail*
                                          Donald R. McPhail (admitted *pro hac vice*)