UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELY HOLDINGS LIMITED, et al.,

Plaintiffs,

v.

O'KEEFFE'S, INC.,

Defendant.

Case No. 18-cv-06721-JCS

**CLAIM CONSTRUCTION ORDER**

Re: Dkt. Nos. 85, 92

## I.    INTRODUCTION

Plaintiffs Ely Holdings Limited and Greenlite Glass Systems Inc. brought this action alleging that Defendant O'Keeffe's, Inc. d/b/a SaftiFirst ("Safti") infringed U.S. Patent No. 7,694,475 (the "'475 patent"), which relates to configurations of structural glass and fire-rated glass in architectural flooring. The parties ask the Court to construe nine disputed terms in the claims of the '475 patent. The Court held a tutorial and hearing on December 19, 2019, and resolves the parties' disputes as discussed below.[1]

The parties shall file supplemental materials no later than January 2, 2020 addressing the nature of certain products cited in the '475 patent.

## II.    BACKGROUND

To summarize at a broad level, the '475 patent describes a glass flooring system in which a layer of structural glass is above a layer of fire-rated glass, but load from the structural glass rests on structural "load transferring means" ("LTMs") that bypass the fire rated glass to transmit that load directly to the structural frame supporting the floor. Embodiments of the invention involve structural glass, fire-rated glass, structural steel, silicone pads and adhesives, and intumescent

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

materials,[2] among other substances. According to its specifications, the '475 patent represents an improvement over prior art in which the two layers were respectively supported on the top and bottom flanges of structural I-beams in that it reduces space between the structural glass and the fire-rated glass and thus produces a more desirable appearance. '475 Patent at 1:20–28, 1:59–67. The specifications also distinguish the '475 patent from an existing system in which the structural and fire-rated layers were directly bonded together and the bottom fire-rated layer carried the full load of the floor, which was limited to 30 minutes of integrity and insulation in the event of a fire, and which required expensive replacement of the entire glass assembly if the surface layer of structural glass was damaged during use. *Id.* at 1:29–33.

Many of the parties' disputes relate to whether or in what circumstances particular claims of the '475 patent encompass configurations where the structural glass layer is bonded to the fire-rated glass layer by some other material, including configurations where the fire-rated glass hangs from the structural glass.

The claims directly relevant to the parties' disputes as to construction are as follows, with the terms in dispute identified with bracketed letters and italics:

> 1. A fire rated glass flooring system comprising:
>
>> a first layer of glass which comprises a structural glass;
>>
>> a second layer of glass which comprises a fire rated glass, wherein the first layer of glass is positioned above the second layer of glass;
>>
>> one or more load transferring means; and
>>
>> a structural frame comprising a plurality of beams and a plurality of cross members interconnecting the beams, wherein the structural frame supports the first and second layers of glass and the one or more load transferring means;
>
> characterized in that
>
>> [*A:*] *the two layers of glass are separated by one or more of the load transferring means*, and
>>
>> at least one of the load transferring means comprises

---

[2] Intumescent material expands when heated in order to serve as insulation in the event of a fire.

United States District Court
Northern District of California

a horizontal portion supporting the first layer of glass above and

[*B*:] *a vertical portion transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass.*

2. A fire rated glass flooring system as claimed in claim 1 wherein [*F*:[3]] *the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm.*

. . .

11. A fire rated glass flooring system as claimed in claim 1 wherein the horizontal portion of the load transferring means is a portion of a [*I*:] *glazing bar.*

. . .

13. A fire rated glass flooring system as claimed in claim 1 wherein the or each load transferring means is located on the structural frame and is of size and shape such that the first layer of glass is supported by the or each load transferring means.

. . .

21. A fire rated glass flooring system as claimed in claim 13 wherein [*C*:] *the second layer of glass is suspended from the first layer of glass such that there is a small gap between the first and second layers of glass.*

. . .

24. A fire rated glass flooring system [*E*:] *comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass,* together with a structural frame supporting the flooring system, wherein the two layers of glass are positioned one above the other, characterized in that the two layers of glass are separated by one or more load transferring means and [*D*:] *the load transferring means transfers load applied to the first layer of glass directly to the structural frame, bypassing the second layer of glass,* and wherein the or each load transferring means together with the structural frame form a C shape having an upper horizontal section, a lower horizontal section and a connecting vertical section, with [*G*:] *the first layer of glass being supported by the or each load transferring means and the second layer of glass being supported by the structural frame.*

25. A fire rated glass flooring system as claimed in claim 24 wherein the [*H*:] *load transferring means comprises a first portion for bearing the load applied to the first layer of glass and a second portion for*

---

[3] This order addresses the disputed terms in the same order and with the same labels as presented by the parties, which is not the order in which they appear in the patent.

*transmitting the load applied to the first layer of glass to the structural frame.*

'475 Patent at 8:39–10:24 (emphasis added).

## III.    LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Generally, claim terms are given the ordinary and customary meaning that would be ascribed to them by a person of ordinary skill in the field of the invention. *Id.* at 1312–13; *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill.").

"[T]he most significant source of the legally operative meaning of disputed claim language" is the "[i]ntrinsic evidence" of record, that is, the claims, the specification and the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  In some cases, the specification may reveal a "special definition" given by the inventor that differs from the meaning the term might otherwise possess.  *Id.* at 1316.  In such instances, "the inventor's lexicography governs." *Id.* Similarly, a specification may reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id.*

While claims are to be construed in light of the specification, courts must be careful not to read limitations from the specification into the claim.  *Phillips*, 415 F.3d at 1323; *see also Howmedica Osteonics Corp. v. Zimmer*, 822 F.3d 1312, 1321 (Fed. Cir. 2016) ("[W]e have observed that there is a fine line between reading a claim *in light of* the written description and reading a limitation into the claim from the written description.").  Thus, for example, if a patent specification describes only a single embodiment of a claimed invention, that does not mean the claims of the patent necessarily must be construed as limited to that embodiment.  *Phillips*, 415

F.3d at 1323.  Rather, the purpose of the specification "is to teach and enable those of skill in the art to make and use the invention" and the best way to do that is often to provide one or more examples.  *See id.*

A person of ordinary skill in the art also looks to the prosecution history of a patent to understand how the patent applicant and the Patent Office understood the claim terms.  *Id.* at 1313, 1317.  Arguments and amendments made during patent prosecution limit the interpretation of claim terms to exclude interpretations that were disclaimed to obtain allowance of a claim.  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  Courts may also use "[e]xtrinsic evidence . . . including expert and inventor testimony, dictionaries, and learned treatises" in construing claim terms if it is necessary, so long as such evidence is not used to "vary[] or contradict[] the terms of the claims."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980–81 (Fed. Cir. 1995).  "This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history."  *Id.* at 980.  The Federal Circuit has warned, however, that such evidence is generally "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Phillips*, 415 F.3d at 1318.  A court must be careful not to elevate extrinsic sources of evidence "to such prominence . . . that it focuses the inquiry on the abstract meaning of the words rather than on the meaning of claim terms within the context of the patent."  *Id.* at 1321–22.

## IV.    ANALYSIS

### A.    "The Two Layers of Glass Are Separated . . ."

The parties dispute the language in claim 1 of the '475 patent reading "**the two layers of glass are separated by one or more of the load transferring means**."  *See* '475 Patent at 8:51–52.

Plaintiffs ask the Court to construe this phrase as follows:

> There are one or more mechanisms having a horizontal portion/upper horizontal section and a vertical portion/connecting vertical section, where the horizontal portion/upper horizontal section is between the structural glass and the fire-rated glass and bears at least some of the weight applied to the structural glass and the vertical section passes that weight to a beam or cross member instead of to the fire-rated glass.

Pls.' Br. (dkt. 85) at 5.  Safti offers a construction that would require complete separation between the two layers of glass:

> the two layers are detached and exist by themselves without touching each other with one or more of the load transferring means lying between the two separated layers, transferring the entire load from the structural glass to a beam or cross member

Def.'s Br. (dkt. 92) at 5.

Both proposed constructions go far beyond the language of the claim. As Safti correctly notes, Plaintiffs' construction—which would allow for the two layers touching one another—disregards the plain meaning of the word "separated."  On the other hand, Safti's requirement that the LTMs transfer the *entire* load of the structural glass does not necessarily follow from the fact that the two layers are "separated."  The Court addresses the issue of what load must or may be supported by the LTMs separately in the context of the next disputed term, also from claim 1, which relates to a vertical portion of the LTM "transferring load" and "bypassing" the fire-rated glass.

The parties dispute the meaning and significance of Figure 5 of the '475 patent, particularly the nature of the unlabeled single-hatched area between the panes of glass (designated as 62, 63 and 66) and extending out to the left and right of the diagram.  Figure 5 appears as follows:



'475 Patent Fig. 5.

According to Plaintiffs, the unlabeled hatched area cannot be empty because 37 C.F.R. § 1.84 "states that hatching . . . is used to depict solid material and not an open space." Pls.' Br. at 6 n.1. Plaintiffs do not cite a particular subpart of that lengthy regulation, but § 1.84(h)(3), describing sectional views, states that "[h]atching must be used to indicate section portions of an object." 37 C.F.R. § 1.84(h)(3). Despite Plaintiffs' heavy and repeated reliance on Figure 5, Safti inexplicably does not address that figure in any way in its brief, except to include a reproduction of it with the hatched area labeled as "GAP," with no explanation of how Safti concluded that it was a gap. Def.'s Br. at 8. Subpart (h)(3) of 37 C.F.R. § 1.84 also includes several sentences suggesting that particular hatching patterns should have consistent meanings within and across different figures. See id.[4] Contrary to Plaintiffs' suggestion that the area in question might be a layer of structural or fire-rated glass, see Pls.' Reply (dkt. 96) at 2–3, the area does not include the double-hatched pattern used in all figures to indicate glass, as Plaintiffs conceded at the hearing.

The specifications of the patent describe Figure 5 as "show[ing] a modified form of the second embodiment of the present invention," '475 Patent at 6:45–46, with the first aspect of the second embodiment described as including "a small gap between the layers," id. at 2:62–63.[5] Although Figure 5 is a "modified" form of the embodiment, the only modification explicitly addressed by the specifications is the addition of the steel plate and screw (72 and 73) used to support the structural glass. See id. at 7:4–8. There is no mention of material filling the space between the layers of glass. The specifications therefore shed no light on what material, if any, might be present between the structural glass and the fire-rated glass.

Even if Figure 5 did not show material between the layers, however, the claims of the

---

[4] "The parts in cross section must show proper material(s) by hatching with regularly spaced parallel oblique strokes . . . . The various parts of a cross section of the same item should be hatched in the same manner and should accurately and graphically indicate the nature of the material(s) that is illustrated in cross section. The hatching of juxtaposed different elements must be angled in a different way. . . . Different types of hatching should have different conventional meanings as regards the nature of a material seen in cross section." 37 C.F.R. § 1.84(h)(3).
[5] The second aspect of the second embodiment, depicted separately in Figure 6, calls for the fire rated glass to be suspended from the structural glass, and thus is not applicable to Figure 5. Regardless, the second aspect also calls for a gap between the layers.

patent may encompass more than what is disclosed in the specifications and figures. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification."). Nothing in the language of this claim calls specifically for air space between the structural glass and the fire-rated glass. The claim merely refers to the layers being separated by LTMs. Safti's expert Dr. Glen Stevick asserts that "separated" should be given its plain meaning. Stevick Opening Report (dkt. 85–24) ¶ 24. Nothing in Dr. Stevick's report alters the Court's view that the plain meaning of "separated" requires nothing more than that the two layers do not touch each other. Safti also relies on analysis of Greenlite's actual product and an article by Rae (the inventor of the '475 patent), both of which, according to Safti, include empty space between the two layers of glass. Def.'s Br. at 9. Safti does not explain why the fact certain embodiments of the patent include empty space should constrain the claim to that configuration.

The Court construes the first disputed term as meaning: "<u>the structural glass and the fire-rated glass are separated by one or more of the load transferring means, such that the structural glass does not touch the fire-rated glass</u>." Under this construction, the space between the two layers could be empty or could be filled by non-glass material, but cannot be filled by structural glass or fire-rated glass.

### B.    "A Vertical Portion Transferring Load . . ."

The second term in dispute is the language in the first claim reading "**a vertical portion transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass**." '475 Patent at 8:56–58. The parties' briefs dispute whether the word "bypassing" necessarily means that no load at all from the structural glass is applied to the fire-rated glass. Plaintiffs propose the following construction:

> The vertical portion of the load transferring means receives at least some of the weight applied to the structural glass through the horizontal portion and passes it to a beam or cross member under the load transferring means instead of to the fire-rated glass.

Pls.' Br. at 8. Safti would instead construe this phrase as follows:

> A vertical component of the load transferring means, transferring the entire load from the structural glass layer directly to the structural

frame below and avoiding transfer of any load to or from the fire-rated glass."

Def.'s Br. at 9–10.  At the hearing, Plaintiffs conceded that the LTMs collectively must support all of the load of the structural glass—including the weight of that glass and any load applied to it by, for example, people walking on it—and argued only that the construction should reflect that the load might be borne by a number of LTMs, an issue that Safti does not dispute.  The Court adopts that construction based on the parties' agreement.

As discussed further below in the context of the next disputed term, Safti and Dr. Stevick also suggest that the definition of "bypassing" is incompatible with a configuration in which the fire-rated glass is suspended from the structural glass, as described in claim 21.  *See* Stevick Opening Report ¶ 29 ("The fire rated glass is separately supported on a structural frame.  If any load is transferred to or from the fire rated glazing layer, that would not constitute a bypass by its definition . . . .").  The fact that claim 21 incorporates claim 1 (via claim 13) tends to suggest that the word "bypassing" in claim 1 is not intended to preclude the configuration described in claim 21, where the fire-rated glass is suspended from—and, as discussed below, thus applies load to—the structural glass, which in turn rests on the LTM.  Such a configuration is also compatible with the plain meaning of "bypassing" in that the LTM does not itself apply any load to the fire-rated glass.

The Court construes this term as follows:

> a vertical portion of the load transferring means, transferring (either alone or in conjunction with the vertical portions of other load transferring means) all load from the structural glass layer directly to the structural frame below, such that no load from the structural glass is transmitted to the fire-rated glass.

### C.    "The Second Layer of Glass Is Suspended . . ."

The parties dispute the meaning of the following phrase in Claim 21: "**the second layer of glass is suspended from the first layer of glass such that there is a small gap between the first and second layers of glass**."  '475 Patent at 9:62–64.  Other than adding a range of measurements to which both parties agree, Plaintiffs' proposed construction adds little to the language of the claim:

> The fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass.

Pls.' Br. at 11. Safti's construction, in contrast, would effectively read out the words "is suspended from" in the claim language:

> The fire rated glass is separated from and rests below the first layer on a structural support, creating a gap of more than 0 mm and less than 50 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass, subject to all of the limitations of claim No. 1.

Def.'s Br. at 15.

According to Safti, the fire-rated glass cannot be supported by the structural glass above it, because such a configuration is not consistent with Safti's view of the word "bypass" as addressed above. Safti makes little effort to reconcile its proposed construction with the actual language of the claim, which requires the fire-rated glass to be suspended *from* the structural glass, instead arguing simply that the word "suspended" might refer to the fire-rated glass being supported in some other way. *See* Def.'s Br. at 15 ("Dependent claim 21 *could* be consistent with independent claim 1 if the word 'suspending' [sic] is interpreted to mean supported in some manner. But, the second [fire-rated] layer of glass cannot hang from or be supported by the first [structural] layer of glass [in a manner consistent with claim 1]."). In the Court's view, interpreting "suspended from" to mean "resting below" (and to exclude "hanging from") requires far more deviation from the plain meaning of the claim language than reading "bypassing" as meaning "applying no load to" (and allowing the LTMs to "bypass" the fire-rated glass even when they carry the load that the fire-rated glass exerts on the structural glass from which it is suspended).

Safti's proposed construction also plainly contradicts the specifications of the patent. Figure 6, depicting an embodiment of the claimed invention, is described as showing a "sheet of fire rated glass 78 [that] is *attached to* and *supported from* the structural glass 77," with "[t]he fire rated glass sheet 78 . . . attached to the structural glass sheet 77 by means of a glazing bar 80 and structural silicone 81." '475 Patent at 7:38–39; *see also id.* at 10:1–4 (claim 23, claiming a "fire rated glass flooring system as claimed in claim 21 wherein the second layer of glass is suspended from the first layer of glass by means of a glazing bar and structural silicone"). That diagram

appears as follows:



'475 Patent Fig. 6.[6]

Although specifications may not expand the scope of the patent beyond its claims, construction of claim language in a manner that excludes a preferred embodiment described in the specifications is "highly disfavored" and "rarely, if ever, correct." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). The specification of an embodiment in which the fire-rated glass hangs from the structural glass weighs heavily against Safti's proposed construction.

Safti argues that the fire-rated glass cannot hang from the structural glass because a "bonded or laminate[d] system" was disclosed by prior art, including U.S. Patent No. 5,027,567 (the "Roberts patent" or the "'567 patent," which describes angled glass roof systems, including configurations with multiple layers of glass), Figure 2 of the '475 patent (which is described as illustrating existing art), and a French patent included in the prosecution history. *See* Def.'s Br. at 16. The Roberts patent does not include any configuration in which a lower layer of glass hangs from a higher layer. *See generally* '567 Patent. Figure 2 of the '475 patent shows a fully laminated or bonded stack of glass layers in which all load is supported by the lowest layer and the structure on which that layer rests, not a configuration in which a lower layer is suspended from

---

[6] The description in the specifications suggests that the material designated 79 in this diagram is not intended to be load bearing.

and supported by a higher layer. '475 Patent Fig. 2. Safti has failed to provide a translation of the French patent, and the figure of that patent cited in Safti's brief does not obviously show a lower layer suspended from a higher layer. *See* Prosecution History (dkt. 85-23) at 289 (Figure 2 of French Patent No. 2,723,123). Accordingly, none of that prior art forecloses a natural reading of the phrase "suspended from" in the disputed language.

Safti contends that "[e]ven were the Fig[ure] 6 configuration allowable," the claim should be limited to a configuration where, as in that diagram, air space exists between the two layers, rather than a fully laminated assembly. Def.'s Br. at 17. Plaintiffs agree that "the language of the claim itself (claim 21) precludes the possibility of laminated structure by expressly requiring 'a small gap' be present between the structural glass layer and the fire-rated glass layer." Pls.' Reply at 8. Plaintiffs also conceded at the hearing that the word "gap" requires empty space. The Court agrees, and adopts Plaintiffs' proposed construction as modified to reflect that requirement:

> The fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass, *with air filling some portion of the space between the structural glass and the fire-rated glass*.

*Cf.* Pls.' Br. at 11 (addition designated by italics).

### D. "The Load Transferring Means Transfers Load . . ."

The parties dispute the meaning of the phrase in claim 24 reading "**the load transferring means transfers load applied to the first layer of glass directly to the structural frame, bypassing the second layer of glass**." This is essentially the same dispute as addressed above in part B, with Plaintiffs proposing a construction that would apply where *any* load is transferred by the LTM and bypasses the fire-rated glass, while Safti proposes a construction that would require *all* load to be transferred by the LTM and bypass the fire-rated glass. *See* Pls.' Br. at 13–14; Def.'s Br. at 17.

For the reasons discussed above in part B, the Court construes this term as follows: "the load transferring means collectively transfer all load applied to the structural glass directly to the structural frame, such that no load from the structural glass is transmitted to the fire-rated glass."

**E.    "Comprising a First Layer of Glass . . ."**

The parties dispute the meaning of language in claim 24 reading "**comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass**." Plaintiffs offer the following construction:

> Composed of (i) a multi-laminated glass sheet made up of two or more layers of glass capable of bearing at least some of the weight of an applied load, and (ii) a multi-layered glass sheet made up of two or more layers of glass that has a transparent intumescent material interspaced between at least two of the glass layers

Pls.' Br. at 14.  Safti proposes the following construction:

> Composed of (i) a single or multi-laminated glass made up of two or more layers of glass designed to bear, and capable of bearing, the weight of a specified minimum load, and (ii) a multi-layered glass made up of at least two end layers of glass enclosing and sandwiching transparent intumescent material between each glass layer, which has been rated as fire resistant by a national recognized rating entity.

Def.'s Br. at 18.

Although certain other aspects of the proposed constructions also differ, the parties' actual dispute, as argued in their briefs, is limited to: (1) the nature and configuration of the layers of the fire-rated glass; and (2) whether the fire rated glass must actually be "rated" as such by some third party.  *See* Pls.' Br. at 14–16; Def.'s Br. at 18–20; Pls.' Reply at 10–11.

Plaintiffs contend that fire-rated glass need not include intumescent material between *each* set of layers of glass, but instead may include additional layers of glass directly bonded to each other or with sealed airspace between them, so long as at least two layers of glass have intumescent material between them, because certain products identified in the patent as "fire rated glass" include such configurations.  *See* Pls.' Br. at 15; Pls.' Reply at 10.  Plaintiffs provided no evidence to support that assertion, and the parties conceded at the hearing that they did not know what configurations of glass were used in the products cited in the patent.  The Court withholds its ruling on this issue pending submission of supplemental materials no later than January 2, 2020.

Safti objects to Plaintiffs' proposed construction to the extent that it could be read as allowing intumescent material as an outer layer of the fire-rated glass, rather than only sandwiched between glass layers.  Def.'s Br. at 18.  Plaintiffs disclaim such a construction in their reply brief:

13

> Defendant contends that Plaintiffs' proposed construction would include a fire-rated glass layer with intumescent material 'on the outside' of the glass sheets. Such is simply not true. Contrary to Defendant's contention, Plaintiff's [sic] proposed construction expressly requires that the intumescent material be 'between at least two of the glass sheets' of the fire-rated glass layer (emphasis added).

Pls.' Reply at 10–11. Based on that clarification of Plaintiffs' position, the Court accepts the construction that the fire-rated glass must have layers of glass on the outside.

Plaintiffs object to Safti's proposed requirement that fire-rated glass must be "rated as fire resistant by a national recognized rating entity," arguing that there is no intrinsic or extrinsic evidence to support such a requirement, or even to show that such an entity exists. Pls.' Br. at 16. Safti responds that "[t]o be a fire rated glass, the product has to be tested and certified, and installed as tested and certified; otherwise the word 'rated' has no meaning." Def.'s Br. at 20. Plaintiffs do not address this issue in their reply. *See* Pls.' Reply at 10–11. Safti is correct that its construction largely applies a natural meaning of the word "rated," although Safti has offered no evidence to support the conclusion that a person skilled in the art would understand "fire rated glass" as requiring certification by "a nationally recognized rating entity" (as opposed to some other entity). Dr. Stevick opines only that the term "fire rated glass" denotes that the glass "has been rated as possessing a designated fire resistance certified by a testing authority." *See* Stevick Opening Report ¶ 34. Plaintiffs' expert Tim MacFarlane does not address whether fire-rated glass must be tested. *See* MacFarlane Opening Report ¶¶ 120–27; MacFarlane Reply Report ¶¶ 32–33. The Court adopts Dr. Stevick's view of this issue, which differs only slightly from Safti's proposed construction, as uncontradicted expert opinion evidence.

Because neither party has offered any explanation for their somewhat differing constructions of "structural glass," the Court construes that term using only the elements common to both parties' definitions, resulting in the following construction: "a laminated glass sheet made up of two or more layers of glass capable of bearing weight."

As discussed above, the issue of whether fire-rated glass may contain additional layers other than alternating glass and intumescent material warrants further evidentiary submissions. The Court therefore declines to provide a complete construction of this disputed term at this time.

14

### F. "The Distance from the Upper Surface . . ."

The parties dispute whether the phrase in claim 2 reading "**the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm**" sets not only a maximum distance but also a minimum distance, with Safti arguing that the phrase implies a distance of greater than zero millimeters. *See* Pls.' Br. at 16–18; Def.'s Br. at 20–21. Even without reaching this phrase, however, some distance between the layers is separately and more clearly required by claim 1, which claim 2 incorporates and which calls for the two layers to be "separated" by the LTMs. As discussed above in part A, the requirement that the two layers are "separated" means they cannot touch each other. If the layers do not touch, then the distance between them will be greater than zero, regardless of whether this disputed term regarding a distance of "less than 50 mm" also implies a non-zero distance.

The Court therefore declines to construe this term beyond its plain meaning.[7] *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (acknowledging "that district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims"); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction . . . is not an obligatory exercise in redundancy."); *Cave Consulting Grp., Inc. v. Ingenix, Inc.*, No. 5:11-cv-0469 EJD, 2013 WL 2467930, at *6 (N.D. Cal. June 7, 2013) ("Indeed, additional construction could render the term more confusing by requiring the jury to cross reference the court's construction with the explanations already provided in the patent.").

### G. "The First Layer of Glass Being Supported . . ."

The parties dispute the meaning of a phrase in claim 24 that reads as follows: "**the first layer of glass being supported by the or each load transferring means and the second layer of glass being supported by the structural frame.**" '475 Patent at 10:17–19.

Plaintiffs propose the following construction:

---

[7] The same phrase appears in claims 32, 33, 34, and 35, but each of those claims also describes "a small gap" between the layers of glass, obviating any need to determine whether this phrase addressing the "distance" between the layers would in itself require a non-zero distance. *See* '475 Patent at 10:46–12:42.

> The load transferring means bears the weight of the structural glass and the fixed beams and cross members bear the weight of the fire-rated glass.

Pls.' Br. at 18. According to Plaintiffs' briefs, this claim should be construed to encompass Figure 5 (where, according to Plaintiffs, some unidentified material exists between the layers of glass) and Figure 6 (where the fire-rated glass is suspended from the structural glass by means of structural silicone and a glazing bar). *Id.* at 19; Pls.' Reply at 11–12. Safti proposes a construction in which the second layer must be supported separately from the first layer:

> The first layer of glass is supported by the or each load transferring means and the second layer of glass is *separately* supported by the structural frame.

Def.'s Br. at 21 (emphasis added). According to Safti, this claim should be construed to exclude a laminated configuration where the two layers are connected and any load is transferred between them, including configurations where the fire-rated layer is suspended from the structural glass. *Id.* at 21–22.

At the hearing, Plaintiffs conceded that this claim precludes a configuration in which the fire-rated glass is suspended from the structural glass. To the extent that Safti's proposed construction would require empty space (rather than some other non-load-bearing material) between the structural glass and the fire-rated glass, however, the Court is not persuaded that any language in this disputed term supports such a requirement. The Court construes this term as follows:

> The load transferring means bears the weight of the structural glass and the structural frame bears the weight of the fire-rated glass, such that the structural glass does not bear the weight of the fire-rated glass.

### H. "Load Transferring Means Comprises . . ."

The parties dispute the meaning of the following phrase, which, other than a reference to claim 24, makes up the bulk of claim 25: "**load transferring means comprises a first portion for bearing the load applied to the first layer of glass and a second portion for transmitting the load applied to the first layer of glass to the structural frame**." '475 Patent at 10:21–24.

As with the portion of claim 1 discussed above in part B, the parties' briefs dispute whether this language requires the LTMs to support all or merely some of the load of the structural

16

glass, and whether it permits the LTMs to indirectly support the weight of the fire-rated glass, as in configurations where the fire-rated glass hangs from the structural glass. Plaintiffs would construe the phrase as follows:

> A mechanism that enables at least some of the weight applied to the structural glass to be passed to a fixed beam or cross member instead of to the fire-rated glass and includes a first portion that bears the weight of a load applied to the structural glass connected to a second portion that passes that weight to a fixed beam or cross member instead of to the fire-rated glass.

Pls.' Br. at 20. Safti proposes the following construction:

> the load transferring means comprises a first portion bearing the entire load of the first layer of glass and a second portion transmitting the entire load of the first layer of glass directly to the structural frame below, each avoiding transfer of any load to or from the fire-rated glass

Def.'s Br. at 22. The parties largely rely on their arguments regarding earlier claim terms. *See id.*; Pls.' Br. at 20–21; Pls.' Reply at 12.

The Court adopts the following construction, consistent with the construction of the similar phrase from claim 1 in part B:

> <u>load transferring means comprises a first portion for bearing the load applied to the structural glass and a second portion for transmitting the load applied to the structural glass to the structural frame, such that the load transferring means collectively bear all of the load applied to the structural glass.</u>

### I. "Glazing Bar"

The final disputed term is "glazing bar," with Safti's brief identifying the dispute as relating to claim 11, although the term also appears in claims 23, 34, and 35. Safti asks the Court to construe "glazing bar" as meaning "member taking the applied load on the structural glass." Def.'s Br. at 23. Plaintiffs argue that a "glazing bar" is simply a "metal bar," and should be construed as such. Pls.' Br. at 21–23.

Safti's entire argument on this point is as follows:

> Defendant relies on the specification column 5, lines 48–54, column 2, lines 23–28, column 2, lines 38–43, and column 5, lines 48-54 where the glazing bar is shown as the first part of the load transferring means which carries the applied load on the structural glass.

Def.'s Br. at 23.

While Safti is correct that the '475 patent calls for glazing bars to carry the load of the structural glass in certain embodiments of the invention, this proposed construction is inconsistent with other uses of the term in the patent, such as claim 23, "wherein the second [fire-rated] layer of glass is suspended from the first [structural] layer of glass by means of a glazing bar and structural silicone." '475 Patent at 10:2–4. As Plaintiffs note in their opening brief, such claims call for a glazing bar to "serve[] more like a spacer to maintain a uniform distance or space between the fire-rated glass layer and the structural glass layer from which it hangs." Pls.' Br. at 22 (citing MacFarlane Reply Report ¶ 41). Applying the "'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims,'" the Court declines to construe the term "glazing bar" in the context of claim 11 in a manner inconsistent with the use of the term in other claims. *See Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) (quoting *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007)).

Moreover, even if Safti's construction is accurate with respect to claim 11 alone, it adds nothing to that claim, because it is redundant to other language in claim 11 and in the incorporated claim 1. Substituting Safti's construction for the term "glazing bar" would cause claim 11 to read:

> A fire rated glass flooring system as claimed in claim 1 wherein the horizontal portion of the load transferring means [which claim 1 describes as "supporting the first layer of glass above"] is a portion of a [member taking the applied load on the structural glass].

*See* '475 Patent at 9:28–30; Def.'s Br. at 23. Such a claim would be both redundant and confusing.

Neither Safti nor Dr. Stevick disputes that a glazing bar is a metal bar. The Court adopts Plaintiffs' proposed construction of this term.

## V.  CONCLUSION

For the reasons discussed above, the Court construes the disputed claims as follows:

|  | Claim | Disputed Term | Court's Construction |
|---|---|---|---|
| A. | Claim 1 | "the two layers of glass are separated by one or more of the load transferring means" | "the structural glass and the fire-rated glass are separated by one or more of the load transferring means, such that the structural glass does not touch the fire-rated glass" |
| B. | Claim 1 | "a vertical portion transferring load from the first layer of glass above directly to the structural frame below, bypassing the second layer of glass" | "a vertical portion of the load transferring means, transferring (either alone or in conjunction with the vertical portions of other load transferring means) all load from the structural glass layer directly to the structural frame below, such that no load from the structural glass is transmitted to the fire-rated glass" |
| C. | Claim 21 | "the second layer of glass is suspended from the first layer of glass such that there is a small gap between the first and second layers of glass" | "the fire-rated glass hangs from the structural glass such that there is a distance of less than 50 mm but more than 0 mm between the lowermost surface of the structural glass and the uppermost surface of the fire-rated glass, with air filling some portion of the space between the structural glass and the fire-rated glass" |

| | Claim | Disputed Term | Court's Construction |
|---|---|---|---|
| D. | Claim 24 | "the load transferring means transfers load applied to the first layer of glass directly to the structural frame, bypassing the second layer of glass" | "the load transferring means collectively transfer all load applied to the structural glass directly to the structural frame, such that no load from the structural glass is transmitted to the fire-rated glass" |
| E. | Claim 24 | "comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass" | [no construction, pending supplemental evidentiary submissions no later than January 2, 2020] |
| F. | Claim 2 | "the distance from the upper surface of the second layer of glass to the lower surface of the first layer of glass is less than 50 mm" | [no construction beyond plain meaning] |
| G. | Claim 24 | "the first layer of glass being supported by the or each load transferring means and the second layer of glass being supported by the structural frame" | "The load transferring means bears the weight of the structural glass and the structural frame bears the weight of the fire-rated glass, such that the structural glass does not bear the weight of the fire-rated glass." |

|  | Claim | Disputed Term | Court's Construction |
|---|---|---|---|
| H. | Claim 25 | "load transferring means comprises a first portion for bearing the load applied to the first layer of glass and a second portion for transmitting the load applied to the first layer of glass to the structural frame" | "load transferring means comprises a first portion for bearing the load applied to the structural glass and a second portion for transmitting the load applied to the structural glass to the structural frame, such that the load transferring means collectively bear all of the load applied to the structural glass" |
| I. | Claim 11 | "glazing bar" | "metal bar" |

**IT IS SO ORDERED.**

Dated: December 19, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge