Mark I. Schickman  (CSB #62653)
Cathleen S. Yonahara  (CSB #203802)
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone:  (415) 541-0200
Facsimile:  (415) 495-4332
Email: schickman@freelandlaw.com
          yonahara@freelandlaw.com

THEODORE J, BIELEN, JR.(CSB #56395)
BIELEN & LAMPE
1390 Willow Pass Road, Ste 1020
Concord, CA 94520
Telephone: (925) 288-9720
Facsimilia:  (925) 288-9731
Email: bielenlt@yahoo.com

*Attorneys for Defendant and Counter-Claimants*
*O'Keeffe's, Inc., d/b/a SaftiFirst*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>          Plaintiffs,<br><br>     v.<br><br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>          Defendant.<br>_____<br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>          Counter-Claimant,<br><br>     v.<br><br>ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>          Counter-Defendants. | CASE NO.  18-CV-06721-JCS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

{00317940}                                          1

**I. Introduction**

Plaintiff's Motion for Leave to file this amended complaint should be denied for several independent reasons.

- Plaintiffs present nothing to sustain their burden of showing good cause for relief from the scheduling order, neither a factual showing of diligence on their part nor proof that the request will not prejudice O'Keefe's.
- the facts on record show that plaintiffs have not been diligent in bringing this motion, and the granting it would cause severe prejudice to O'Keefe's.
- the proposed amendments do not state any legally actionable claim against O'Keefe's, and are therefore futile. .

**II. Plaintiffs Do Not Even Try To Meet their Burden of Showing Good Cause To Allow An Amendment Seven Months After the Scheduling Order Deadline**

As plaintiffs note, the scheduling order in this case set the deadline for amendment of pleadings at May 7, 2019.  Therefore, this motion is governed by Federal Rule 16 (b) (4), providing that a "schedule may be modified only for good cause and with the judge's consent".  "As to post deadline amendments, a party must show good cause for not meeting the deadline before the more liberal standard of Rule 15 (a) will apply." Leary v. Daeschner, 349 F. 3d 888, 909 (6th Cir. 2003).

Plaintiffs' complete failure to provide any explanation for missing that schedule by seven month is fatal to this motion.  Denying a motion to amend made three months after the deadline set in a scheduling order, the court wrote in S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003):   " S&W offered no adequate explanation for its failure to comply with the scheduling order. As the district court noted, the same facts were known to S&W from the time of its original complaint to the time it moved for leave to amend. S&W could have asserted interference with contract from the beginning, but fails to explain why it did not."

Similarly, the alleged "Transbay Project Misrepresentations" were made to Crown Corr in 2015, Dkt. 115-8 ("Shah Declaration") Exhibit 4).), and Plaintiffs do not assert that Crown Corr failed to share those comments for 4 years.  Greenlite and Crown Corr work together under a Non-Disclosure

Agreement and maintain the confidential nature of each other's documents (Schickman Declaration Exh. 1, Crown Corr Motion to Quash Subpoena, pages 4-5). Counsel for Greenlite acted as Crown Corr's counsel to moved to quash the subpoena issued in this action (Id., ¶ 3, Exh 1), and the document allegedly justifying this belated motion was transmitted directly from Crown Corr to Greenlite (Shah declaration, ¶ 4) *without* being produced to O'Keeffe's by either of them except to support this motion (Schickman Declaration, ¶ 7 ).

Plaintiffs argue that "Plaintiffs just learned of these false and misleading representations through O'Keeffe's preliminary document productions" but they present no declaration or other evidence to support that assertion, in support of a claim of good cause. The court cannot assume that plaintiffs were unaware of O'Keeffe's 2015 conduct prior to the scheduling order deadline, and Plaintiffs do not declare that they were.

Even if Plaintiffs were unaware of O'Keeffe's representations about Greenlite in real time, they learned about them in May, 2019; they do not bother to address the 7 month delay since then.

### III. Plaintiffs' Lack of Diligence and The Prejudice to O'Keeffe's Demonstrate That There is No Good Cause for The Leave to Amend Sought

As plaintiffs concede, the two critical factors in determining whether good cause is shown is a showing of diligence on the part of movant, and a lack of prejudice to the responding party. As Plaintiffs state in their motion, "The "good cause" standard primarily considers the diligence of the party seeking the amendment"(5:20); as conceded at 6:10-13 of plaintiffs' brief, "**Prejudice to the non-moving party merits the greatest weight** (emphasis original) (citations omitted). Plaintiffs fail to either show diligence on their part, or lack of prejudice to O'Keeffe's.

#### A. Plaintiffs Were Not Diligent in Bringing This Motion

Even if Greenlite had not known about O'Keeffe's alleged misrepresentations for four years after they were made (a fact never presented), that same accusation that Greenlite's fire rated floor did not meet "buy American" requirements is affirmatively alleged in O'Keefe's May 31, 2019 cross complaint ( Docket 56, paragraphs 17-18, 22). Moreover, Exhibit 1 to Mr. Shah's Declaration, an email string which defendant produced to plaintiffs in May, 2019 again contains O'Keeffe's complaint that Greenlite's product was foreign made and not qualified to

{00317940} 3

receive "buy American" consideration. Plaintiffs do not try to explain why they did not bring the Transbay terminal claims and buy America claims in May as a result of those disclosures.

Because Plaintiffs do not even attempt to assert good cause for relief from the scheduling order under Rule 16(b) (4), this motion is doomed under the language of the court in S&W Enterprises, supra. But, more than this, the facts affirmatively show plaintiffs' lack of diligence presenting this claim for seven months after the buy American and Transbay communications were disclosed to plaintiffs in discovery produced in May and in a Counterclaim filed in May. That lack of diligence is fatal to any claimed good cause.

### B. Granting This Motion Would Severely Prejudice O'Keeffe's

Plaintiffs devote a scant half page to the unsupported conclusion that allowing this amendment would not prejudice defendant -- -- arguing simply that defendant knows what it did wrong, and therefore needs no discovery into this brand new factual assertion and theory of liability. That argument falls under its own weight.

For example, Greenlite now asserts that it had to reduce its bid on the Transbay project because of competition from O'Keefe's (although it has never produced a scrap of paper supporting that assertion). This claim necessitates a new inquiry into all of Greenlite's bid and price changes on the project, why they were done, whether they were caused by O'Keefe's or other business factors, whether Greenlite similarly changed bids on other jobs, and more. Additionally, Plaintiffs introduce the new factual issue as to whether "the selection of Greenlite was 'green'" (whatever that means). Who heard these "not green" misrepresentations and who acted upon them? What is the claimed injury resulting from that newly alleged wrongs? Is Greenlite an environmentally friendly company? Is it environmentally sound to buy and transport German glass to the West Coast? Did anybody care about or act upon the assertion that the selection of Greenlite was not a green thing to do -- -- did it cause damage?

With regard to Plaintiffs' new theories of intentional and negligent interference with business relations and prospective advantage, with whom do plaintiffs have business relation and prospective advantage, did Plaintiffs lose any of those relations and advantages, what was the nature of those relationships and the value of what was lost, how did that interference occur,

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

were there other causes for any such loss? If this motion were granted, those inquiries send this litigation into wholly new territory, with 2 months after the hearing of this Motion (or 5 months if a discovery extension is granted) to commence a plan of discovery on a wholly new topic. Extensive discovery will be required on the new claims. Contrary to Plaintiffs' offhand dismissal of the issue of prejudice, in effect the proposed amendments necessitate commencing discovery anew of an entirely new set of fact and legal theories.

This amendment would require O'Keeffe's to repeat discovery efforts already blocked by Plaintiffs and their counsel. For example, on June 3, 2019, O'Keeffe's asked Greenlite to produce "3. All COMMUNICATIONS between YOU and any customer or potential customer CONCERNING SAFTI." And "6. All COMMUNICATIONS between YOU and any customer or potential customer CONCERNING [Safti's] GPX FIREFLOOR SYSTEM" - - ".( (Schickman Dec, ¶ 3). On July 2, 2019 Greenlight made a series of objections, commencing that these Requests are "irrelevant and not proportional to the needs of the case insofar as it seeks documents pertaining to subject matter outside the scope of this litigation and not related to any of the claims or defenses of either party or to the patent-in-suit or to any of the infringing features of the Accused Instrumentality. ….". (Schickman Dec. ¶ 3 ) Those documents bear upon Plaintiffs new claim that O'Keefe's harmed Greenlite's reputation, and Greenlite had to reduce their bids in response to O'Keeffe's competition and misrepresentations, and those production requests will have to be reissued to obtain documents regarding the amended claims.

In response to O'Keeffe's third party subpoena to Crown Corr ( mentioned 11 times in Plaintiffs' amended allegations) , Mr. Shah (counsel for Plaintiffs and Crown Corr) referred to O'Keeffe's request for "all documents going to, from, authored by, or referring to Greenlite, concerning any bid for the Transbay Terminal Project" and responded, among other things, that "Crown Corr has no Knowledge or involvement in the California lawsuit" and  "the discovery requests have no conceivable relevance to the California Law-suit". ( Schickman Dec., Exh 1, pp. 2, 10). But Crown Corr is mentioned 11 times in the charging paragraphs of the proposed amendment; those requested documents would now be central to this California lawsuit. O'Keeffe's has been severely prejudiced by Plaintiffs' failure to bring this amendment earlier,

allowing them to block discovery when it suited them, and make that discovery burdensome or impossible now..

Indeed, Exhibit 4 to the Shaw Declaration proves BOTH lack of diligence from plaintiffs and prejudice to O'Keeffe's. Crown Corr presented that document to Plaintiffs' counsel in August (without producing it to O'Keeffe's), and Plaintiffs sat on it for months until it was unveiled to support this motion (Schickman Dec. ¶¶ 7,8); no explanation is given for hiding that document, no explanation for how that that was diligent conduct and no excuse for the resulting prejudice to O'Keeffe's. Seizing that (improper) tactical advantage negates any possible showing of diligence by Plaintiffs, or lack of prejudice to O'Keeffe's.

Plaintiffs also appear to now assert that they could hide this document (and all relevant emails) because "email discovery has not yet occurred" (Shah Declaration, ¶ 6). O'Keeffe's wholly disagrees[1]. The parties have been exchanging written discovery demands since March 2019, O'Keeffe's having produced over 11,000 pages of mostly electronically stored documents since (Schickman Dec, ¶ 1 ). Exhibit 1 to the Shah Declaration is a pertinent example of such a production in May 2019. There would be no justification if plaintiffs have not been similarly responsive, and compliant with their most basic discovery obligations in Federal court; that provides no reason to reward Plaintiffs with the grant of the instant motion.

It would create a tremendous burden and expense if by the March 30, 2020 cutoff that significant discovery had to be redone, and all other discovery completed based upon these wholly new and different claims and theories of the case[2].

Plaintiffs have not attempted to present anything to demonstrate good cause to file this belated amendment. Nor could they show that good cause if they tried.

---

[1] The parties are meeting and conferring over the troubling specter that plaintiffs have withheld relevant ESI for months on the ground that relevant emails will be produced at a later date (Schickman Dec ¶   .)

[2] As noted in footnote 1 of Plaintiffs' Motion, the parties jointly requested that the fact discovery cutoff be moved to June 30, 2020. That extension would not eliminate the prejudice to defendant or provide good cause for the amendment. Notwithstanding any such extension, the unnecessary increase in cost and effort, and the wholly new avenues of discovery implicated by this late request to add this unrelated claim is prejudicial.

### IV. Assuming, *Arguendo*, That Plaintiffs Could Show Good Cause, Plaintiffs' Proposed Amendments State No Claim and Are Futile

Assuming that Plaintiffs could satisfy the "good cause" requirement of Rule 16 (b)(4), this proposed amendments would still be improper under Rule 15 (a) (2) because they state no claim. United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011); Film Tec Corp. v. Hydranautics, 67 F.3d 931, 938–39, (Fed. Cir. 1995); Laube v. Furminator, Inc., 2011 WL 318130, *1 (C.D. Cal. 2011).

Plaintiffs' Lanham Act and unfair competition claims assert misrepresentations, and are therefore covered by Rule 9(b) of the Federal Rules of Civil Procedure, which sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993); see also McMaster v. United States, 731 F.3d 881, 897 (9th Cir. 2013). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001))11.

Even "where fraud is not a necessary element of a claim," if the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . , the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003). The Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL" if a plaintiff's claim is based on fraudulent conduct. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (citing Vess, 317 F.3d at 1102–05). see also 23andMe, Inc. v. Ancestry.com DNA, LLC, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018) (holding that although

the Ninth Circuit has not resolved the issue and district courts are divided, "the better reasoned authority is that, where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable").

Importantly, Plaintiffs' allegations must also plead sufficiently specific facts underlying a party's actual knowledge of alleged falsity. See Stewart v. Electrolux Home Prod., Inc., 304 F. Supp. 3d 894, 909 (E.D. Cal. 2018). No such facts are presented here.

Plaintiffs allege that O'Keeffe's made three types of misrepresentations, which they label as the "shop drawing misrepresentations", the "buy American misrepresentation" and the "Transbay Terminal misrepresentations". None of them is actionable.

### A. Nothing Actionable Is Alleged In the "Shop Drawings Misrepresentations"

The shop drawings claims are based on Shah Declaration, Exhibits 5 and 6, two shop drawings which O'Keefe's produced in discovery in September 2019 ( Dkt. 115-4, paragraphs 4 (d) and (e)) . As plaintiffs allege, those drawings contain nothing resembling a load transferring means. O'Keefe's makes some floors with an adjustment mechanism, and some without. So what? Plaintiffs describe the drawings as false and misleading, but they cannot and do not plead any fact to support the accusation. The "shop drawing" assertion states no claim.

In their claims heretofore, plaintiffs asserted that the O'keeffe floor contains a load transferring means which violates their patent. Now they complain because some of O'Keefe's designs do not contain a load transferring means, and do not violate their patent. The new assertion is downright frivolous.

### B. Nothing False is Alleged in the "Buy American Misrepresentation"

As noted above, the buy American misrepresentations were likely known to plaintiffs in a 2015 (a fact they never deny), but demonstrably known to them by May, 2019 through Shah Declaration Exhibit 1 and through O'Keeffe's Lanham Act counterclaim herein; there is no excuse shown or existing for the delay in bringing that claim. But even had they been timely raised, plaintiffs' alleged buy America misrepresentations state no claim, because the complaint does not allege facts showing the representations to be untrue.

O'Keefe's called Greenlite "a Canadian Company" using "German glass" (Proposed

{00317940}  8

Amended Complaint, paragraph 45, 47). Plaintiff's proposed complaint denies neither fact. Paragraph 30 of the complaint presents the non denial that" Greenlite was never "obligated to provide German glass" but, rather, was "meeting project specifications". That allegation sidesteps the point; it does not deny that Greenlite is a Canadian Company using German glass on the Transbay terminal "buy American" project. Because it does not state how O'Keefe's representation was false, the complaint states no claim.

This is more than a curable technical pleadings issue. Discovery in this action contains Greenlite's admission that the glass Greenlite supplied to Crown Corr for the Transbay project "must be manufactured by Vetrotech… in Aachen, Germany". (Schickman Declaration, ¶ 9 Exhibit 2). Plaintiffs amended complaint does not say otherwise, and it would be futile to allow plaintiffs to assert the "misrepresentation" that Greenlite was a Canadian Company which had to use German glass on the Transbay project when those (undenied) facts are undeniable.

.**C. The "Transbay Project Misrepresentations" State Nothing Actionable**

The "Transbay Project Misrepresentations" largely rehash the "Buy American Misrepresentations", with two additional claims. First, O'Keeffe's is accused of emailing "Crown Corr that the selection of Greenlite was not "green," implying that Greenlite is not an environmentally friendly and responsible company" (Proposed Amendment, ¶ 32). . That assertion is not buttressed by any surrounding fact. Greenlite does not explain how the comment was false, how it is a "green" company and how O'keeffe supposedly knew the comment was false -- -- all necessary elements to plead a misrepresentation under rule 9 (a) . Nor is any damage shown. On its face, buying glass from Europe and shipping it to a project in San Francisco is not a green thing to do. The allegation that the selection of Greenlite was not " green" does not satisfy Rule 9 (a)'s heightened requirements, and states no claim.

Plaintiffs also assert that O'Keefe's was not qualified to bid on the Transbay project, and was misleading when it claimed to be. The complaint does not state how O'Keefe's product failed to meet project's specifications, or why it did not qualify as a 120 minute fire rated floor or why O'Keefe's was not qualified to bid (Amended Complaint, paragraphs 22 through 26). This allegation is a classic instance of the evil Rule 9 (b) is meant to avoid,

leaving a defendant unaware of what it has to defend against. Even if it were timely (and it certainly is not) the "Transbay Project Misrepresentations" state no claim.

### D. Plaintiffs State No Claims for Interference with Contract or Advantage, As They Assert Nothing But Privileged Competition

No claim stated in plaintiffs' proposed fifth and sixth counts, for intentional and negligent interference with business relations and prospective economic advantage. Plaintiffs do not state a claim for interference with contractual relations because they plead no contractual relationship which was interfered with, and no *intent* to interfere with a contract--each necessary elements for claimed interference with contract ( Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118, 1126).

The facts alleged in the complaint, present no claim of interference with economic advantage, either. Plaintiffs show only competition from O'Keeffe's, responding to and defending against Plaintiffs' claims; that conduct is protected by the competition privilege: As the California Supreme Court wrote: "Perhaps the most significant privilege or justification for interference with a prospective business advantage is free competition. Ours is a competitive economy in which business entities vie for economic advantage. In a sense, all vendees are potential buyers of the products and services of all sellers in a given line, and success goes with him who is able to induce potential customers not to deal with a competitor". Buckaloo v. Johnson, 14 Cal.3d 815, 828, (1975), disapproved on other grounds in Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 n.5, (1995).

The tort of interference with economic advantage also requires a specific pleading that an existing economic relationship was actually disrupted (Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc. (2017) 2 Cal.5th 505, 512), an assertion that Plaintiffs do not make. Nor do Plaintiffs show that O'Keeffe's interference constituted conduct that was wrongful by some legal measure other than the fact of interference itself." ((Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 393)

The new fifth and six counts are too little and too late, pleading nothing more than privileged competition from O'Keefe's.

{00317940}                                  10

## V. Conclusion

This motion to amend the complaint displays all of the evils that the Federal rules see to prevent. Plaintiffs seek leave without giving any explanation as to why they did not bring these claims in May when all of the underlying facts (except for those regarding the frivolous shop drawings claim) were in their hands. Plaintiffs seek this leave even though they have blocked party and third-party discovery into the issues that they now seek to exploit, even though it opens multiple new spheres of inquiry well beyond those of the current pleadings with as short as two and no more than five months remaining to discovery, and even though it will burden O'Keefe's with unnecessarily difficult and expensive discovery. Plaintiffs present ill-founded and legally and factually defective causes of action, which state no legal claim against O'Keefe's. For each of these independent reasons, this motion should be denied.

Respectfully submitted,

FREELAND COOPER & FOREMAN LLP
BIELEN & LAMPE


Dated:  January 3, 2020                    By *Mark I. Schickman*_____

*Attorneys for Defendant and Counter-Claimant
O'Keeffe's, Inc., d/b/a SaftiFirst*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Guy W. Chambers
Ellen P. Liu
Sideman & Bancroft LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111-3711

Donald R. McPhail
Taft, Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Ryan O. White
Elizabeth Shuster
Taft, Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204

*Attorneys for Plaintiff*

*/s/ Mark I. Schickman*
Mark I. Schickman

{00317940}                    12