UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELY HOLDINGS LIMITED, et al., | Case No. 18-cv-06721-JCS |
| Plaintiffs, | |
| v. | **FURTHER ORDER REGARDING CLAIM CONSTRUCTION** |
| O'KEEFFE'S, INC., | **ORDER REGARDING MOTION FOR LEAVE TO AMEND** |
| Defendant. | |

## I. INTRODUCTION

Plaintiffs Ely Holdings Limited and Greenlite Glass Systems Inc. move for leave to file a second amended complaint against Defendant O'Keeffe's, Inc. d/b/a SaftiFirst ("Safti"). The Court held a hearing on January 31, 2020 regarding that motion, as well as a third-party discovery issue that will be addressed in a separate order. For the reasons discussed below, Plaintiffs' motion for leave to amend is GRANTED. In the interest of avoiding a motion to dismiss that would lead at most to another round of amendment, Plaintiffs may file a third amended complaint no later than February 14, 2020. This order also addresses an issue of claim construction that required supplemental briefing, which is resolved in Plaintiffs' favor as discussed below.[1]

## II. FURTHER CLAIM CONSTRUCTION ORDER

The Court previously resolved most of the parties' claim construction disputes but requested supplemental briefing as to aspects of one claim. *See generally* Claim Construction Order (dkt. 112).[2] The parties dispute the meaning of language in claim 24 of U.S. Patent No.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 WL 6911667 (N.D. Cal. Dec. 19, 2019).

7,694,475 (the "'475 patent") reading "**comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass**." Plaintiffs offer the following construction:

> Composed of (i) a multi-laminated glass sheet made up of two or more layers of glass capable of bearing at least some of the weight of an applied load, and (ii) a multi-layered glass sheet made up of two or more layers of glass that has a transparent intumescent material interspaced between at least two of the glass layers

Pls.' Br. (dkt. 85) at 14. Safti proposes the following construction:

> Composed of (i) a single or multi-laminated glass made up of two or more layers of glass designed to bear, and capable of bearing, the weight of a specified minimum load, and (ii) a multi-layered glass made up of at least two end layers of glass enclosing and sandwiching transparent intumescent material between each glass layer, which has been rated as fire resistant by a national recognized rating entity.

Def.'s Br. (dkt. 92) at 18.

The Court resolved in its previous order the parties' differing constructions of "structural glass," whether "fire rated glass" must be rated by a testing authority, and whether the outer layers of "fire rated glass" must be glass, but withheld a ruling on "the issue of whether fire-rated glass may contain additional layers other than alternating glass and intumescent material" pending supplemental submissions of evidence. Claim Construction Order at 13–14.

Plaintiffs' expert Tim MacFarlane states in his report that fire-rated glass consists of "a multi-layered glass sheet made up of two or more layers of glass having an intumescent material dispersed between at least two of the layers," but does not specifically address whether fire-rated glass may have additional layers not separated by intumescent material. *See* MacFarlane Opening Report (dkt. 85-2) ¶¶ 120–27. Safti's expert Dr. Glen Stevick states that "the second layer of glass, which is a fire rated glass, . . . is meant to describe a multilayered glass made up of at least two enclosing glass layers sandwiching transparent intumescent material," and that a person skilled in the art "would have interpreted the term 'fire rated glass' to be glazing whose interior portion would be fire resistive layers with glazing at least on the two outer dimensions, with or without glazing on the interior of the glazing." Stevick Opening Report (dkt. 85-24) ¶¶ 34, 35

The parties have now submitted supplemental evidence regarding the nature of certain fire-

2

rated glass products referenced in the specifications of the patent. Safti's evidence consists of product brochures depicting, for the most part, configurations consistent with its expert's view that the fire-rated glass must be made up of alternating layers of glass and intumescent material, although one product not specifically mentioned in the patent (Contraflam IGU, described as an "insulated glass unit") includes an aluminum spacer and empty space between two of its four layers of glass (with the remaining layers separated by intumescent material), and the Court notes that the "available options" for two such products (Contraflam Lite 60 and Contraflam 30) include "Double glazing" and "Triple glazing," which could perhaps take different configurations. *See* Def.'s Supp'l Exs. 1, 4, 5 (dkt. 126). Plaintiffs submit brochures for products that include some glass layers separated by spacers and air in addition to glass layers separated by intumescent material, including Contraflam CF 120-N2, Pls.' Supp'l Ex. A (dkt. 128); Climaplus Contraflam CF A60-N2, *id.* Ex. B; Climaplus Contraflam CF Lite ISO, *id.* Ex. E; Climaplus Contraflam CF Lite Marine ISO, *id.* Ex. H; Climaplus Contraflam CF 30-N2 ISO, *id.* Ex. I; Climaplus Contraflam CF 60-N2 ISO, *id.* Ex. L; and Climaplus Contraflam CF 90-N2 ISO, *id.* Ex. N. While Plaintiffs do not claim that any of those products are the particular products or configurations identified in the specifications of the '475 patent, they are in the same product families as the "Contraflam-N2" and "Contraflam Lite" products mentioned therein, and the specifications make clear that the products identified are not intended to be exclusive. *See* '475 Patent at 2:14–18 (listing "[p]articularly suitable fire rated glass" products and noting that "other fire rated glasses can be used depending on their fire rating properties"); *id.* at 5:40–43, 6:18–19, 6:59–61, 7:43–44, 8:15–17 (identifying suitable products for certain embodiments of the patent).

A portion of the manufacturer's website offered by Safti describes the Contraflam product family as "a single- or multi-chamber fire-resistant glass containing an environmentally friend intumescent interlayer," and states that it is "[a]vailable as butt-joint, laminated and insulated glazing. Def.'s Supp'l Ex. 2. In the absence of evidence to the contrary, the Court understands that description as including "insulated" products like the Contraflam IGU—which includes an air space rather than intumescent material between two of its four layers of glass—within the manufacturer's use of the term "fire-resistant glass," which appears to be synonymous with the

3

term "fire rated glass" in the '475 patent. This evidence weighs against Safti's proposed construction requiring intumescent material separating all layers of glass. With no evidence that "fire rated glass" *must* have intumescent material between *all* layers of glass, and at least some evidence that other configurations have been marketed as "fire-resistant glass," the Court adopts Plaintiffs' proposed construction of this claim term.

Based on that holding as well as the issues addressed in the Court's previous claim construction order, the Court construes the language in claim 24 reading "comprising a first layer of glass which is a structural glass and a second layer of glass which is a fire rated glass" as follows:

<u>Composed of:</u>

(i) <u>a laminated glass sheet made up of two or more layers of glass capable of bearing weight; and</u>

(ii) <u>a multi-layered glass sheet meeting all of the following conditions:</u>

    a. <u>made up of two or more layers of glass;</u>

    b. <u>having a transparent intumescent material interspaced between at least two of the glass layers;</u>

    c. <u>having glass as its outer layers; and</u>

    d. <u>rated as possessing a designated fire resistance certified by a testing authority.</u>

## III. MOTION FOR LEAVE TO AMEND

### A. Background

Plaintiffs' operative first amended complaint includes only claims for patent infringement. 1st Am. Compl. (dkt. 49) ¶¶ 19–34. Plaintiffs move to file a second amended complaint adding the following new claims against Safti: (1) misrepresentations in violation of the Lanham Act; (2) misrepresentations in violation of section 17500 of the California Business and Professions Code; (3) intentional interference with business relations; and (4) negligent interference with business relations. All of these new proposed claims are based on four categories of purported misrepresentations: (1) that Safti's product met certain project specifications when it in fact did not; (2) that Safti's flooring system did not include a load bypass mechanism when in fact it did,

4

with the omission intended to conceal that Safti's product purportedly infringes the '475 patent; (3) that Plaintiffs' product did not meet the standards of the Buy American Act; and (4) that Plaintiff Greenlite is not an environmentally friendly company. *See* Mot. at 4.

The Court's case management order dated March 18, 2019 set a deadline of May 7, 2019 as the "last day to seek leave to amend pleadings," and made clear that any motion to amend must be filed by that deadline. Patent Case Mgmt. & Pretrial Order (dkt. 36) at 1. Plaintiffs filed their present motion on December 20, 2019.

### B. Legal Standard

Although Rule 15 of the Federal Rules of Civil Procedure establishes a liberal standard for allowing amendment, that rule "does not provide the standards" applicable to the present motion. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). "Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's standards control[]." *Id.* at 607–08.

Rule 16 provides that scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Ninth Circuit has established a standard for such modification that focuses on the diligence of the party seeking relief from a deadline:

> Unlike Rule 15(a)'s liberal amendment policy . . . , Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment). Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (citations omitted without ellipses). Courts look to a party's diligence not only in complying with the scheduling order after it has been issued, but also "in creating a workable Rule 16 scheduling order," as well as "in seeking amendment of the Rule 16 order, once it became apparent that [the party] could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

5

**C. Plaintiffs Have Shown Good Cause to Permit Belated Amendment**

Safti argues that Plaintiffs were not diligent in seeking leave to amend many months after the deadline because one of the documents on which Plaintiffs rely—a 2007 email from Safti to a third party questioning Greenlite's qualification for "Buy American" standards—was produced in May of 2019, and because Safti asserted that Greenlite did not meet those standards in its May 31, 2019 counterclaim. *See* Opp'n (dkt. 130) at 3–4; Shah Decl. (dkt. 115-8) ¶ 4 & Ex. 1; Answer & Counterclaim (dkt. 56). Looking first to Safti's counterclaim, there are any number of reasons why Plaintiffs might not have been motivated to bring a misrepresentation claim based on that document alone—for example, the fact that it was not specifically directed to customers, the fact that damages would be uncertain at best in the immediate aftermath of its filing, and the potential application of litigation privilege doctrines.

The 2007 email produced in May of 2019 raises a closer question, and Plaintiffs do not explain why that document did not put them on notice of their claims to the extent that they are based on representations regarding Greenlite's status with respect to "Buy American" requirements. Even so, that document relates to only one of the four theories underlying Plaintiffs' proposed misrepresentation claims, and demonstrates only a single representation to a customer in San Diego, apparently unrelated to the Transbay Terminal project that is the focus of Plaintiffs' proposed new claims.

Safti also suggests that Plaintiffs may have been on notice of the representations underlying their claims before the onset of this action because a third party that was the recipient of some of the representations at issue—Crown Corr Inc.—works with Greenlite subject to a non-disclosure agreement and was represented by Plaintiffs' counsel in moving to quash a subpoena in this action. Opp'n at 2–3. Safti offers no evidence, however, that Crown Corr in fact shared the representations that Safti made to it with Plaintiffs before those documents were produced in this action.

Other than the 2007 email chain produced in May of 2019 addressed above, the remaining documents underlying Plaintiffs' proposed amendment were produced in August and September of 2019, well after the amendment deadline. *See* Shah Decl. ¶ 4. Safti does not argue that

6

Plaintiffs were not diligent in obtaining that discovery.[3] Plaintiffs proposed in October of 2019 to meet and confer with Safti to seek a stipulation to allow the amendment, and the parties met and conferred in early November but were not able to reach an agreement. Shah Reply Decl. (dkt. 135-1) ¶ 6. While Plaintiffs likely could have filed their motion more promptly after obtaining those documents, Safti does not meaningfully argue that the time between Plaintiffs obtaining documents in August and September and the conference in November, or the time thereafter before Plaintiffs filed their motion in December, evinces a lack of diligence, and the Court does not fault Plaintiffs for pursuing negotiations before filing their motion. The Court concludes that Plaintiffs have shown sufficient diligence to alter the scheduling order to allow their proposed amendment.

Safti also argues that allowing amendment would be both prejudicial and futile. The only prejudice that Safti identifies is the need to conduct additional discovery, including reissuing some of its own requests for discovery that were previously denied as unnecessary to the then-existing claims. Opp'n at 4–6. Because the same burden would occur if this motion were denied and Plaintiffs instead filed their new claims as a separate action, the Court affords it little weight. No depositions have yet occurred, and the parties have jointly requested—separately from Plaintiffs' motion to amend—that the fact discovery deadline be extended to June 30, 2020. Safti does not suggest that it would be unable to complete discovery on Plaintiffs proposed additional claims by that deadline.

As for futility, while Safti might well be correct that aspects of Plaintiffs' proposed amendment fail to meet the heightened pleading standard of Rule 9(b), such issues are better addressed on a motion to dismiss, and any deficiencies would likely warrant leave to further amend. The same is true of questions as to what inferences could be drawn from diagrams that Safti shared with potential customers or from statements about Greenlite's environmental impact or the source of its glass, whether Plaintiffs' allegations of intent or knowledge are sufficiently

---

[3] Safti takes issue with Plaintiffs' failure, before bringing this motion, to produce *to Safti* certain documents obtained from third parties, but that issue has no bearing on whether Plaintiffs should be granted leave to amend. *See* Opp'n at 6.

7

supported, and any deficiencies in Plaintiffs' proposed interference claims.

Plaintiffs have shown good cause to permit amendment after the deadline, and their motion to do so is GRANTED. In the interest of avoiding a motion to dismiss that, if successful, is likely to lead only to another round of amendments, Plaintiffs may file a third amended complaint no later than February 14, 2020, asserting at most[4] the claims included in Plaintiffs' proposed second amended complaint, supported by any factual allegations that Plaintiffs can add to address the arguments presented in Safti's brief opposing the present motion for leave to amend.

## IV. CONCLUSION

The Court construes the remaining disputed claim term as discussed above. Safti's motion for leave to amend is GRANTED. Safti may file a third amended complaint no later than February 14, 2020.

**IT IS SO ORDERED.**

Dated: January 31, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

---

[4] Plaintiffs are free, of course, to withdraw any of those claims if they so choose.

8