Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

*Additional Counsel Listed*
*On Signature Page*

**Attorneys for Plaintiffs**
**Ely Holdings Limited and**
**Greenlite Glass Systems Inc.**

Mark I. Schickman
SCHICKMAN LAW
1019 Euclid Avenue
Berkeley, Ca. 94108
Telephone: (510) 467-2909
Email: mark@SchickmanLaw.com

Theodore J. Bielen, Jr. (SBN 56395)
BIELEN & LAMPE
1390 Willow Pass Road, Suite 1020
Concord, CA 94520
(925) 288-9720
Fax: (925) 288-9731
Email: bielenlt@yahoo.com

**Attorneys for Defendant**
**O'Keeffe's, Inc. d/b/a SAFTI FIRST**
**a California corporation**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian Company,<br><br>Plaintiff,<br><br>v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**AUGUST 28, 2020 UPDATED JOINT CASE MANAGEMENT STATEMENT** |

The Parties to the above-entitled action, Plaintiffs Ely Holdings Limited ("Ely") and

Greenlite Glass Systems Inc. ("Greenlite")(Ely and Greenlite collectively "Plaintiffs") and

Defendant O'Keeffe's, Inc. d/b/a Safti First ("SAFTI")(Plaintiffs and SAFTI collectively "the Parties"), jointly submit this UPDATED JOINT CASE MANAGEMENT STATEMENT pursuant to this Court's June 1, 2020 Order (Dkt. No. 166), March 18, 2020 Order (Dkt. No. 155), March 18, 2019 Order (Dkt. No. 36) and November 6, 2018 Order (Dkt. No. 6), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9.

**1.     Jurisdiction & Service**

This Court has subject matter over Plaintiffs' patent, Lanham Act, and unfair competition-related claims and SAFTI's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Venue and personal jurisdiction are not contested.  Service has been effected on all of the Parties.

**2.     Facts**

**a.     Plaintiffs' Statement**

Plaintiffs bring claims against SAFTI for willful infringement of U.S. Patent No. 7,694,475 ("the '475 Patent"). Plaintiffs seek monetary damages for this infringement in the form of lost profits and price erosion damages, but in no event less than a reasonable royalty, as well as an injunction precluding future infringement.

Some twenty-plus years ago, the inventor of the '475 Patent, Michael Rae, was faced with a problem – he was looking to expand his glass floor business and was being told by architects that he would have to include fire-rated glass in any glass floor system that was to be used in a residential or commercial structure.  Fire-rated glass, however, was (and is) manufactured to include alternating layers of glass and an intumescent material, and was (and is) designed so that the layer closest to the fire will break as the intumescent layer behind it heats up and swells to form an opaque insulating layer.  The opaque insulating layer is eventually consumed by fire, exposing the glass behind it to the fire which causes that glass to break as the intumescent material behind it heats up and swells.  This process is repeated until all the layers of the fire-rated glass are consumed by fire.

Thus, when used in flooring where the fire-rated glass rests on a beam or frame, as the lower

1   layer(s) are exposed to fire coming up from below and begin to break/swell, the fire-rated glass

2   becomes unstable and cannot bear the loads associated with normal foot traffic without failing .

3   Attempts to solve this problem by adding a layer of structural glass above the fire-rated glass

4   required a large gap between the structural glass and the fire-rated glass, with the structural glass

5   resting on a top flange of a steel beam and the fire-rated glass on a bottom flange.   This

6   arrangement ensured that the structural integrity of the floor would be maintained even after the

7   fire-rated glass was exposed to fire and the layers thereof began to break/swell, thereby enabling

8   people inside the building to safely evacuate by walking on the structural glass.  Such large gaps,

9   however, were unsightly, and therefore undesirable in architectural applications, and, because they

10   could not be adequately sealed, often gave rise to problems such as condensation forming between

11   the structural glass and the fire-rated glass.

12          Trained as an engineer, Mr. Rae thought he could find a better way of framing structural

13   glass and fire-rated glass that would avoid this large gap and yet still preserve the integrity of the

14   structural glass when the fire-rated glass was exposed to fire.  His solution was the load transferring

15   means described and claimed in the '475 Patent, which issued on April 13, 2010.   This load

16   transferring means enabled the fire-rated glass to be located immediately below the structural glass,

17   yet ensured that any load on the structural glass was not transferred to the fire-rated glass (but,

18   instead, was transferred to the frame).  Thus, even as the glass layers of the fire-rated glass break

19   and the intumescent material swells, the structural glass can still bear the weight of foot traffic and

20   permit people to continue to walk across the area, even during a fire, and safely escape.

21   Revolutionary in its elegance, Mr. Rae's floor system, which can be installed either as a single piece

22   or as two separate pieces, became a great success and was widely sought after for use in various

23   construction projects.

24          After learning of Mr. Rae's patented glass floor system, however, SAFTI had a different

25   response, willfully misappropriating Ely's intellectual property and then, for good measure,

26   engaging in a campaign to mislead the relevant market into believing that Mr. Rae's novel floor

27   system was, in fact, SAFTI's product.  At least as early as 2015, SAFTI began selling a knock-off

28

of Mr. Rae's patented floor system in direct competition with Plaintiffs.  SAFTI was ultimately successful in sowing confusion in the marketplace and thereby forcing Plaintiffs to either reduce their price or lose jobs completely.

Moreover, to add insult to injury, around the same time it started selling its knock-off, SAFTI filed its own patent application to a trivial modification of the load bearing means of the floor system claimed in the '475 Patent.  SAFTI did not, however, disclose the '475 Patent to the examiner at the U.S. Patent & Trademark Office, despite being aware of it and its relevance to SAFTI's alleged invention.  Because of that failure, SAFTI was ultimately able to get its patent application to issue in March, 2018, as U.S. Patent No. 9,926,709 ("the '709 Patent").

Since the '709 Patent issued, SAFTI has represented and continues to represent to the public that it covers the accused products.  Unfortunately for SAFTI, the '709 Patent actually dooms SAFTI in this litigation.  SAFTI's own written description of the accused products confirms that each and every limitation of the '475 patent is identically found in the accused products.

Greenlite is also asserting additional claims under the **(i)** Lanham Act, 15 U.S.C. § 1125; **(ii)** California Business & Professions Code §§17200 and 17500, et seq.; and **(iii)** California common law on tortious and negligent interference. Greenlite bases these claims upon misrepresentations that O'Keeffe's has made and is making to the marketplace regarding the nature, qualities, and characteristics of its products.  Such conduct includes, but is not limited to, past misrepresentations about obtaining testing certification for its 120-minute floor system, so that O'Keeffe's could bid on projects for which its floor system did not qualify. O'Keeffe's is also omitting depictions of a load transferring means from the shop drawings of its floor system, which it provides to customers and potential customers. O'Keeffe's is doing so in order to hide the fact that is selling a product that infringes the '475 patent.

Moreover, O'Keeffe's has made and is also making misrepresentations regarding Greenlite's floor system in the marketplace, claiming it does not comply with the Buy American Act.

O'Keeffe's denies the positions of Plaintiffs and does not waive any claims or defenses through the submission of this report.

1

### b.    O'Keeffe's Statement

Since before 1980, O'Keeffe's, and its SAFTI division, has designed and manufactured fire and safety rated architectural glass products and moved the industry away from the dangerous wired glass which had been the architectural standard for fire and safety rated applications.   SAFTI was the first company to develop and market American made safety and fire listed and labeled clear glass wall and door assemblies.

Throughout its manufacturing history, SAFTI has successfully grappled with the challenge of creating architectural glass units which satisfied two separate stringent requirements, maintaining fire resistance while satisfying strength requirements -- -- for example, window walls in skyscrapers which must resist an hour of fire while making sure that people and objects do not break through the windows to the street far below.

SAFTI's president and chief executive officer, William O'Keeffe, invented and patented a one piece flooring system which accomplished both fire and safety objectives, allowed for adjustment in the field to accommodate factors such as variances in building tolerances and changes in drainage needs, and which could be installed in a single application. SAFTI developed and tested its glass fire floor system in 2015; SAFTI bids and sells fire floors either with and without the patented adjustment mechanism.  Mr. O'Keeffe obtained a patent for the fire rated floor in March, 2018. All of the above innovations were invented by Mr. O'Keeffe without any reference to or reliance upon any Ely product or patent.

Plaintiff Ely Holdings patented a quite different product, upon which it sues in this action. Ely's patented product is not adjustable, is comprised of two levels of glass separated by less than 50 mm, must be installed in two separate applications and contains a load bearing feature which supports and transfers the load from the top level and bypasses the second.  The SAFTI product contains none of those features.  Ely's patent sued upon herein, and Mr. O'Keeffe's patent are materially and significantly different. Rather, Ely's product is an obvious construction, presenting two separate levels, one installed under and independently of the other.  That obvious presentation, is not innovative and should never have been patented.  Moreover, plaintiffs have recently modified

1   their design to mimic the SAFTI product to present a unitized floor, rather than the separate sheet

2   system described in their patent; that construction is not a patented product, but is clearly described

3   as prior art with in figure 2 of that patent.

4          The only claim of patent infringement made by plaintiffs is that an adjustment mechanism

5   contained within some of defendant's designs constitutes a patented "load transferring means".

6   Plaintiff has conceded that none of defendants 60 minute floor is that contains such a mechanism,

7   and that defendant designs and sells 120 minute floors without that mechanism;  plaintiffs' entire

8   infringement and damage claim is based upon the sale of two floors.

9          Safti 60 minute fire floor does not contain the "adjustment mechanism" which plaintiffs

10  allege to be infringing; Safti sells 120 minute fire floors either with or without that adjustment

11  mechanism and, in fact, has provided only two floors which contain it.  Those are the only two

12  claimed infringing sales.

13         Looking at those two floor sales, they are not the separate sheet system which the patent

14  addresses, in which two separate floor layers are installed separately, and maintained separately

15  from each other, such that no load can pass from one layer to the other.  To the contrary, city's fire

16  floor is a single unit comprised of a walkable surface bonded to the fire resistant portion so (1) it is

17  not a separate unit (2) has no between the structural and fire resistant portions of the floor (3)

18  transfers load between the structural and fire resistant portions of the floor and (4) therefore

19  contains no bypass.  They do not infringe on any patent.

20         Plaintiffs misrepresent their LITEFLAM fire rated floor and its company.  It advertises that

21  it has 50 professionals, and over 100 completed LITEFLM projects since its founding in 2006.  To

22  the contrary, Greenlite's owner, Ryan Dennett, has never had more than two employees since the

23  company was founded, and the 50 advertised professionals includes "every third party independent

24  contractor [Dennett] ever dealt with".  The supposed  portfolio of over 100 completed projects is no

25  more than 30, if that, and includes projects performed by other companies, projects performed

26  before Greenlite was founded, every project with which Michael Rae was ever involved with and

27  projects which are not fire rated.

28

1    Plaintiffs also committed trade libel again SAFTI.  They  told construction professionals that

2    SAFTI stole its intellectual property, and that SAFTI misrepresented the properties of its fire rated

3    glazing.  It took jobs away from SAFTI, including the Transbay tower project, which required

4    goods made in America, while Plaintiffs provided glass that was made in Germany[1].  They falsely

5    told customers that defendant did not have a tested or listed fire floor, and that defendant was

6    dishonest and not to be trusted.  They falsely told design professionals that SAFTI was not capable

7    of providing fire rated glass floors.

8    Plaintiffs deny the positions of O'Keeffe's and do not waive any claims or defenses through

9    the submission of this report.

10   **3.     Legal Issues**

11   **a.     Plaintiffs' Statement**

12   Plaintiffs bring claims against SAFTI for direct infringement of U.S. Patent No. 7,694,475

13   ("the '475 Patent") pursuant to 35 U.S.C. § 271(a) and for indirect infringement of the '475 Patent

14   pursuant to 35 U.S.C. § 271(b) and (c). Plaintiffs further seek a judgment that SAFTI's infringement

15   has been and continues to be willful. *See Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 579 U.S.

16   ___, 136 S. Ct. 1923 (2016).

17   Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the

18   form of lost profits and price erosion damages, but in no event less than a reasonable royalty.

19   Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by

20   SAFTI. Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement of

21   damages pursuant to 35 U.S.C. § 284. Because this is an exceptional case, Plaintiffs also seek their

22   attorneys' fees pursuant to 35 U.S.C. § 285.

23   Greenlite brings claims against SAFTI for: (i) violation of the Lanham Act, 15 U.S.C. §

24   1125; (ii) violation of California Business & Professions Code §§17200 and 17500, et seq.; (iii)

25   intentional interference with ongoing business relations and prospective economic advantage; and

26

27   _____

[1] Greenlite is a Canadian Company whose 120 minute fire rated glazing is made in Germany; there's nothing actionable
28   in safti's typed comments to design professionals that the Greenlite product made in Germany does not satisfy buy
America requirements.

(iv) negligent interference with ongoing relations and prospective economic advantage.

Greenlite seeks injunctive relief and monetary and treble damages under its Lanham Act claims, pursuant to 15 U.S.C. §§ 116(a) and 1117(a).  Greenlite seeks attorney's fees, as this case is an exceptional one. Id.  Greenlite seeks monetary damages under its state law claims.

O'Keeffe's denies the positions of Plaintiffs and does not waive any claims or defenses through the submission of this report.

### b.     SAFTI's Statement

SAFTI denies infringement of U.S. Patent 7,674,475 by the manufacturing, use, and/or sale of its unique glass floor product. SAFTI also seeks a judgment of invalidity of the 7,694,475 patent based on United States Code Sections 101, 102, 103, and/or 112, and a declaration that this is an exceptional case entitling it to an award of attorneys' fees, costs and expenses.

SAFTI also asserts that plaintiffs patent is invalid and anticipated by prior art.  Figure 1 within the patent precisely tracks and anticipates independent claim 1 of the patent, while figure 2 of the patent anticipates the unitized floor system to which plaintiffs now seek to expand the patent.

SAFTI brings claims against Greenlite for: (i) violation of the Lanham Act, 15 U.S.C. § 1125; (ii) violation of California Business & Professions Code §§17200 and 17500, et seq.; (iii) intentional interference with ongoing business relations and prospective economic advantage; and (iv) negligent interference with ongoing relations and prospective economic advantage.

SAFTI seeks injunctive relief and monetary and treble damages under its Lanham Act claims, pursuant to 15 U.S.C. §§ 116(a) and 1117(a).  SAFTI seeks attorney's fees, as this case is an exceptional one and  monetary damages under its state law claims.  Safti seeks an order that it did not infringe upon the patent upon which plaintiffs sue , and that said patent is invalid, for reasons including the fact that it is obvious and anticipated by prior art.  SAFTI also asserts that the conduct which plaintiffs assert to constitute violations of the Lanham act and of California unfair business practice laws are not actionable.

Plaintiffs deny the positions of O'Keeffe's and do not waive any claims or defenses through the submission of this report.

**4.     Motions**

No pending motions are before the Court.

Plaintiffs anticipate filing a motion for summary judgment at the close of discovery in this case, or at such other time as the Court may permit. Plaintiffs do not currently intend to file any other dispositive motions, but reserve the right to do so.

SAFTI intends to move for summary judgment at the close of discovery in this case, or at such other time as the Court may permit. It does not currently intend to file any other dispositive motions, but reserve the right to do so.

SAFTI believes that settlement would be facilitated, the factual and legal issues significantly narrowed and potential discovery disputes minimized if damage discovery and proof followed dispositive motions.  Plaintiffs do not agree

**5.     Amendment of Pleadings**

On May 16, 2019, Plaintiffs filed a First Amended Complaint (Dkt. No. 49) adding Greenlite as a Party and SAFTI filed its Answer on May 31, 2019. On August 22, 2019, SAFTI filed an Amended Answer and Counterclaim, which Plaintiffs answered on September 5, 2019. On December 12, 2019, Plaintiffs filed a Second Amended Complaint (Dkt. No. 114). On February 14, 2020, Plaintiffs filed a Third Amended Complaint (Dkt. No. 151).

**6.     Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     Disclosures**

The Parties exchanged the initial disclosures required by Fed. R. Civ. P. 26 in February of 2019. On March 22, 2019, Plaintiffs served the disclosures required by Patent Local Rule 3-1, and on May 6, 2019, O'Keeffe's served the disclosures required by Patent Local Rule 3-3.

**8.      Discovery**

The Parties have exchanged written discovery and have exchanged a substantial amount of documents. Documents obtained by third parties have also been produced and exchanged.

The Parties have exchanged several hundred thousand pages of electronically-stored information ("ESI") on April 30, 2020 pursuant to Court Order (Dkt. No. 158) and each party has made supplemental productions since that time and pursuant to each other's requests.

Plaintiffs have largely completed the process of taking discovery on all relevant issues in this case, including whether SAFTI has infringed the '475 patent, both directly and indirectly, whether such infringement was willful, SAFTI violations of 15 U.S.C. §1125 and California state law, and the damages suffered by Plaintiffs due to SAFTI's alleged infringements and unfair competition.

The Parties suggest that the timing of and limits on discovery be governed by the Federal Rules of Civil Procedure and the Local Rules of this Court.

The Parties have entered into a stipulated e-discovery order.

The second phase of fact discovery was scheduled to conclude by August 15, 2020 (Dkt. No. 176), however the parties jointly agreed to hold certain depositions beyond that date.

Expert discovery will be conducted after the close of fact discovery and will be completed by November 5, 2020 (Dkt. No. 154).

O'Keeffe's  has requested that ZOOM or similar video conference be used in lieu of personal attendance at meetings and depositions. Plaintiffs have agreed to ZOOM or similar conferences but have reserved the right to, and without prejudice to, personal attendance at meetings and depositions, as permitted.  All depositions conducted since the Parties' last update to the Court have taken place via ZOOM.

Supplemental interrogatory responses are still outstanding, as well as the conclusion of certain corporate representative depositions; the parties are also discussing a protocol for production of documents identified by witnesses, requesting and supplementing document productions and agreeing to foundation and authentication of certain documents. While the Parties have largely

resolved prior discovery disputes, the Parties' are currently working through several pending

discovery disputes, which are not yet ripe for the Court and on which the parties are meeting-and-

conferring, so as to hopefully avoid the need for Court intercession, as with prior disputes. The

parties will also inform the Court promptly if further dispute arises in the future, for which formal

discovery motions or other court intercession are required.

   **a.      Rule 26(f)(3)(A): What changes should be made in the timing, form, or requirement for disclosures under Rules 26(a), including a statement of when initial disclosures were made or will be made?**

   Pursuant to this Court's Order Setting Initial Case Management Conference and ADR

Deadlines (Dkt. No. 6), Ely and O'Keeffe's exchanged initial disclosures in February of 2019,

while Greenlite provided its initial disclosures in October of 2019.  Moreover, both Parties provided

Supplemental and Amended disclosures in August of 2020.

   **b.      Rule 26(f)(3)(B): The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

   While the parties do not agree on this point, Defendant continues to propose that settlement

prospects will be materially aided, the scope of discovery and extra preparation significantly limited

and disputes between the parties minimized by deferring completion of discovery into damages

until after the scheduled determination of dispositive issues.

   The second phase of fact discovery was scheduled to be completed by August 15, 2020, and

is largely complete though still ongoing. Expert discovery will be completed by November 5, 2020.

   **c.      Rule 26(f)(3)(C): Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

   *See* above discussion on ESI in paragraph 8. Both Parties produced a significant number of

documents in the April 30, 2020 productions and several additional documents in subsequent

supplemental productions thereafter.

   **d.      Rule 26(f)(3)(D): Any issues about claims of privilege or of protection as trial-preparation materials, including – if the Parties agree on a procedure to assert such claims after production – whether to ask the Court to include their agreement in the order.**

   In light of the fact that disclosure of confidential and/or proprietary information may be

necessary in this case, the Parties submitted a Stipulated Protective Order to the Court. The Parties agreed that privileged communications and documents covered by the attorney work product doctrine and dated after the filing of this lawsuit need not be included in any privilege log. All other limitations on discovery imposed by the Federal Rules of Civil Procedure shall apply, absent a stipulation by the Parties approved by the Court.

The parties are in an ongoing discussion regarding claims of p protection of trial-preparation material except for the possibility of highly-sensitive financial information of the parties.  The Parties will continue to address such issues and inform the Court should assistance be required.

**e.**     **Rule 26(f)(3)(E): What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed?**

**(i)**     **Requests for Admission**

Each Party is limited to fifty (50) requests for admission, excluding those directed solely to authenticating exhibits for trial.

**(ii)**     **Depositions**

Each Party is limited to seventy (70) hours of deposition, and no more than twenty (20) total depositions, excluding experts and deponents pursuant to Fed. R. Civ. Proc. 45. Expert witness depositions and depositions taken pursuant to Fed. R. Civ. Proc. 45 will not count against the deposition time or number limits described above. Expert witness depositions will be limited to seven (7) hours each per report served.

**(iii)**     **Agreement to Serve by Email**

The Parties agreed to serve interrogatories, document requests, deposition notices, and requests for admission, and all responses thereto, on each other via email to at least three attorneys of record appearing for the receiving Party (hardcopies to follow by mail, if so requested). The Parties further agreed that service of a complete copy of these documents via email shall count as service by hand on the next business day.

f.      **Rule 26(f)(3)(F): Any other order that the Court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The Parties do not request any other orders under Rule 26(c) or under Rule 16(b) and (c) at this time.

**9.      Class Actions**

The above-identified action is not a class action.

**10.      Related Cases**

There are no cases or proceedings pending before another judge of this court, or before another court or administrative body, that are related to the patent involved in the above-identified action. Ely had, however, petitioned the U.S. Patent & Trademark Office to institute a Post Grant Review of U.S. Patent 9,926,709, which named William O'Keeffe, CEO of SAFTI, as the inventor, as discussed above.  The U.S. Patent & Trademark Office found U.S. Patent 9,926,709 to be invalid for being (1) anticipated as offered for sale to the Webcor/Obayashi Joint Venture, (2) unpatentable as obvious over the combined teachings of US Patent 7,694,475 and DE 20 202 759, and (3) unpatentable as obvious over the combined teachings of DE 202 06 230 and US Patent 7,694,475. That matter is under appeal to the Federal Circuit.

**11.      Relief**

Plaintiffs seek monetary damages for this infringement pursuant to 35 U.S.C. § 284, in the form of lost profits and price erosion damages, but in no event less than a reasonable royalty. Plaintiffs also seek a permanent injunction 35 U.S.C. § 283 precluding future infringement by SAFTI.  Because SAFTI's infringement has been willful, Plaintiffs seek a three-fold enhancement of damages pursuant to 35 U.S.C. § 284. Because this is an exceptional case, Plaintiffs also seek their attorneys' fees pursuant to 35 U.S.C. § 285.

As stated above in paragraph 3, Greenlite will also seek damages in the form of disgorgement of profits or actual damages, as applicable, and injunctive relief for SAFTI's violation of the Lanham Act and California state law, as well as treble damages and attorney's fees.

SAFTI seeks a judgment of invalidity of the 7,694,475 patent based on U.S.C. §§ 101, 102, 103, and/or 112, and a declaration that this is an exceptional case entitling it to an award of

attorneys' fees, costs and expenses.  SAFTI will also seek damages in the form of disgorgement of profits and/or actual damages, as applicable, and injunctive relief for Plaintiffs' violation of the Lanham Act and California state law, as well as treble damages and attorney's fees, and for an order that its product does not infringe on the patent in suit..

**12.    Settlement and ADR**

On May 2, 2019 and on February 23, 2020, the Parties participated in Early Neutral Evaluation (ENE) and mediation, respectively, but were not successful in settling this matter. Defendant requests reference to a settlement conference before a magistrate

**13.    Consent to Magistrate Judge for All Purposes**

The Parties have previously consented to have the Magistrate Judge conduct all further proceedings including trial and entry of judgment (Dkt. Nos, 10, 17).

**14.    Other References**

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation. Defendant requests reference to a settlement conference before a magistrate. As noted during the previous Case Management Conference, Plaintiffs are amenable to any further attempts at settling this matter.

**15.    Narrowing of Issues**

The Parties will continue to seek to narrow the disputed legal issues through the Patent Local Rule disclosure requirements, written discovery, depositions, and motions practice, including motions for summary judgement.  Defendant believes that a ruling on dispositive motions will significantly narrow the issues in this matter, ease the burdens of discovery and the cost of expert witnesses and materially increase the prospects for settlement of the case. Plaintiffs do not agree

**16. Expedited Trial Procedure**

The Parties do not believe that this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**17. Scheduling**

The Court has issued an order that it will set the case for trial following the scheduled

January 22, 2021 dispositive motion hearing date (Dkt 154).

**18.    Trial**

      Plaintiffs have made a demand for a jury and currently estimates that they will need 4-5 days to put on its case. SAFTI also estimates that it will need 4-5 days to present its case and defenses.

**19.    Disclosure of Non-party Interested Entities or Persons**

      The Parties have both filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 (Dkt. Nos. 3, 13).

      Pursuant to Civil L.R. 3-15, the Plaintiffs certify that as of this date, other than the named parties, *i.e.* Ely Holdings Limited and Greenlite Glass Systems Inc., there is no such interest to report.

      Pursuant to Civil L.R. 3-15, Defendant certifies that as of this date, other than the named party, O'Keeffe's, Inc., there is no such interest to report.

**20.    Professional Conduct**

      All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.    Other - Additional Topics Pursuant to Patent Local Rule 2-1(B)**

      **a.    Proposed modification of the obligations or deadlines set forth in these Patent Local Rules to ensure that they are suitable for the circumstances of the particular case (see Patent L.R. 13)**

The Parties do not believe that any changes need to be made to the obligations or deadlines set forth in this Court's Patent Local Rules.

      **b.    The scope and timing of any claim construction discovery (including disclosure of and discovery from any expert witness permitted by the court) and  damages discovery.**

The Markman Hearing took place on December 19, 2019. The parties must complete expert discovery by November 5, 2020.  Defendant submits that discovery of Plaintiffs' claimed damages is not yet complete, and suggests that it should be completed following ruling on dispositive motions; Plaintiffs do not agree.

1 | Dated: August 28, 2020

Respectfully submitted,

2

3

*/s/ Donald R. McPhail*
Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

4

5

6

7

8

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

9

10

11

12

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

13

14

15

16

17

18

Philip R. Bautista (admitted *pro hac vice*)
Email: pbautista@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

19

20

21

22

23

***Attorneys for Plaintiffs***
***Ely Holdings Limited and***
***Greenlite Glass Systems Inc.***

24

25

26

27

28

1

2      */s/ Mark I. Schickman*
       Mark I. Schickman
3      SCHICKMAN LAW
       1019 Euclid Avenue
4      Berkeley, Ca. 94108
       Telephone: (510) 467-2909
5      Email: mark@SchickmanLaw.com

6      Theodore J. Bielen, Jr. (SBN 56395)
       BIELEN & LAMPE
7      1390 Willow Pass Road, Suite 1020
       Concord, CA 94520
8      Telephone: (925) 288-9720
       Fax: (925) 288-9731
9      Email: bielenlt@yahoo.com

10     ***Attorneys for Defendant***
11     ***O'Keeffe's, Inc. d/b/a SAFTI FIRST***
       ***a California corporation***
12

13

14

15                    **SIGNATURE ATTESTATION**

16         Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this

17     document has been obtained from each of the other signatories.

18

19     Dated: August 28, 2020

20                         DICKINSON WRIGHT PLLC

21                         By: */s/ Donald R. McPhail*
22                             Donald R. McPhail (Admitted *Pro Hac Vice*)

23

24

25

26

27

28