**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Philip R. Bautista (admitted *pro hac vice*)
Email: pbautista@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

*Attorneys for Plaintiffs Ely Holdings Limited
and Greenlite Glass Systems Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>        Plaintiffs,<br><br>    v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>        Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>Date:        January 22, 2021<br>Time:        9:30 a.m.<br>Courtroom:    Courtroom F, 15th Floor<br>Judge:        Joseph C. Spero |

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 22, 2021, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Joseph C. Spero, located at San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ely Holdings Limited ("EHL") and Greenlite Glass Systems Inc. ("Greenlite")(EHL and Greenlite collectively, "Plaintiffs") will and hereby do move for partial summary judgment as follows: ***First***, judgment in favor of Plaintiffs on their claims of patent infringement, Counts One and Two of their Third Amended Complaint (Dkt. No. 162); ***Second***, judgment in favor of Plaintiffs, dismissing Defendant O'Keeffe's, Inc. d/b/a Safti First's ("Safti") patent non-infringement and invalidity counterclaims, Counts I and II of Safti's Second Amended Counterclaim (Dkt. No. 69); and ***Finally***, judgment in favor of Greenlite, dismissing Safti's Lanham Act counterclaim and counterclaims under California Business & Professions Code §17200 and common law, Counts III and IV of Safti's Second Amended Counterclaim (*Id*.).

Plaintiffs' motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Ryan Dennett, the attached exhibits, the pleadings and other papers on file in this action, and any other evidence and argument that the parties may present in this briefing or at the hearing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

STATEMENT OF THE ISSUES ......................................................................... 1

RELEVANT FACTS .......................................................................................... 1

   I.   INTRODUCTION ................................................................................ 1

   II.   THE PATENT IN SUIT .................................................................... 3

   III.   STATEMENT OF MATERIAL FACTS ........................................... 4

      a.   Plaintiffs' Patent Infringement Claims. ................................. 4

      b.   Safti's False Advertising Counterclaims. ............................... 6

         1.   Counterclaims based upon the Transbay Project. .................. 7

         2.   Counterclaims based upon 20 Washington. ....................... 8

STANDARD OF REVIEW .................................................................................. 9

LAW AND ARGUMENT ..................................................................................... 10

   I.   INFRINGEMENT .............................................................................. 10

      a.   Accused Products with an Airspace between the Glass Layers ............................. 11

      b.   Accused Products with Intumescent Material between the Glass Layers .............. 13

         1.   Literal Infringement ........................................................ 13

         2.   Doctrine of Equivalents ................................................... 15

   II.   PLAINTIFFS SHOULD BE GRANTED SUMMARY JUDGMENT ON SAFTI'S COUNTERCLAIMS BECAUSE SAFTI HAS ABANDONED THEM ............................ 17

   III.   PLAINTIFFS SHOULD BE GRANTED SUMMARY JUDGMENT ON SAFTI'S INVALIDITY COUNTERCLAIMS ................................................ 18

   IV.   WILLFULNESS .............................................................................. 20

   V.   GREENLITE IS ENTITLED TO SUMMARY JUDGMENT ON SAFTI'S LANHAM ACT COUNTERCLAIMS ................................................................. 21

   VI.   BECAUSE SAFTI'S LANHAM ACT COUNTERCLAIMS SHOULD BE DISMISSED, ITS CALIFORNIA STATE LAW CLAIMS SHOULD BE DISMISSED ... 25

CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Arthur A. Collins, Inc. v. N. Telecom Ltd.,*

   216 F.3d 1042 (Fed. Cir. 2000) ................................................................. 10

*Biocell Tech. LLC v. Arthro-7*, No. SACV1200516JVSRNBX,

   2013 WL 12063914 (C.D. Cal. May 22, 2013) ................................... 22, 23, 24, 25

*Bryant v. Mattel, Inc*, No. CV049049DOCRNBX,

   2010 WL 11463865 (C.D. Cal. Oct. 5, 2010) ........................................... 17

*In re Century 21-RE/MAX Real Estate Advert. Claims Litig.,*

   882 F. Supp. 915 (C.D. Cal. 1994) ......................................................... 22

*Cleary v. News Corp.,*

   30 F.3d 1255 (9th Cir.1994) ................................................................. 25

*Contessa Food Prod. Inc. v. Lockpur Fish Processing Co.,*

   123 F. App'x 747 (9th Cir. 2005) ........................................................... 24

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.,*

   946 F.3d 1367 (Fed. Cir. 2020) ............................................................. 20

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*

   93 F.3d 1572 (Fed. Cir. 1996) ............................................................... 19

*Focal Point Films, LLC v. Sandhu,*

   No. 19-CV-02898-JCS, 2019 WL 7020209 (N.D. Cal. Dec. 20, 2019 ................... 25

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC,*

   70 F. Supp. 3d 1105 (N.D. Cal. 2014) ..................................................... 25

*Johnson v. Berry,*

   228 F.Supp.2d 1071 (D.Mo. 2002). ......................................................... 17

*Love v. The Mail on Sunday,*

   473 F. Supp. 2d 1052 (C.D. Cal. 2007) ................................................... 25

*Neville v. Foundation Constructors, Inc.,*

   972 F.3d 1350 (Fed. Cir. 2020) ............................................................. 19

*Open Source Sec., Inc. v. Perens*,

No. 17-CV-04002-LB, 2017 WL 6539874 (N.D. Cal. Dec. 21, 2017), aff'd, 803 F. App'x 73

(9th Cir. 2020).......................................................................................................... 24

*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*,

732 F. App'x 532 (9th Cir. 2018).............................................................................. 22

*PC Connector Sols. LLC v. SmartDisk Corp.*,

406 F.3d 1359 (Fed. Cir. 2005).................................................................................. 10

*Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*,

No. CV 05-2832-PHX-MHM, 2008 WL 11448028 (D. Ariz. Mar. 31, 2008)........................ 22

*Read v. Portec*,

970 F.2d 816 (Fed. Cir. 1992).................................................................................... 21

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,

179 F.3d 704 (1999)................................................................................................... 22

*Southland Sod Farms v. Stover Seed Co.*,

108 F.3d 1134 (9th Cir. 1997) ............................................................ 22, 23, 24, 25

*Southwall Techs., Inc. v. Cardinal IG Co.*,

54 F.3d 1570 (Fed. Cir. 1995).................................................................................... 10

*Stone Basket Innovations, LLC v. Cook Med.*,

892 F.3d 1175 (Fed. Cir. 2018).................................................................................. 18

*TrafficSchool.com, Inc. v. Edriver, Inc.*,

653 F.3d 820 (9th Cir. 2011). .................................................................................... 23

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,

520 U.S. 17, 40, 117 S. Ct. 1040 L. Ed. 2d 146 (1997).................................... 16, 17

*Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*,

32 F. Supp. 3d 1088 (N.D. Cal. 2014). ..................................................................... 22

**STATUTES**

15 U.S.C. § 1117(a) ................................................................................................... 23

15 U.S.C. §1125.................................................................................................... passim

California Business and Professions Code § 17200 ........................................... 1, 7, 25

## OTHER AUTHORITIES

PGR2019-00025 Final Written Decision ......................................................................... 6

U.S. Patent No. 7,694,475 ............................................................................... passim

## RULES

Fed. R. Civ. P. 56(a) ................................................................................... 10

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**STATEMENT OF THE ISSUES**

**I.**     Has Safti willfully infringed claims 1-2, 6-8, 12-13, and 21 of U.S. Patent No. 7,694,475 ("the '475 Patent") by advertising and promoting a glass floor system with "a sealed airspace" between a structural glass layer and a fire-rated glass layer, after learning about the '475 Patent in 2015 and, furthermore, after its former Director of Business Development warned it that the fire resistant floor system it was developing likely infringed the '475 Patent?

**II.**     Has Safti also willfully infringed claims 1-2, 6-8, 12-13, and 21 of the '475 Patent by advertising and selling a glass floor system having intumescent material between a structural glass layer and a fire-rated glass layer?

**III.**     Does Safti have the necessary evidence to survive summary judgment for the dismissal of its patent invalidity counterclaim in light of a heightened standard for clear and convincing evidence required to prove invalidity even though the examiners evaluating the '475 Patent for patentability considered and addressed the prior art upon which it now relies?

**IV.**     Can Safti survive summary judgment for the dismissal of its false advertising counterclaims under the Lanham Act 15 U.S.C. §1125(a)(1)(B), California Business & Professions Code §17200, and California common law, even though it is relying upon statements that are not misrepresentations of fact, and even though it cannot prove that these specific statements caused it to lose any fire-resistant floor system projects?

**RELEVANT FACTS**

**I.     INTRODUCTION**

For five years, Safti has copied Plaintiffs' 120-minute, fire-rated floor system. In the process, Safti has willfully infringed the '475 Patent and continues to do so.

In 2015, Safti's Director of Business Development warned Safti about the '475 Patent and also warned Safti that the 120-minute, fire resistant floor system it was developing likely infringed the '475 Patent. Yet, Safti ignored these warnings, disregarded the '475 Patent, and elected to willfully copy Plaintiffs' fire-rated floor system. Safti has willfully advertised and promoted a floor system with "a sealed airspace" between a structural glass layer and a fire-rated

glass layer, infringing claims 1, 2, 6, 7, 8, 12, 13, and 21 of the '475 Patent. Safti has also sold a floor system having intumescent material between a structural glass layer and a fire-rated glass layer, infringing claims 1, 2, 6, 7, 8, 12, 13, and 21 of the '475 Patent. As explained below in detail, the undisputed facts demonstrate that Safti is infringing the '475 Patent and, moreover, that Safti's counterclaim of non-infringement should be dismissed.

Safti's invalidity counterclaims fare no better and should also be dismissed. The undisputed facts demonstrate that the examiner of the '475 Patent considered the prior art upon which Safti now relies for its invalidity counterclaims and already deemed it as non-anticipatory. Safti's burden to prove invalidity through clear and convincing evidence is heightened even more for this reason. And while Safti relies upon expert witness testimony to attempt to meet this heightened burden, that expert's testimony is both incorrect on the prior art and insufficient to meet Safti's heightened burden.

Finally, in a desperate attempt to portray Greenlite as a bad actor in order to distract from its own willful misconduct, Safti claims that Greenlite has made misrepresentations of fact regarding its fire-rated floor system and Safti's floor system. Safti asserts that these purported misrepresentations give rise to false advertising claims under the Lanham Act and California state law. However, as explained in detail below, the statements upon which Safti relies are not even false. And even assuming, *arguendo*, these statements were false—they are not— Safti is still unable to demonstrate that those specific representations caused it to actually lose the projects at issue. Safti's false advertising claims amount to no more than mere speculation.

Seemingly in acknowledgement of its infringing activities, Safti is now also advertising and selling a new floor system that it claims is non-infringing and "fire rated." However, as Plaintiffs will prove at trial, Safti's sale of this purportedly non-infringing floor system is just an evolution of its ongoing unethical conduct and unfair competition. Safti is now misrepresenting to the marketplace and to customers that it has obtained fire-rated certification on its new flooring system when, in fact, it is referring to the certification obtained on its infringing floor system. Safti's brazen acts of unfair competition and unscrupulous behavior must be stopped—Safti is not only engaging in unfair competition through these new sales but could be

endangering the general public by selling a floor system that is not actually certified as "fire resistant" for 120 minutes.

## II.    THE PATENT IN SUIT

U.S. Patent No. 7,694,475 ("the '475 Patent") is directed to a novel fire-rated glass flooring system that enables engineers and architects to design buildings or other structures such that natural sunlight is permitted into otherwise dark spaces. *See* Bautista Dec., Ex. 14, Dennett Dec., ¶ 4. That is, the patented flooring system enables light to pass through the fire-rated glass flooring and thereby illuminate the interior portion(s) of a building, or other structure, while simultaneously providing an aesthetically pleasing design alternative to other flooring types that do not provide light. (*Id.*).

More important than simple aesthetics, however, the patented fire-rated glass flooring system is life-saving -- in the event of a fire, the fire-rated glass layer of the patented flooring system blocks the fire, smoke, and heat from passing through for a period of time. (*See Id.,* ¶ 2). During that period, people can safely walk across the structural glass layer of the system to evacuate the building, and thereby escape the fire, and first responders can safely enter the building to search for and rescue anyone who may be trapped by the fire and to fight the fire. (*Id.*).

Prior art glass flooring systems either placed the structural glass layer and fire-rated glass layer on the upper and lower flanges of the I-beams that make up the structural frame or stacked the structural glass layer and fire-rated glass layer one on top of the other, directly on the beams, such that any load applied to the structural glass layer would pass through the fire-rated glass layer to the structural frame below. *See* Bautista Dec., Ex. 1, the '475 Patent, Col. 1, ll. 12-34 and 51-53; Col. 4, ll. 52-Col. 5, ll. 18.

The claimed invention, however, includes a plurality of load transferring mechanisms ("LTMs") that enable the structural glass layer to be connected to the fire-rated glass layer but without the weight of the structural glass layer being supported by the fire-rated glass layer. *See* Bautista Dec., Ex. 14, Dennett Dec., ¶ 5. Rather, the weight of the structural glass, and the weight of anyone standing on it (*i.e.* an applied load), is borne by the LTMs located around the

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT

periphery of each glazing panel. (*Id.*).

The LTMs of the claimed invention have a vertical portion that is directly connected to beams in the structural frame below, and a horizontal portion that fits into a gap or space between the structural glass layer and the fire-rated glass layer around the edges of the glazing panel and thereby supports the structural glass layer. (*See Id.,* ¶6). As a result of this arrangement, during a fire, the structural glass layer remains stable and level even as the fire-rated glass layer below is being consumed by the fire, thereby enabling people and first responders to continue to walk safely across the floor despite the fire below. (*Id.*).

## III.  STATEMENT OF MATERIAL FACTS

The '475 Patent issued on April 13, 2010 to Michael S. Rae. *See* Bautista Dec., Ex. 1. The '475 Patent is assigned to EHL and exclusively licensed to Greenlite. *See* Bautista Dec., Ex. 2, '475 Patent Assignment; Bautista Dec., Ex. 3, July 13, 2020 Depo. Of Michael Rae at 42:20-43:15.

### a.  Plaintiffs' Patent Infringement Claims.

Every embodiment of Safti's 120-minute GPX FireFloor System (the "Accused Products") includes a glazing unit having a structural walking layer and a fire resistant portion. *Id.* Bautista Dec., Ex. 4, Macfarlane Opening Report ("Macfarlane Report"), Ex. O at UL0012-UL0014, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644. ████████████████████ ████████████████████████████████████████████████████████, *i.e.*, the structural walking layer is "a laminated glass sheet made up of two or more layers of glass capable of bearing weight." Bautista Dec., Ex. 4, Macfarlane Report, Ex. O at UL0012-UL0014, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644. ██████████████████████████████████████████████████████, *i.e.* the fire resistant portion is "a multi-layered glass sheet meeting all of the following conditions: a. made up of two or more layers of glass; b. having a transparent intumescent material interspaced between at least two of the glass layers; [and] c. having glass as its outer layers." Bautista Dec., Ex. 4, Macfarlane Report, Ex. O at UL0012-UL0014, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644.

1    Safti represents that Underwriters Laboratories ("UL") has certified the fire resistant

2    portion of the Accused Products alone as providing a certain fire resistance, *i.e.* the fire resistant

3    portion of the Accused Products is also "d. rated as possessing a designated fire resistance

4    certified by a testing authority." Bautista Dec., Ex. 4, Macfarlane Report, Ex. CC. The Accused

5    Products ███████████████████ (Bautista Dec., Ex. 4, Macfarlane

6    Report, Ex. O at UL0012-UL0014, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644)

7    and ███████████████████████████████████

8    ███████████████████████████████████

9    ███████████████████████████████████

10   ███████████████████████████████. Bautista

11   Dec., Ex. 4, Macfarlane Report, Ex. O at UL0012-UL0014, Ex. Q at 147, 209, Ex. R at UL0146

12   – UL0147, Ex. S at UL0633 – UL0644.

13   ███████████████████████████████

14   ███████████████████████████████████

15   ███. Bautista Dec., Ex. 4, Macfarlane Report, Ex. O at UL0012-UL0014, Ex. R at UL0146 –

16   UL0147, Ex. S at UL0633 – UL0644. ██████████████████

17   ███████████████████████████████████

18   ████████████████. Bautista Dec., Ex. 4, Macfarlane Report, Ex. O

19   at UL0012-UL0014, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644. █████

20   ███████████████████████████████████

21   ███████████████████████████████████

22   ███████████████████████████████████

23   ████████████████████████. Bautista Dec., Ex. 4,

24   Macfarlane Report, Ex. U OKI-0100323656 – OKI-0100323666, Ex. Q at 239-240. ██████

25   ███████████████████████████████████

26   ████████████████. Bautista Dec., Ex. 4, Macfarlane Report, Ex. O at

27   UL0012-UL0014, Ex. LL at OKI-0100353791.

28   Safti has manufactured, used, sold, and/or offered for sale two embodiments of the

1   Accused Products, ████████████████████████████████████████
2   ████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████
4   ███████████████████████████████████████████. Bautista Dec., Ex. 5, Macfarlane
5   Report Ex. Z; Bautista Dec., Ex. 4, Macfarlane Report Ex. AA, Ex. BB, Ex. CC, Ex. FF, Ex. GG,
6   Ex. HH. Between 2015 and 2020, Safti advertised to the relevant public that the Accused
7   Products were available with a sealed airspace between the structural walking layer and the fire
8   resistant portion. *Id.*; Bautista Dec., Ex. 4, Macfarlane Report; Bautista Dec., Ex. 6, 2019 and
9   2020 screenshots.

10          The Accused Products were offered for sale in 2015 to the Webcor Obayashi Joint
11   Venture ("Webcor") for installation at the Transbay Transit Center. Bautista Dec., Ex. 7,
12   PGR2019-00025 Final Written Decision. The Accused Products were manufactured and sold by
13   Safti to others for installation at the Union Square/Market Street Station in San Francisco and at
14   1050 17th St., NW in Washington, DC. Bautista Dec., Ex. 4 Macfarlane Report, Ex. FF, Ex. GG,
15   Ex. HH.

16          Prior to offering the Accused Products for sale, and at least by January 2014, Safti was
17   aware of the '475 Patent. Bautista Dec., Ex. 8, Decl. of Jeff Griffiths ("Griffiths Dec."), Ex. A.
18   At least by July 2014, Safti was aware that a load transferring mechanism was required for the
19   structural walking layer in a glass floor system in order to achieve a 120-minute rating for fire
20   resistance. Bautista Dec., Ex. 8, Griffiths Dec., ¶¶6-7. At least by August, 2015, Safti knew that
21   there was a high likelihood that the Accused Products infringed the claims of the '475 Patent,
22   but, despite this knowledge, Safti did not change the design of the Accused Products or seek an
23   opinion of counsel regarding the infringement and/or validity of the '475 Patent. Bautista Dec.,
24   Ex. 8, Griffiths Dec., Ex. E. In February, 2018, Safti received a letter from Elizabeth Shuster,
25   Plaintiffs' counsel, notifying Safti of its infringement of the '475 Patent, but, despite receiving
26   this letter, Safti did not change the design of the Accused Products or seek a license from EHL.
27   Bautista Dec., Ex. 9, E. Shuster's letter to Safti dated February 28, 2018.

28          **b.     Safti's False Advertising Counterclaims.**

Safti asserts false advertising-based counterclaims against Greenlite. (*See* Defs.' Second Amended Counterclaim, Count III) (Dkt. No. 69). According to Safti, Greenlite made misrepresentations regarding Greenlite's 120-minute fire-rated floor and Safti's 60-minute fire-rated floors. Safti asserts counterclaims under the Lanham Act, 15 U.S.C. §1125(a)(1)(B), the California Business and Professions Code § 17200, and common law. (*Id.*, Count IV).

Safti's counterclaims focus upon ***two specific projects*** on which Greenlite and Safti competed and for which Safti accuses Greenlite of making alleged misrepresentations: ***first***, a project called the "Transbay Project" in San Francisco, California and, ***second***, the 20 Washington project ("20 Washington"). *See* e.g., Bautista Dec., Ex. 10, Nov. 19, 2020 e-mail.[1]

### 1.     Counterclaims based upon the Transbay Project.

Safti asserts a Lanham Act counterclaim regarding the Transbay Project. According to William O'Keeffe, in May 2015 (*See* July 8, 2020 Depo. Of William O'Keeffe at 156-157 ("O'Keeffe Dep."), Bautista Dec., Ex. 11), Greenlite and Dennett allegedly misrepresented to the glass and metal subcontractor for the project, Crown Corr, Inc. ("Crown Corr"), that it intended to supply glass from the United States for its 120-minute floor in the United States, in order to satisfy a "Buy American" specification for the Transbay Project. (*Id.*) (*See also*, Def.'s Ans. To First Amended Compl. and Second Amended Counterclaim, ¶16(d)(Dkt. No. 69); Bautista Dec., Ex. 11, O'Keeffe Dep. at 156:25-157:22; Bautista Dec., Ex., 12, Ex. 114).[2] According to Safti, Greenlite misrepresented that the glass for the project would be manufactured in the United States when, in fact, Greenlite eventually supplied glass manufactured in Germany. (Bautista Dec., Ex. 11, O'Keeffe Dep. at 94:4-15, 156:25-157:22; Bautista Dec., Ex. 12, Ex. 114; Bautista Dec., Ex. 13, Ex 163). In other words, Safti's counterclaim alleges **(i)** that Greenlite falsely represented to Crown Corr that it would manufacture and supply glass for the Transbay Project in the United States; **(ii)** that Crown Corr relied upon this representation in selecting Greenlite,

---

[1] Safti's expert witness on damages for its counterclaims only refers to these two projects. The parties have agreed that the parties' damages expert reports are not needed for motions for summary judgment. (Bautista Dec., Ex. 10). However, should Safti assert that its counterclaims are based on more than these two projects, Plaintiffs reserve the right to submit Safti's damages expert report.
[2] May 20, 2020 Case Management Rpt. at 7. (Dkt. No. 164).

not Safti; and **(iii)** that Greenlite then supplied its glass from Germany, which Safti argues rendered Greenlite's product non-compliant with the Buy America Act.

However, the undisputed evidence shows that Greenlite ***did not*** misrepresent where its glass would be manufactured. Greenlite informed Crown Corr that its fire-rated glass would be would be manufactured in Germany—not the United States—in December 2015 and at several times prior to that point, including as early as March of 2015. (*See* Bautista Dec., Ex. 14, Decl. of Ryan Dennett ("Dennett Dec."), ¶ 8, Ex. 3, Submittal Proposal). Other correspondence between Greenlite and Crown Corr further substantiates this undisputed fact. (*See e.g.*, July 21, 2020 Depo. of Ryan Dennett ("Dennett II"), Bautista Dec., Ex. 15 at 164:16-167:17; Bautista Dec., Exs. 16-17).

William O'Keeffe admitted this fact. (Bautista Dec., Ex. 11, O'Keeffe Dep. at 109:24-110: 13). Not only did O'Keeffe admit this undisputed fact, he also admitted that he received an April 25, 2015 e-mail confirming that Crown Corr did not select Safti for the design-assist phase of the Transbay Project because its pricing was more than double the price of their competitor's. (*Id*. at 229: 3-17). This evidence demonstrates that Crown Corr did not select Safti for the Transbay Project due to cost reasons for at least a portion of the project. (*See* Bautista Dec., Ex. 11, O'Keeffe Dep. at 227:22 – 229:17; Bautista Dec., Ex. 18, Ex 133).[3]

### 2. Counterclaims based upon 20 Washington.

Safti also alleges that Greenlite made misrepresentations that caused Safti to lose a second project, 20 Washington. (*See* Bautista Dec., Ex. 19, November 19, 2020 e-mail). Although its pleadings do not mention 20 Washington, Safti bases its counterclaim as to 20 Washington upon a ***single*** e-mail, dated September 24, 2015, between Greenlite and the architect for the project, KPMB, based upon use of this e-mail during the deposition of Ryan Dennett. (*See* Bautista Dec., Ex. 15, Dennett II at 66:10; Bautista Dec., Ex. 20, Ex. 161).

And although Safti has not been clear as to what statements within this e-mail are misrepresentations, Safti ostensibly relies upon the following statements to support its claims,

based upon the deposition of Dennett:

- "We have not seen their details yet because they are trying to be sneaky." (Bautista Dec., Ex. 15, Dennett II at 71:9-73:2). This statement is not about Safti's 60-minute floor, on its face.

- " . . . if the Safti details look anything like our details they will be in US Patent violation." (*Id*. at 72:10-14). This statement is a conditional statement of opinion, on its face.

- "[f]rom what I can find on UL and Intertek directories Safti does not have a listing or fire test for horizontal glass floor." (*Id*. at 73:24-74:2). Through this statement, Dennett states that he could not find a UL Certification or Intertek Certification for Safti's floor:

> Q: Why did you say they do not have a listing or a fire test for a horizontal glass floor?

> A: Because I couldn't find any on the—on the testing agency's databases.

(*See* Bautista Dec., Ex. 15, Dennett II at 74:15-19). Safti's listing for its 60-minute fire-rated floor was not issued until nearly a year after Mr. Dennett's email. (See Bautista Dec., Ex. 21, Ex. 36; Bautista Dec., Ex. 30, Depo of Timothy Nass at p. 98-99.) Safti has not obtained any testimony or produced any documents from KPMB[4] or any other person verifying that these statements caused KPMB not to select it for 20 Washington. In a subsequent e-mail to the one now relied upon by Safti, KPMB states that it rejected Safti's shop drawings for 20 Washington because they did not match the project's architectural drawings. (*See* Bautista Dec., Ex. 22, Decl. of Mark Jaffar of KPMB, ¶¶2-3, Ex. 1).[5]

**STANDARD OF REVIEW**

---

[3] The non-selection for the design-assist portion of a flooring project significantly diminishes chances to be awarded any other portions of the project. (Bautista Dec., Ex. 14, Dennett Dec., ¶ 12).

[4] KPMB Architects is located in Toronto, Canada.

[5] Aside from the specific projects discussed in Safti's expert report, Safti also previously asserted that its counterclaims were based upon Greenlite's statements on its website. (*See* Second Amended Counterclaim (Dkt. No. 69); May 20, 2020 Case Management Rpt. at 7 (Dkt. No. 164); Bautista Dec., Ex. 11, O'Keeffe Dep. at 147:19-148:21). Safti contended that Greenlite had, at one time, misrepresented that it works with over fifty professionals and listed 100 LITEFLAM projects on its website. (*Id*.).

Dennett testified that the references to "fifty professionals" related to the number of subcontractors with which Greenlite worked and that "100 LITEFLAM" projects related to the various ventures under that brand, worldwide. (Bautista Dec., Ex. 23, February 7, 2020 Depo. of Ryan Dennett at 154-161). Safti has not presented any evidence that these statements are false, in any way. Safti is unable to point to the testimony of a single customer or potential

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As explained in more detail below, Federal Courts, including the United States District Court for the Northern District of California, have routinely granted summary judgment in favor of patent holders in patent infringement matters, for willful infringement, and in upholding the validity of their patents. Moreover, courts have also dismissed false advertising claims under the Lanham Act and analog California state law claims.

**LAW AND ARGUMENT**

## I. INFRINGEMENT

Summary judgment of infringement is proper when a jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents. *See PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). To satisfy the summary judgment standard, a patentee's expert need only set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by that court. *See Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047-1048 (Fed. Cir. 2000). This standard has been satisfied here.

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Here, both embodiments of the Accused Product identically contain each and every limitation of claims 1, 2, 6,7, 8, 12, 13, and 21 of the '475 Patent. A finding of literal infringement is therefore warranted.

There is no dispute between the parties that the Accused Products include a glazing unit composed of a structural walking layer (*i.e.* a layer of structural glass) and a fire resistant portion (*i.e.* a layer of fire-rated glass) supported by beams (*i.e.* a structural frame). There is also no dispute between the parties that the Accused Products include a toggle mechanism which

---

customer who relied upon these statements to select Greenlite for a project over it, which William O'Keeffe admits. (Bautista Dec., Ex. 11, O'Keeffe Dep. at 146:1-150:15).

functions, at least in part, to transfer a load applied to the walking surface of the structural glass to that structural frame below (*i.e.* a load transferring means or LTM).

Nevertheless, and despite not disputing that the Accused Products include a structural glass layer, a fire-rated glass portion, a structural frame, and a plurality of toggle mechanism which transfer an applied load from the structural glass layer to the structural frame, Safti's expert has proffered three reasons as grounds for his opinion that the Accused Products do not infringe the '475 Patent, *viz.,* "(1) some load transfers from the walking surface to the lower glass layers (2) the floor contains nothing but structural glass and fire glass [and] (3) there is no separation between the two layers." *See* Bautista Dec., Ex. 25, Safti Reply. Inf. Rep., ¶ 26(d). Each of these reasons will be addressed below with respect to the specific embodiments of the Accused Product.

### a. Accused Products with an Airspace between the Glass Layers

Since 2015, Safti has actively advertised and promoted embodiments of the Accused Product that have "a sealed airspace" between the structural glass layer and the fire-rated glass layer. (Bautista Dec., Ex. 5, Macfarlane Report Ex. Z; Bautista Dec., Ex. 4, Macfarlane Report, AA, BB, CC; Bautista Dec., Ex. 6). Safti's promotional literature actually touts this "sealed airspace" feature as a reason that the Accused Products are superior to competing products, such as the configuration depicted in FIG. 1 of the '475 Patent. *See* Bautista Dec., Ex. 1.

As noted above, in his Reply Infringement Report, Safti's expert provided three reasons for why he did not believe that the Accused Products infringed the claims of the '475 Patent. During his deposition in this matter, however, Safti's expert conceded that none of these reasons applied to the embodiments of the Accused Products having a sealed airspace between the structural walking layer and the fire resistant portion.

More specifically, Safti's expert has admitted that <u>no load </u>whatsoever is transferred from the structural walking layer to the fire resistant portion when a sealed airspace is located between the two layers of glass. *See* Bautista Dec., Ex. 24, Depo. of Glen Stevick ("Stevick Dep.") at 42:19-43:7; 47:10-13. Similarly, Safti's expert has admitted that the structural walking layer and the fire resistant portion are "separated" (even according to his definition of that term) when

1 there is a sealed airspace between them. *See* Bautista Dec., Ex. 25, Safti Reply. Inf. Rep., ¶

2 26(a)-(b). And, finally, when there is a sealed airspace between the structural walking layer and

3 the fire resistant portion, it is beyond dispute that the glazing unit in the floor system contains

4 more than just structural glass and fire glass, *i.e.* it also contains air (or some other gas(es))

5 sealed between the glass layers. *See id.* The embodiments of the Accused Products having a

6 sealed airspace between the structural walking layer and the fire resistant portion therefore

7 identically contain each and every limitation of asserted claims 1, 2, 6, 7, 8, 12, 13, and 21 of the

8 '475 Patent at least for the reasons set forth in Bautista Dec., Ex. 4, Macfarlane Report and

9 Bautista Dec., Ex. 26, Macfarlane's Reply Expert Report ("Macfarlane Reply"). These particular

10 embodiments include the glass floor system that the Patent Trial and Appeal Board of the U.S.

11 Patent & Trademark Office held was offered for sale to Webcor by Safti for installation in the

12 Transbay Transit Center (Bautista Dec., Ex. 7) and the embodiments advertised and promoted on

13 Safti's website between 2015 and 2020 (Bautista Dec., Ex. 5, Macfarlane Report Ex. Z; Bautista

14 Dec., Ex. 4, Macfarlane Report, AA, BB, CC; Bautista Dec., Ex. 6). Claim charts comparing

15 these embodiments with the asserted claims of the '475 Patent are found on pages 35-40 of

16 Bautista Dec., Ex. 4, Macfarlane Report.

17 Since none of Safti's purported non-infringement grounds apply to the embodiments of

18 the Accused Products having a sealed airspace for at least the reasons provided above, Plaintiffs

19 are entitled to summary judgement of literal infringement.

20 Moreover, in addition to advertising that the Accused Products are available with a sealed

21 airspace between the structural glass layer and the fire-rated glass layer, Safti has also offered for

22 sale at least two proposed embodiments of its glass floor system which included separate

23 structural and fire-rated glass layers with an (unsealed) airspace between them, *i.e.* what Safti

24 refers to as a "separate sheet system." *See* Griffiths email, SAFTI comparison of GPX to TGP[6].

25 A claim chart comparing these embodiments with the asserted claims of the '475 Patent, along

26 with an annotated figure, is found on pages 8-10 of Bautista Dec., Ex. 26, Macfarlane Reply.

27

28

[6] Bautista Dec., Ex. 8, Griffiths Dec., ¶9 and Ex. C.

None of Safti's purported non-infringement grounds apply to these embodiments of the Accused Products either. That is, Safti's expert has admitted that <u>no load</u> is transferred from the structural walking layer to the fire resistant portion in a separate sheet system. *See* Bautista Dec., 24, Stevick Dep. at 42:19 – 43:7; 47:10-13. And it is beyond dispute that such a floor system necessarily has separate layers of structural and fire-rated glass with air in between them. *See* Bautista Dec., Ex. 25, Safti Reply. Inf. Rep., ¶ 26(a)-(b).

The embodiments of the Accused Product having an unsealed airspace between the structural walking layer and the fire resistant portion therefore also identically contain each and every limitation of asserted claims 1, 2, 6, 7, 8, 12, 13, and 21 of the '475 Patent at least for the reasons set forth in Tim Macfarlane's Report and Reply, including the claim charts found therein. And since none of Safti's purported non-infringement grounds apply to these embodiments, Plaintiffs are entitled to summary judgement of literal infringement of each of asserted claims 1, 2, 6, 7, 8, 12, 13, and 21 of the '475 Patent.

**b.      Accused Products with Intumescent Material between the Glass Layers**

In addition to the embodiments addressed above, Safti has sold embodiments of the Accused Products in which a portion of the airspace between the structural glass layer and the fire resistant component is filled with additional intumescent material. (Bautista Dec., Ex. 5; Macfarlane Report Ex. Z, Ex. AA, Ex. BB, Ex. CC, Ex. FF, Ex. GG, Ex. HH). These other embodiments include the interior and exterior glass flooring installed at the Union Square/Market Street Station in San Francisco and at 1050 17th Street, NW in Washington, DC. (Bautista Dec., Ex. 4, Macfarlane Report, Ex. FF, Ex. GG, Ex. HH).

**1.      Literal Infringement**

As noted above, there is no dispute that these embodiments of the Accused Product include a structural walking layer (a structural glass layer), a fire-rated portion (a fire-rated glass layer), a plurality of beams (a structural frame), and a plurality of toggle mechanisms (LTMs) that transfer any load applied to the upper surface of the structural glass layer to the frame below. (*See* Bautista Dec., Ex. 4, Macfarlane Report, Ex. O at UL0012-UL0014, Ex. Q at 147, 209, Ex. R at UL0146 – UL0147, Ex. S at UL0633 – UL0644, Ex. CC, OKI-0100353791. Claim charts

1   comparing these embodiments to the asserted claims of the '475 Patent are found on pages 43-49

2   and 50-62 of Bautista Dec., Ex. 4, Macfarlane Report.

3        Despite the undisputed presence of all of these elements in the Accused Products, Safti's

4   expert has nevertheless advanced three specific reasons to support his opinion that the Accused

5   Products do not infringe certain claims of the '475 Patent, *viz.*, "(1) some load transfers from the

6   walking surface to the lower glass layers (2) the floor contains nothing but structural glass and

7   fire glass [and] (3) there is no separation between the two layers." *See* Bautista Dec., Ex. 25,

8   Safti Reply. Inf. Rep., ¶ 26(d). None of these reasons, however, actually applies to any of the

9   Accused Products.

10       First, with respect to Safti's reason (3), Safti's expert's opinion is contrary to this Court's

11   claim construction and, therefore, cannot be correct. That is, when construing the disputed

12   language of the claims, this Court expressly held that "[u]nder this construction [of the term

13   "*separated*"] **the space between the two layers** could be empty or **could be filled by non-glass**

14   **material**, but cannot be filled by structural glass or fire-rated glass." *See* Claim Construction

15   Order (Dkt. No. 112 at 8) (emphasis added). The presence of additional intumescent material in

16   the sealed space between the structural walking layer and the fire-rated portion of the Accused

17   Products therefore does <u>not</u> mean that "there is no separation between the two layers" as asserted

18   by Safti's expert. Safti's reason (3) fails.

19       Second, with respect to Safti's reason (2), there is nothing in the asserted claims of the

20   '475 Patent that precludes the glazing unit from being composed of just structural glass and fire

21   glass, *i.e.* there is no requirement that the glazing unit have an airspace between the glass layers.

22   As noted above, this Court expressly rejected that contention during the claim construction

23   proceedings in this matter. *See* Claim Construction Order (Dkt. No. 112 at 9). The asserted

24   claims of the '475 Patent require only that the glazing unit comprise "a first layer of glass which

25   comprises a structural glass" and "a second layer of glass which comprises a fire rated glass."

26   *See* Bautista Dec., Ex. 1, the '475 Patent. A glazing unit that "contains nothing but structural

27   glass and fire glass" therefore still falls fully within the scope of the properly construed claims of

28   the '475 Patent.

1  Finally, with respect to the Safti's reason (1), although Safti's expert contends that some

2  of the load transfers from the structural glass layer to the fire resistant glass layer, Safti's

3  documents show otherwise. Most significantly, ████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████████████████████. *See* Bautista Dec., Ex. 25, Safti Reply. Inf. Rep., ¶ 35.

6  Conversely, ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████. *See* Bautista Dec.,

9  Ex. 4, Macfarlane Report, Ex. O. Since ████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████.

13  As shown in the claim charts included in the Macfarlane Report, each and every element

14 of asserted claims 1, 2, 6, 7, 8, 12, 13, and 21 of the '475 Patent is identically found in the

15 Accused Products having intumescent material between the structural glass layer and fire-rated

16 glass layer. Plaintiffs are therefore entitled to summary judgement of infringement of these

17 asserted claims.

18  **2.    Doctrine of Equivalents**

19  Despite the evidence from UL's testing of Safti's floor system discussed above, Safti's

20 expert nevertheless contends that the embodiments of the Accused Product with intumescent

21 material between the glass layers do not literally infringe the asserted claims of the '475 Patent

22 because he believes that, <u>in a non-fire situation</u>, at least some of the load applied to the structural

23 walking surface is transferred to the fire resistant portion before it is passed to the toggle

24 mechanism and then to the frame. *See*, *e.g.*, Bautista Dec., Ex. 25, Safti Reply. Inf. Rep., ¶ 26(d).

25 Hence, at least in his opinion, in the absence of a fire, all of the load to the structural glass layer

26 is not transferred <u>directly</u> from the structural glass layer to the LTMs. This is nothing more than a

27 red herring at best.

28  As an initial matter, any POSA would know that the fire-rated layer of a glass flooring

system will be consumed by fire in a fire situation -- indeed, that is its very purpose -- and will therefore be unable to provide support for the structural glass layer for the requisite time. Safti's own testing shows as much. *Id.*, ¶ 35. And, based at least on the specification of the '475 Patent and the prosecution history thereof, a POSA would understand that the whole purpose of the LTMs in the claimed invention is to provide support for the structural glass layer during such situations by transferring the applied load directly to the structural frame below. Safti's expert's opinion as to what happens in a non-fire situation is therefore irrelevant to the present invention.

Nevertheless, even if some of the applied load is transferred from the structural glass layer to the fire resistant portion in a non-fire situation as suggested by Safti's expert, the Accused Products with intumescent material between the glass layers would still infringe the '475 Patent at least under the doctrine of equivalents.

A component in an accused product may be equivalent to a claim element if the two are insubstantially different with respect to the role played by that element in the context of the specific patent claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S. Ct. 1040, 1054, 137 L. Ed. 2d 146 (1997).

Looking at the Accused Product, the only difference identified by Safti's expert is that he contends that, in a non-fire situation, some of the load applied to the structural glass layer will be transferred to the fire-rated glass layer before it is ultimately delivered to the LTMs to be transferred to the structural frame below. Even if true, however, such a difference is insubstantial in the context of the claims of the '475 Patent.

As described above, a POSA would immediately recognize from the specification of the '475 Patent that the LTMs are included in the claimed invention so that they can support the structural glass layer of the glazing unit when the fire-rated glass layer is being consumed by fire. A POSA would similarly recognize that the purported difference between the claims and the Accused Products, *viz.* that some insignificant portion of the applied load potentially goes through the fire resistant portion before it reaches the toggle mechanism in a non-fire situation, is insubstantial in the context of the claimed invention – where the whole purpose is to ensure a stable structural walking layer while the fire-rated layer burns away during a fire.

Moreover, in evaluating whether a component in an accused product is equivalent to the element of a patent claim, relevant differences can include the function each serves, the way in which each works, and the result each obtains. *See Warner-Jenkinson*, 520 U.S. at 39. Here, as set forth in Macfarlane's Reply Expert Report, the structural walking layer, the fire resistant portion, and the beams in the Accused Products all perform exactly the same function, in exactly the same way, to achieve exactly the same result as the structural glass layer, the fire-rated glass layer, and the structural frame of the claimed invention.

Similarly, the toggle mechanisms in the Accused Products perform the same function as the LTMs in the claimed invention, *viz.*, supporting the structural glass layer and transferring the applied load thereto to the structural frame below, and achieve the same result, *viz.* all of the load applied to the structural glass layer is transferred by the toggle mechanisms (LTMs) to the structural frame below. The only arguable difference is that all of the applied load goes directly to the LTMs in the claimed invention, whereas some minor portion thereof may go through part of the fire-rated glass before reaching the LTMs in the Accused Products. This difference, to the extent it even exists, is hardly substantial.

Plaintiffs are therefore entitled to summary judgement of infringement.

## II. PLAINTIFFS SHOULD BE GRANTED SUMMARY JUDGMENT ON SAFTI'S COUNTERCLAIMS BECAUSE SAFTI HAS ABANDONED THEM

As a threshold matter, Safti did not reassert its counterclaims when responding to Plaintiffs' Third Amended Complaint. (See Def.'s Ans. To Pls.' Third Amended Compl.)(Dkt. No. 152). District courts have held that a Safti's failure to reassert counterclaims in an answer to an amended complaint constitutes an abandonment of those counterclaims. *See, e.g., Bryant v. Mattel, Inc*, No. CV049049DOCRNBX, 2010 WL 11463865, at *5 (C.D. Cal. Oct. 5, 2010)(stating that, upon the filing of an amended complaint, "any...counterclaims in reply asserted in MGA's prior responsive pleadings were rendered without legal effect, and MGA was required to either re-assert these...counterclaims in reply or forfeit them."); *Johnson v. Berry*, 228 F.Supp.2d 1071, 1079 (D.Mo. 2002). Because Safti failed to re-assert its counterclaims despite filing its Answer to Plaintiffs' Third Amended Complaint, Safti's Counts I-V counterclaims are abandoned. Summary judgment should be granted in favor of Plaintiffs

Greenlite and EHL and Safti's counterclaims should be dismissed for this first independent reason.

### III. PLAINTIFFS SHOULD BE GRANTED SUMMARY JUDGMENT ON SAFTI'S INVALIDITY COUNTERCLAIMS

As an initial matter, Safti's expert has offered no opinion regarding the validity of claims 3-7, 9, 10, 17-20, 22, 23, 27, or 29-35 of the '475 Patent. Because Safti has failed to proffer <u>any</u> evidence to support its counterclaim for a declaratory judgement of invalidity of those claims, Plaintiffs are entitled to summary judgement that claims 3-7, 9, 10, 17-20, 22, 23, 27, and 29-35 of the '475 Patent have not been proven invalid.

With respect to the remaining claims of the '475 Patent, *viz.,* claims 1, 2, 8, 11-16, 21, 24-26, and 28, Safti has relied only on prior art that was before the examiners at the U.S. Patent & Trademark Office ("PTO") who were responsible for reviewing the '475 Patent. Safti's burden here is therefore substantial. *See Stone Basket Innovations, LLC v. Cook Med.*, 892 F.3d 1175, 1179-80 (Fed. Cir. 2018) ("We have explained that, where a party only relies on prior art considered by an examiner in its invalidity contentions, that party [also] has the burden to 'overcome[e] the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and . . . whose duty it is to issue only valid patents.'" (internal citations omitted)).

A detailed rebuttal of Safti's expert's opinion regarding the validity of claims 1, 2, 8, 11-16, 21, 24-26, and 28 of the '475 Patent, identifying all of its deficiencies for each challenged claim on a limitation-by-limitation basis, is provided as Ex. I to Macfarlane's Rebuttal Expert Report ("Macfarlane Rebuttal"), Bautista Dec., Ex. 27).

With respect to the opinions themselves, Safti's expert concedes that FIG. 1 of the '475 Patent shows only an I-beam supporting a layer of structural glass and a layer of fire-rated glass. *See* Bautista Dec., Ex. 29, Reply Invalidity Report, ¶24. Safti's expert nevertheless contends that the illustrated I-beam is, in fact, the load transferring means of the claim, with other I-beams (not shown) making up the structural frame. *See id*. Safti's expert's opinion, however, is fatally

1  defective and does not raise an issue of material fact.

2       Most significantly, Safti's expert has admitted that he did not consider or take into
3  account the specification and claims of the '475 Patent when he decided that the I-beam in FIG.
4  1 could be the load transferring means of the claims. *See* Bautista Dec., Ex. 29, Reply Invalidity
5  Report, ¶24. Rather, Safti's expert decided that the I-beam was a "load transferring means"
6  within the scope of the claims of the '475 Patent <u>solely because</u> a beam can receive and transfer
7  an applied load to another beam. *See id.* Such a construction, however, is thoroughly refuted by
8  the specification and claims of the '475 Patent and so cannot be correct.

9       First, the claims of the '475 Patent expressly recite both "one or more load transferring
10  means" and "a structural frame comprising a plurality of beams." *See*, *e.g.*, Bautista Dec., Ex. 1
11  at col. 8, ll. 44-45. It has been a well-settled principle of patent law for over twenty years that the
12  use of two different terms in the claims is presumed to identify two different things or structures.
13  *See*, *e.g.*, *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir.
14  1996); *Neville v. Foundation Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020). Indeed,
15  basic logic dictates that if a patentee intended the LTMs to be beams, then the patent claims
16  would have so stated (it being far simpler to say "beam" rather than "load transferring means").

17       Safti's expert's assertion that the LTMs of the claimed invention are merely the beams of
18  the structural frame is also seriously undermined by the other language in the claims, including
19  the requirements that "the structural frame supports . . . the one or more load transferring means"
20  and that the vertical portion of the LTMs "transfer[s] load from the first layer of glass above
21  directly to the structural frame below." *See*, *e.g.*, Bautista Dec., Ex. 1 at col. 8, ll. 44-45. Looking
22  at these requirements, a POSA would immediately recognize that the claims of the '475 are
23  differentiating between the LTMs that support the glass layers and the beams that make up the
24  structural frame below.

25       The specification of the '475 Patent further makes it clear that the LTMs of the claimed
26  invention are not beams, such as by noting that "the first and second layers of glass [in the
27  claimed invention] are separated **by at least one load transferring means rather than a deep**
28  **beam** [and so] the view through the floor is not obscured..." Bautista Dec., Ex. 1 at col. 1, ll. 63-

67 (emphasis added). There is simply no support in the specification for Safti's expert's contention that an I-beam is one of the "load transferring means" of the claims, nor would a POSA equate the two in the context of the '475 Patent.

Finally, it is significant that both of the examiners at the PTO who were responsible for examining the '475 Patent before its issuance reviewed FIG. 1 in detail, and yet neither examiner considered FIG. 1 to raise even a question of obviousness, much less anticipation.

With respect to the other reference relied on by Safti, *viz.* French Patent No. 2,723,123 ("FR123"), Bautista Dec., Ex. 28, Safti has similarly failed to identify any structure which could correspond to the claimed LTMs. More specifically, Safti's expert has <u>again</u> identified a part of the structural frame (an L-beam this time) as allegedly being the vertical portion of the LTMs. For at least the reasons discussed above with respect to FIG. 1, Safti's expert's contention is simply wrong – the claimed LTMs are not beams, and a POSA would plainly recognize that fact from the specification and claims (sources that Safti's expert, regrettably, neglected to consult).

Moreover, a POSA would also be aware that the horizontal portion of the alleged LTM in FR123 is screwed to the L-beam through an oblong-shaped hole. *See* FIG. 20 of FR123. Because of that shape, a POSA would immediately recognize that this structure would <u>not</u> be able to support a load applied to upper surface of the walking layer.

Finally, much as with FIG. 1, FR123 was cited and of record during the examination of the '475 Patent at the PTO. And, much as with FIG. 1, neither examiner thought FR123 raised even a question of obviousness, much less anticipation.

For at least these reasons, Plaintiffs are entitled to summary judgment that claims 1, 2, 8, 11-16, 21, 24-26, or 28 of the '475 Patent have not been proven invalid.

## IV.    WILLFULNESS

A finding of "willful" patent infringement requires nothing more than evidence of deliberate or intentional infringement. *See Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.,* 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citations omitted). This standard has more than been satisfied here.

As admitted by the former Director of Business Development for Safti, during

development of the Accused Products, Safti became aware that its flooring system could not support an applied load for a sufficient time without including some sort of LTMs to support the structural glass layer while the fire resistant portion was being consumed by fire. *See* Bautista Dec., Ex. 8, Griffiths Dec., ¶6. Safti was also aware that the '475 Patent disclosed and claimed LTMs for fire resistant glass flooring systems and that its proposed design likely infringed one or more claims of the '475 Patent. *See id.,* ¶9. Safti nevertheless chose to proceed with commercial marketing and sales of the Accused Products without seeking authorization from Plaintiffs. Safti's infringement has therefore been willful.

The Federal Circuit has enumerated a number of factors which can be evaluated to help determine whether Safti's infringement was willful. *See Read v. Portec*, 970 F.2d 816, 826-827 (Fed. Cir. 1992) (while *Read* has been held to have been overruled on other grounds, courts have continued to use its factors as a guide in determining willfulness). Looking at those factors within the context of this case, the vast majority thereof strongly favor a finding of willful infringement. First, the evidence here shows that Safti was aware of the teachings of the '475 and deliberately incorporated the ideas of inventor Rae when deciding to introduce LTMs into its floor system design. *See* Bautista Dec., Ex. 8, Griffiths Dec., ¶9. The evidence in this case also shows that Safti was aware of the high likelihood that its proposed glass floor system design infringed the claims of the '475 Patent, but failed to form a good-faith belief that the '475 Patent was either invalid or not infringed for years thereafter. *See id.* Moreover, Safti's infringement has continued unabated from at least 2017 to the present day, and remains on-going. And, finally, even though knowing of its infringement of the '475 Patent <u>and</u> being sued by Plaintiffs, Safti has made no effort to change the design of the Accused Products or to negotiate a license from EHL during that time.

Safti has proffered no evidence to rebut the above evidence of willfulness, nor has Safti offered any excuse or justification for its deliberate and continued infringement of the '475 Patent. Plaintiffs are therefore entitled to summary judgment on willfulness.

## V. GREENLITE IS ENTITLED TO SUMMARY JUDGMENT ON SAFTI'S LANHAM ACT COUNTERCLAIMS

Regarding a false advertisement claim under the Lanham Act, the United States Court of

Appeals for the Ninth Circuit and the district courts of this circuit have held that a plaintiff must prove a "causal connection" between a false advertisement and an injury to a plaintiff. *See, e.g., In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994)(stating that a plaintiff must prove a "***causal connection*** between the alleged false advertising and its own sales position (emphasis added) (citations omitted). *Accord, Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*, 732 F. App'x 532, 534 (9th Cir. 2018); *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014).

The Ninth Circuit has further articulated this requirement of a "causal connection" as a plaintiff having to prove that it has been "injured or likely to be injured ***as the result*** of a false statement." (emphasis added). In *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) the Ninth Circuit stated, in pertinent part:

> The elements of a Lanham Act § 43(a) false advertising claim are: (1) ***a false statement of fact by the defendant in a commercial advertisement about its own or another's product***; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) ***the plaintiff has been or is likely to be injured as a result of the false statement***, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. (emphasis added).

*See also, Biocell Tech. LLC v. Arthro-7*, No. SACV1200516JVSRNBX, 2013 WL 12063914, at *9 (C.D. Cal. May 22, 2013); *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*, No. CV 05-2832-PHX-MHM, 2008 WL 11448028, at *7 (D. Ariz. Mar. 31, 2008). *Accord, Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (1999)(affirming district court's refusal to award plaintiff disgorgement of defendant's profits because it failed to prove with "**reasonable certainty**" that defendant's sales were the result of infringing Rolex watches). (emphasis added).

Regarding the fifth element, this Court's holding in *Biocell Tech. LLC* is instructive. In *Biocell Tech LLC*, plaintiff asserted that defendants falsely advertised a different product than they actually produced. *Biocell Tech. LLC* at *12. The Court granted summary judgment against plaintiff's false advertising claim under 15 U.S.C. §1125 because plaintiff failed to prove that defendant's false advertisement caused it to lose sales. *Id.* As to the disgorgement of profits, the

Court held that "[where] there is no proof of past injury or causation, a reasonable trier of fact has no way to ascertain with any certainty what award would be compensatory and not constitute an impermissible penalty" contrary to the goals of 15 U.S.C. § 1117(a). *Id.*; *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 831 (9th Cir. 2011). As with the plaintiff in *Biocell Tech, LLC*, Safti has no proof of injury or causation—it has no proof that purported misrepresentations by Greenlite caused it to lose the Transbay Project or 20 Washington.

First, as a threshold matter, Safti cannot even prove that Greenlite falsely represented the origin of the glass it supplied for the Transbay Project and, as a result, it cannot satisfy the first element of its counterclaims. As stated in detail above, Greenlite accurately and indisputably informed Crown Corr that it was supplying glass manufactured in Germany in its December 2015 letter and in prior correspondence. (*See* Bautista Dec., Ex 14, Dennett Dec., ¶ 8; Bautista Dec., Ex. 15, Dennett II at 164:16-167:2). Unable to meet this threshold first element under *Southland Sod Farms* and *Biocell Tech. LLC* and other cases, summary judgment should be granted in favor of Counterclaim-Defendants and Safti's counterclaim should be dismissed.

Even assuming Greenlite had stated that its glass would be manufactured in the United States, Safti has no evidence from a Crown Corr employee or any other witness to support its supposition that this specific representation was the reason Crown Corr selected Greenlite and not Safti. In fact, as stated above, Crown Corr informed Safti that it was not awarded the design-assist portion of the project because its bid was costly, impacting its ability to win other aspects of the Transbay Project. (*See* Bautista Dec., Ex. 11, O'Keeffe Dep. at 229: 3-17). Safti merely speculates that this statement—despite Greenlite's numerous disclosures of its supplying German-manufactured glass—was the cause of Crown Corr not selecting Safti.

Thus, just as plaintiff in *Biocell Tech. LLC* failed to prove that the defendant's false advertisement actually caused it to lose sales, Safti cannot prove that any communication regarding Greenlite's glass supply was the reason Crown Corr did not select it. Plaintiffs' motion for summary judgment should be granted for this additional reason.

Safti similarly lacks evidence as to 20 Washington. Again, as an initial matter, Safti cannot even prove that the three statements it relies upon for its counterclaim are false and give

rise to a false advertising claim under the Lanham Act. First, regarding Greenlite's statement that Safti is "sneaky" (Bautista Dec., Ex. 15, Dennett II at 71:9-73:2), this statement is not about Safti's product, i.e., its fire-rated floor. As a result, it does not even meet the definition of an actionable "misrepresentation of fact" as to Safti's goods under 15 U.S.C. §1125(a)(1)(B). Rather, this statement was merely Dennett's opinion on how Safti was behaving during the bidding process and its concealment of its shop drawings from Greenlite. (*Id.; see also*, Bautista Dec., Ex. 4, Dennett Dec., ¶11). Second, as to the "violation of U.S. patent law" statement by Greenlite, this conditional statement was an opinion on a possible legal dispute and not a misrepresentation of fact. *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2017 WL 6539874, at *8 (N.D. Cal. Dec. 21, 2017), aff'd, 803 F. App'x 73 (9th Cir. 2020) (holding that blog posts about a disputed legal issue were not false assertions of fact and opinion and thus are not actionable in a defamation case). Third, regarding Greenlite's statement regarding whether Safti had a UL rating for its floor, Safti indisputably did *not* have one at the time and this statement is true. (*See* Bautista Dec., Ex. 15, Dennett II at 73:3-74:2). None of these statements constitute "a *false statement of fact* by the defendant in a commercial advertisement about its own or another's product" under the first element for a false advertising claim, as discussed in *Southland Sod Farms* and *Biocell Tech. LLC.* (emphasis added). As Safti is unable to meet this first element as to 20 Washington, summary judgment should be granted in favor of Greenlite, and Safti's counterclaim should be dismissed for this additional reason.

Just as importantly and as discussed in detail above, Safti has not obtained testimony or evidence demonstrating that any statement in Greenlite's e-mail to KPMB caused KPMB to select Greenlite for 20 Washington and not Safti. Again, Safti points to the e-mail's mere existence (Bautista Dec., Ex. 15, Dennett II at 60:12-77:17) and speculates that it must have been the reason for which KPMB chose not to select it. Such speculation is insufficient to survive summary judgment. *Contessa Food Prod. Inc. v. Lockpur Fish Processing Co.*, 123 F. App'x 747, 750 (9th Cir. 2005) ("[m]ere speculation is not sufficient to create a genuine issue of material fact sufficient to defeat summary judgment") (citations omitted). Safti lacks evidence that "it has been or is likely to be injured" because of Greenlite's e-mail, and cannot meet the

fifth element for a false advertising Lanham Act claim set forth in *Southland Sod Farms* and *Biocell Tech. LLC.*

Aside from this lack of evidence on causation, an e-mail between Greenlite and KPMB that was sent ***after*** the e-mail referenced above further disproves Safti's speculation. KPMB rejected Safti's bid, in part, because its bid shop drawings were "based upon the details not matching what was shown in our Architectural Drawings (sic)." (*See* Bautista Dec., Ex. 22, Jaffar Dec., ¶¶2-3, Ex. 1). Importantly, Greenlite makes ***no mention whatsoever*** of architectural designs in the e-mail that Safti relies upon, further reinforcing how its e-mail had no impact on KPMB's decision. Safti's counterclaims based upon 20 Washington should be dismissed and Greenlite's summary judgment should be granted for these additional reasons.

## VI. BECAUSE SAFTI'S LANHAM ACT COUNTERCLAIMS SHOULD BE DISMISSED, ITS CALIFORNIA STATE LAW CLAIMS SHOULD BE DISMISSED

Because summary judgment should be granted on the dismissal of Safti's Lanham Act counterclaims for the reasons set forth above, it should also be granted as to the dismissal of Safti's counterclaims under California Business and Professions Code § 17200. Safti's counterclaims are based upon the same facts as its Lanham Act claim. (Safti's Second Amended Counterclaim (Dkt. No. 69)). With the dismissal of the predicate Lanham Act counterclaim, Safti's state law claims must also be dismissed. *Love v. The Mail on Sunday*, 473 F. Supp. 2d 1052, 1059 (C.D. Cal. 2007); *See Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1134 (N.D. Cal. 2014); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) (citations omitted). Indeed, this Court has recently so ruled as well. *See Focal Point Films, LLC v. Sandhu*, No. 19-CV-02898-JCS, 2019 WL 7020209, at *10 (N.D. Cal. Dec. 20, 2019)(holding that a counterclaim under the California Business and Professions Code §17200 "fails for the same reasons [a] Lanham Act counterclaim fails to the extent it is based on alleged violation of the Lanham Act."). Accordingly, summary judgment should be granted as to the dismissal of Safti's California statutory and common law counterclaims.

## CONCLUSION

For the foregoing reasons, Plaintiffs should be granted partial summary judgment.

DATED: November 23, 2020

Respectfully submitted,

TAFT, STETTINIUS & HOLLISTER LLP

By: */s/ Philip R. Bautista*

Philip R. Bautista

*Attorney for Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT