Mark I. Schickman (CSB #62653)
SCHICKMAN LAW
1019 Euclid Ave.
Berkeley, CA 94708
Phone: (510) 467-2909
Email: Mark@SchickmanLaw.com

THEODORE J, BIELEN, JR. (CSB #56395)
BIELEN & LAMPE
1390 Willow Pass Road, Ste 1020
Concord, CA 94520
Telephone: (925) 288-9720
Facsimilia: (925) 288-9731
Email: bielenlt@yahoo.com

*Attorneys for Defendant and Counter-Claimants*
*O'Keeffe's, Inc., d/b/a SaftiFirst*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>    Plaintiffs,<br><br> v.<br><br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>    Defendant.<br>_____<br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>    Counter-Claimant,<br><br> v.<br><br>ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>    Counter-Defendants. | **CASE NO. 18-CV-06721-JCS**<br><br>**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS TIM MACFARLANE**<br><br>**January 22, 2021**<br>**The Hon. Joseph C. Spero**<br>**Time: 9:30 a.m.** |

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 22, 2021, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Joseph C. Spero, located at San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant O'Keeffee's Inc, dba SAFTI,") will and hereby does move for an order excluding the testimony of Plaintiffs''s technical expert, Tim Macfarlane. This motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the attached exhibits, the pleadings and other papers on file in this action, and any other evidence and argument that the parties may present in this briefing or at the hearing

## I BACKGROUND

On 5 November 2018, Ely Holdings Limited filed a complaint asserting claims for infringement of U.S. Patent 7,694,475 ("the '475 patent"). On 31 May 2019, Defendant O'Keeffe's, Inc. filed a first answer to a first amended complaint and an amended counterclaim naming Greenlite Glass Systems, Inc. as a cross-defendant asserting violation of the Lanham Act.

Ely served an Opening Expert report of Tim Macfarlane on September 11, 2020. Mr. MacFarlane also submitted a Rebuttal Expert Report on October 12, 2020 and a Reply Expert Report on November 2, 2020. Those reports are attached, respectively, as Exhibits 30, 31 and 32 to the accompanying Declaration of Maak I. schickman

The Macfarlane Reports were proposed to provide opinions as to whether certain products manufactured, sold, and offered for sale by Defendant O'Keeffe's, Inc. included elements of the claims of the '475 patent and to compare Defendant O'Keeffe's, Inc.'s GPX 120 FIREFLOOR system to the asserted claims of the '475 patent. Mr. Macfarlane has offered opinions that far exceed his expert qualifications, and are unreliable and, in certain cases, irrelevant.

## II EXPERT OPINION TESTIMONY STANDARD

The Federal Rule of Evidence 702 provides:

> "If scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case"

Rule 702 requires the court to determine that expert scientific testimony is relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 US 579(1993). In other words, an expert's proposed opinion must meet the standards for reliability under Rule 702. Thus, courts serve as "gatekeepers' to ensure expert testimony is reliable and helpful. Kumbo Tire Co., Ltd. v. Carmichael, etc., 516 U.S. 137,141 (1999).

Therefore, under Rule 702, expert testimony must satisfy three separate relevance and reliability standards:

    1. Expert testimony must be based upon sufficient facts or data;

    2. expert testimony must be the product of reliable principles and methods; and

    3. the expert witness must have applied the principles and methods reliably to the facts of the case.

Additionally, Congress noted several other factors that may bear on the reliability and admissibility of expert testimony, including:

    - Whether the expert's opinion grew "naturally and directly out of research" that an expert "conducted independent of the litigation, or whether [he has] developed [his] opinions expressly for purposes of testifying," (F.R.E. 702 Advisory Committee Notes) and

    -Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," (Id. citing General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Under the *Daubert* reliability requirement, parties "do not have to demonstrate to the court by a preponderance of the evidence that the assessments of their experts are "correct", they only have to demonstrate by a preponderance of evidence that their opinions are "reliable"."

## III. MR. MACFARLANE DOES NOT HAVE QUALIFICATIONS OR KNOWLEDGE TO PROVIDE ANY EXPERT OPINIONS IN THIS MATTER

Mr. Macfarlane has never qualified as an expert in any American or British Court (Macfarlane Deposition (Schickman Dec. Exh 4 8:22-9:5). His highest formal education is a Bachelor of Science degree (Schickman Dec. Exh 4, 9:15-18). Though Mr. Macfarlane spent three years in the United States from 1998 to 2001 representing his practice, during that period other people in the office, and not Mr. Macfarlane, were licensed to perform and performed structural engineering services (Schickman Dec. Exh 4, 182:6-184:12). He has never signed off on a drawing as an engineer (Schickman Dec. Exh 4, 12:8-13:17).

Before this litigation Mr. Macfarlane never heard of any testing agency except for Underwriters Laboratories (UL) (Schickman Dec. Exh 4, 27:21-24, 29: 7 ); he is not familiar with the UL certification and had never heard of Intertek or Southwest Research Institute (Schickman Dec. Exh 4, 135: 18-138:7) . He does not know what the term " engineering evaluation" means (Schickman Dec. Exh 4, 65:23 - 28).

Mr. Macfarlane never observed, conducted or engineered a fire test (Schickman Dec. Exh 4, 291:17-292:1). Mr. Macfarlane has never seen a fire floor with intumescent material put together (Schickman Dec. Exh 4, 215:15-215:11). Mr. Macfarlane has never conducted any fire test (Schickman Dec. Exh 4, 149: 6-17), nor has he modeled any fire test (Schickman Dec. Exh 4, 150:1-152:15) and is never done a finite element analysis demonstrating heat transfer (Schickman Dec. Exh 4, 154:16-155:19).

Mr. Macfarlane does not know what product Rae was selling when he prosecuted the patent. (Schickman Dec. Exh 4, 125:22-126:1) or what Greenlite's products are. (Schickman Dec. Exh 4, 138:14-139:11). Mr. Macfarlane cannot state whether the XP or SP Systems were separate sheet or unitized systems (Schickman Dec. Exh 4, 133:11-134:4). He never paid attention to whether a product was an XP, SP or VDS (Schickman Dec., Exh 4, Page 142). He is unaware of any installation of the Greenlite product prior to 2015. (Schickman Dec. Exh 4, 145:3-10).

He reviewed and included in his report only the GPX shop drawings provided to him by his counsel and they did not include the shop drawings for 78 Irving Street -- -- which he had never seen before his deposition (ID., 278:22- 79: 279:18, 280:23-282_12; 287:10-19; 288: 4-7). Prior to his November 5, 2020 deposition. Mr. Macfarlane assumed in his report that anything called a GPX 120 minute fire floor would have a toggle (Schickman Dec. Exh 4, 285:19-286:16). His only basis of opining that the Milliken, Dream Charter or the 50 East 69th street projects violated the patent was because they are called a GPX 120 minute floor system and, therefore, he assumes they have a toggle (Schickman Dec. Exh 4, 317:24-318:22 274:19-278:21)

He is not able to reliably apply any recognized methods to the facts of this case.

**TESTIMONY OF MR. MACFARLANE SUBJECT TO EXCLUSION**

## I. OPINIONS ON INFRINGEMENT IN MACFARLANE REPORTS

Mr. Macfarlane admits multiple times that he is not a lawyer and has not been trained in the law of patents. 4:15 of Schickman Exh 30 2:8 of Schickman Exh 31, 1:6 of Schickman Exh 32. Nonetheless, he has submitted multiple opinions on patent infringement, beyond his skill and profession. For example, his opinion on literal infringement, parroting the instructions of his counsel, are found on: 5:22-24 , 6:13-16 , 6:23-26 , 40:27, 28 , 42:3-8, 49:5-10 , 63:17-22, and 64:19-24 of his Opening Expert Report, Schickman Exh. 30.

Similarly, Mr. Macfarlane opines that there is infringement of certain claims of the '475 patent based on the Doctrine of Equivalents as found in his Opening Expert Report at :Schickman Exh 30, 5:24-27; 6:26, 27, 7:1, 2; 40:28, 41:1-4; 42:8-11; 49:11-15; 62:19-23 and 64:24-28 . Mr. Macfarlane is not a legal expert, and cannot opine on literal infringement and infringement under the Doctrine of Equivalents based on guidance" from counsel, e.g. Schickman Exh 30, 8:16-17 .

As to the applicable patent law, he also admits his opinions on infringement were based on his "understanding" of how to apply legal principles from direction of counsel , e.g. 4:17 of Schickman Exh 30 Thus, Mr. Macfarlane's legal opinions on infringement are inadmissible under Federal Rule 702 since they did not apply any scientific principles and methods of reliably to the facts of the case. Courts have supported an exclusion of expert testimony in similar situations.

For example, in United States EEOC v. Rockwell Intl. Corp., 60 F. Supp 2d 791 (DC IL, 1999); In re Magnum Oil Tools Intl., Ltd., 829 F.3d 1364, 1373 (Fed. Cir. 2016); South Wall Techs, Inc. v. Cardinal IG Co., 54 F. 3d 1570 (Fed Cir 1995), legal opinions of a scientific expert were excluded. Mr. Macfarlane is not a legal expert and should not be allowed to testify as to any legal conclusions based on his understanding of patent law provided to him by counsel.

## II. THERE IS NO BASIS FOR ANY OPINION THAT LOAD PASSES TO THE LOWER PART OF THE GPX FIRE FLOOR

In Mr. Macfarlane's opening expert report (Schickman Dec. Exh 30), at footnote 3 and accompanying text, he states without support or analysis, that when the toggle is engaged "the entire load (weight) of the glass unit, including the structural glass layer and the fire resistant glass layer, as well as any load on the walking surface of the structural glass layer, is being borne solely by the steel toggle plates of the Locking Mechanisms." Absent any scientific method or explanation for that conclusion, it cannot be allowed.

Under examination, Mr. MacFarlane abandoned that opinion[1]. He now states that even pressurized air can transfer load, and intumescent material would transfer more load than air (Schickman Dec Exh 4 164:17-169:18; 236:6-237:15). He does not know what the intumescent material in the GPX 120 product is made of and has never done an analysis on it (Schickman Dec Exh 4 215:12-216:22). He could not comment on the finite element analysis provided in support of Dr. Stevick's opinion that some load applied to the top layer of the GPX 120 Fire Floor will transfer to the lower layers of the bonded unit (Schickman Dec Exh 4 235:1-236:6).

In a lengthy interchange at pages 213 to 236 of his deposition, Mr. Macfarlane ultimately explains that he was not interested in learning the physical characteristics of the intumescent material[2] until receiving Dr. Stevick's finite element analysis, even though one needs to know that data in order to determine how much load passes from the structural glass through the intumescent material (Schickman Dec. Exh 4 , 219:1-7). He stands unable to comment

Mr. Macfarlane has never seen an intumescent fire floor made (Schickman Dec. Exh 4, 215:6-15). He applied no science to reach his conclusions. He admits that he does not know enough to reliably opine on how much load transfers from the top to the bottom of the fire floor. He has no factual basis for his (now abandoned) opinion at Schickman Dec Exh 30 paragraph 75,

---

[1] As another indicator that the opinion in this Declaration is unreliable, , he now states that the load from the structural layer will "engage" the lower layer and "go back up through the toggle to the structural frame" … "because the fire glass is picking up stress naturally, because it's bonded to the underside of the structural glass. It couldn't avoid doing so unless the bonding material had no sheer stiffness, no sheer resistance (Macfarlane declaration 230:8-233:5)

[2] The exact chemical composition is found in UL test reports. (Schickman Dec. Exh 4, 224:4-226:6). See, for example, Macfarlane Report Exhibit X, page INT 000057, which has the chemical formula/composition and manufacturing instructions for the intumescent layers.

SCHICKMAN LAW
1019 Euclid Ave.
Berkeley, CA 94708

footnote 3 and accompanying text, that the entire load from the top of the floor is borne by the toggle plates.

**MR. MACFARLANE'S REPORT AND TESTIMONY REGARDING TRANSBAY PROJECT**

In paragraph 98 of Schickman Dec Exh 4, Mr. Macfarlane opined that the GPX 120 floor proposed to Transbay in March 2015 contained the alleged toggle[3], saying that he was instructed to assume that to be true based upon an administrative determination of the patent and trademark appeal board (PTAB). That PTAB determination is under appeal (Schickman Dec Exh 20 ; https://portal.unifiedpatents.com/ptab/case/PGR2019-00025; ) ; without more, is not a final decision, sand is of no effect -- -- especially in the absence of any evidence to support the witness' conclusion. Indeed , there is no evidence suggesting that the load transferring toggle had been invented, let alone sold to Transbay or anyone else, in 2015.

Other than the instruction given to him to rely upon the PTAB decision, Mr. Macfarlane points to only one document, an internal SAFTI fire test report from July 3, 2014 which, Macfarlane argues, has a load transferring means (Schickman Dec. Exh 4, 251:18-252:22) . He does not know if the tested floor was ever offered for sale to anyone, or ever manufactured by SAFTI, and has never seen a SAFTI floor configured like the test panel (Schickman Dec. Exh 4, 260:11-262:12). That is the sum of support for his opinion that SAFTI's design for Transbay has a load transferring toggle (Schickman Dec. Exh 4, 258:22-259:6).

He ignores the floor drawing that SAFTI sent to Transbay in February 2015, which has no toggle (Schickman Dec. Exh 16). He ignores the proposed 120-minute fire floor which SAFTI developed in April and May 2015 for an Intertek 120 minute fire test, again with no Toggle (Schickman Dec. Exh 11). His opinion that SAFTI proposed to Transbay a floor with a load

---

[3] "It is my opinion that the GPX FireFloor System included in the proposal that was submitted by SAFTI FIRST as part of the bidding process for the Transbay (Salesforce) Transit Center project in San Francisco, CA identically contains each and every element of claims 1, 6, 7, 8, 12, 13, and 21 of the '475 patent and, therefore, literally infringe each of those claims. It is further my opinion that although the GPX FireFloor System included in the proposal that was submitted by SAFTI FIRST as part of the bidding process for the Transbay (Salesforce) Transit Center project in San Francisco, CA does not identically contain each and every element of claim 11, the only difference between them is insubstantial and so the glass flooring system infringes under the doctrine of equivalents".

transferring means is beyond his expertise, employs no recognized method and does noes not reliably apply and method to the facts of this case.

## II. MR. MACFARLANE'S REPORT AND TESTIMONY ON COMMERCIAL SUCCESS

In 13:3-7 Mr. Macfarlane's rebuttal report, Schickman Dec Exh 32 ,he states that the system found in the '475 patent has achieved commercial success and that others failed to achieve a similar success with their glass flooring system. He has shown no expertise in marketing anywhere, least of all in the United States or Canada.

Moreover, this opinion is put forth without any supporting data and, thus, contravenes Rule 702 which requires that expert testimony must be based on sufficient facts or data. Here, Mr. Macfarlane has no idea what Greenlite's product line is, or when any particular product was sold (Schickman Dec. Exh 4, 125:22-25;128:16-21;133:14-21;138;11-140:15) . Absent either expertise or data, and without any explanation of how the opinion was derived, Mr. Macfarlane should not be allowed to offer opinions on commercial success and the failure of Greenlite or others to achieve a similar glass flooring system as that found in the '475 patent. This statement is found on of MacFarlane's Rebuttal Report.

## III. MR. MACFARLANE'S REPORT AND TESTIMONY CONCERNING GREENLITE OBTAINING A SUBSTANTIAL PORTION OF THE RELEVANT MARKET IN THE UNITED STATES

Again, Mr. Macfarlane is providing an opinion, on 12:8-12 and 13:11-14 of MacFarlane's Rebuttal Report, which has no basis in fact. Mr. Macfarlane states the opinion that since Greenlite system was awarded in the contract for the glass floor at the Transbay Transit Center in San Francisco, CA, Greenlite obtained a substantial portion of the relevant market in the United States. There is no indication that the awarding of a single contract represents a substantial portion of the relevant market in the United States. Again, this opinion violates Rule 702 since it is not based on sufficient facts or data and, thus, should be considered unreliable.

In addition, Mr. Macfarlane is not a marketing expert. He has purported to be a scientific expert. Thus, opinion testimony as to marketing or commercial status of a product is improper under the <u>Daubert</u> Standard.

## SUMMARY

For the reasons cited above, the report and testimony of Mr. Macfarlane should be excluded on all of the matters delineated above,. It has no factual foundation, goes beyond his area of expertise, which is that of a civil engineer with a bachelor's degree in engineering.

Respectfully submitted,
BEILEN AND LAMPE
SCHICKMAN LAW

Dated: November 23, 2020

By <u>Mark I. Schickman</u>
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that after midnight on November 23, 2020, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Guy W. Chambers
Ellen P. Liu
Sideman & Bancroft LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111-3711

Donald R. McPhail
Taft, Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Ryan O. White
Elizabeth Shuster
Taft, Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204

*Attorneys for Plaintiff*

          */s/ Mark I. Schickman*
          Mark I. Schickman