Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Philip R. Bautista (admitted *pro hac vice*)
Email: pbautista@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

*Attorneys for Plaintiffs Ely Holdings Limited and Greenlite Glass Systems Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT TESTIMONY (DKT. NO. 188)**<br><br>Date:     January 22, 2021<br>Time:    9:30 a.m.<br>Courtroom: Courtroom F, 15th Floor<br>Judge:   Joseph C. Spero |

**TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................................... 1

II.  RELEVANT FACTS .................................................................................................... 1

III. LAW AND ARGUMENT ............................................................................................. 2

    A.   Macfarlane's technical knowledge and expertise will be helpful ........................ 2

    B.   Macfarlane's opinions are based on sufficient facts and data .............................. 3

    C.   Macfarlane used the proper methodology ........................................................... 5

IV.  CONCLUSION ............................................................................................................. 6

# TABLE OF AUTHORITIES

*Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*,
    31 F.3d 1154 (Fed. Cir. 1994) ................................................................................. 5

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993) ........................................................................................... 1, 3

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
    No. 07-cv-3770, 2010 WL 11570123 (D. N.J. May 13, 2010) .......................... 3

*Gussack Realty Co. v. Xerox Cop.*,
    224 F.3d 85 (2d Cir. 2000) .................................................................................. 4

*Johnson Worldwide Assocs. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999) ............................................................................. 5

*Promega Corp. v. Novagen, Inc.*,
    6 F. Supp. 2d 1004 (W.D. Wis. 1997) ................................................................ 3

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant has moved to strike the expert opinions of Plaintiffs' expert, Tim Macfarlane under Fed. R. Evid. 702. For at least the reasons set forth below, Mr. Macfarlane's proposed testimony is admissible under Fed. R. Evid. 702 and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Defendant's motion should therefore be denied.

**II.   RELEVANT FACTS**

Plaintiffs' expert, Tim Macfarlane, received a BSc degree in Civil Engineering with Honors in 1974, and his professional qualification as a Chartered Member of the Institution of Structural Engineers in the United Kingdom in 1978. Since that time, he has worked as a professional structural engineer. A copy of his CV, which includes a list of the over nine hundred (900) structural engineering projects on which he has worked over the past four forty-plus years, was previously filed as Dkt. No. 105-1.

Macfarlane pioneered the use of structural glass in works ranging from small interventions to large cable-hung glass walls, including the Yurakucho Glass Canopy, Tokyo International Forum in Tokyo, Japan, the Kimmel Centre for the Performing Arts in Philadelphia, Pennsylvania, the TKTS Pavilion, Times Square, New York, New York, and the Apple Flagship stores in New York, Chicago, San Francisco, and Osaka, Japan that have set the standard for Apple's stores worldwide (illustrated at www.glasslimited.com/projects/).

In addition to his over forty years of work as a professional structural engineer, Macfarlane has also served as an adjunct professor and/or an assistant professor at several universities in the U.S. and around the world teaching structural design and engineering to architecture students for over thirty years. He also served on the glass handbook committee for the Institution of Structural Engineers in the U.K. in 2011 and 2012.

Macfarlane also served on the committee responsible for drafting and reviewing ASTM E2751/E2751M, entitled *Standard Practice for Design and Performance of Supported Laminated Glass Walkways*, in 2011 and 2012. ASTM E2751/E2751M addresses elements related to load-bearing glass walkways, glass treads, and glass landings constructed with laminated glass, and includes performance, design, and safe behavior considerations.

### III.  LAW AND ARGUMENT

Pursuant to the Federal Rules of Evidence, a Court must evaluate four factors when determining whether to permit an expert witness to testify, *viz.* whether the witness' technical knowledge will help the trier of fact to understand the evidence and/or determine a fact in issue, whether the witness' testimony is based on sufficient facts or data, whether the testimony is the product of reliable principles and methods, and whether the witness has applied those principles to the facts of the case. *See* Fed. R. Evid. 702; *see also Banda v. Herc Rentals, Inc.*, No. 18-cv-05329-JCS, 2020 WL 353461 (N.D. Cal. January 21, 2020).

#### A.  Macfarlane's technical knowledge and expertise will be helpful

Mr. Macfarlane is a licensed, professional structural engineer having years of actual, real world experience with glass and its use in the construction of floors and similar load-bearing surfaces, such as walkways and landings (whereas Defendant's purported expert, on the other hand, has never worked with glass flooring or any other glass surface intended to bear a load).  The fact that Mr. Macfarlane is licensed in the United Kingdom, rather than the United States, has no bearing on his knowledge or expertise in this field. Defendant has not suggested, much less proved, that the requirements and standards for licensure in the UK are materially different than those in the US.

Mr. Macfarlane's technical knowledge and expertise is also evident from his declarations that were previously filed with the Court in connection with the *Markman* proceedings in this case. *See* Dkt. Nos. 85-2, 85-22.

Of particular relevance to the subject matter for this case, Mr. Macfarlane participated in the committee that developed the engineering standard for the design and construction of laminated glass walkways. That, in and of itself, is far more experience in the relevant art than Defendant's purported expert (who, in fact, has none).

Mr. Macfarlane therefore possesses technical knowledge that could assist the trier of fact in understanding the evidence in this case.

### B. Macfarlane's opinions are based on sufficient facts and data

Each of Mr. Macfarlane's reports in this case includes, where required, an identification of the materials that he considered. *See* Dkt. Nos. 85-2 at 3-4; 8; Ex. 1; Ex. 2 at 1-2. Defendant does not dispute the relevance or sufficiency of any of these materials, many of which were produced by Defendant.

Rather, Defendant appears to be challenging Mr. Macfarlane's opinions on the grounds that he did not personally conduct a finite element analysis ("FEA") prior to preparing his Opening Expert Report. This is a red herring.

An FEA is a computerized method for predicting how something may react to real-world forces, such as vibration, heat, fluid flow, and other physical effects. FEA is commonly used by engineers to reduce the number of physical prototypes and experiments that need to be constructed and optimize components in their design phase to develop better products, and to do so faster while saving on expenses.

It is, however, possible for a structural engineer to evaluate the evidence in this case, and explain that evidence to the trier of fact, without having first performed an FEA. *See Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge."); *see also Promega Corp. v. Novagen, Inc.*, 6 F. Supp. 2d 1004, 1030 (W.D. Wis. 1997) ("Plaintiff's experts are not bound to conduct their own experiments before giving expert testimony surrounding the significance of the prior art."); *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No.

07-cv-3770, 2010 WL 11570123, at *6 (D. N.J. May 13, 2010) ("[T]he fact that Dr. Johnson did not conduct his own . . . experiments on atomoxetine does not render his opinion unreliable and inadmissible. Dr. Johnson in not required to conduct tests in order to properly provide expert testimony.").

There certainly is nothing in any of the claims of the '475 patent at issue that requires the performance of an FEA or the achievement of any particular results from an FEA. Nor does the fact that an engineer did not personally perform an FEA have any impact on whether that engineer can evaluate and comment on an FEA, including the flaws and defects thereof. *See, e.g., Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) ("An expert may rely on data that she did not personally collect.").

A competently-trained structural engineer can readily evaluate, and explain, the evidence in this case using the basic principles of physics and engineering that s/he would have learned at university, *e.g.* for every action, there is a reaction, and the sum of all forces has to be zero for the structure to remain at rest under an applied load. Computer modeling is not necessary here.

Moreover, not only could a POSA evaluate how a load is transferred through a laminated glass floor without performing an FEA, but an FEA is also not the only way of measuring the transfer of loads in a laminated glass floor. For example, a pressure meter is a measuring device which allows a structural engineer to assess the load applied to a structure and also to measure change in applied loading to a structure. Such a pressure meter could be placed directly between the structural glass and the load transferring means/toggle mechanism in a glass floor. A second pressure meter could be placed under the bottom of the fire rated glass layer. When a load is applied to the upper surface of the structural glass layer, the load(s) transferred will be shown on the pressure meters. Similarly, a test such as the ones performed by Intertek and UL, in which a load is applied to the upper surface of the structural

glass layer and a fire started below, can also be used to show that the applied load is not being transferred through the fire rated glass, particularly as it is consumed by the fire.

Mr. Macfarlane's opinions are based on sufficient facts and data for them to be helpful to the trier of fact in this case.

### C. Macfarlane used the proper methodology

A two-step process is used in the analysis of patent infringement: first, the scope of the claims is determined, and second, the properly construed claims are compared to the allegedly infringing device to determine whether all of the limitations of the claim(s) are present, either literally or by an equivalent, in the accused device. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

As set forth in his Opening Expert Report, Mr. Macfarlane reviewed this Court's orders regarding certain terms in the claims (Dkt. No. 112, 142) and reviewed the claims, specification, and prosecution history of the '475 patent to obtain an understanding of the remaining terms. As shown in the claim charts included in his Opening Report, Mr. Macfarlane then compared each of the asserted claims to the accused products on a limitation-by-limitation basis and provided his analysis and conclusions.

As with an infringement analysis, a properly conducted invalidity analysis -- whether premised on anticipation or obviousness – begins with construction of the claims involved. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002). Once the claims have been construed, the second step involves determining whether all of the limitations of those claims are found in the prior art. *See Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994).

As set forth in his Rebuttal Expert Report, using the understanding of the scope of the claims that he obtained from his infringement analysis, Mr. Macfarlane compared the claims of the '475 patent to the references cited on a limitation-by-limitation basis. Mr. Macfarlane then provided his analysis and conclusions.

There is therefore absolutely nothing wrong with the methodology that Mr. Macfarlane used in evaluating the evidence in this case and providing his opinions regarding infringement and validity.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to strike the expert opinions of Tim Macfarlane should be denied.

DATED: December 14, 2020                Respectfully submitted,

                                        DICKINSON WRIGHT PLLC

                                        By: *Donald R. McPhail*
                                            Donald R. McPhail

                                        *Attorneys for Plaintiff*