Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
Shih Ching Li (admitted *pro hac vice*)
Email: eli@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email: jdbaker@dickinsonwright.com
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

***Attorneys for Plaintiffs Ely Holdings Limited
and Greenlite Glass Systems Inc.***

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Philip R. Bautista (admitted *pro hac vice*)
Email: pbautista@taftlaw.com
JoZeff W. Gebolys (admitted *pro hac vice*)
Email: jgebolys@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  January 22, 2021<br>Time:  9:30 a.m.<br>Courtroom: Courtroom F, 15th Floor<br>Judge:  Joseph C. Spero |

1
2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.      INTRODUCTION ................................................................................ 1

II.     ARGUMENT ........................................................................................ 1

     A.     Defendant Is Not Entitled to Summary Judgment of Non-Infringement ............... 1

          1.     The '475 patent is valid ................................................................ 2

          2.     The claims of the '475 patent cover floor systems in which the structural glass layer and fire-rated glass layer are connected .................... 4

          3.     The fire resistive portion of the GPX Fire Floor system is a layer of "fire-rated glass" under this Court's construction. ................... 5

          4.     The GPX FireFloor system includes a gap or space between the structural walking layer and the fire resistive portion. .............. 6

          5.     The structural walking layer and the fire resistive portion of the GPX Fire Floor System do not contact one another. ........................... 9

          6.     The claims of the '475 patent cover floor systems in which the fire-rated glass layer is suspended from the structural walking layer but with no air space between the layers ........................................ 11

          7.     Load is not transferred from the structural walking layer through the fire resistive portion to the structural frame in the GPX FireFloor .......... 11

     B.     Transbay Transit Center ............................................................... 16

III.    CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.*,
    55 F.3d 615 (Fed. Cir. 1995) .................................................................................................. 13

**OTHER AUTHORITIES**

U.S. Patent No. 7,694,475 ...................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

In its motion, O'Keeffe's, Inc. d/b/a Safti First ("Defendant") seeks partial summary judgment that Defendant's 120-minute GPX Fire Floor system does not infringe the asserted claims of U.S. Patent No. 7,694,475 (the "'475 patent") and that Defendant did not present a load transferring means to the entity responsible for the Transbay Transit Center construction project. For the reasons detailed below, Defendant's motion should be denied.[1]

## II.    ARGUMENT

### A.     Defendant Is Not Entitled to Summary Judgment of Non-Infringement.

Defendant advances the following reasons as grounds for its motion for partial summary judgment: "(1) the patent is invalid (2) the GPX 120 is not the separated floor described by the patent (3) the GPX' 120 fire rating applies to the entire floor, and no sub-part of it satisfies the Court's definition of a fire-rated floor (4) there is no space or separation between the walking surface and the fire floor (5) the walking surface and the fire floor touch each other (6) if the fire floor is considered 'suspended' from the walking layer, there is no layer of air filling a gap between the two (7) some load from the walking surface transfers from the walking surface to the fire floor, and all of the load does not go directly from the load transferring means to the structural frame bypassing the lower layers of glass." Def.'s Mot. for Summ. J.[2] at 19:18-26. None of these reasons, however, support Defendant's position, either because they are not true or because they are not relevant to the infringement issues in this case.

---

[1] Plaintiffs Ely Holdings Limited ("EHL") and Greenlite Glass Systems Inc. ("Greenlite") (EHL and Greenlite collectively, "Plaintiffs") note that Defendant did not timely file its Motion for Summary Judgment, as required by this Court's Scheduling Order (Dkt. No. 184). Defendant's Motion was not filed until the day after the deadline for submissions, on November 24, 2020, at 4:14 A.M.

[2] Dkt. No. 189.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

Defendant's request for summary judgment of non-infringement should therefore be denied. Plaintiffs will address each of Defendant's purported reasons for summary judgment in turn below.

### 1.      The '475 patent is valid.

Defendant's contention that the '475 patent is invalid is simply wrong. Notwithstanding the statutory presumption of validity, nor the fact that two different highly-trained examiners at the U.S. Patent & Trademark Office both rejected Defendant's invalidity argument, there is simply no evidence here, much less clear and convincing evidence, that any of the claims of the '475 patent are not valid over the prior art.

Defendant relies on the floor system depicted in FIG. 1 of the '475 patent for its assertion that the claims of that patent are invalid. *See id.* at 10:10-11; 17:22 – 19:16. The system depicted in FIG. 1, however, is not the same as the invention described in the claims of the '475 patent because that prior art system is completely lacking the "one or more load transferring means" expressly required by the claims. Indeed, contrary to Defendant's interpretation, the specification of the '475 patent expressly states that ***no load transferring means*** is shown in FIG. 1. *See, e.g.,* Pls.' Mot. Summ. J.[3], Bautista Dec., Ex. 1, '475 Patent at col. 1, ll. 11-28,[4] 48-52,[5] and 63-65.[6]

Rather, as described in the specification of the '475 patent, FIG. 1 illustrates a flooring system that consists of only an I-beam of the structural frame and two layers of glass, one composed of structural glass and the other of fire-rated glass. *See id.* at col. 1, ll. 11-28; col. 4, ll.

---

[3] Dkt. No. 187.

[4] "The first system is a double layer system comprising a fire-rated glass and a structural glass, wherein the fire-rated glass is supported by a first structure positioned at the bottom of a deep steel beam. The top of the beam supports the structural glass, which can be walked upon."

[5] "In the prior art double layer system [depicted in FIG. 1] a load transferring means was not included and therefore one portion of the structural frame bore the load from the first layer of glass and a separate portion of the structural frame supported the second layer of glass."

[6] Furthermore, as the first and second layers of glass are separated by at least one load transferring means rather than a deep beam [as shown in FIG. 1] the view through the floor is not obscured to such an extent when a person walking on the floor looks through it at an angle rather than straight down.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

53-66. In contrast to the system depicted in FIG. 1, however, in addition to structural and fire-rated glass layers and a structural frame comprising a plurality of beams, all of the claims of the '475 patent also require one or more load transferring means. *See*, *e.g.*, *id.* at col. 8, ll. 39-55 (reciting "[a] fire-rated glass flooring system comprising . . . ***one or more load transferring means; and a structural frame comprising a plurality of beams*** . . . wherein the structural frame supports . . . the one or more load transferring means . . . ." (emphasis added)).

Although one of the functions of an I-beam in a structure may be to transfer a load, the specification and claims of the '475 patent make it abundantly clear that the "load transferring means" of the claims is ***not*** a beam. *See*, *e.g.*, *id.* at col. 1, ll. 11-28; col. 4, ll. 53-66; col. 8, ll. 39-58. Indeed, a POSA[7] could hardly mistake the beam in FIG. 1 for a load transferring means in view of the clear and unambiguous teaching in the specification that "[i]n the prior art double layer system [depicted in FIG. 1] ***a load transferring means was not included*** . . . ." *Id.* at col. 1, ll. 48-52 (emphasis added).

Rather, as is clear from the specification and claims of the '475 patent, the load transferring means of the invention is a separate and distinct mechanism that is positioned on and connected to one or more beams of the structural frame. *See*, *e.g.*, *id.* at col. 2, ll. 24-32, 56-60; col. 3, ll. 37-59. The load transferring means can be a hollow box, or a solid box, or it can have a "C" shape, or it can have a horizontal portion attached to a vertical portion extending upwards from the top surface of the structural frame. *See id.* But it ***cannot be*** a beam, and no POSA would ever think that it is.

Defendant's attempt to equate a beam with the claimed load transferring means brazenly ignores all of the intrinsic evidence in this case. It is wholly improper for Defendant to attempt to

---

[7] For the *Markman* Hearing, MacFarlane defined a POSA as someone who "would have a bachelor of science or engineering degree in civil engineering, such as structural engineering or a related technical field, and either an advanced degree (such as a masters) or an equivalent amount of work experience, *i.e.* 2-3 years, in an area relating to structural glass and/or its engineering and/or design." *See* Pls.' Opening Claim Construction Brief, Ex. B, Macfarlane Opening Report (Dkt. No. 85-2) at 4, 8-9.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

invalidate the claims of the '475 patent by wantonly disregarding the express disclosures in the specification of the '475 patent, as well as the language of the claims. Such an analysis is fatally flawed under the law, and cannot be adopted or endorsed by this Court.

Defendant has failed to proffer any evidence that the claims of the '475 patent are invalid. Defendant's alleged reason (1) therefore fails to support Defendant's motion for summary judgment on the invalidity issues in this case.

### 2. The claims of the '475 patent cover floor systems in which the structural glass layer and fire-rated glass layer are connected.

With respect to alleged reason (2), Defendant appears to be returning to a position that was previously rejected by this Court and asserting that the claims of the '475 patent are limited to flooring systems in which the structural walking layer and the fire resistive portion are not connected or attached in any way. In particular, Defendant argues that "[the patentee] is estopped from expanding the patent to include such a bonded unit now, AND the Claim 1 language that he added prevents him from doing so." Def.'s Mot. for Summ. J. at 16:12-13.

This Court, however, rejected that argument during the *Markman* proceedings in this case, at least in part because FIG. 5 from the '475 patent actually shows a filler layer, such as additional intumescent material, between the lower face of the structural walking surface and the upper face of the topmost sheet of glass in the fire resistive portion. Recognizing that the claims of the '475 patent should be construed to encompass a glass floor system having a filler layer, such as a layer of intumescent material, between the glass layers, this Court therefore ruled that "the space between the two layers could be empty or could be filled by non-glass material, but cannot be filled by structural glass or fire-rated glass." *See* Claim Construction Order[8] at 8:15-17.

The claims of the '475 patent therefore cover both a separate sheet system, where the structural walking layer and the fire-rated glass layer are unconnected in any way, and a unitized system, where the structural walking layer and the fire-rated glass layer are bonded together by

---

[8] Dkt. No. 112.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

1    another material. *See id.* And, as described in the specification of the '475 patent, and shown in

2    the figures thereof, the connection between the two layers of glass can be a bead of structural

3    silicone and a glazing bar, as depicted in FIG. 6, or can be a layer of non-glass material, such as

4    additional intumescent material, as depicted in FIG. 5. *See* Pls.' Mot. Summ. J., Bautista Dec.,

5    Ex. 1, '475 Patent at col. 7, ll. 43-55; *see id.* at FIGS. 5-6.

6    As noted by the Court in its claim construction order, there is nothing in the claims or

7    specification of the '475 patent, or anywhere else, to justify limiting the scope of the claims to

8    just a separate sheet system and thereby exclude a unitized system such as shown in FIG. 5. *See*

9    Claim Construction Order at 8:4-5, 11-12. Defendant's alleged reason (2) therefore cannot

10   support summary judgment of non-infringement.

### 3.    The fire resistive portion of the GPX Fire Floor system is a layer of "fire-rated glass" under this Court's construction.

13   With respect to alleged reason (3), as evidenced by the documents on Defendant's own

14   website, Defendant is mis-characterizing the accused products. Defendant has received, and, in

15   fact, actively advertises and markets that it has received, a 120-minute fire resistance rating from

16   Intertek for the glazing used as the fire resistive portion of the accused GPX FireFloor system.

17   Attached hereto is the fact sheet for Defendant's SuperLite II-XLB glazing product

18   that can be found at https://safti.com/wp-content/uploads/2016/03/SuperLite-II-XLB-

19   120_4.30.2020_GSA.pdf. *See* Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec., Ex. 1.

20   According to this fact sheet, the SuperLite II-XLB glazing product has been tested and approved

21   by Intertek for 120 minutes of fire resistance. *See id.* at 1. In addition, as shown in the drawings

22   in the fact sheet, the SuperLite II-XLB glazing product consists of the four (4) sheets of glass

23   interspersed with three (3) layers of intumescent material (*see id.* at 2) – exactly the same

24   structure and configuration as found in the fire resistive portion of the accused GPX Fire Floor

25   system.

26   A portion of a drawing from the fact sheet is reproduced below (*id.*) next to a portion of

27   one of Defendant's shop drawings (*see* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Opening Report, Ex. HH) to facilitate a comparison of the SuperLite II-XLB product to the fire resistive portion of the GPX FireFloor system:



As can be seen from the drawings above, both of which were taken from Defendant's own documents, the SuperLite II-XLB glazing product and the fire resistive portion of the GPX FireFloor system are identical – both are composed of four (4) sheets of glass interspersed with three (3) layers of intumescent material.

Since the SuperLite II-XLB glazing product has been certified for 120 minutes of fire resistance by Intertek—as stated in Defendant's own fact sheet (*see* Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec., Ex. 1 at 1)—the fire resistive portion of the accused GPX FireFloor does satisfy this Court's construction of the term "fire-rated glass layer" as used in the claims of the '475 patent. Defendant's assertion to the contrary is wrong, and so Defendant's alleged reason (3) cannot support its motion for summary judgment.

### 4.    The GPX FireFloor system includes a gap or space between the structural walking layer and the fire resistive portion.

With respect to Defendant's reason (4), as shown by the documents produced in this litigation, Defendant is again mis-characterizing the accused GPX FireFloor products. Defendant has marketed and offered for sale embodiments of the GPX FireFloor system that have a sealed

airspace between the glass layers. And Defendant has offered for sale and sold, and continues to market and offer for sale, embodiments of the GPX FireFloor system that have a space or gap between the glass layers around the periphery of the glazing panel.

First, until at least February of this year, Defendant actively advertised an embodiment of the GPX FireFloor system that included a sealed airspace between the structural walking surface and the fire resistive portion. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 5, Macfarlane Opening Report, Ex. Z; *id.*, Ex. 6, GPX FireFloor system Fact Sheet. While Defendant contends that it never actually sold such a product, Defendant cannot and does not deny that Defendant actively marketed an embodiment of the GPX FireFloor system that included a sealed airspace, including on its website and in its printed promotional materials. *See id.* And, unfortunately for Defendant, such an offer for sale is still an act of patent infringement that is prohibited by 35 U.S.C. § 271(a).

Second, even in the embodiments of the GPX FireFloor system that have additional intumescent material between the structural walking surface and the fire resistive portion, there is still a gap or space between those layers of glass. *See* Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec., Ex. 2, Macfarlane Opening Report, Ex. V. This gap/space is illustrated in the excerpt from Defendant's shop drawings reproduced below (*see id.*):



PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

Indeed, as shown in the drawing above, the GPX FireFloor system absolutely *must* include a gap or separation between the lower face of the structural walking surface and the upper face of the topmost sheet of glass in the fire resistive portion *or else there would be nowhere for the horizontal steel plate of the toggle mechanism to be inserted*. *See id.*

Ignoring this reality, Defendant brazenly argues that "[e]ach layer of intumescent material completely fills the cavity between the two pieces of glass above and below it, adhering to each piece of glass." Def.'s Mot. for Summ. J. at 11:2-4 (internal citations omitted). This is just not true – as shown in the portion of a shop drawing reproduced above, as well as in Defendant's other documents and documents produced by both UL and Intertek[9], Defendant intentionally maintains a gap or space between the lower face of the structural walking surface and the upper face of the topmost sheet of glass of the fire resistive portion of the 120-minute GPX Fire Floor.

Defendant's alleged reason (4) therefore fails to provide any support for Defendant's motion here.

### 5. The structural walking layer and the fire resistive portion of the GPX Fire Floor System do not contact one another.

With respect to reason (5), Defendant is again mis-characterizing its own products in an effort to manufacture a non-infringement argument. Defendant's own documents, as well as documents produced by the entities that tested Defendant's products for fire resistance, Intertek and UL, all prove that the structural walking layer and the fire resistive portion of the GPX Fire Floor system do *not* contact each other.

More specifically, as shown in each of the shop drawings attached to Tim Macfarlane's Opening Expert Report and in Defendant's cut sheets, the bottom face of the laminated glass structural walking layer does not touch, at any point, the upper face of the topmost sheet of glass in the fire resistive portion. *See*, *e.g.*, Pls.' Mot. for Summ. J., Bautista Dec. Ex. 5, Macfarlane

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

Opening Report, Ex. Z; *id*., Ex. 4, Macfarlane Opening Report Exs. AA-CC. The shop drawings of the GPX Fire Floor system that was tested by UL show exactly the same arrangement, as do the shop drawings of the demonstrative sample that Defendant presented at the *Markman* hearing. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, Ex. O; Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec., Ex. 2, Macfarlane Opening Report, Ex. V.

Similarly, as shown by documents produced by UL and Intertek, Defendant manufactures the structural walking layer and fire resistive portion of the GPX Fire Floor system separately, using different materials and processes. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, Ex. R at UL0146 – UL0147; *id.*, Ex. S at UL0633 – UL0644; Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec., Ex. 3, Macfarlane Opening Report, Ex. T at 3-4. It is only after the two components have been separately manufactured that they are then connected to each other by a bead of a rigid thermoplastic spacer that maintains a pre-determined distance between the bottom face of the structural walking layer and the upper face of the top most sheet of glass in the fire resistive portion. *See id.*

At no time, however, does the bottom face of the structural walking layer ever contact the upper face of the topmost sheet of glass of the fire resistive portion. Indeed, in certain embodiments of the GPX Fire Floor system, the bottom face of the structural walking layer is prevented from contacting the upper face of the topmost sheet of glass of the fire resistive portion due to the presence of additional intumescent material between the two glass layers.[10]

Defendant's corporate representative confirmed at his deposition that the descriptions of the manufacturing processes for the GPX Fire Floor system in the UL and Intertek documents

---

[9] Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, Exs. O, U, X, AA, BB, CC, EE, GG, HH, LL; *id.*, Ex. 5, Macfarlane Opening Report, Ex. Z.

[10] Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, Exs. O, U, X, AA, BB, CC, EE, GG, HH, LL; *id.*, Ex. 5, Macfarlane Opening Report, Ex. Z.

are accurate. *See* Pls.' Opp'n to Def.'s Mot. for Summ. J., McPhail Dec. Ex. 4, O'Keeffe Dep. at 150:25 – 169:19. Defendant's alleged reason (5) fails to support Defendant's motion.

      **6.**      **The claims of the '475 patent cover floor systems in which the fire-rated glass layer is suspended from the structural walking layer but with no air space between the layers.**

With respect to reason (6), Defendant appears to be relying on the language of dependent claim 21, which, as construed by the Court, does require that the fire-rated glass layer be suspended from the structural walking layer and that there be an air gap between those layers. *See* Claim Construction Order at 12 (Dkt. No. 112). What Defendant fails to appreciate, however, is that asserted claims 1, 6, 7, 8, 12, and 13 of the '475 patent do not contain the limitations that are recited in claim 21 and therefore ***are not limited*** in the same way.

Each of asserted claims 1, 6, 7, 8, 12, and 13 of the '475 patent therefore cover floor systems in which the fire resistive portion is suspended from the structural walking layer ***and*** floor systems in which the fire resistive portion is not suspended from the structural walking layer. Similarly, each of asserted claims 1, 6, 7, 8, 12, and 13 of the '475 patent cover floor systems in which there is an air gap between the structural walking layer and the fire resistive portion ***and*** floor systems in which there is no air gap between the structural walking layer and the fire resistive portion (such as the system shown in FIG. 5 of the '475 patent).

Consequently, even if correct, Defendant's reason (6) does not apply to claims 1, 6, 7, 8, 12, and 13 of the '475 patent. Defendant's alleged reason (6) therefore does not support its motion for summary judgment.

      **7.**      **Load is not transferred from the structural walking layer through the fire resistive portion to the structural frame in the GPX FireFloor.**

It is undisputed that, when properly installed according to Defendant's instructions, the fire resistive portion of the glazing unit of the GPX Fire Floor system is suspended from the structural walking layer above the structural frame. *See* Tr. of Proceedings for Claim Construction Hearing at 43:9-44:9; Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 4, O'Keeffe Dep. at 242-243. Thus, as shown in the following portion of one of the drawings

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

produced by Defendant, the fire resistive portion of the glazing unit *does not contact the structural frame below*:



bottom of fire resistive portion

structural frame

*See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, Ex. U. at 288 of 420. Defendant's corporate representative confirmed at his deposition that this depiction is accurate. *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 4, O'Keeffe Dep. at 242-243.

Given that the bottom of the fire resistive portion of the glazing unit does not contact the structural frame below, it is simply impossible for any load to be transferred directly from the fire resistive portion to the structural frame below. Defendant's expert agrees, since, according to him, air cannot transfer a load (even within a sealed airspace). *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 24, Stevick Dep. at 42:19 – 43:7; Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 5, Stevick Dep. at 47:10-13. Accordingly, any load received by the structural frame in the GPX Fire Floor system must be transferred to it through the toggle mechanism – there simply is no other way for it to get there.

In addition, Defendant's entire discourse regarding potential stresses that might get induced in the layer of fire-rated glass is nothing more than a red herring. As a POSA would know, in those embodiments where the structural glass layer and fire-rated glass layer are

bonded together, such as shown in FIG. 5 of the '475 patent, it is possible that stress may be induced in one or more of the sheets of glass in fire-rated glass layer by a load applied to the structural glass layer because of that bonding. A POSA would also know that the floor system, including the fire-rated glass layer, is designed to bear any such induced stress, *i.e.*, a floor is not designed to fall down when a load is applied to its upper surface.

As a POSA would recognize and understand from the specification of the '475 patent, the load transferring means precludes the load applied to the surface of the structural glass layer from being transferred all the way through the fire-rated glass layer to the structural frame below. But a POSA would also recognize and understand that the load transferring means are not intended to prevent stress from being induced in any of the glass sheets of the fire-rated glass layer since that is simply an inherent property of a floor.

Moreover, as clearly and unambiguously stated at the very beginning of the specification, and repeated throughout, the invention disclosed and claimed in the '475 patent is a ***fire-rated*** glass flooring. Pls.' Mot. for Summ. J., Bautista Dec., Ex. 1, '475 Patent at 1:11. Defendant's focus on what might happen in the absence of a fire is therefore entirely irrelevant to the issues presented by this case.

It is undisputed that each of the sheets of glass in the fire resistive portion of the floor system breaks in a fire as the intumescent material above it begins to swell and expand upon reaching a certain elevated temperature. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 4, Macfarlane Opening Report, pages 18-19; *id.*, Ex. O at UL-0017-18.  Significantly, when a sheet of glass breaks, it is no longer physically possible to induce stress in that sheet of glass or for that sheet of glass to transfer any stress or other load. Thus, even if Defendant's expert is correct that a load applied to the upper surface of the structural walking layer might induce some stress in the glass sheets of the fire resistive layer when there is no fire, no such stress could ever be induced in the broken glass sheets of the fire-rated glass layer during a fire. And it is well settled that an accused device that "sometimes, but not always, embodies a claim[] nonetheless infringes." *Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.*, 55 F.3d 615, 622–23 (Fed. Cir. 1995).

1  Moreover, the testing of Defendant's GPX FireFloor system by Intertek and UL confirms

2  that the toggle mechanisms bear 100% of the weight of the structural walking layer, and 100% of

3  any load applied thereto, during a fire. As demonstrated during the tests performed by Intertek

4  for Defendant, the floor system without toggle mechanisms failed to support an applied load

5  after being exposed to fire for 81 minutes.  *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail

6  Dec. Ex. 11, Intertek 60-minute Test Report at OKI-001635 – OKI-0001647.  In a later test by

7  UL that included Defendant's toggle mechanisms, however, the same structural walking layer

8  was able to support an applied load for over 120 minutes.  *See* Pls.' Mot. for Summ. J., Bautista

9  Dec., Ex. 4, Macfarlane Opening Report, Ex. O.  Since the earlier Intertek test conclusively

10  established that the fire resistive portion of the floor system was not able to bear any load after

11  81 minutes in a fire, all of the load from the structural glass layer must have been taken by the

12  toggle mechanisms after that 81 minutes.

13  Nevertheless, assuming, for the sake of argument, that it is appropriate to consider the

14  properties of the accused GPX Fire Floor in a non-fire situation, Defendant's reason (7) does not

15  support Defendant's request for summary judgment of non-infringement. Rather, even if some of

16  the applied load is transferred from the structural glass layer to the fire resistive portion of the

17  GPX Fire Floor when there is no fire, the embodiments of the GPX Fire Floor with intumescent

18  material between the glass layers would still infringe the '475 patent at least under the doctrine

19  of equivalents.[11]

20  As described previously, a POSA would recognize and understand that the whole point of

21  including a plurality of load transferring means in the claimed fire-rated floor system is so that

22  these devices can support the structural glass layer of the glazing unit when the fire-rated glass

23  

24  

25  [11] Defendant's expert has admitted that ***no load*** is ever transferred from the structural walking

26  layer to the fire resistive portion, even in the absence of a fire, when a sealed air space is located
    between the two layers of glass.  *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex.  24, Stevick

27  Dep. at 42:19 – 43:7; Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 5, Stevick Dep. at
    47:10-13. Defendant's alleged reason (7) therefore cannot apply to those embodiments of the

28  GPX Fire Floor system either.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

1   layer is being, and has been, consumed by fire. Thus, even if some minor portion of an applied

2   load might go through the fire resistive portion before reaching the toggle mechanism when there

3   is no fire, that difference between the GPX Fire Floor system and the claimed invention is

4   irrelevant and, therefore, insubstantial.

5         Moreover, it cannot reasonably be disputed that the structural walking layer, the fire

6   resistive portion, and the beams in the GPX Fire Floor perform exactly the same function, in

7   exactly the same way, to achieve exactly the same result, as the layer of structural glass, the layer

8   of fire-rated glass, and the structural frame, respectively, of the claimed invention.

9         It also cannot reasonably be disputed that the toggle mechanisms in the GPX Fire Floor

10   system perform the same function as the load transferring means of the claimed invention – both

11   support the structural glass layer, particularly during a fire, and transfer any load applied thereto

12   to the structural frame below. Nor can it reasonably be disputed that the toggle mechanism and

13   the load transferring means achieve the same result, *i.e.*, all of the load applied to the structural

14   glass layer is transferred to the structural frame below. The only arguable difference according to

15   Defendant is that all of the load applied to the structural glass layer goes directly to the load

16   transferring means in the claimed invention, while some portion of that load may go into the fire-

17   rated glass before reaching the toggle mechanisms in the GPX Fire Floor system. To the extent

18   this difference even exists, something which Defendant has so far failed to prove, a POSA would

19   consider it insubstantial in the context of the claimed invention and another red herring.

20         Defendant asserts that Plaintiffs are estopped from expanding the scope of the claims of

21   the '475 patent on the grounds that "to satisfy the PTO that the patent did not encompass a

22   connected structure [as disclosed by Roberts, *see* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail

23   Dec. Ex. 12, U.S. Patent No. 5,027,567 (hereinafter "Roberts"),] the '475 inventor added the

24   need to take the load directly to the structural frame, bypassing the fire glass." Def.'s Mot. for

25   Summ. J. at 16:9-10. Defendant, however, is mis-characterizing the distinction that was being

26   drawn between Roberts and the claimed invention by the patentee during prosecution of the '475

27   patent.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

Roberts, which actually discloses an angled roof rather than a level floor, teaches stacking one layer of glass directly on top of a second layer of glass (glass-to-glass contact), with the bottom of the lower layer of glass resting on the structural frame or support.  *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 12, U.S. Patent No. 5,027,567.  Thus, a load applied to the upper surface of the top layer of glass would pass through that glass layer to the lower layer of glass, and then through that lower layer of glass to the structural frame or support below. This is substantially the same as the configuration that Defendant had tested by Intertek that failed after 81 minutes in a fire and substantially the same as the configuration depicted in FIG. 2 of the '475 patent.  *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 11, Intertek 60-minute Test Report at OKI-001635 – OKI-0001647; Pls.' Mot. for Summ. J., Bautista Dec., Ex. 1, '475 Patent at FIG. 2.

By amending the claims in response to the examiner's rejection, the patentee was not seeking to preclude ***any*** load from being transferred into the fire-rated glass before reaching the load transferring means. Rather, the patentee was only seeking to preclude the applied load from being transferred all the way through the fire-rated glass to the structural frame below, since such a configuration would not have been stable in a fire -- as stated in the specification of the '475 patent and as proved by Defendant's failed test.  *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 1, '475 Patent at col. 1, ll. 29-33; Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 11, Intertek 60-minute Test Report at OKI-001635 – OKI-0001647.

Thus, at most, even if the amendment identified by Defendant was to give rise to some sort of prosecution history estoppel, it bears only a tangential relationship to the accused equivalent in this case. Plaintiffs are therefore not precluded from relying on the doctrine of equivalents to show infringement in this case if necessary.

Defendant's reason (7) therefore does not support Defendant's request for partial summary judgment of non-infringement. Defendant's motion should be denied.

**B.      Transbay Transit Center.**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Defendant also seeks partial summary judgment that it did not offer a glass floor system

2   which included a load transferring mean for sale in connection with the construction of the

3   Transbay Transit Center in San Francisco. Defendant contends "[n]o evidence supports that

4   proposition, or that SAFTI offered such a feature to anyone in 2015. It did not happen." Def.'s

5   Mot. for Summ. J. at 20:8-9.  Unfortunately for Defendant, Defendant's own documents show

6   just the opposite.

7    First, Defendant is ignoring the shop drawings which were the subject of Plaintiffs'

8   motion for relief from the protective order in this case. *See* Pl. Ely Holdings' Mot. for Limited

9   Relief from the Protective Order, Dkt. No. 102. These shop drawings are labeled with "Transbay

10   Transit Center" and "FILE: GPX/TransbayTransit" on every sheet and are dated March, 2015.

11   *See* Ex. A to Pl. Ely Holdings' Mot. for Limited Relief from the Protective Order, Dkt. No. 125-

12   1.

13    The "Transbay Transit Center" shop drawings depict a floor system having an upper

14   layer of structural glass (three sheets of glass laminated together) and a lower layer of a fire-rated

15   glass, the lower layer of fire-rated glass being Defendant's SuperLite-II-XLB, which Defendant

16   advertises has received a fire rating from UL and Intertek).  *See* Pls.' Opp'n to Def. Mot. for

17   Summ. J., McPhail Dec. Ex. 7. The structural glass layer and fire-rated glass layer are depicted

18   as separate, with an unsealed air space between them. *See id.*

19    The fire-rated glass layer is shown as resting on a silicone block on the upper flange of an

20   I-beam. *See id.* The structural glass layer is shown as resting on a horizontal steel plate attached

21   to a vertical Allen bolt screwed into a receiver on the upper flange of the I-beam. *See id.* The

22   only difference between that mechanism and the toggle mechanisms currently used in the GPX

23   Fire Floor is therefore a single Nylock nut located on the Allen bolt below the horizontal steel

24   plate. But, as admitted by Defendant's expert, a threaded horizontal plate, such as depicted in

25   these shop drawings, is capable of supporting a load applied to the structural glass on its own.

26   *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 5, Stevick Dep.at 141:1-19, 142:6-

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

12. The "Transbay Transit Center" shop drawings therefore depict a load transferring means within the scope of the claims of the '475 patent.

Second, in connection with post grant review proceeding PGR2019-00025, which involved the patent that Defendant represents covers the accused GPX Fire Floor system, the Patent Trial and Appeal Board ("PTAB") at the U.S. Patent & Trademark Office expressly found that Defendant had offered for sale a glass flooring system that included toggle mechanisms. *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 6, Notice of Appeal at 39 of 151. Although Defendant has appealed the PTAB's holding that Defendant's patent was invalid under 35 U.S.C. § 102 based on an offer for sale before the filing of an application for patent, Defendant did not appeal or seek reconsideration of the PTAB's "find[ing] that Exhibit 1009 [Pls.' Mot. for Summ. J., Bautista Dec., Ex. 5, Macfarlane Opening Report, Ex. Z] describes the GPX FireFloor system [that was] offered for sale in [the Transbay bid package]." Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec. Ex. 6, Notice of Appeal at 34 of 151. Defendant is therefore collaterally estopped from contesting that factual finding here.

Third, even if Defendant did not include the toggle mechanisms as part of the glass floor system it was proposing to use in the Transbay Transit Center, Defendant cannot credibly deny that it did, in fact, propose to use a glass floor system that included a plurality of load transferring means.

More specifically, among Defendant's documents produced in this litigation was an email from Jeff Griffiths, Defendant's director of business development in 2015, to the entity responsible for awarding contracts for the Transbay Transit Center project. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 8, Griffiths Declaration, Ex. D. The email apologized for Defendant's failure to include certain documents with their proposal to use Defendant's glass flooring system in the project. *See id.*

One of those documents, which was attached to the email, reported the results of a fire test on a floor system that included a structural glass layer and a fire-rated glass layer. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 8, Griffith Declaration Ex. C. According to Griffiths'

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

email, this report "document[s] in-house testing of the proposed glass and framing components. . . . This testing convinced us that formal full scale testing will be successful." *Id* at Ex. D.

Significantly, although not a toggle mechanism, the floor system utilized in the in-house testing did include a load transferring means to support the structural glass walking layer. *See* Griffith Declaration at 3. As shown in the drawing in the report, that load transferring means included a plurality of steel blocks attached to the top the beam on which the fire-rated glass layer rests (*id.* at Ex. C), similar to the arrangement shown in FIG. 6 of the '475 patent (albeit without the connecting silicone and glazing bar between the glass layers).  *See* Pls.' Mot. Summ. J., Bautista Dec., Ex. 1, '475 Patent at FIG. 6.

Finally, the declaration of William O'Keeffe attached to Defendant's motion should be given no weight in this matter. Dec. of William F. O'Keeffe in Support of Mot. for Summ. J. (Dkt. No. 189-3).  Notwithstanding the fact that O'Keeffe is an interested party to this case and, as the sole shareholder of Defendant, will be personally liable for the monetary damages awarded to Plaintiffs in this case, O'Keeffe has already repeatedly shown himself to be unreliable and, indeed, unbelievable as a witness.

For example, one of Plaintiffs' interrogatories in this case sought identification of the earliest date on which Defendant became aware of the '475 patent. *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec., Ex. 8, Pls.' First Set of Interrogatories.  In response, Defendant stated that no one at Defendant had any knowledge of the '475 patent prior to February, 2017, and O'Keeffe verified that response under penalty of perjury. *See* Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec., Ex. 9, Def.'s Responses to First Interrogatories; Pls.' Opp'n to Def. Mot. for Summ. J., McPhail Dec., Ex. 10, William O'Keeffe's Verification**.** O'Keeffe's own emails, however, show that Defendant knew of the '475 patent at least as early as January 20, 2014, and that O'Keeffe himself was personally aware of the '475 patent and Defendant's infringement at least by August 28, 2015. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 8, Griffith Declaration Exs. A, D.  Defendant's "verified" interrogatory response was therefore false, strongly suggesting that O'Keeffe either does not remember events that occurred during

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462

the relevant time or is intentionally lying about them (and, to the extent he had merely forgotten, it is notable that he has made no effort to correct Defendant's interrogatory response).

Similarly, in his declaration attached to Defendant's motion, O'Keeffe states (again under penalty of perjury) that he did not invent the toggle mechanism used in the GPX FireFloor system until 2016. *See* Dec. of William F. O'Keeffe in Support of Mot. for Summ. J., Dkt. No. 189-3 at ¶ 8. But, as noted above, the drawings dated March 16, 2015 that were the subject of Plaintiffs' motion for relief from the protective order in this case show a horizontal steel plate connected to an Allen bolt screwed into a threaded receiver mounted to the top of an I-beam. *See* Ex. A to Pl. Ely Holdings' Mot. for Limited Relief from the Protective Order, Dkt No. 125-1. And the Griffiths' email to O'Keeffe on August 28, 2015 regarding possible infringement of the '475 patent specifically mentioned "plates" acting as "load transferring means" in the Defendant's glass floor system. *See* Pls.' Mot. for Summ. J., Bautista Dec., Ex. 8, Griffith Declaration Ex. E. O'Keeffe's statements in his declaration are therefore directly contradicted by Defendant's own documents, at least one of which was undeniably in O'Keeffe's possession.

O'Keeffe is therefore not credible, and so his declaration should be disregarded in its entirety and given no weight whatsoever.

## III.    CONCLUSION

For at least the reasons above, Defendant's Motion for Partial Summary Judgment should be denied.

DATED: December 14, 2020                    Respectfully submitted,

                                            DICKINSON WRIGHT PLLC


                                            By:   */s/ Donald R. McPhail*
                                                  Donald R. McPhail
                                                  *Attorney for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

28440462