Mark I. Schickman (CSB #62653)
SCHICKMAN LAW
1019 Euclid Ave.
Berkeley, CA 94708
Phone: (510) 467-2909
Email: Mark@SchickmanLaw.com

THEODORE J, BIELEN, JR. (CSB #56395)
BIELEN & LAMPE
1390 Willow Pass Road, Ste 1020
Concord, CA 94520
Telephone: (925) 288-9720
Facsimilia: (925) 288-9731
Email: bielenlt@yahoo.com

*Attorneys for Defendant and Counter-Claimants*
*O'Keeffe's, Inc., d/b/a SaftiFirst*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>　　　　　　Defendant.<br>_____<br>O'KEEFFE'S, INC., d/b/a SAFTIFIRST, a California corporation,<br><br>　　　　　　Counter-Claimant,<br><br>　v.<br><br>ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>　　　　　　Counter-Defendants. | CASE NO.  18-CV-06721-JCS<br><br>**SAFTI'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF TIM MACFARLANE (DAUBERT)**<br><br>**January 29, 2021**<br><br>**The Hon. Joseph C. Spero**<br>**Time: 9:30 a.m.** |

## I. INTRODUCTION

Safti moved to exclude Tim Macfarlane's opinions on several points of testimony because he (1) showed no expertise on the issues (2) showed no reliable method for reaching the opinions and (3) showed no factual basis underpinning the opinions. Plaintiffs failed to respond regarding the points below. Therefore, on the basis of Safti's moving papers and plaintiffs' response, at least the following three of the opinions proffered by Tim Macfarlane should be excluded:

1. There is no basis for the opinion that the locking toggle mechanism prevents all load from transferring from the walking layer to the lower portions of the GPX 120
2. There is no basis for the opinion that Greenlite's patented product commands any market share or has achieved any commercial success
3. There is no basis for the opinion that the Intertek listing for the GPX 120 floor has an unstated limitation, and extends only to a floor with the locking toggle mechanism

Mr. Macfarlane shows neither the expertise nor methodology nor fact to proffer these opinions.

## II. NO FACT OR METHODOLOGY SUPPORTS THE OPINION THAT NO LOAD TRANSFERS

Safti objected to the opinion Mr. Macfarlane presents at Dkt. 189-6, Exh 30, footnote 3 and accompanying text that: when the toggle is engaged "the entire load (weight) of the glass unit, including the structural glass layer and the fire resistant glass layer, as well as any load on the walking surface of the structural glass layer, is being borne solely by the steel toggle plates of the Locking Mechanisms." That bare conclusion presents no factual basis or scientific method.

Mr. Macfarlane does not know what the intumescent material in the GPX 120 product is made of and has never done an analysis of it (Dkt. 189-4, Exh 4, 215:12-216:22). He agrees one would have to know the properties of the intumescent material to analyze how much load it transmits (Id., 219:1-7), and he does not know the properties of the intumescent material in the SAFTI fire floor (Id., 204:11- 205:5). He never analyzed or investigated the composition of the GPX 120 intumescent material, and had no "interest" in doing so until Dr. Stevick presented his finite element analysis (Id., 213:2-216:20). He has no comment on Dr. Stevick's finite element analysis, which shows that some load applied to the top layer of the GPX 120 Fire Floor will

SCHICKMAN LAW
1019 Euclid Ave.
Berkeley, CA 94708

transfer to the lower layers of the bonded unit (Id., 235:1-236:6). He has no stated scientific methodology and identifies no factual premises behind his stated opinion that when fully engaged, the locking toggle mechanism bears the entire load of the floor unit; it must be excluded

In response, Plaintiffs have still not shown the method or bases by which that conclusion was reached. They note that an FEA is not the only way to test load, and give several examples, but do not attempt to show anything that Mr. Macfarlane did to test it. (Dkt 190, 3:16-5:2). All they do is tout Mr. Macfarlane's credentials which, though not conceded, are beside the point[1].

He does not show that his "proffered testimony grows out of pre-litigation research or that the expert's research has been subjected to peer review." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II")" He points to no source showing that he has followed an accepted scientific method in reaching his opinion Without showing what Mr. Macfarlane did to reach the opinion, it cannot be allowed. The court should exclude the testimony as it is not "scientific knowledge," and not "derived by the scientific method."" Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1316 (9th Cir. 1995)

Notably, at this point, Mr. Macfarlane's initial opinion has become irrelevant, as he now admits that load from the structural layer will "engage" the lower layer and then "go back up through the toggle to the structural frame" … "because the fire glass is picking up stress naturally, because it's bonded to the underside of the structural glass. It couldn't avoid doing so unless the bonding material had no shear stiffness, no shear resistance" (Dkt. 189-4, Exh 4, 230:8-233:5). If his opinion now is: when the toggle locking mechanism is fully engaged, load from the upper floor transfers to the lower layer and then back up through the toggle mechanism to the frame, there is no dispute -- -- that is exactly what happens.

---

[1] The brief in opposition to this motion consist largely of accolades for Mr. Macfarlane's scientific expertise and qualifications, for which no citation is given, and no record exists. In fact, as noted in Safti's opening brief, Mr. Macfarlane has never qualified as an expert witness, has no post-baccalaureate education and never designed, modeled or been to a fire test. However, the motion to strike the opinion regarding load is not based upon lack of qualification but, rather, lack of any scientific methodology or reliable application to the facts of this case.

That concession strips any reliability from his initial unsupported opinion, and that new position moots it. That initial opinion must be excluded.

### III. MR. MACFARLANE HAS NO EXPERTISE OR FACTS TO OPINION THAT GREENLITE'S PATENTED PRODUCT COMMANDS MARKET SHARE AND ACHIEVED COMMERCIAL SUCCESS

Mr. Macfarlane provided opinions on the commercial success of Greenlite's products, and its share of the American marketplace (Dkt. 189-6, Exh 32, Paragraphs 33 and 34). As Safti argued, he is not a market expert, and has no familiarity with the North American market;

In deposition he showed total ignorance of Greenlite's product lines or history. Mr. Macfarlane does not know what product Rae was selling when he prosecuted the patent. (Dkt 189-4. Exh 4, 125:22-126:1) or what Greenlite's products are. (Dkt 189-4 Exh 4, 138:14-139:11). Mr. Macfarlane cannot state whether the XP or SP Systems were separate sheet or unitized systems (Dkt 189-4. Exh 4, 133:11-134:4). He never paid attention to whether a product was an XP, SP or VDS (Dkt 189-4., Exh 4, Page 142). He is unaware of any installation of the Greenlite product prior to 2015. (Dkt 189-4. Exh 4, 145:3-10).

In short, he does not know whether or when Plaintiffs sold a single product using the patented device, or whether it was a single layer or double layer floor. Nor does he work in North America, to provide any basis for understanding the North American market.

In their reply plaintiffs have not argued this point. They have not attempted to show any knowledge on Mr. Macfarlane's part regarding the North American glass floor market, or Greenlite's sales history. Nor do they make any showing of his expertise in the field of market analysis. Absent any expertise or base of knowledge, Mr. Macfarlane's opinions regarding Greenlite's commercial success or Greenlite's products or its share of the North American market lack foundation, methodology or expertise, will not aid the jury and should be excluded.

### IV. MR. MACFARLANE KNOWS NOTHING ABOUT INTERTEK OR THE MEANING OF ITS CERTIFICATION

Before this litigation Mr. Macfarlane never heard of any testing agency except for Underwriters Laboratories (UL) (Dkt 189-4, Exh 4, 27:21-24, 29: 7); he is not familiar with the

UL certification and had never heard of Intertek prior to this lawsuit. (Dkt 189-4. Exh 4, 135: 18-138:7) . Mr. Macfarlane never observed, conducted, modeled or engineered a fire test (Dkt 189-4, Exh 4, 149: 6-152:15; 214:15-216:11; 291:17-292:1).  He does not know whether or how design professional consumers use a certification (Dkt 189-4, Exh 4, 135:16-138:15).

The Intertek listing is detailed in its description of the listed product, down to the tape and sealant (Dkt 189-5, Exh. 15, 28-31 of 132).  It does not include the locking toggle mechanism. Compare it to the UL listing, which does call out the "Glazing Securement" of the nylock nut and toggle plate ( Dkt. 189-5, Exh 14, 23-26 of 132, Item 11).

Intertek knows how to list components necessary to its listing in great detail, and Intertek did not require the locking toggle mechanism. Yet, with a vacuum of experience and knowledge of what an Intertek listing means and how it is used by design professionals, he opines that the listing only extends to floors with the toggle and nylock nut. He shows no basis to do so.

Mr. Macfarlane notes that Intertek's engineering evaluation judgment which provided the 120 minute listing was based in part on a UL 120 minute test of a floor which does contain the locking toggle mechanism on the perimeters; he opines from that that the listing must only extend to that same floor. Mr. Macfarlane's opinion does not address the engineering of the floor.  Rather, he opines on the meaning of a listing with which he is not familiar and about which he has no special knowledge or experience at all.  Nothing in Plaintiffs' reply addresses that.

Parenthetically, while his is not an engineering opinion, in fact he does not know whether the floor will last 120 minutes without a toggle (Dkt 189-4, Exh 4, 49:17-51;21) [2]-- -- though he is "curious" and "impressed" that the thinner 4 3/16 inch GPX 60 lasted for 81 minutes under load (Dkt 189-4, Exh 4,61: 13-22).

Finally his engineering judgment is not relevant to whether Intertek's listing means what it says, Intertek's engineering evaluation certifying the GPX120 without the toggle and nylock nut.

---

[2] Intertek's certification and listing stands as a fact on its own and needs no support, but Dr. Stevick explains why he agrees with Intertek's engineering evaluation; since the butt joints in the hotter center of the floor survived the UL test for 120 minutes under load without toggle support, the cooler perimeter could do so, as well (Dkt. 189-4, Exh 2, paragraphs 34-40, 59-61 of 396; Exh 5, 173:13-175:14).

There is no science behind Mr. Macfarlane's interpretation of the listing. There is nothing in his knowledge or experience that allows him to opine that the Intertek 120 minute certification of the GPX 120 is silently limited only to a floor with the locking nut and toggle

## V. CONCLUSION

The court is the gatekeeper of the reliability of expert opinion, established by proper credentials, a proper methodology and reliable application of scientific methodology to fact. On the three topics above, plaintiffs reply does nothing to rebut that lack of reliability.

- On the issue of load transfer, no factual basis or methodology show how Mr. Macfarlane initially came to the opinion that load does not transfer from the structural surface to the lower arts of the FRG (an opinion he has since abandoned).
- On the issue of commercial success and market share, Mr. Macfarlane denies any relevant knowledge to what plaintiffs products are, when or how many were sold; independently, he has no expertise in market analysis in general, or North American market analysis in particular—making his opinion on this topic unreliable
- Mr. Macfarlane never heard of Intertek before this litigation, and is completely unaware of what a certifying entity listing means or how construction professional consumers use those listings; his opinion that the Intertek 120 minute GPX listing has a silent, undisclosed limitation floors with the locking toggle mechanism must be rejected as fanciful

Safti respectfully prays that the court exclude Mr. Macfarlane's opinions on the topics stated above.

Respectfully submitted,
BEILEN AND LAMPE
SCHICKMAN LAW

Dated: December 30, 2020    By *Mark I. Schickman*
Attorneys for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that on December 30th, 2020, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Donald R. McPhail
Taft, Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Ryan O. White
Elizabeth Shuster
Taft, Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204

*Attorneys for Plaintiff*

　　　　　　　　　 /s/ Mark I. Schickman
　　　　　　　　Mark I. Schickman