Donald R. McPhail (admitted *pro hac vice*)
Email: dmcphail@dickinsonwright.com
Shih Ching Li (admitted *pro hac vice*)
Email: eli@dickinsonwright.com
DICKINSON WRIGHT PLLC
International Square
1825 Eye St. N.W., Suite 900
Washington, D.C-. 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

Jonathan D. Baker (State Bar No. 196062)
Email:jdbaker@dickinsonwright.com
DICKINSON WRIGHT PLLC
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone: (408) 701-6100
Facsimile: (844) 670-6009

Ryan O. White (admitted *pro hac vice*)
Email: rwhite@taftlaw.com
Elizabeth Shuster (admitted *pro hac vice*)
Email: eshuster@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

Philip R. Bautista (admitted *pro hac vice*)
Email: pbautista@taftlaw.com
JoZeff W. Gebolys (admitted *pro hac vice*)
Email: jgebolys@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707

*Attorneys for Plaintiffs Ely Holdings Limited
and Greenlite Glass Systems Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ELY HOLDINGS LIMITED, a United Kingdom company, and GREENLITE GLASS SYSTEMS INC., a Canadian company,<br><br>    Plaintiffs,<br><br>    v.<br><br>O'KEEFFE'S, INC. d/b/a SAFTI FIRST, a California corporation,<br><br>    Defendant. | Case No. 3:18-cv-06721 JCS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      January 29, 2021<br>Time:     9:30 AM<br>Courtroom:  Courtroom F, 15th Floor<br>Judge:     Joseph C. Spero |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ......................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.     PLAINTIFFS' PARTIAL MOTION ON INFRINGEMENT SHOULD BE GRANTED. 1

     A.    GPX 120 Was Offered for Sale and Made with an Air Layer. ............................ 1

     B.    The Accused Device Was Offered for Sale to Transbay Terminal. ..................... 2

     C.    The Toggle is an LTM Even if Some Load Transfers to the FRP. ...................... 3

     D.    The SG and the FRP Do Not Touch Each Other. ................................................ 4

     E.    If Not Literally, Defendant Infringes Under the Doctrine of Equivalents. ............. 5

     F.    Defendant's Infringement Was Willful. .............................................................. 6

     G.    The '475 Patent is Valid. .................................................................................... 6

II.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DEFENDANT'S COUNTERCLAIMS SHOULD ALSO BE GRANTED ..................... 7

     A.    Greenlite repeatedly informed Crown Corr that it was manufacturing its glass for
the Transbay Project in Germany in 2015. ........................................................... 7

     B.    Defendant fails to present evidence of a misrepresentation made or injury caused
in connection with the Union Square Project. ....................................................... 9

     C.    Defendant cannot prove harm caused by Greenlite's website representations..... 10

     D.    Defendant fails to present evidence of a misrepresentation made or injury caused
in connection with the Willis Tower Project. ...................................................... 11

     E.    Defendant cannot prove its counterclaim as to the 20 Washington Project. ........ 12

     F.    Defendant does not address, let alone refute, the authority warranting summary
judgment on its California Business Professions Code claims. ............................ 13

III.   PROCEDURAL OBJECTIONS ...................................................................... 13

IV.   CONCLUSION ............................................................................................... 15

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.,*
    55 F.3d 615 (Fed. Cir. 1995) .............................................................. 4

*Broadcom Corp. v. Emulex Corp.,*
    32 F. 3d 1325 (Fed. Cir. 2013) ............................................................. 4

*Chavez v. Whirlpool Corp.,*
    93 Cal.App.4th 363 (2001) ................................................................. 13

*Cole v. JPMorgan Chase Bank, N.A.,*
    No. C13-959RSL, 2014 WL 1320140 (W.D. Wash. Mar. 31, 2014) ............................. 13

*Committee on Children's Television v. General Foods Corp.,*
    35 Cal.3d 197 (1983) ......................................................................... 13

*Crawford–El v. Britton,*
    523 U.S. 574, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998) ................................. 14

*Edwards Lifesciences Corp. v. Meril Life Scis. PVT. Ltd.,*
    No. 19-CV-06593-HSG, 2020 WL 6118533 (N.D. Cal. Oct. 16, 2020) ......................... 13

*Focal Point Films, LLC v. Sandhu,*
    No. 19-CV-02898-JCS, 2019 WL 7020209 (N.D. Cal. Dec. 20, 2019) ......................... 9

*Manville v. Countrywide Fin. Corp.,*
    2:08-cv-1931-GEB-DAD (E.D. Cal. Oct. 8, 2008) ........................................ 13

*Open Source Sec., Inc. v. Perens,*
    No. 17-CV-04002-LB, 2017 WL 6539874 (N.D. Cal. Dec. 21, 2017), aff'd, 803 F.
    App'x 73 (9th Cir. 2020) .................................................................. 12

*Ortho Pharmaceutical Corp. v. Smith,*
    959 F.2d 936 (Fed. Cir. 1992) ............................................................. 6

*Premier Tech. Sales v. Digital Equipt.,*
    11 F. Supp. 2d 1156 (N.D. Cal. 1998) ..................................................... 13

*Rossetta v. CitiMortgage, Inc.,*
    18 Cal.App.5th 628 (Cal. Ct. App. 2017) ................................................ 13

*Samra v. Johal,*
    No. C09-0171RSL, 2010 WL 308741 (W.D. Wash. Jan. 25, 2010) .............................. 13

*Shaolian v. Safeco Ins. Co.,*
    71 Cal.App.4th 268 (1999) ................................................................. 13

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

*Siltronic Corp. v. Employers Ins. Co. of Wausau*,
    No. 3:11-CV-1493-YY, 2018 WL 415928 (D. Or. Jan. 2, 2018) .................................... 13

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................................................... 7, 9

*Standard Stoiber v. Honeychuck*,
    101 Cal.App.3d 903 (1980) ............................................................................ 13

*Think Prod., Inc. v. ACCO Brands Corp.*,
    419 F. Supp.3d. 1078 (N.D. Ill. 2019). .............................................................. 2

*Wasco Prod., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) ......................................................................... 13

**RULES**

Civil L.R. 7-3 ............................................................................................... 14, 15

**STATUTES**

35 U.S.C. § 102(b) ............................................................................................ 2

35 U.S.C. § 271(a) ............................................................................................ 1

California Business and Professions Code § 17200 ................................................ 7, 13

Lanham Act ............................................................................................ *passim*

**OTHER AUTHORITIES**

PGR2019-00025 Final Written Decision ..................................................................... 2

U.S. Patent No. 7,694,475 ............................................................................... 5, 6, 12

U.S. Patent No. 9,926,709 ................................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   PLAINTIFFS' PARTIAL MOTION ON INFRINGEMENT SHOULD BE GRANTED**

In opposition to Plaintiffs' Motion for Partial Summary Judgment on infringement, Defendant advances seven (7) separate arguments. Each argument fails, as set forth below.

**A.   GPX 120 Was Offered for Sale and Made with an Air Layer.**

Defendant argues that "[n]o safety GPX floor with an air layer was ever certified or sold or drawn for any customer…" Dkt. 201, Defendant's Brief in Opposition, at 2:2. The acts of infringement prohibited under the statute, however, also include making an infringing product and offering for sale an infringing product. *See* 35 U.S.C. § 271(a). Defendant has done both.

With respect to *making*, the Griffiths' declaration included a report of a test performed by Defendant on a configuration of its floor system. *See* Dkt. 187-9 (Ex. C, pp. 2-3). That configuration included an air space between the SG and the FRP (they were, in fact, separate sheets). *See id.* Even though not performed for a customer, Defendant's manufacture of that floor system was nonetheless an act of infringement under U.S. patent law. With respect to *offering for sale*, Defendant asserts that the only evidence offered by Plaintiffs is "a mistaken phrase in a superseded SAFTI marketing brochure, [and] an error removed from the website."  Dkt. 201 at 3. Contrary to Defendant's claim, however, there are other documents in this case showing that Defendant promoted a version of its product that included a "sealed airspace" between the glass layers, such as promotional materials from Q1 of 2015 comparing Defendant's product with the competing product offered by TGP. *See* Pls.' Br. in Reply, Bautista Decl. ("Supp. Bautista Decl."), Exhibits 31-32.  These promotional materials call out the airspace between the glass layers as a specific advantage of Defendant's product ("designed to eliminate condensation issues"); Ex. 31 specifically includes a drawing of a floor system having an LTM. *Id.*

Defendant also included an airspace in drawings of the floor system that it prepared in March, 2015 as part of Defendant's bid for the Transbay Transit Center ("TTC") project. *See* Dkt. 102-2, Ex. A to Decl. of D. McPhail in Supp. of Pls.' Mot. for Limited Relief from Protective Order. There is no filler material or seal or the like shown between the SG and the FRP, which means that there is nothing between the glass layer except for air. *Id.* Defendant's

claim that no "GPX floor with an air layer was ever drawn for any customer" is false.

Defendant also argues that a data sheet does not, in and of itself, constitute an offer for sale under the law. *See* Dkt. 201 at 3-4. Even if that was true, however, and Plaintiffs contend that it is not, Defendant is ignoring its submissions to the purchasing entity in connection with Defendant's bid for the TTC project – an undertaking that was indisputably an offer for sale. Finally, Defendant argues that its data sheet "says nothing about an infringing load transferring means and -- -- without that -- -- had SAFTI offered a floor with an air layer, no infringement is shown." Dkt. 201 at 4. Defendant, however, is ignoring the second page of its data sheet, which includes drawings of an LTM in the 120-minute version of the product. *See* Dkt. No. 187-6 at 2. Defendant's argument has no merit.

### B. The Accused Device Was Offered for Sale to Transbay Terminal.

Defendant is wrong when it contends that "[t]here is no evidence that Safti offered a product with a toggle to the Transbay Terminal project." Dkt. No. 201 at 4:15-16.

Defendant challenges Plaintiffs' reliance on the final written decision ("FWD") of the Patent Trial & Appeal Board ("PTAB") at the U.S. Patent & Trademark Office in a post grant review of U.S. Patent No. 9,926,709 ("the '709 patent"). Among its factual findings, PTAB determined that, in early 2015, Defendant had offered for sale to the TTC contractors a glass floor system that included a toggle comprising a horizontal steel plate connected to an Allen bolt mounted in a threaded receiver attached to the top of the structural frame. Dkt. No. 192-7, FWD, at pp. 45-55 of 152.

Although Defendant has appealed PTAB's decision that the claims of the '709 patent are invalid under 35 U.S.C. § 102(b), Defendant did <u>not</u> appeal PTAB's factual finding that the floor system offered to TTC contractors included a toggle. Defendant is collaterally estopped from challenging that finding now. *Think Prod., Inc. v. ACCO Brands Corp.*, 419 F. Supp.3d 1078, 1081 (N.D. Ill. 2019). And, even if not collaterally estopped, Defendant is ignoring the evidence upon which PTAB relied in determining that particular fact, which stands by itself as proof that Defendant offered for sale a glass floor system with a toggle. *See* Dkt. No. 102-2. That evidence included shop drawings dated March, 2015 which were labeled "Transbay Transit Center" and

were stored in a file named "GPX/TransbayTransit." *Id.* The floor system is depicted in those drawings as including an LTM composed of a horizontal steel plate connected to an Allen bolt positioned in a threaded receiver mounted to the top of the structural frame. *Id.* That LTM appears <u>identical</u> to the toggle found in the current version of the GPX Fire Floor system, except that it lacks the Nylock nut positioned underneath the steel plate. *Id.*; Dkt. 187-6.

**C.  The Toggle is an LTM Even if Some Load Transfers to the FRP.**

Defendant argues that the toggle in the accused product is not an LTM because "Dr. Stevick proved that, even with the toggles fully engaged, some load from the top of the GPX 120 passes to the lower fire glass layers before passing to the structural frame." Dkt 201 at 6:4-6. Defendant's reliance on Stevick's computer model, however, is misplaced. Notwithstanding the flaws in Stevick's computer model, addressed in Plaintiffs' Motion to Strike (Dkt. 185), Stevick never discussed what happens when there is a fire below the glass floor. This is because every sheet of glass in the FRP will break during a fire (as it was designed and intended to do), meaning it will no longer be capable of offering any resistance to an applied load or transferring that load anywhere. Defendant's argument fails.

In response to Plaintiffs' pointing to the results of the UL and Intertek tests as evidence that the LTMs support the SG, Defendant argues "why can't the floor survive 120 minutes with some of the 100 PSF load passing through the fire floor?" Dkt. 201 at 6. The answer to that is simple – as shown in the Intertek test, the floor system without toggles failed to last more than 82 minutes in a fire <u>because all of the layers of glass had broken and were therefore no longer able to support an applied load</u>. *See* Dkt. 192-12 at OKI-001635. Because the FRP of the floor system tested by UL was the same as the one tested by Intertek, the performance of the FRP of the system tested by UL would be expected by a POSA to provide the same results during a fire as the system tested by Intertek, *i.e.* all the sheets of glass would break, and therefore be unable to support a load, within 82 minutes. Given that, the only way that the SG could still be maintaining the applied load after 82 minutes of fire exposure is because it is being supported by the LTMs – it cannot be, as Defendant suggests, because the SG is being supported by, or transferring load through, the FRP, <u>because all the glass sheets in FRP would have broken by then</u>.

Finally "[i]t is well settled that an accused device that 'sometimes, but not always, embodies a claim[] nonetheless infringes.'" *Broadcom Corp. v. Emulex Corp.*, 732 F. 3d 1325, 1333 (Fed. Cir. 2013) (alteration of internal quote in original) (quoting *Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)). So even if Defendant's expert is correct about part of the load applied to the SG being transferred to the FRP in certain circumstances, that theory fails after the glass sheets in the FRP have broken and are no longer capable of bearing any applied load. Plaintiffs are therefore entitled to summary judgment.

### D.   The SG and the FRP Do Not Touch Each Other.

As shown in Defendant's drawings of the accused GPX Fire Floor System, including those attached as Exhibits to Plaintiff's Motion for Partial Summary Judgement, Defendant's floor system includes three (3) sheets of glass laminated directly together and able to bear an applied load. Dkts. 187-5, Opening Expert Rep. of MacFarlane and Exs.; 187-6. These three (3) sheets are therefore *a layer of structural glass* according to this Court's construction of that term.

Similarly, Defendant's floor system includes an FRP made of four (4) identical sheets of glass interspersed with three (3) identical layers of intumescent material. *See id.* As stated in Defendant's own documents, this particular configuration – four (4) identical sheets of glass interspersed with three (3) identical layers of intumescent material – has been certified as fire resistant by Intertek. *See* Dkt. 192-2, Fact Sheet. The FRP is therefore *a layer of fire rated glass* according to this Court's construction of that term. And, as shown in those same shop drawings, the bottom face of the lowermost sheet of glass in the SG does not touch the upper face of the topmost sheet of glass in the FRP. *See* Dkt. Nos. 187-5, 187-6. Defendant's argument fails. The fact that Defendant includes additional intumescent material between the bottom face of the lowermost sheet of glass in the SG and the upper face of the topmost sheet of glass in the FRP does not mean that these two layers touch one another nor does it exclude the SG and FRP from the scope of the claims. There is nothing in this Court's construction of either *a layer of structural glass* or *a layer of fire rated glass* that precludes the presence of additional intumescent material between them. *See* Dkts. 112, 142.

Infringement is also not avoided here by Defendant characterizing its product as a single

piece of fire rated glass. Rather, infringement is determined by comparing the properly construed claims of the patent-in-suit to accused product on a limitation-by-limitation basis. And such a comparison shows that Defendant's product has *a layer of structural glass* and *a layer of fire rated glass*, irrespective of whether they are part of a single panel or are separate sheets.

**E.   If Not Literally, Defendant Infringes Under the Doctrine of Equivalents.**

Defendant first argues that Plaintiffs should be precluded from asserting infringement under the doctrine of equivalents on the grounds that Plaintiffs did not raise such a theory until service of the Macfarlane Reply Report on November 2, 2020. *See* Dkt. 201 at 8-9. While it is true that Plaintiffs did not raise this theory of infringement until the Macfarlane Rebuttal Report, it is equally true that Plaintiffs did so to respond to Defendant's new theory of non-infringement raised for the first time in the expert report served on October 12, 2020. More specifically, prior to October 12, 2020, Defendant never alleged that the accused did not infringe any claim of the '475 patent because a load applied to the SG could induce a stress in the FRP even when it is suspended above the structural frame by the LTMs. *See* Dkt. No. 192-10, Defendant's Responses to Interrogatories, at Interrogatories 4-5.  Instead, that argument was first raised by Defendant's expert in his Reply Infringement Report. *See* Dkt. 187-26. If Defendant is to be permitted to rely on a theory of non-infringement that it did not raise until its Rebuttal Expert Report, Plaintiffs should be permitted to address that new theory.

Defendant further argues that Plaintiffs' analysis under the doctrine of equivalents is deficient, characterizing it as "the form of broad-brush 'conclusory assertion of equivalence' 'insufficient to establish a genuine issue of material fact' or carry Plaintiffs' burden." Dkt. 201 at 9 (internal citation omitted). Macfarlane's Reply Report, however, includes a discussion of how each corresponding element in the accused product performs substantially the same function in substantially the same way to achieve substantially the same result as the corresponding element of the claim. *See* Dkt. No. 187-27 at 3-6. Defendant's characterization is clearly erroneous.

Finally, Defendant argues that Plaintiffs should be precluded from relying on the doctrine of equivalents on the grounds of prosecution history estoppel and the "all elements" rule. Dkt. 201 at 9-10. Neither applies. Defendant argues that estoppel arises because of the addition of

1  "the limitation that the load had to bypass the lower layer, and instead go directly to the

2  structural frame." *Id.* at 9. However, that amendment was made in response to a rejection over a

3  reference disclosing an angled roof composed of two layers of glass stacked one on top of the

4  other on a support, much like FIG. 2 in the '475 patent. A load applied to the upper surface of the

5  top layer of glass of that roof would thus have to pass through that glass layer to the lower layer

6  of glass and then through that lower layer of glass to reach the support below–something that the

7  patentee already knew would not be stable during a fire. *See* Dkt. No. 187-2 at col. 1, ll. 29-33.

8  The amendment identified by Defendant was intended to distinguish a configuration having two

9  layers of glass stacked directly on each other and on the structural frame and bears only a

10  tangential relationship to the accused equivalent in this case, where the FRP is suspended above,

11  rather than resting on, the structural frame. Nor does Plaintiffs' reliance on the doctrine of

12  equivalents violate the "all elements rule." Plaintiffs have shown where each element of the

13  claimed invention—the SG, the FRP, the structural frame, and the LTMs—is found, literally or

14  equivalently, in the accused product. The law requires nothing more.

15  ## F.   Defendant's Infringement Was Willful.

16  Despite knowing of the '475 patent and the possibility that Defendant's product might

17  infringe that patent, two facts that Defendant attempted to hide during discovery in this case

18  (including lying about it in response to Plaintiffs' interrogatories), Defendant now attempts to

19  rely on Griffiths' email as evidence of non-infringement. *See* Dkt. 201 at 10-11. Griffiths,

20  however, is not and was not a patent attorney, and so Defendant's reliance on his belief is

21  misplaced. Defendant did not seek an opinion of counsel until 2018, which was over three (3)

22  years after learning of the '475 patent and the possibility of infringement, but nevertheless

23  commercialized the product anyway. Defendant's failure to seek an opinion of counsel once it

24  became aware of the potential for infringement in 2015 is fatal to its defense here. *See*, *e.g.*,

25  *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992).

26  ## G.   The '475 Patent is Valid.

27  Defendant argues that claim 1 of the '475 patent is not valid. But Defendant forgets that

28  claims 6 and 7 are also asserted in the case and Defendant's expert offered no opinion(s)

whatsoever as to the validity of those claims. Thus, even if Defendant was correct with respect to claim 1, a point Plaintiffs vigorously dispute for at least the reasons set forth in Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment, Defendant's invalidity defense has been waived with respect to claims 6 and 7. Defendant's argument fails.

## II.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS SHOULD ALSO BE GRANTED

### A. Greenlite repeatedly informed Crown Corr that it was manufacturing its glass for the Transbay Project in Germany in 2015.

Defendant fails to address Plaintiffs' evidence proving that, as early as March 2015 and formally in December 2015, Greenlite informed Transbay Project decision makers that it would be supplying glass from Germany. *See* Pls.' Mot. Summ. J. (Dkt. 187) at 14:3-10; Bautista Decl., Ex. 14 (Dkt. 187-15), Decl. of Ryan Dennett at ¶ 8; Supplemental Decl. of Ryan Dennett, Ex. 1, March 13, 2015 E-mail; *see also,* Dkt. 187-17 Submittal Proposal; Dkt. 187-18, October 2015 e-mail to Crown Corr. Defendant also fails to address its President, William O'Keeffe's, admission of this fact. *See* Dkt. 187-12, O'Keeffe Dep. at 109:24-110:13. These undisputed facts are dispositive and prove that Greenlite did ***not*** misrepresent the country of origin for its glass for the Transbay Project. Defendant cannot prove a misrepresentation, which it is required to do in order to succeed on its Lanham Act and California Business and Professions Code § 17200 counterclaims. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also*, Dkt. 187 at 2:10-17 and 23:7-14. To the extent Defendant bases its claims on the Transbay Project, Plaintiffs' motion should be granted.

In an attempt to create a genuine issue of fact, Defendant resorts to selecting scant portions of several emails and related testimony and arguing that they prove Greenlite's "delay" in informing Crown Corr that its glass would be manufactured in Germany, until it was "too late" for Crown Corr to select Defendant. Dkt. 201 at 14:3-8. However, examination of these e-mail portions and testimony does not suggest, let alone prove, that Greenlite "delayed" informing Crown Corr of the origins of its glass until it was "too late"—Defendant either mischaracterizes them or they comprise e-mails that Greenlite did not send to a Transbay Project decision-maker:

- **Supp. Schickman Decl. (Dkt. 201-2), Exs. 9, 11, and 12**: All emails sent by Greenlite

regarding the source of the glass were sent to Vetrotech (Greenlite's affiliate/supplier), not to a decision-maker for the Transbay Project or a customer as Defendant suggests.

- **Dkt. 201-2, Ex. 22**: Defendant claims that this e-mail was an attempt by Greenlite "to get away with" non-compliance with the Buy America Act. *See* Dkt. 201 at 14:18-20. This e-mail reveals that Dennett was seeking an expert to advise him about *satisfying* that Act and, in any event, was not made to a decision-maker on the Transbay Project.

- **Dkt. 201-2, Ex. 10**: Defendant mischaracterizes this exhibit to create the impression that Dennett "pled ignorance" as to "Buy American requirements." *See* Dkt. 201 at 15:15-18. However, Greenlite actually informed Crown Corr of the source of its glass in this e-mail: "***the glass components are fabricated in Germany*** and then assembled into frames in America . . . ." (emphasis added).

- **Dkt. 201-2, Ex. 16**:  Defendant quotes language from this e-mail from Dennett to the Transbay Project architect in order to allege that Greenlite misrepresented the source of its glass, but omits key words. *See* Dkt. 201 at 15:6-14. Review of this exhibit reveals that Greenlite was ***again*** informing Transbay decision makers that its glass would be supplied from Germany: "***We may have to make a portion of the fire-glass in VETROTECH Germany***, but it will be primarily assembled and manufactured at VETROTECH Auburn WA USA. . . ."   (emphasis added). Defendant omits the words in bold. *Id.*

- **Dkt. 201-2, Ex. 8:** Exhibit 8 and the cited testimony of Dennett therein do not discuss, let alone prove, that Greenlite "knew all along" that glass would be made in Germany, contrary to Defendant's assertions. *See* Dkt. 201 at 15:19-21. In fact, Dennett testified that prior to March 12, 2015, he thought the glass for the Transbay Project would be manufactured in the U.S. *See* Dkt. 201-2, Ex. 8 at 100:17-21.

In any event, even if the Court were to accept Defendant's mischaracterization of these e-mails, Defendant has still failed to present evidence that Crown Corr considered a misrepresentation in one of these exhibits when choosing to award Greenlite the Transbay Project. Defendant could have tried to obtain testimony from Crown Corr or other decision-makers in this regard, failed to do so, and is now relegated to speculating that they "must have"

1   considered them in choosing Greenlite. Not surprisingly, Defendant ignores discussion of its

2   burden to prove an injury due to Greenlite's purported misrepresentations in its brief in

3   opposition. *See Southland Sod Farms*, 108 F.3d at 1139. Also not surprisingly, Defendant

4   ignores all of the cases cited in Plaintiffs' Motion regarding its burden. Dkt. 187 at 21:27-23:6.

5   As a final deficiency, Defendant fails to address the now-undisputed evidence that Crown Corr

6   did not select it for the design-assist phase of the Transbay Project due to its high pricing. *See*

7   Dkt. 187-12, O'Keeffe Dep. at 229:3-17. This further refutes Defendant's speculation that Crown

8   Corr did not select Defendant because of misrepresentations made by Greenlite. Plaintiffs'

9   motion should be granted as to any counterclaims based upon the Transbay Project.

10
11   **B. Defendant fails to present evidence of a misrepresentation made or injury caused in connection with the Union Square Project.**

12   Defendant was awarded the Union Square Project and Greenlite lost it. As a result, how

13   Defendant can argue that it was injured—as it must prove for its Lanham Act and related

14   claims—is puzzling. Defendant has even conceded that it was not injured in connection with the

15   Union Square Project by not having engaged an expert witness to opine on lost profits or

16   reputational harm damages pertaining to that project. *See* Dkt. 187-11, Nov. 19, 2020 E-mail

17   from M. Schickman. Defendant's additional failure to offer evidence on reputational harm based

18   upon any purported Union Square "misrepresentations" further reinforces its lack of any injury.

19   *See Focal Point Films, LLC v. Sandhu*, No. 19-CV-02898-JCS, 2019 WL 7020209, at *8 (N.D.

20   Cal. Dec. 20, 2019) (acknowledging a plaintiff must show economic or reputational injury to

21   support a Lanham Act false advertising claim).

22   Defendant attempts to rely only upon Dkt. 201-2, Exs. 17, 18, 19, 23[1] and 24[2] to support

23   its counterclaims based upon this project. *See* Dkt. 201 at 15:22-16:19. But, once again,

24   Defendant does not identify a purported misrepresentation by Greenlite regarding its or

25
26   [1]For example, Ex. 23 is correspondence between the glazing contractor on the project, Sashco, and the project contractor, Tutor Perini, and cannot be a misrepresentation by *Greenlite*.

27   [2]Defendant also relies upon Ex. 24, an August 26, 2016 e-mail between Greenlite and Sashco, but again fails to discuss any specific misrepresentation made in this e-mail.

28

1    Defendant's fire-rated glass floors within those exhibits nor any "injury" caused by the exhibits

2    on a project Greenlite won. As a result, Defendant cannot prove its counterclaims and Greenlite

3    should be granted summary judgment as to counterclaims based upon the Union Square Project.

4    **C.  Defendant cannot prove harm caused by Greenlite's website representations.**

5    Defendant also fails to present evidence of misrepresentations made on Greenlite's

6    website or injury caused by those misrepresentations. Defendant first asserts that Greenlite

7    misrepresented the fact that it worked with "over 50 professionals" on its website, citing

8    testimony on pages 19, 20, and 23-26 of Dennett's deposition as evidence that Greenlite has

9    never employed ". . . . more than two people . . . " *See* Dkt. 201 at 16:21-22. As an initial matter,

10   Defendant failed to provide those pages with its brief in opposition and, as a result, its assertion

11   has no evidentiary support. In any event, Defendant is incorrect because Greenlite does, in fact,

12   work with over fifty professional contractors in connection with its business, which includes its

13   employees, contractors and draftsmen. *See* Dkt. 187-24, Dennett Dep. at 159:3-17. The statement

14   that Greenlite works with "fifty professionals" is accurate and undisputed.

15   Defendant's assertion that Greenlite misrepresented the number of projects on its website

16   fares no better. It asserts that Greenlite misrepresented having completed 100 glass floor projects

17   on its website, citing pages 154-157 of Dennett's deposition testimony. *See* Dkt. 201 at 16:23-26.

18   However, Defendant again fails to provide these pages with its brief in opposition and, thus, this

19   assertion is also unsupported by evidence. In any event, Dennett testified that the statement as to

20   "100 projects" is accurate, relating to the number of LITEFLAM projects, worldwide, not just

21   Greenlite projects. *See* Dkt. 187-24 at 154:20-155:24.

22   As to an "injury," William O'Keeffe admitted that he only ***speculates*** that customers rely

23   upon the above statements in hiring Greenlite over Defendant (*see* Dkt. 187-12, O'Keeffe Dep.

24   146:1-150:15; Supp. Bautista Decl., Ex. 33, O'Keeffe Dep. at 150:1-15) and Defendant presents

25   no evidence of customers' reliance upon these statements in its brief in opposition. Defendant

26   has once again failed to point out a misrepresentation or an injury.

27   Finally, to the extent Defendant bases its counterclaim upon Greenlite's purported

28   misrepresentation about being the only glass floor maker in North America in 2019 (*see* Dkt. 201

at 16:26-28), this also lacks merit. While it cites to pages 199, 200, and 203 of Dennett's deposition testimony to support this assertion (*id.*), Defendant again fails to include those pages with its brief in opposition. This basis for Defendant's counterclaim has no evidentiary support and, even if it had included the above pages with its submission, it still fails to prove that a single customer viewed that advertisement, let alone relied upon it. Defendant should be granted summary judgment as to counterclaims based upon alleged representations made on its website.

### D. Defendant fails to present evidence of a misrepresentation made or injury caused in connection with the Willis Tower Project.

Defendant attempts to base its counterclaim on purported misrepresentations in connection with the Willis Tower Project for the first time in its brief in opposition. *See* Dkt. 201 at 17:2-10. However, as with the Union Square Project, Defendant's damages expert has not opined on any damages resulting from the Willis Tower Project (*see* Dkt. 187-11), demonstrating how Defendant concedes a lack of injury resulting from any purported misrepresentation regarding this project. Defendant further fails to submit evidence that the Willis Tower Project manager actually relied upon any purported misrepresentation of Greenlite while electing not to select Defendant for the project.[3] *See* Def.'s Br. in Opp. at 17:2-10. Defendant's inability to prove this injury is again dispositive. *See infra*, § V. at 12. In any event, the Willis Tower Project manager did not select either party because the glass floor component was value-engineered out of the project. *See* Supp. Dennett Decl., Ex. 2, Willis Tower E-mail. The project proceeded without a glass floor due to the project owners' desire for an alternative product, not due any purported misrepresentation. Greenlite's motion for summary judgment as to Defendant's

---

[3]Defendant's reliance upon Dkt. 201-2, Ex. 25 is misplaced because it fails to describe what statements from this exhibit are misrepresentations. In Ex. 25, Dennett stated how he could not find a technical listing for Defendant's sixty-minute floor. Defendant does not present evidence that Dennett knew of a listing, such that the statement was inaccurate. Dennett also stated that Defendant could **possibly** be infringing Greenlite's patent—an opinion that is not actionable. *See infra*, § V. at 12. Finally, Dennett does not state that Defendant had not "won" a project, *See* Dkt. 201 at 17:8-10, only that Defendant had not yet "done," or completed, a sixty-minute floor project. Defendant does not present any evidence that, as of the time of Dennett's statement, it had completed the Hotel 21-C Project, such that Dennett's statement was false.

1    counterclaims should be granted to the extent they are based upon the Willis Tower Project.

2        **E. Defendant cannot prove its counterclaim as to the 20 Washington Project.**

3            Greenlite anticipated that Defendant would attempt to base its counterclaim as to the 20

4    Washington Project upon an e-mail string with the project's architect, KPMB, and fully

5    addressed it in its motion for summary judgment. *See* Dkt. 201-2, Ex. 27; Dkt. 201 at 17:11-23;

6    *see also,* Dkt. 187 at 8:18-9:19; Dkt. 187-15 at ¶ 11. As anticipated, Defendant attempts to base

7    its counterclaim on Dennett's statements about Defendant's potential infringement of the '475

8    patent. *See* Dkt. 201 at 17:11-18, 17:24-26. Defendant does not address the undisputed fact that

9    Dennett did not state in this e-mail that Defendant was actually infringing the '475 Patent, as

10   Defendant would have the Court believe. Rather, Dennett expressed his ***opinion*** that Defendant

11   ***could be*** infringing it, as Plaintiffs explained in their motion. *See* Dkt. 187 at 9:4-6. Defendant

12   also fails to address the authority in Plaintiffs' motion establishing that opinions on legal issues

13   are not actionable. *See Open Source Sec., Inc. v. Perens,* No. 17-CV-04002-LB, 2017 WL

14   6539874, at *8 (N.D. Cal. Dec. 21, 2017), aff'd, 803 F. App'x 73 (9th Cir. 2020). Greenlite also

15   anticipated that Defendant would rely upon Dennett's statement about his inability to find

16   Defendant's ***listing*** for its sixty-minute floor. *See* Dkt. 201 at 17:11-18; *see also,* Dkt. 187 at

17   24:12-14. But while Defendant attempts to confuse the Court by asserting that Dennett made a

18   statement regarding Defendant not possessing a "tested and rated" sixty-minute floor (*id.* at

19   18:21-24), Dennett's email discusses his inability to locate a publicly-available ***listing*** of these

20   test results. *See* Dkt. 201-2, Ex. 27. This statement is both conditional and correct as Defendant

21   did not obtain its ***listing*** until July 28, 2016, almost a year after Dennett's e-mail to KPMB. *See*

22   Dkt. 187-22, Safti's 60-minute Intertek Listing.

23           Defendant also fails again to present evidence, through documents, testimony, or

24   otherwise, that KMPB did not select it for the project because of Dennett's e-mails. In fact,

25   Defendant fails to even address, let alone refute, that KMPB had previously rejected its shop

26   drawings prior to Dennett's statements regarding Defendant's listing, disproving that KMPB had

27   relied upon Dennett's statements in rejecting it for the project. *See* Dkt. 187-23, Decl. of Mark

28   Jaffar of KPMB, Ex. 1 at p. 3; Dkt. 201-2, Ex. 27 at p. 3. Plaintiffs' motion for summary

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    judgment should also be granted on counterclaims based upon the 20 Washington Project.

**F. Defendant does not address, let alone refute, the authority warranting summary judgment on its California Business Professions Code claims.**

Defendant fails to address the authority supporting Plaintiff's argument that if they are granted summary judgment as to Defendant's Lanham Act counterclaims, they should also be granted summary judgment as to those under California's Business Professions Code, § 17200. *See* Dkt. 187 at 25:11-26. In so failing, Defendant all but concedes this point. And while it cites cases that discuss California's Business Professions Code, § 17200 in its brief in opposition, at most those cases discuss the kinds of actions that could be construed under that statute generally, but that do not otherwise support its counterclaims.[4] In other instances, Defendant provides incorrect cites[5] or cites cases that do not apply to this case.[6] In any event, none of its cases refute, overrule, or distinguish the cases cited by Plaintiffs. Finally, to the extent Defendant attempts to assert common law business tort counterclaims for the first time in its brief in opposition (*see* Dkt. 201 at 20:26-23:8), its attempts are improper and should be disregarded. *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).[7]

**III.   PROCEDURAL OBJECTIONS**

Plaintiffs request that the Court disregard Defendant's filing (Dkt. 201) in its entirety or in part for violating the Court's Order (Dkt. 196) requiring it to bring its filings into compliance with Local Rule 7-3. That Order required Defendant to file a "corrected" brief in opposition to

---

[4] *Standard Stoiber v. Honeychuck*, 101 Cal.App.3d 903, 927, (1980); *Committee on Children's Television v. General Foods Corp.*,35 Cal.3d 197, 209-210, (1983) *Shaolian v. Safeco Ins. Co.*, 71 Cal.App.4th 268, 275 (1999); *Premier Tech. Sales v. Digital Equipt.*, 11 F. Supp. 2d 1156, 1167 (N.D. Cal. 1998): *Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 374 (2001).
[5] *Manville v. Countrywide Fin. Corp.*, 2:08-cv-1931-GEB-DAD, at *17 (E.D. Cal. Oct. 8, 2008).
[6] *Rossetta v. CitiMortgage, Inc.*, 18 Cal.App.5th 628 (Cal. Ct. App. 2017).
[7] *See also, Siltronic Corp. v. Employers Ins. Co. of Wausau*, No. 3:11-CV-1493-YY, 2018 WL 415928, at *4 (D. Or. Jan. 2, 2018); *Edwards Lifesciences Corp. v. Meril Life Scis. PVT. Ltd.*, No. 19-CV-06593-HSG, 2020 WL 6118533, at *8 (N.D. Cal. Oct. 16, 2020); *Samra v. Johal*, No. C09-0171RSL, 2010 WL 308741, at *4 (W.D. Wash. Jan. 25, 2010); *Cole v. JPMorgan Chase Bank, N.A.*, No. C13-959RSL, 2014 WL 1320140, at *7 (W.D. Wash. Mar. 31, 2014).

Plaintiffs' Motion that would not exceed the page limits set forth in Civil L.R. 7-3.[8] Instead, Defendant opportunistically took that time to make significant substantive revisions to its brief, including *new argument and exhibits directed at Plaintiffs' timely filed Brief in Opposition to Defendant's Motion* (Pls.' Br. Opp., Dkt. 192). In other words, Defendant used the striking of its brief to try and gain an advantage. Certain material changes are described below[9]:

- Defendant added new argument in response to pages 10-11 of Pls.' Br. Opp. to enhance its position that it manufactures the structural walking layer and the fire resistive portion of the GPX Fire Floor system separately, and using different materials and processes. *See* Dkt. 201 at 2:21-24, 25-28. Defendant added new argument in response to pages 7-9 of Pls.' Br. Opp., to enhance its non-infringement position that its marketing brochure makes no reference to any toggle or alleged load transferring means. *See* Dkt. 201 at 3:7-8. Defendant added new citations to exhibits for its non-infringement position regarding offers for sale and the Transbay Project. *See* Dkt. 201 at 4:1, Exs. 11, 16, 25, 26.; Dkt. 201 at 4:21-23, adding a citation to "Bautista Dec., Exh 8, Ex. E." Defendant added new argument and new citations to exhibits in response to pages 11-13 of Pls.' Br. Opp., attempting to adapt its position regarding how load is transferred relative to the fire-rated glass. *See* Dkt. 201 at 6:20, adding citation to the record*; id.* at 6:23-24, adding argument. Defendant added new argument and new citations to exhibits in response to pages 14-15 of Pls.' Br. Opp. in an attempt to enhance its position relative to the doctrine of equivalence. *See* Dkt. 201 at 10:14-15, including citation to "Dkt. 189-4, Exh. 2." Defendant also made changes relating to the issue of validity. *See* Dkt. 201, at 11:28, adding citation; *id.* at 12:22-25, adding argument.

- Defendant added significant revisions to its argument in Section IV(A) in support of its Lanham Act counterclaims. *See* Dkt. 201, at 12:28-13:1, 13:4-5, 13:25; 14:3-8, 14:22-26; 15:6-9;

---

[8] This Court has broad discretion to manage the pre-trial phase of the cases before it, including by way of striking pleadings that do not conform with the Court's scheduling order or local rules. *Crawford–El v. Britton,* 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).
[9] *See also* Supp. Bautista Decl,, Exs. 34-35, with Redlines of Dkt. 193 compared to Dkt. 201. In Ex. 34, replacements are marked by yellow highlighting; new insertions are marked in blue.

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

16:6-12, 16:17-19. It also removed citation to exhibits contrary to its new version of events regarding the Transbay Project. *See* Dkt. 193, p. 14:12-14, removed from Dkt. 201. Notably, these changes were not for space. Section IV(A) actually got *longer*. *Compare* Dkt. 193, § IV(A) at 12:18-16:8; *with* Dkt. 201, § IV(A) at 12:26-16:19.

- Defendant also added new argument to Section IV(B)(1). *See* Dkt. 201, pp. 17:11-23, 17:24-26; 18:1-4, including new citations to "Schickman Exh. 3." Defendant's Section IV(B)(4) adds a whole new recitation of the legal standard it seeks to apply. *See* Dkt. 201, at 10-18. Defendant even went so far as to add two *entirely new* exhibits to support its arguments relating to the Lanham Act. *See* Dkt. 201 p. 17:9-10, Exh 31; 17:27-28, Exh 32.

Defendant's decision to rewrite its brief for *substance* instead of condensing it to comply with this Court's Order is particularly galling as it had already failed to timely file its motion for summary judgment (Dkt. No. 189),[10] its brief in opposition to Plaintiffs' motion for summary judgment (now stricken) (Dkt. No. 193), and its brief in opposition to Plaintiffs' motion to strike expert witness testimony (Dkt. 193 and Dkt. 193-1).[11] Such serial disregard for scheduling orders and local rules should not be tolerated and plaintiffs respectfully submit that Defendant's brief in opposition (Dkt. 201) should be stricken or, as an alternative, substantive additions unrelated to Defendant's attempts at compliance with Civil L.R. 7-3 should be disregarded.[12]

## IV.   CONCLUSION

Based upon all of the foregoing argument and attached evidence and that submitted with Plaintiffs' motion for summary judgment (Dkt. 187), Plaintiffs' motion for summary judgment on its patent claims and as to Defendant's counterclaims should be granted.

---

[10] Defendant filed its motion for summary judgment at 4:14 a.m. PST, November 24, 2020.

[11] Defendant filed these briefs at 9:11 a.m. PST on December 15, 2020, **nine hours** late**.** It blamed the delays on the Northern District of California's ECF servers. (*See* Supp. Bautista Decl., Ex. 36). But the ECF Help Desk stated that "ECF…has been up and running smoothly" when asked if the ECF system had experienced any recent issues. (*See* Decl. of Mike Etienne, Ex. 1). Had Defendant's brief been complete at the time of the filing deadline, it could have easily transmitted its brief to Plaintiffs at the deadline via email. It did not.

DATED: December 30, 2020

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP


By: */s/ Philip Bautista*
 Philip Bautista

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT