UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELY HOLDINGS LIMITED, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>O'KEEFFE'S, INC.,<br><br>    Defendant. | Case No. 18-cv-06721-JCS<br><br>**ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 220 |

## I.     INTRODUCTION

The Court previously granted summary judgment in favor of Defendant O'Keeffe's, Inc., d/b/a SaftiFirst ("Safti") on Plaintiffs' claims of patent infringement, in large part based on Plaintiffs' failure to show that Safti's accused product contained a layer of "fire rated glass" as claimed in the patent at issue. *See* Order re Mots. for Summ. J. & Mots. to Exclude Expert Testimony ("MSJ Order," dkt. 214) at 21–27.[1]  Plaintiffs now argue that the Court erred in requiring Plaintiffs to show that the *layer* at issue, as opposed to an assembled flooring product as a whole, had received a fire rating.  The motion is suitable for resolution without further briefing or argument.  *See* Civ. L.R. 7-9(d).  For the reasons discussed below, Plaintiffs' motion for leave to file is DENIED.[2]

This order assumes the parties' familiarity with the case and thus does not address in detail the procedural history, the patent in dispute, or the nature of the products at issue, all of which are explained in the Court's previous order on summary judgment.

---

[1] *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2021 WL 390946 (N.D. Cal. Feb. 3, 2021).  Citations herein to the Court's previous orders refer to page numbers of the versions filed in the Court's ECF docket.
[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. ANALYSIS

### A. Legal Standard for Reconsideration

This Court's local rules require that a party seeking leave to move for reconsideration of an interlocutory order "must specifically show reasonable diligence in bringing the motion, and one of the following:"

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b). "Unless otherwise ordered by the assigned Judge, no response need be filed and no hearing will be held concerning a motion for leave to file a motion to reconsider." Civ. L.R. 7-9(d).

Plaintiffs rest their present motion solely on the third basis for reconsideration, manifest failure to consider facts or arguments presented before the Court issued its order.

### B. Plaintiffs Have Not Specifically Shown Diligence

As a starting point, Plaintiffs have waited nearly two months to seek reconsideration after the Court issued its order on February 3, 2021. Plaintiffs have not explained how such delay is consistent with the requirement that they "specifically show reasonable diligence in bringing the motion"—a requirement omitted from the discussion of Local Rule 7-9(b) in their motion. *See id.*; Mot. for Leave (dkt. 220) at 2.[3] The motion is DENIED for failure to meet that requirement.

### C. Plaintiffs' Arguments Were Not Presented on Summary Judgment

Even if Plaintiffs had shown diligence, the Court would deny the motion on its merits,

---

[3] The Court uses the page numbers assigned by the ECF filing system in citations to Plaintiffs' present motion. Plaintiffs are encouraged to include page numbers on any future briefs or motions.

2

because the arguments and evidence on which Plaintiffs now rely could have been presented before the Court issued its previous order, but were not. Plaintiffs therefore have not shown a "manifest failure by the Court to consider material facts or dispositive legal arguments *which were presented to the Court before such interlocutory order*," as required by the only subpart of Local Rule 7-9(b) on which Plaintiffs rely. *See* Mot. for Leave at 2 (emphasis added). First, Plaintiffs argue that the Court improperly construed the patent as requiring that a layer of "fire rated glass" receive a rating separately from the fully assembled flooring unit, a requirement Plaintiffs contend was not included in the Court's decision on claim construction. *Id.* at 3–5. Second, even using the claim construction applied in the Court's summary judgment order, Plaintiffs argue that the Court disregarded evidence that the accused product infringed under the doctrine of equivalents. *Id.* at 6–7.

### 1. Whether the Fire Rated Glass Must Be Separately Rated

The Court's order on claim construction addressed the relevant issue regarding the term "fire rated glass" as follows:

> Plaintiffs object to Safti's proposed requirement that fire-rated glass must be "rated as fire resistant by a national recognized rating entity," arguing that there is no intrinsic or extrinsic evidence to support such a requirement, or even to show that such an entity exists. Pls.' Br. at 16. Safti responds that "[t]o be a fire rated glass, the product has to be tested and certified, and installed as tested and certified; otherwise the word 'rated' has no meaning." Def.'s Br. at 20. Plaintiffs do not address this issue in their reply. *See* Pls.' Reply at 10–11. Safti is correct that its construction largely applies a natural meaning of the word "rated," although Safti has offered no evidence to support the conclusion that a person skilled in the art would understand "fire rated glass" as requiring certification by "a nationally recognized rating entity" (as opposed to some other entity). Dr. Stevick opines only that the term "fire rated glass" denotes that the glass "has been rated as possessing a designated fire resistance certified by a testing authority." *See* Stevick Opening Report ¶ 34. Plaintiffs' expert Tim MacFarlane does not address whether fire-rated glass must be tested. *See* MacFarlane Opening Report ¶¶ 120–27; MacFarlane Reply Report ¶¶ 32–33. The Court adopts Dr. Stevick's view of this issue, which differs only slightly from Safti's proposed construction, as uncontradicted expert opinion evidence.

Claim Construction Order (dkt. 112) at 14.[4] The Court therefore construed the term "fire rated

---

[4] *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 WL 6911667 (N.D. Cal. Dec. 19, 2019).

3

glass" as meaning:

> a multi-layered glass sheet meeting all of the following conditions:
> 
> a. made up of two or more layers of glass;
> 
> b. having a transparent intumescent material interspaced between at least two of the glass layers;
> 
> c. having glass as its outer layers; and
> 
> d. *rated as possessing a designated fire resistance certified by a testing authority*.

Further Order re Claim Construction (dkt. 142) at 4 (emphasis added).[5]

Plaintiffs assert that "neither party understood the Court's construction of 'a layer of fire rated glass' to include the requirement that it be certified 'separately by itself' rather than in the configuration in which it was intended to be used." Mot. for Leave at 4. That assertion is not reflected in either party's briefs on summary judgment.

Plaintiffs' motion addressed this requirement only in one sentence, and asserted that because a testing authority had "certified the fire resistant portion of the Accused Products *alone* as providing a certain fire resistance," "the fire resistant portion of the Accused Products is also 'd. rated as possessing a designated fire resistance certified by a testing authority.'" Pls.' MSJ (dkt. 187) at 5 (emphasis added). Their brief in opposition to Safti's motion acknowledged Safti's argument that "'the GPX[] 120 fire rating applies to the entire floor, and no sub-part of it satisfies the Court's definition of a fire-rated floor.'" Pls.' Opp'n to MSJ (dkt. 192) at 1 (quoting Def.'s MSJ (dkt. 189) at 19). Plaintiffs argued in response that the incorporation of another product with a separate fire rating—SuperLite II-XLB—established that the accused GPX 120 flooring product infringed the claim specifying a lower layer of "fire rated glass." *Id.* at 5–6. And again in their reply brief on their own motion, Plaintiffs cited only a SuperLite II-XLB fact sheet for their assertion that the lower portion of Safti's GPX 120 product "has been certified as fire resistant by Intertek," not any evidence pertaining to the fire rating for the GPX 120 product itself. Pls.' MSJ

---

[5] *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2020 WL 511799, at *2 (N.D. Cal. Jan. 31, 2020). Construction of this term required further briefing and a second order due to a separate dispute regarding the configuration and materials used in "fire rated glass," which is not at issue in the present dispute regarding how the glass is "rated."

Reply (dkt. 207) at 4.

Safti never disputed that the product as a whole held a fire rating, but argued that the lower portion was not separately fire rated, and that it did not consist of SuperLite II-XLB. Def.'s MSJ at 16–17 ("Notably, the GPX 120 has no 120-minute fire rating except as a unit."); Def.'s Opp'n to MSJ (dkt. 201) at 2 ("The floor has no fire rating without the top layer . . . ."); *id.* at 8 ("[A] GPX 120 does not fall within term (ii) (d) of this court's [claim construction order] if one removes 25% of the products' major fire retardant, or the top glass sheet to which that layer of intumescent material adheres."); Def.'s MSJ Reply (dkt. 208) at 5–6 ("Mr. Macfarlane agrees that if any of the nine layers of the GPX 120 were removed, it would no longer have its 120-minute rating. . . . Thus, under term (ii)(d) of the Further Claim Construction Order, each of those layers must be part of the [fire rated glass]."). Had Plaintiffs intended to argue that the fire rating for the unit as whole satisfied this claim term, they could have relied on the undisputed evidence that the GPX 120 product was fire rated—as acknowledged in each of Safti's briefs—rather that consistently citing the fire rating for the separate SuperLite II-XLB product that, according to Plaintiffs, made up its lower layers.[6]

Plaintiffs' unauthorized proposed supplemental brief, submitted after the hearing, still argued primarily that the GPX 120 product infringed the "fire rated floor" claim based on its purported incorporation of SuperLite II-XLB. Pls.' Prop'd Supp'l Br. (dkt. 213-2) at 2–3. Plaintiffs also cited a wide range of evidence, some of which showed a fire rating for the GPX-120 unit as a whole, but did not articulate an argument that a rating for the unit as a whole would meet the claim requirement. *See id.* at 3–6.

The Court denied Plaintiffs leave to file that supplemental brief, concluding that Plaintiffs "offered no explanation for their failure to raise the evidence they now cite in the briefing and argument already allowed," and that even if considered, nothing in the supplemental brief would

---

[6] Plaintiffs also do not claim to have raised this argument at the hearing, and the Court does not recall them doing so, even after the Court shared its tentative position that Plaintiffs had not shown infringement of the "fire rated glass" claim because the evidence did not show that the lower portion of the GPX 120 product consisted of SuperLite II-XLB. No transcript of that hearing is included in the current record, however. In the nearly two months since the hearing, Plaintiffs do not appear to have ordered one.

alter the Court's conclusion. MSJ Order at 32. The Court granted summary judgment for Safti on Plaintiffs' infringement claims because no evidence supported Plaintiffs' position that the lower portion of GPX 120 was in fact SuperLite II-XLB, and Plaintiffs offered no other reason to believe that the lower portion of GPX 120 was separately fire rated. *Id.* 26.

Plaintiffs argue for the first time in their present motion that Safti "did not supplement its responses to Plaintiffs' interrogatories regarding infringement to add such an argument," i.e., that its product did not infringe because the layer of "fire rated glass" did not have its own fire rating. Mot. for Leave at 5. Plaintiffs cite no evidence for this assertion, *see id.*, and despite expressly acknowledging Safti's argument that it was entitled to summary judgment because the "fire rating applies to the entire floor, and no sub-part of it satisfies the Court's definition of a fire-rated floor," Pls.' Opp'n to MSJ at 1, Plaintiffs never contended that Safti's interrogatory responses foreclosed such an argument before the Court granted summary judgment.

Plaintiffs also now also argue that the Court's construction "improperly excludes two preferred embodiments of the invention," depicted as figures 5 and 6 of the patent at issue. Mot. for Leave at 3–5 (emphasis omitted). According to Plaintiffs, "[t]here is no way for the layer of fire-rated glass in either of these embodiments to be tested and rated *separately by itself* because it is necessarily joined to the layer of structural glass." *Id.* at 4. This argument is frivolous, and wholly incompatible with the arguments Plaintiffs actually presented on summary judgment, where Plaintiffs claimed that Safti's product—in which the fire resistant glass is similarly "joined to the layer of structural glass" above it—used another product that had separately received a fire rating as its "fire rated glass" layer, as discussed above. Pls.' Opp'n to MSJ at 5–6; Pls.' MSJ Reply (dkt. 207) at 4. The defect in that previous argument was not that it would be *impossible* to join the separately-rated SuperLite II-XLB product to additional structural layers (and add other components) to create an infringing product, but instead that Plaintiffs presented no evidence Safti in fact did so, as opposed to using different materials that had not received a separate fire rating as the lower layer of its accused product. *See* MSJ Order at 26. Plaintiffs have not explained why the embodiments depicted in figures 5 and 6 could not use an existing fire rated product (like SuperLite II-XLB) as their fire rated layers.

6

The Court's claim construction comports with the plain language of the patent. A "layer of glass which comprises a fire rated glass" reasonably means a layer of material that has *itself* received a fire rating. Plaintiffs have never identified evidence that a person of ordinary skill in the art would understand that claim differently—whether at claim construction, at summary judgment, in their unauthorized supplemental brief, or in their present motion for leave to file for reconsideration. To the extent the claim might be amenable to the interpretation Plaintiffs now propose, they had ample opportunity to argue as much before the Court granted summary judgment, but never did so.

Having failed to identify "material facts or dispositive legal arguments *which were presented to the Court before* [the] interlocutory order" at issue, Plaintiffs cannot meet their burden to show a "manifest failure by the Court to consider" any such facts or arguments in concluding that the accused product did not literally infringe Plaintiff's patent. *See* Civ. L.R. 7-9(b) (emphasis added).

### 2. Whether the Doctrine of Equivalents Applies

Plaintiffs also argue that the Court erred in concluding that they had not shown infringement under the doctrine of equivalents, because their expert Tim MacFarlane stated in his reply report that the lower portion of Safti's product served the same function as the "fire rated glass" layer in the patent claims, and Plaintiffs' motion for summary judgment cited that portion of MacFarlane's report. Mot. for Leave at 6–7.

The portion of Plaintiffs motion for summary judgment addressing the doctrine of equivalents focuses on the question of how load transfers within the product, not any question of fire rating or resistance. Pls.' MSJ at 15–17. Following a detailed discussion of that separate issue, Plaintiffs assert briefly that the doctrine of equivalents applies to all of the limitations of the claims at issue:

> Moreover, in evaluating whether a component in an accused product is equivalent to the element of a patent claim, relevant differences can include the function each serves, the way in which each works, and the result each obtains. *See Warner-Jenkinson*, 520 U.S. at 39. Here, as set forth in Macfarlane's Reply Expert Report, the structural walking layer, the fire resistant portion, and the beams in the Accused Products all perform exactly the same function, in exactly the same

>way, to achieve exactly the same result as the structural glass layer, the fire-rated glass layer, and the structural frame of the claimed invention.

*Id.* at 17. Plaintiffs' motion did not cite any particular portion of the report addressing the question of equivalence to "fire rated glass."

Plaintiffs' opposition brief addressed the doctrine of equivalents only with respect to transfer of load, not with respect to fire rating. Pls.' Opp'n to MSJ at 14–16. They addressed the issue only in their response to what they characterized as Safti's "reason (7)" for summary judgment: that "'some load from the walking surface transfers from the walking surface to the fire floor, and all of the load does not go directly from the load transferring means to the structural frame bypassing the lower layers of glass.'" *Id.* at 1, 14–16 (quoting Def.'s MSJ at 19). Nothing in that discussion of the doctrine of equivalents addresses the limitation of "fire rated glass." *See id.* at 14–16. Conversely, Plaintiffs' response to Safti's "alleged reason (3)" for summary judgment—that "'the GPX[] 120 fire rating applies to the entire floor, and no sub-part of it satisfies the Court's definition of a fire-rated floor'"—does not discuss the doctrine of equivalents at all, instead relying solely on Plaintiffs' unsuccessful argument that the lower portion of the GPX 120 product consisted of a different product with its own fire rating. *Id.* at 1, 5–6. The opposition brief therefore put neither Safti nor the Court on notice that Plaintiffs intended to oppose summary judgment on this issue based on the doctrine of equivalents.

Plaintiffs reply brief similarly focused on load transfer, and on responding to Safti's argument that Plaintiffs should be estopped from relying on the doctrine of equivalents because MacFarlane did not address it (except as to a patent claim for which Plaintiffs abandoned their infringement contention) until his reply report and because, in Safti's view, it was inconsistent with the prosecution history. Pls.' MSJ Reply at 5–6 (citing MacFarlane Reply Report at 3–6). Plaintiffs argued that MacFarlane should be permitted to address the issue for the first time in his reply report because Safti's expert did not raise an issue related to load transfer until his rebuttal report. *Id.* at 5. Plaintiffs did not argue that any issue related to the definition of "fire rated glass" warranted the late-disclosed opinion. *See id.* As in their motion, this section of the reply included a broad assertion that all elements of the product were equivalent to the patent: "Macfarlane's

8

Reply Report, however, includes a discussion of how each corresponding element in the accused product performs substantially the same function in substantially the same way to achieve substantially the same result as the corresponding element of the claim." *Id.* (citing pages 3 through 6 of MacFarlane's reply report).

The reply did not specifically argue that the lower layer was equivalent to fire rated glass even if not actually fire rated, and even if it had, MacFarlane's opinion on the subject was not timely disclosed. The only reason Plaintiffs offered for MacFarlane first addressing the doctrine of equivalents in his reply report was that, in Plaintiffs' view, Safti disclosed for the first time in its own expert's rebuttal report the argument "that the accused [product] did not infringe any claim of the '475 patent because a load applied to the [structural glass] could induce a stress in the [fire resistant portion] even when it is suspended above the structural frame by the [load transferring means]." *Id.* at 5. To whatever extent that might be a valid reason for a late opinion on equivalence regarding load transfer, it has no bearing on whether the lower layer is equivalent to "fire rated glass," and offers no excuse for an untimely opinion on that subject. The schedule in this case called for opening expert reports by the party with the burden of proof on a given issue, followed by rebuttal and reply reports addressing the issues raised therein. Further Patent Case Mgmt. & Pretrial Order (dkt. 62) at 2, § II.B; *see also* dkts. 154, 176, 181 (continuing deadlines). Plaintiffs had the burden of proof on infringement, and their expert should have addressed each element of how the accused product infringed in his opening report, not for the first time in a reply report to which Safti's expert had no opportunity to respond.

Plaintiffs never specifically raised an argument that a non-rated fire resistant layer would be equivalent to a fire rated layer, and that summary judgment should be denied to Safti on that basis, in any brief or at the hearing before the Court took the matter under submission.[7] As with

---

[7] In a footnote of their proposed supplemental brief, Plaintiffs asserted that the evidence cited therein "satisfies or, at the very least, creates a genuine issue of material fact as to the Court's construction of 'a layer of fire rated glass' under both literal infringement and under the doctrine of equivalents, i.e., that the fire-resistive portion of the accused GPX FireFloor System performs substantially the same function as the layer of fire rated glass in the patent invention, and does so in substantially the same way and with substantially the same result." Pls.' Prop'd Supp'l Br. at 3 n.5 (citing MacFarlane's reply report). A footnote does not suffice to raise a substantive argument, much less a footnote in an unauthorized supplemental brief offered only after the matter

9

their argument regarding the appropriate claim construction, Plaintiffs are not entitled to reconsideration of an argument they did not timely raise.

### III. CONCLUSION

Plaintiffs' motion for leave to file a motion for reconsideration is DENIED for failure to specifically show diligence in bringing the motion as required by this Court's local rules. Even if Plaintiffs had shown diligence, the Court would deny the motion because the arguments Plaintiffs raise were not presented to the Court before summary judgment was granted.

The parties are reminded that, due to their repeated litigation of inconsequential issues at the outset of the case, the Court's order dated August 12, 2019 imposed additional requirements before bringing any further motions:

> [B]efore filing any further motion in this action, the parties must meet and confer to discuss whether the motion will materially affect the outcome of the case, whether any effect of the motion is likely to be rendered moot by foreseeable future developments, and whether a mutually agreeable resolution can be reached. Any future motion must certify that the parties have met and conferred and were unable to reach an agreement, and that the party bringing the motion believes that it is an appropriate use of resources at that stage of the case.

Order re Mot. to Dismiss Counterclaims & Strike Affirmative Defense (dkt. 68); *see also* dkt. 118. Plaintiffs' noncompliance with that requirement in this instance is excused, but the Court expects the parties to follow all applicable orders going forward.

**IT IS SO ORDERED.**

Dated: March 26 2021

JOSEPH C. SPERO
Chief Magistrate Judge

---

was taken under submission. *Cf. United States v. Strong*, 489 F.3d 1055, 1060 n.4 (9th Cir. 2007) ("'The summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal.'" (citation omitted)).